# EXHIBIT I

1

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF KINGS:  CIVIL TERM:  PART: COMMERCIAL 8
-----------------------------------------------------X
SHOLEM WEISNER,

                                        Plaintiff,


                                        Index no.
                                        502269/2020
                -against-



SHMUEL NEMANOV,

                                        Defendant.
-----------------------------------------------------X

                        360 Adams Street
                        Brooklyn, New York 11201
                        MARCH 3, 2020

B E F O R E:  HONORABLE LEON RUCHELSMAN, Justice


A P P E A R A N C E S:


JACOB GINSBURG, ESQ.
        Attorney for the Plaintiff
        One Concord Drive
        Monsey, New York 10952



SAMUEL SPURGEL, ESQ.
        Attorney for the Defendant
        16 Court Street
        Brooklyn, New York 11241




                        THOMAS A. RUSSO, JR.
25                      Senior Court Reporter

PROCEEDINGS

2

1           THE COURT CLERK:  This is going to be number

2     three on the motion calendar in the matter of Weisner v.

3     Nemanov index 502269 of 2020.

4               Appearances.

5               MR. GINSBURG:  Good afternoon, Your Honor, Jacob

6     Ginsberg for the plaintiff, Sholem Weisner.

7               THE COURT:  Good afternoon.

8               MR. SPURGEL:  Good afternoon, Your Honor, Samuel

9     Spurgel, appearing on behalf of the defendants.

10              THE COURT:  Okay.  So where do we stand?

11              MR. GINSBURG:  Your Honor, I'd like to go

12     first --

13              THE COURT:  He brought the TRO, so we'll let him

14     go first.

15              MR. GINSBURG:  Thank you, Your Honor.

16              This TRO was filed on January 29 on an emergency

17     basis.  The filings indicate that my client, Mr. Weisner,

18     is an inventor, patent holder of about eleven patents.

19     There is a very large world class company, whose name I

20     won't identify on the record, but is subject to the

21     nondisclosure agreement that I tendered to Your Honor.

22              We filed on January 29 and were here on January

23     30.  It was sent forward to February 4.  On February 4, it

24     was adjourned to February 11.  On February 11, an adjourn

25     date of today was entered into.

tr

1           The reason that the TRO was brought is because my

2     client, Mr. Weisner's, rights in extremely valuable

3     patents, up to fifty million dollars, and his ability to

4     close a deal with this mega company was killed by the

5     defendants.

6           And the reason I brought it by way of TRO is, the

7     negotiations were destroyed.  The toothpaste was out of the

8     tube.  We couldn't put it back.

9           My client wants to sue the mega company in

10    Federal Court, but he's deeply concerned about his ability

11    to carry on because of the irreparable harm caused by the

12    interference by the defendants.

13          Now, according to the agreement -- and there is a

14    dispute about what they say -- but according -- as I read

15    them, Your Honor, the agreements show the defendant them

16    moves as a person who is entitled to money, but he does not

17    have a right to allocate the nature and extent of the

18    negotiations with this mega company.

19          THE COURT:  Besides that mega company, which

20    other company has he done -- are you alleging that he's

21    done that to?

22          MR. GINSBURG:  To my knowledge, Your Honor,

23    what's happened so far since the date that this was filed,

24    is that there have been unauthorized contacts by the

25    defendants with Mr. Weisner.

PROCEEDINGS
4

1              THE COURT:  But that has nothing to do with the

2       TRO that you brought.

3              MR. GINSBURG:  Hold on, hold on.  Yes, it does,

4       Your Honor, I believe.

5              THE COURT:  Tell me how.

6              MR. GINSBURG:  Presently my client is attempting

7       to move forward with other patents through patent counsel

8       in Israel.  His ability to market, sell, license, utilize

9       his valuable expertise and his valuable talent patents with

10      third parties are also being impacted.  There's a lawsuit

11      against the mega company that needs to be brought

12      immediately.

13             THE COURT:  So what's stopping you from doing

14      that?

15             MR. GINSBURG:  The reason, Your Honor, is he

16      doesn't want to have someone shooting at his feet when he's

17      litigating with his head.  In other words, we've got a

18      situation here, unfortunately, where there was an

19      unauthorized transfer of rights that really don't exist to

20      defendant Uri and Luria (phonetic spellings) Ventures, LLC.

21             So my client -- just to take a step back -- is a

22      brilliant inventor.  He's got eleven patents.  Mr. Nemanov

23      has a right to monies.

24             THE COURT:  So that's separate to what your TRO

25      is requesting.

1              MR. GINSBURG:  Your Honor, the TRO requests a

2      standstill pending a hearing on determination of the

3      merits.  The TRO requests, Your Honor, to enter an order

4      temporarily restraining the defendants from taking -- from

5      taking actions that are unauthorized, what I call in my

6      papers, the "unauthorized patent conduct."  That's one

7      level of --

8              THE COURT:  What does that mean?

9              MR. GINSBURG:  It means, for example, what

10     happened in the negotiations with the 800-pound gorilla,

11     the mega entity, is my client was going ahead, had entered

12     into an undisclosed agreement, was on the cusp of a real

13     and true settlement with this mega company.

14             THE COURT:  Besides this mega company, tell me

15     another company that you're --

16             MR. GINSBURG:  Microsoft is another one I

17     understand he's currently negotiating with.

18             THE COURT:  Has the entity or the person that you

19     say interfered with the --

20             MR. GINSBURG:  Your Honor, I'm not describing

21     misconduct of the kind with the 800-pound gorilla.  My

22     client is not able to litigate effectively or at all in

23     Federal Court when he is dealing with someone who is

24     claiming or disturbing --

25             THE COURT:  I don't see what stops your client

1      from suing the 800-pound gorilla in Federal court.

2                  MR. GINSBURG:  I'll tell you, Your Honor.  This

3      is a good example of what happened since we last met.

4      There have been unauthorized contacts which disturbed my

5      client.  There have been physical threats against my

6      client.  I uploaded and sent to Your Honor a letter, an

7      exhibit that shows that.

8                  My client is concerned, without asking for any

9      money from the other investors, and there are other

10     investors in this picture here, one of which is the

11     defendant here, is getting monies paid to him on royalties.

12     My client could start a lawsuit, and Mr. Nemanov and

13     Mr. Luria (phonetic spelling) could intervene in a federal

14     lawsuit and disturb the litigation by claiming that they're

15     entitled, when they're not entitled to --

16                 THE COURT:  You say they're not entitled.  That's

17     not been determined yet.

18                 MR. GINSBURG:  That's why I asked for a TRO.

19                 THE COURT:  To do what?  To stop them from

20     seeking any legal remedies?

21                 MR. GINSBURG:  No, so that they should stop

22     disturbing my client in his creative process, stop

23     interfering with the sale of valuable patents and

24     royalties --

25                 THE COURT:  Besides the 800-pound gorilla, is

1      there any other company that your client is involved in any

2      negotiations where the other side has interfered?

3                MR. GINSBURG:  Not of the same kind.  Presently

4      there is nothing on the table that is of the same kind of

5      what happened with the --

6                THE COURT:  So basically you're just asking for

7      speculative things that may happen, you want me to issue a

8      general restraining order of something that may happen in

9      the future without being specific enough and just -- let me

10     finish, Mr. Ginsberg.  And you just want me to issue this

11     TRO for something that may happen down the road.  That's

12     speculative and a pretty wide net you're asking the Court

13     to throw out there.

14               MR. GINSBURG:  Your Honor, what's happened so far

15     is not speculative at all.  There is an e-mail trail I

16     attached to my supplemental papers which you asked for last

17     time, which shows chapter and verse what Mr. Nemanov did --

18               THE COURT:  That has nothing to do with the TRO.

19               MR. GINSBURG:  The TRO asks that he not interfere

20     anymore in a patent process he's not authorized to do.

21               THE COURT:  Which other patent process has the

22     opposing side interfered with besides the 800-pound

23     gorilla?

24               MR. SPURGEL:  None.

25               THE COURT:  Please don't do that.  Please don't

1      do that again.  That's all I can tell you.

2                   MR. GINSBURG:  My understanding is, Your

3      Honor -- and I really do need to put Mr. Weisner on the

4      stand to address that question, but my understanding is --

5                   THE COURT:  But you're representing him.  Has he

6      told you another company?

7                   MR. GINSBURG:  Mr. Weisner has told me that

8      he -- his ability to -- to deal with other players in the

9      market has been so chilled, has been so prejudiced -- he's

10     been threatened physically, Your Honor.

11                  THE COURT:  I hear what you're saying.  But I

12     don't think it rises to the level of the relief that you're

13     seeking.

14                  Let me hear what Mr. Spurgel has to say.

15                  MR. SPURGEL:  I concur with Your Honor, not that

16     the Court needs my concurrence.  All the claims for relief

17     that are presently before Your Honor seeking a TRO are

18     speculative in nature.  There hasn't been any contact

19     between defendant Nemanov and the 800-pound gorilla or any

20     other players, to quote my adversary, in the marketplace.

21                  THE COURT:  Do you agree that your client did

22     interfere to a certain extent with the previous

23     negotiations?

24                  MR. SPURGEL:  To a certain extent, there was

25     contact between my client and the 800-pound gorilla.  That

PROCEEDINGS

1    contact ultimately resulted in my client's issuing a letter

2    to the 800-pound gorilla, withdrawing his inquiry with

3    regard to any status of any negotiations, and at the

4    conclusion of that e-mail, he specifically states that

5    everything should be done and conducted through the

6    plaintiff.

7              From that time going forward, there has been no

8    contact, no communication, no, to quote my adversary,

9    interference with that process.

10             Now, with regard to other claims, let me just

11   back up momentarily.

12             They are both co-inventors, any document that

13   lists these eleven patents lists both of them as

14   co-inventors of this technology.  That needs to be stated,

15   because with regard to anything that they're co-inventors

16   of, whatever rights are given to co-inventors is what the

17   defendants will rely on in terms of their interest.

18             I agree with Your Honor.  From that point forward

19   there has been no other communication.

20             Mr. Ginsberg has cited that the defendants do not

21   have a right.  Their client is attempting to move forward

22   on other patents.  The other patents would not affect

23   Mr. Nemanov and Luria (phonetic spelling).  It is not right

24   or germane for the Court to issue a TRO in this case with

25   regard to anything that the plaintiff is seeking with

1    regard to other intellectual property that he may be

2    designing or he may have already have rights or interest

3    in.

4            What is telling is that he is -- Mr. Ginsberg is

5    making representations that his client's ability to move

6    forward in Federal Court and sue the 800-pound gorilla for

7    whatever relief he's ultimately going to seek is somehow

8    affected by the defendants in this case.

9            He chose to come here and to name the defendants

10    in this case, and then he has the audacity to stand before

11    Your Honor seeking a TRO with, ultimately, a permanent

12    injunction, for something he's saying the defendant is

13    doing as a result of their actions.

14            He wants to say his right to sue the 800-pound

15    gorilla is affected by an ongoing litigation between

16    co-inventors of intelligent property that he's commencing

17    here.  It's his own client's actions that put this deal in

18    jeopardy by commencing this action.

19            Your Honor is correct once more to state that he

20    is free and permitted to go into Federal Court and make any

21    claims he wants to against the 800-pound gorilla.

22            THE COURT:  Why don't we do this --

23            MR. GINSBURG:  Can I just reply for the record,

24    briefly.

25            THE COURT:  Okay.

PROCEEDINGS

1          MR. GINSBURG:  The co-inventor does not mean that

2     they have a joint right to exercise authority over the

3     patents.  Their agreement specifically parses that now to

4     show that only plaintiff, Mr. Weisner, has a right to deal

5     with the 800-pound gorilla --

6          THE COURT:  We're talking about apples and

7     oranges.  My suggestion to both of you is why can't there

8     be an agreement that his client, Mr. Spurgel's client, will

9     not interfere anymore with your ability to negotiate with

10    any of the companies that you wish to negotiate with,

11    whether it be Microsoft or anything else, and if there's

12    any agreement reached in regard to any deal, that there be

13    a forwarding of the terms of the agreement to the other

14    side in regard to that, and there will be no other contact

15    by Mr. Spurgel's client with his -- with your client,

16    anymore.

17          We'll adjourn this for thirty days, and let's see

18    what happens during those thirty days, if the stipulation

19    has been complied with, and we can always revisit the TRO

20    down the road.

21          MR. GINSBURG:  Your Honor, if I could address

22    your point, I think Your Honor puts your finger right on

23    the seminal point, because it is the fact that they want to

24    say yes or no or have a veto power, which they're not

25    entitled to.

PROCEEDINGS

12

1          THE COURT:  A veto power in what respect?  I

2     don't see it.

3          MR. GINSBURG:  Your Honor, for example, he goes

4     ahead and sues in Federal Court.  My client goes ahead in

5     Federal Court and sues.  And he brings, from soup to nuts,

6     his claims against the 800-pound gorilla.  And he gets to

7     the cusp again of a settlement for royalties that would pay

8     enormous amounts of money to defendant Nemanov.

9          Defendant Nemanov, at that point, according to

10    what Your Honor's just said, has the ability to kill it

11    again.

12          THE COURT:  How is that?

13          MR. GINSBURG:  Well, he did it once.  Why would

14    he -- you're asking why would he would do it again.  I

15    don't know the answer to the question.

16          THE COURT:  I'm saying to you -- we're just not

17    seeing eye to eye about this Court's suggestion.  I'm

18    saying to you, let's get a stipulation as far as the

19    conduct of Mr. Spurgel's client that it won't happen again.

20    Let's put this off for thirty days.  Let's revisit it in

21    the thirty-day period, and you'll have more to show the

22    Court why your TRO should be granted if his conduct does

23    not comply with the stipulation.  That's what I'm saying to

24    you.

25          MR. GINSBURG:  Because Your Honor has suggested

1       it, I'm willing to adjourn it, but with the -- the

2       representation that my client has been threatened recently.

3               THE COURT:  Okay.  That may be, but I don't

4       think -- I think -- instead of going back and forth,

5       Mr. Spurgel, are you amenable to that?

6               MR. SPURGEL:  Unequivocally yes.  But as always,

7       the devil is in the details, Your Honor.  My reservation or

8       an inquiry that I would have to the Court is, to adjourn it

9       for a month, thirty days, sixty days, whatever the case is,

10      I'm not sure what the goal of the adjournment would be.

11              In other words, I can represent to Your Honor

12      today that I would certainly advise, as my clients have not

13      interfered --

14              THE COURT:  The adjournment will be to see if

15      your client will not interfere with any further

16      negotiations with other companies, such as Microsoft or

17      anything else, and will not conduct himself in an

18      inappropriate way in terms of trying to contact his client

19      or issue any threats or anything like that.

20              And if there are any disputes down the road, that

21      will be handled after the conclusion of any negotiations

22      that Mr. Ginsberg's client is successful with, with any

23      client in terms of the rights your client may have.

24              MR. SPURGEL:  With regard to the negotiation at

25      the end, I have an issue, and a big issue, with that.

PROCEEDINGS

14

1              In terms of the advice and direction of the Court

2       to make sure that the defendant does not interfere with the

3       800-pound gorilla, I have no problem.

4              That being said, Your Honor, there's no basis to

5       grant the TRO in either case.  I'm happy to make that

6       representation and direct the defendants accordingly.

7              THE COURT:  If they're interfering in other

8       negotiations down the road with specific companies --

9              MR. SPURGEL:  Your Honor, there isn't any

10      negotiation with other companies.  Why would I now

11      voluntarily agree to anything that's completely

12      speculative, that is in the exclusive control of the

13      plaintiff, so I can set them up to say, we don't know,

14      we're not in the know of who's going to negotiate with whom

15      for what.  That's my reluctance to enter --

16             THE COURT:  You had indicated that your client,

17      as long as he's made aware of any settlement or anything in

18      any of these companies to the terms of the agreement, your

19      client is willing not to attempt to contact these companies

20      and assert any rights that they may have.

21             MR. SPURGEL:  Let me phrase that a little bit

22      differently.

23             The defendants will not take any action to

24      interfere in the plaintiff's attempts to negotiate,

25      litigate, or whatever they need to do to effect these

PROCEEDINGS

15

1    rights of the co-inventors.

2              Now, I would want, as a condition of this

3    agreement, to be kept abreast of each and every

4    development, to see pleadings before they're filed, to be

5    made a part of -- not for the purpose of litigating it or

6    pursuing it, but so that this way a co-inventor's rights

7    are included, and if there is an ultimate settlement, to be

8    brought to the table and to reach the agreement on behalf

9    of both co-inventors.

10             I'm more than willing, ready, and able to do that

11   today.

12             THE COURT:  Why can't you go outside and both of

13   you draw up a stipulation?

14             MR. SPURGEL:  Because Mr. Ginsberg believes

15   defendant should not have that last right to be included

16   and involved in the decision-making process of any ultimate

17   settlement.

18             THE COURT:  What do you mean he should not -- so

19   you're saying that he shouldn't be involved in the

20   negotiations?

21             MR. SPURGEL:  No, he should be consulted by the

22   plaintiff here, made aware prior to what is between the

23   co-inventors.  I don't want my client sitting at the table

24   with Google, with Microsoft, with Acrobat, Amazon, Ebay or

25   any other internet company.  Let them negotiate with that.

PROCEEDINGS

16

1           THE COURT:  Fine.  So?

2           MR. SPURGEL:  I do want to be included and made a

3    part of the ultimate decision making process as between

4    co-plaintiffs, whether or not there is a fair and

5    reasonable settlement.

6           THE COURT:  Didn't you say that he could

7    negotiate with them, and your client won't interfere in

8    regard to reaching any settlement?

9           MR. SPURGEL:  Let me give the Court a

10   hypothetical, because I think I'm being a little bit

11   unclear or imprecise.

12           If they go to internet company X and negotiate,

13   and internet company X responds to their demand and says

14   we're going to settle any and all claims going back to the

15   beginning of time till today to the whopping sum of one

16   million dollars, my client would probably balk at that and

17   say that's a paltry sum for the technologies and use

18   they've had and not agree to the settlement.

19           THE COURT:  So that means you want a veto power

20   after anything he negotiates for.

21           MR. SPURGEL:  It wouldn't be veto power, but it

22   would be to be included and find out ahead of time -- to be

23   included ahead of time whether or not they're going to take

24   a million dollars for use of a particular intellectual

25   property from ten years ago.  That, I think, is a right we

PROCEEDINGS

1      have.

2              THE COURT:  Basically you're saying you do want

3      veto power over anything they negotiate.

4              MR. SPURGEL:  I need to know what's --

5              THE COURT:  You said if they agree to one million

6      dollars.

7              MR. SPURGEL:  The parties could have a discussion

8      of whether that is a fair or reasonable number.

9              THE COURT:  And if your client doesn't feel it

10     is?

11             MR. SPURGEL:  Your Honor has to determine who has

12     the ultimate right and whether or not this is a

13     deliberative process.

14             Mr. Ginsberg chose to commence an action here,

15     and I'm willing to put that issue on the back burner as

16     long as we're included throughout the process.  If we're

17     not included in the process, then I have available defenses

18     and claims here.  He's not going to be able to sue in

19     Federal Court, because they're not going to want to

20     negotiate with him because he chose to start this action.

21             THE COURT:  Anybody want to say anything else?

22             MR. GINSBURG:  Yes, Your Honor.  This is not

23     about that -- I agree with what Your Honor suggested.  The

24     problem with these big mega companies is that my client's

25     name has been kind of trashed with the 800-pound gorilla.

PROCEEDINGS

18

1      He's considered lite in their eyes.  He didn't even have

2      this alleged house in order.

3               Someone who is a co-inventor, with regard to

4      being entitled to money, made a direct approach to the

5      counsel to the 800-pound gorilla and said we have interest,

6      why don't we start our own negotiation.  So my

7      clients -- the irreparable harm to my client is that his

8      ability to negotiate and his ability to litigate will

9      be -- I believe it will be interfered with again.  And I

10     believe it's not just about the amount of money.  The

11     amount of money at issue with the 800-pound was in the

12     fifty million dollar category.

13              THE COURT:  You keep on saying about this fifty

14     million dollars.  You keep on talking about filing the

15     lawsuit in Federal Court.  We're here now, you've

16     instituted this, and you haven't filed anything.

17              MR. GINSBURG:  Your Honor, that fifty million

18     dollar figure was tendered as part of the negotiations that

19     Mr. Nemanov killed as to the claims and values --

20              THE COURT:  If you think you have claims, you can

21     sue them for money damages.

22              MR. GINSBURG:  What do I do, Your Honor, if

23     Counsel wants to be of Counsel in the Federal litigation?

24     He wants to agree to all the communications.

25              THE COURT:  What happened over there is, if you

PROCEEDINGS

1    went to Federal Court and filed a lawsuit against the other

2    side, and then his client wanted to come in for whatever

3    reason, then you make your arguments in front of the

4    federal judge over there and see whether or not that would

5    be appropriate and the agreement.

6              MR. GINSBURG:  Yes, Your Honor.  I think that's a

7    valid point.  So they intervene and take the heat off the

8    800-pound gorilla by saying that whatever plaintiff gets in

9    this lawsuit, there's a whole sidebar show.  And that's the

10   reason why we brought this lawsuit.

11             THE COURT:  Basically what you're asking the

12   Court to do is give you a TRO and prevent the other side

13   from exercising any of the rights that it considered to be

14   proper and let you run the show as you feel it should be

15   one without any --

16             MR. GINSBURG:  No, I'm bound by the agreement

17   with them, which says --

18             THE COURT:  You're bound by the agreement the way

19   you interpret the agreement.

20             MR. GINSBURG:  Your Honor's court attorney sat

21   down -- and I had the exact same conversation.  It just

22   says that Mr. Nemanov is entitled to money, but not to

23   control.  Mr. Nemanov signed that agreement.  The patent

24   office is very strict about its agreement.  This was an

25   agreement signed on the record, they don't want to be bound

PROCEEDINGS

1    by it, unless there was fraud, and there was no fraud, he

2    was one hundred percent with Counsel and the other

3    inventor.

4              At this point, Your Honor, for me to go into

5    Federal Court, I can do that.  But the sidebar that he

6    could intervene on is destroyed again.  Federal Court is a

7    very expensive process.  Nobody's asking him to kick in

8    money, but they're asking him to stay away from the

9    litigation, because he's already shown what he is --

10             THE COURT:  I don't see how this Court could stop

11   somebody from exercising what he considers to be his legal

12   right.  I just don't see it.  I just don't see it.

13             MR. GINSBURG:  What about the agreement?  If Your

14   Honor would take a few minutes to look at the agreement.

15             THE COURT:  We're going to take more than a few

16   minutes after I reserve decision on this and think about

17   what to do.

18             MR. SPURGEL:  Your Honor, my understanding is

19   this was a conference to determine whether or not, one, a

20   resolution is worked out or, if not, to schedule a date for

21   a hearing.

22             Your Honor had previously suggested that the

23   parties coordinate with the witnesses, whether or not

24   counsel that prepared the agreement, alternate counsel or

25   other people on the behalf of the plaintiff, I haven't put

PROCEEDINGS

1     in the papers, because my intent was that --

2              THE COURT:  I tell you what, I've heard the

3     arguments now.  I've further got some clarity on some of

4     the things that Mr. Ginsberg is asking for, and I want to

5     think about the next step before I set anything down.  If

6     need it be, you will be given time to put in papers.

7              MR. SPURGEL:  As long as I have the right to put

8     in papers, Your Honor, that's fine.  If I can just point

9     out one nugget, which is the irreparable harm.  To date,

10    there hasn't been contact with the 800-pound gorilla, which

11    is the only party the plaintiff negotiated with.  The

12    defendants have not engaged anyone.

13             THE COURT:  So just keep it that way.

14             MR. SPURGEL:  I will continue.  There is no need

15    for a TRO.

16             THE COURT:  I have what you're arguing and I hear

17    what you're arguing.  Think about it.

18             MR. GINSBURG:  Thank you, Your Honor.  If I could

19    just, one very, very brief point an irreparable harm, to

20    destroy a business or destroy the man's life, there is case

21    law, very good case law --

22             THE COURT:  You are talking about one incident

23    with one company in which you allege that he torpedoed some

24    negotiation in which you're suing for monetary damage on.

25    That's all you're talking about.

PROCEEDINGS

22

1              MR. GINSBURG:  Your Honor, I'm not talking about

2      one incident.  With all due respect to this Court, the way

3      I understand this is, a person has only so much credibility

4      in this business, only so much good well.  When someone

5      torpedoes that, you can't fix it.

6              THE COURT:  Okay.  I here what you're saying,

7      we'll be in touch.

8

9                    *    *    *    *    *    *    *

10

11              The preceding transcript is certified to be a

12      true and correct record of the proceedings in this matter.

13

14

15                          _____

16                          THOMAS A. RUSSO, JR.

17                          SENIOR COURT REPORTER

18

19

20

21

22

23

24

25

tr