| UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK | |
|---|---|
| SHOLEM WEISNER, <br><br>              Plaintiff, <br> -against- <br><br> GOOGLE LLC and SHMUEL NEMANOV, <br><br>              Defendant and Involuntary Party. | Case No.:  20-cv-02862-AKH |

## PLAINTIFF'S MEMORANDUM OF LAW IN
## OPPOSITION TO DEFNDANT GOOGLE'S RULE 12(B)(6) MOTION (ECF #s 32-35)

JACOB GINSBURG, ESQ. PLLC
Attorney for Plaintiff
One Concord Drive
Monsey, NY 10952
(845) 371-1914

**Of Counsel:**
JACOB GINSBURG, ESQ.

## <u>TABLE OF CONTENTS</u>

**TABLE OF CONTENTS** ................................................................................ i

**TABLE OF AUTHORITIES** ......................................................................... ii

**I. INTRODUCTION** .................................................................................... 1

**II.  ALL PATENTS ARE PATENT ELIGIBLE UNDER ALICE** ........................... 2

   **A. LEGAL STANDARDS** .......................................................................... 2

   **B. THE INVENTION** ................................................................................ 5

      **1. Step One of Alice** ......................................................................... 13

      **2. The Claims Solve a Problem Rooted in Technology** ........................... 20

      **3. Step Two of Alice** ......................................................................... 27

   **C. Google's Case Law is Easily Distinguishable** .................................... 35

**III. THE FIRST AMENDED COMPLAINT PLEADS PLAUSIBLE ALLEGATIONS OF**

**PATENT INFRINGEMENT** ......................................................................... 40

   A. The First Amended Complaint Easily Meets the Pleading Standards ................... 40

   B.  Google's Claim Construction is Contrary to the Plain Meaning of the Words of the

   Claims and Should Be Rejected ................................................................ 44

   **C. The First Amended Complaint Pleads Plausible Allegations of Indirect Patent**

   **Infringement** ........................................................................................ 49

      **1. The Contributory Infringement Counts Are Well-Plead** ........................... 49

      **2. The Inducement to Infringe Counts Are Well-Plead** ................................ 55

   **CONCLUSION** ....................................................................................... 57

## TABLE OF AUTHORITIES

**Cases**                                                                                        **Page**

Aatrix Software, Inc. v. Green Shades Software, Inc., 882 F.3d 1121 (Fed. Cir. 2018) ........ 29, 41

Alice Corp. v. CLS Bank Int'l, 573 U.S. 208, 134 S. Ct. 2347 (2014) ................................ passim

Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009) ...................................... 43

Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC,

827 F.3d 1341 (Fed. Cir. 2016)................................................................. 3, 4, 20, 27, 28, 31, 34, 40

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955 (2007) .................................... passim

Berkheimer v. HP Inc., 881 F.3d 1360 (Fed. Cir. 2018) ................................................ 4, 5, 28, 31

Bill of Lading, 681 F.3d, 1323 (Fed. Cir. 2012)...................................................................... 55,56

Cellspin Soft, Inc. v. Fitbit, Inc. 927 F.3d 1306 (Fed. Cir. 2019)..................... 4, 28, 29, 34, 41, 43

Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A., 776 F.3d 1343, 1346, 1351

    (Fed. Cir. 2014)……………………………………………………………………………. 40

Diamond v. Diehr, 450 U.S. 175, 187 (1981) ............................................................................ 35

Disc Disease Solutions Inc. v. VGH Solutions, Inc., 888 F.3d 1256 (Fed. Cir. 2018) 41-43, 55, 57

Enfish, LLC v. Microsoft Corp., 822 F.3d 1327 (Fed. Cir. 2016)...................... 3, 4, 13, 14, 28, 34

Erickson v. Pardus, 551 U.S. 89, 93, 127 S. Ct. 2197 (2007)...................................... 41, 43, 44, 50

FairWarning IP, LLC v. Iatric Sys., Inc., 839 F.3d 1089, 1097 (Fed. Cir. 2016)........................ 40

Genetic Techs. Ltd. v. Merial L.L.C., 818 F.3d 1369 (Fed. Cir. 2016)........................................ 40

Hewlett-Packard Co. v. Bausch & Lomb Inc., 909 F.2d 1464 (Fed. Cir. 1990) ......................... 50

Hotel Employees & Rest. Employees Local 2 v. Vista Inn Mgmt. Co., 393 F. Supp. 2d 972 (N.D.

    Cal. 2005)................................................................................................................................ 55

In re TLI Commc'ns LLC, 823 F.3d 607 (Fed. Cir. 2016).................................................... 35, 39

Intellectual Ventures I LLC v. Erie Indemnity Co., 850 F.3d 1315 (Fed. Cir. 2017) ............ 34, 36

Iron Gate Security, Inc. v. Lowe's Companies, Inc. 1:15-cv-08814, 2016 WL 1070853 at *3-4

    (S.D.N.Y. March 16, 2016) ................................................................................................... 43

Island Intellectual Property LLC v. Stonecastle Asset Mgmt. LLC, No. 19-cv-4792 (JPO), 2020

    WL 2793000 (S.D.N.Y. May 29, 2020) ............................................................................... 39

Lifetime Indus., Inc. v. Trim-Lok, Inc., 869 F.3d 1372 (Fed. Cir. 2017) .............................. 49, 56

Lumen View Tech. v. Findthebest.com, Inc., 984 F. Supp. 2d 189 (S.D.N.Y. 2013) ................ 39

Lyda v. CBS Corp., 838 F.3d 1331 (Fed. Cir. 2016) .................................................................... 48

Mayo Collaborative Servs. v. Prometheus Labs., Inc., 566 U.S. 66, 132 S.Ct. 1289 (2012) .... 1,40

Nalco Co. v. Chem-Mod, LLC, 883 F.3d 1337, 1350 (Fed. Cir. 2018) .......................... 41, 55, 56

OpenTV, Inc. v. Netflix Inc., 76 F. Supp. 3d 886, 893 (N.D. Cal. 2014) .................................... 37

Panduit Corp. v. Dennison Manufacturing Co., 810 F.2d 1561 (Fed. Cir. 1987) .......................... 3

Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc., 827 F.3d 1042 (Fed. Cir. 2016) ............. 3, 14,20,26

SAP Am., Inc. V. Investpic, LLC, 898 F.3d 1161 (Fed. Cir. 2018) .............................................. 38

Search and Social Media Partners v. Facebook, Inc., C.A. No. 18-1424-LPS-CJB, 2019 WL

    581616 (D. Del. Feb. 13, 2019) .......................................................................................... 36

State of Arizona, ex rel. Mark Brnovich, Attorney General v. Google LLC, CV2020-006219 ... 55

Ultramercial, Inc. v. Hulu, LLC, 772 F.3d 709 (Fed. Cir. 2014), cert. denied sub nom,

    Ultramercial, LLC v. WildTangent, Inc. , 135 S. Ct. 2907 (2015) .......................................... 13

**Statutes**

35 U.S.C. §101 ................................................................................... 3, 4, 14, 27, 31, 40, 41

35 U.S.C. §103 .............................................................................................................. 3, 4, 31

35 U.S.C. § 271(b) ................................................................................................................ 56

35 U.S.C. §271(c) ........................................................................................... 50, 51, 53, 54

**Rules**

Fed. R. Civ. Proc. Rule 12(b)(6) .................................................. 5, 36, 40, 41, 42, 44, 50, 55, 57

Fed. R. Civ. Proc. Rule 8(a) ……………………………………………………………… 41

Fed. R. Civ. Proc., Rule 8 (d)(2) ................................................................................ 48

Fed. R. Civ. Proc., Rule 8(d)(3) ................................................................................ 48

Fed. R. Evid. 201(d) ................................................................................................. 55

**I. INTRODUCTION**

Google's Memorandum in Support of its Motion to Dismiss contends that Plaintiff's patents are not patent eligible under the two step framework of <u>Alice Corp. v. CLS Bank Int'l</u>, 573 U.S. 208, 134 S.Ct. 2347 (2014) ("<u>Alice</u>") (and <u>Mayo Collaborative Servs. v. Prometheus Labs., Inc.</u>, 566 U.S. 66, 132 S.Ct. 1289 (2012) ("<u>Mayo</u>")).  To reach this conclusion, however, Google improperly converts the claims into a thin "Overview" of the claims and then declares the Overview to be directed to an abstract idea.  Then, in step two, it breaks the claims into component parts (or steps) and concludes that they do not add 'significantly more' to the Overview (i.e. that they lack an inventive concept).  Besides incorrectly applying the two step <u>Alice</u> framework, Google ignores the revolutionary integration of the cyber world with the physical world recited by the claims, the innovative manner of generating the location histories in the four patents, their unique nature and the specific innovative arrangement of the specifically-recited technical components recited in the claimed invention that achieves identifiable vast advantages to overcomes the technological drawbacks of the prior art.

Google trivializes the invention by calling it a conventional travel log.  In fact, as of the time of the invention in the spring of 2007, wireless and seamless accumulation of location histories between mobile communication devices of individual members and stationary vendor members, whose position is determined by a positioning system, into a database maintained by a processing system in communication with the positioning system using accounts of the individual and stationary vendor members associated with URLs, with specifically recited identifiers that include URLs of the stationary vendor members was not "well-known, routine and conventional" at all as Google contends.

Even beyond that, using the database of uniquely generated location histories, maintained by a processing system, to enhance computerized searching so as to adjust the priority of search results based on highly specifically defined relationships involving specific entries of stationary vendor members identified by URL in the location histories was itself a revolutionary improvement reflected in three of the patents.  How can one call that "well-known, routine and conventional" or a "travel log"?

Google ignores these and many other features representing in combination the technological improvement and vast achievements wrought by each of the four patents.

1

Google's attempt to trivialize and devalue the four patents in the hope of dismissing the case should be rejected.  Google's motion in fact seeks to choke the baby in its crib – to dismiss the patent infringement claims with prejudice before a hearing on claim construction as to any of the claims of any of the four patents at issue – while offering the court its own mis-construction of the claims - and before the merits of the case are considered, while acknowledging that there are "subsidiary factual questions" on the very issues it raised.  Google's attempt should be rejected.

Below is a side-by-side comparison of the two step <u>Alice</u> framework stated in <u>Alice</u> and Federal Circuit case law and the two step <u>Alice</u> framework that Google actually uses in its Memorandum in Support of its Motion (called "Memo in Supp." or "Google Memo in Supp.").

| ALICE TWO-STEP FRAMEWORK | GOOGLE TWO-STEP FRAMEWORK |
|---|---|
| Step 1) Determine whether the claims as a whole are directed to an abstract idea | Step 1) omit key claim elements, convert the claims into an "Overview" and then determine the "Overview" to be an abstract idea |
| Step 2) Determine whether the claims recite elements that, individually <u>or as an ordered combination</u>, provide 'significantly more' than any alleged abstract idea (sometimes called a search for an inventive concept) | Step 2) determine whether each individual claim component is inventive and whether they are used as they were designed to be used |

Once the correct two step <u>Alice</u> framework is applied properly to the claims of the four patents at issue herein, Google's entire argument is found to lack any merit.  As demonstrated in detail below, each of the four patents convincingly meets step one and step two of the <u>Alice</u> two step framework, even though the claims need only meet <u>either</u> step one <u>or</u> step two.  The claims recite a particular practical technological improvement to drawbacks found in the prior art and one that is at worst 'significantly more' than any alleged abstract idea.  All the claims are patent eligible.

As shown below, Google's further contention that the First Amended Complaint does not adequately plead allegations of patent infringement should likewise be rejected.

## II.  ALL PATENTS ARE PATENT ELIGIBLE UNDER ALICE

### A. LEGAL STANDARDS

In <u>Mayo</u>, the U.S. Supreme Court enunciated several judicial exceptions to patent

eligibility under 35 U.S.C. § 101, one of which is an Abstract Idea.  The Mayo test was elaborated on in Alice Corp. v. CLS Bank Int'l, 573 U.S. 208, 134 S. Ct. 2347 (2014).  To establish patent ineligibility under Mayo/Alice as an abstract idea, which is an example of a judicial exception, a two-step framework has been enunciated in Alice.  In step one, the examiner considers whether the claim is 'directed to' an abstract idea by considering its character as a whole in light of the specification. Enfish, LLC v. Microsoft Corp., 822 F.3d 1327, 1335 (Fed. Cir. 2016).  The Federal Circuit has reiterated that the step one "directed to" inquiry is a "meaningful" one, focusing not on "whether the claims *involve* a patent-ineligible concept, because essentially every routinely patent-eligible claim involving physical products and actions *involves* a law of nature and/or natural phenomenon," but, rather, on whether the "character [of the claims] as a whole is *directed to* excluded subject matter." Enfish, LLC v. Microsoft Corp., 822 F.3d 1327, 1335 (Fed. Cir. 2016) (internal quotations omitted). "It is not enough merely to *identify* a patent-ineligible concept underlying the claim; [the court] must determine whether that patent-ineligible concept is what the claim is 'directed to.'" Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc., 827 F.3d 1042, 1048 (Fed. Cir. 2016). The Federal Circuit has further cautioned, in considering step one, to not "describ[e] the claims at such a high level of abstraction and untethered from the language of the claims [because doing so] all but ensures that the exceptions to § 101 swallow the rule." Enfish, 822 F.3d at 1337.

In the second step, the examiner or the court evaluates whether, even if the claim is 'directed to' an abstract idea, the claim recites claim elements, either individually or as an ordered combination, that nonetheless provide 'significantly more' than the alleged abstract idea (sometimes described as a search for an inventive concept). As the Federal Circuit stated in Bascom Global Internet Services, Inc. v. AT&T Mobility LLC, 827 F.3d, 1341, 1350 (Fed. Cir. 2016): "[t]he inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art. As is the case here, an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces."  Only if the answer to both steps is "No", then and only then is the claim patent ineligible.  To merely consider the claim elements one by one would make a mockery of the whole patent system since every invention is a combination of known elements. See Panduit Corp. v. Dennison Manufacturing Co., 810 F.2d 1561, 1575 (Fed. Cir. 1987) (in the context of 35 U.S.C. §103 nonobviousness).

Google misapplied both steps.  In step one it described and considered a mere Overview

of the claim that it invented instead of the claim as a whole and in step two it failed to seriously and correctly consider an ordered combination of the claim elements in determining whether there is 'significantly more' in the claim that transforms any alleged abstract idea into a particular practical application, which is the step two legal standard. See Alice footnote 3; Bascom, 827 F.3d at 1352; Enfish, 822 F.3d 1327 (Fed. Cir. 2016).

Although the second step under 35 U.S.C. §101 is sometimes called a search for an inventive concept, this should not be confused (as Google does) with determining nonobviousness under 35 USC §103.  In fact, in order for a claim element to be considered "well-understood, routine, conventional activity" for the purpose of the two step Alice framework, it is not enough that it was disclosed in the prior art. Berkheimer v. HP Inc., 881 F.3d 1360, 1369 (Fed. Cir. 2018) ("The mere fact that something is disclosed in a piece of prior art, for example, does not mean it was well-understood, routine, and conventional"). In other words, it can even be already known (as of Spring 2007, the filing date) and still not be considered "well-understood, routine, conventional activity" under step two of the Alice framework.

Therefore, although it is sometimes called a search for an inventive concept, step two seeks to identify claim elements, either individually or as an ordered combination, that render the claim significantly more than any alleged abstract idea, for example, by integrating any alleged abstract idea into a particular practical application of the abstract idea. See Bascom. 827 F.3d at 1352; Berkheimer, 881 F.3d at 1367.

The four issued patents are presumed valid under the law, including with respect to their patent eligibility. Cellspin Soft, Inc. v. Fitbit, Inc., 927 F.3d 1306 (Fed. Cir. 2019).

Given Google's assertions that certain claim elements recite "well-understood, routine, conventional activity", it is also important to note that based on the four corners of the First Amended Complaint the four patents ('202, '905, '911, '910) referenced therein have an effective filing date of March 27, 2007, at the very least for those features Google asserts are "well-understood, routine, conventional activity".  That date is the frame of reference for determining whether the features that Google asserts are "well-understood, routine, conventional activity" are in fact so.  It is very easy to slip into the frame of mind in which what is or is not "well-known, routine or conventional" is evaluated based on what is known today, thirteen and a half years later.  But this is not correct thinking under the law; rather it would be considered "20/20 hindsight".  Based on the four corners of the First Amended Complaint, the effective

filing date of the '202 patent (not including claims 2-3) and the '910 patent is March 27, 2007. In case Google argues that the effective filing date for the claims of the '905 patent, the '911 patent and claims 2-3 of the '202 patent is June 7, 2007, even though plaintiff will be able to rebut that, for simplicity, plaintiff will refer to "Spring 2007" as the effective filing date for all four patents in this Motion.

In Berkheimer v. HP Inc., 881 F.3d 1360 (Fed. Cir. 2018) the Federal Circuit held that "[w]hile patent eligibility is ultimately a question of law, [w]hether something is well-understood, routine, and conventional to a skilled artisan at the time of the patent is a factual determination. Whether a particular technology is well-understood, routine, and conventional goes beyond what was simply known in the prior art. The mere fact that something is disclosed in a piece of prior art, for example, does not mean it was well-understood, routine, and conventional. Berkheimer, 881 F.3d at 1369.

Furthermore, Berkheimer also held that the factual determination of "whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact", that "must be proven by clear and convincing evidence". 881 F.3d at 1368. (emphasis added).  Berkheimer was a summary judgment case and even at the summary judgment stage, the court was unwilling to dismiss the case.  Here, Google's unsupported attorney assertions of fact concerning the conventionality of the components in the claims before any discovery are a far cry from proof by "clear and convincing evidence".  They are also completely false.

Yet one way to show that the second step of the Alice test is satisfied is to show that the claim limitations "involve more than performance of `well understood, routine, [and] conventional activities previously known to the industry.'" Berkheimer, 881 F.3d at 1367.

As demonstrated conclusively below, Google fails to meet the above legal standards for its motion to dismiss under Fed. R. Civ. Proc. Rule 12(b)(6).

**B. THE INVENTION**

As of Spring 2007, as stated in the Specification ("Spec.") (Pub. No. 20080244006A1 Pub. Date Oct. 2, 2008) at paragraph 0003, "[w]hen a person/user surfs the world wide web, the user's browser maintains a surf history… [where it maintains] lists of previously visited web sites

[that] are <u>lists of places that exist only in cyberspace and which the user has visited</u>" in cyberspace (emphasis added).  This surf history "cannot be said to meaningfully characterize the life of the user during a particular period of time".  Spec. at para. 0003.  The surf histories also do not capture the unique characteristics and tastes of the individual surfer.  In the Spring of 2007, any individual could also have made a travel log of where they had been in the physical world but such a log would not have included URLs that are integrated into a digital network in a novel way so as to achieve the advantages and improvements obtained by the claimed invention (nor would it have included the other elements of the claimed invention).  As of Spring 2007 the physical world and the cyber world had not been integrated, as the claimed invention did.

Furthermore, the Specification at paragraph 0012 states that in the prior art at the time of the Specification "the process of searching the world wide web does not adequately take cognizance of the unique characteristics and tastes of the searching person."

The Specification refers a number of times to one of the important features of the invention - the integration of the cyber world with physical encounters in the physical world - when it states, for example in paragraph [0082]: "[a]s seen from FIGS. 1-5, apparatus 10 is a viewable and updateable <u>digital</u> history 10 of a person's <u>physical presence</u> over a time". <u>See</u> <u>also</u> Spec. para. 0013 ("Although accumulated electronically, the present invention is a viewable and updateable digital leg history conveying various kinds of information about where a person has physically been …").  Although the location history is incorporated into the digital or cyber world – and in fact is integrated in the cyber technology of the digital world – it is entirely grounded on physical encounter activity in the physical world that therefore captures the unique tastes/characteristics of the person.

This creates a profound advantage and improvement.  Part of the genius of the claimed invention is that the essence of the URLs is profoundly tied to *how* they were obtained.  Instead of just getting a bunch of URLs when you have someone's surf history that do not really have anything meaningful to do with the surfer's life, when the claimed invention generates URLs the URLs reflect the individual member's life, and hence their unique tastes and characteristics. This is because of the *way* they were generated – through physical encounters in the physical world as the person went through their life.  It requires more commitment to walk to the barber than to sit on your couch and surf to the barber's web site.  In fact, you may not even consider surfing to the barber's web site, because what matters to you is your hair, not his web site.  So

when you enter the premises of a stationary vendor member (for example the barber) as determined by a positioning system and end up with its URL (associated with its account) on your location history (that is also associated with your URL and account), it has greater significance at capturing your "unique characteristics and tastes".

Yet the location histories that include the URLs are nonetheless also automatically integrated into a database linked to a processing system of cyberspace as the location histories are formed.  As detailed below, this synergy translates into huge value to advertisers, huge value to search engines, and huge value to the individual members themselves.

The claimed invention of all four patents is directed to a method and system that technologically integrates the physical encounters in the physical world with the cyber world. The integration is due in part to the fact that while the physical encounter histories occur in the physical world they are identified at least in part by key data in the form of a cyber identifier (a URL) of the stationary vendor member and a cyber identifier of the individual member (a URL), which allows a database of the location histories of many members of the network to be conveniently accessed and used by important digital infrastructure within cyberspace including but not limited to search engines (to enhance a search by making use of a location history or a profile of the searcher grounded in the location history that captured the unique characteristics and tastes of the searcher), advertisers (to enhance the process of targeting individual members of a network who are potential consumers at stationary vendor members based on a location history or a profile of the individual grounded in the location history that captured the unique characteristics and tastes of the target), the individual members' selections of stationary vendor members to buy from (the URL makes it easy for the individual searching their location history to access the stationary vendor's web page).

By merging cyber identifiers (namely a URL or another identifier associated with the URL in some cases) of both the stationary vendor members and the individual members of a network of the digital or cyber world with the individual member's (having a mobile communication device) physical encounters with stationary vendor members in the physical world, this is one way in which the claimed invention merged the two worlds.  As part of this, a processing system that maintains the network, is in communication with a positioning system that determines the location of the physical encounter and the processing system provides accounts to both individual members and stationary vendor members and the accounts are

specifically associated with the cyber identifiers.  Furthermore, the physical encounters, which involve mobile (wireless) communication devices of the individual member at the premise of the stationary vendor member, trigger the transmission of the URLs to be integrated into a database of the network in communication with a telecommunications system.

Numerous advantages of the merger of the physical world and cyber world are further outlined below but it is commonly known that large swaths of the country's population already seamlessly record their location histories of their physical encounters with stationary vendor members, as determined by a positioning system, as a part of a network that is in communication with a processing system.  As discussed below, this has resulted in the cyber identifiers becoming a form of advertisement by the stationary vendor members (as predicted in the Specification at paras. 0006 and 0109), and has unified cyber searching with location history (as recited in three of the four patents herein) and has integrated business advertisement and business selections by consumers, transforming these fields in the process.

As noted, the URL, as a cyber identifier, is configured to integrate the physical encounter histories into the cyber world in several ways.  One way is that search engines used for cyber searching use this URL or an identifier associated with it.  A second way is that the individual member who views or searches their encounter history can click on the cyber identifier appearing in their physical encounter history viewable and searchable on the mobile communication device and thereby immediately "travel to" the stationary vendor member identified by the cyber identifier by accessing a web page (or knowledge panel) of that stationary vendor member.  A third way is that the processing system and/or positioning system use this cyber identifier or another one associated with it to identify the location of the stationary vendor member and individual member and this allows the physical encounter histories to be seamlessly accumulated as individual members enter the premises of the stationary vendor members.  Still another way is that stationary vendor member who wishes to advertise (essentially all of them) can enjoy being listed on the individual member's physical encounter history that is viewed by the individual member because it (i) can purchase an advertisement space on the individual member's physical encounter history that it can send digitally an advertisement to all those individual members who fit a certain profile and/or (ii) can purchase "information about a large group of people" (called 'big data') namely physical encounter history data collected concerning large numbers of individual members of the network in order to target their advertisements based on the

characteristics and tastes of the individual member as reflected in their physical encounter history.

The claimed invention constitutes an improvement over the prior art including because the characteristics and tastes of the individual member are more captured by and reflected in the physical encounter histories than by the individual member's surf histories since, as explained above, people's tastes and characteristics are more reflected by where they physically travel than by where they surf to on the world wide web.  In fact, as of March 2007 and today as well, people also experience most of their life physically appearing at different places in the physical world and that more reflects their tastes and choices than where they go in cyberspace.  In fact, their emotions are more connected to the physical places they visit.

An additional advantage over surf histories is that the physical encounter histories can be accumulated wirelessly (see Spec. at para. 0083) and therefore seamlessly while the individual member goes about their daily activities that they would otherwise engage in (see Spec at para. 0064).  This also happens without requiring any or almost any effort and even without the individual member pausing to think about the fact that their physical encounter history is being accumulated, often together with millions of others', to generate 'big data' that is valuable to the advertisers and hence to the network proprietor (e.g. Google).

At the same time, the mere fact of the stationary vendor member appearing on the physical encounter history is attractive to the stationary vendor members, who are by definition potential advertisers.  As explained in para. 0123 of the Spec. and Fig. 8, the claimed invention makes use of its prediction that encounter histories "will have become popular" such that it will become attractive for stationary vendor members to advertise on the physical encounter history.

These are but a few of the reasons that the claimed invention improves over prior art technology and provides improvements with vast advantages.

The claimed inventions of the four patents vary to some extent from one to the another but they all address these and other problems.  System claim 14 of the '202 patent recites:

"A system for creating and/or using physical location histories, comprising:

a processing system connected to a telecommunications network and to a positioning system and configured to provide an account to an individual member and to a stationary vendor member of a member network;

an application that configures a handheld mobile communication device of each

9

individual member of the member network to, upon instances of a physical encounter between the individual member and the stationary vendor member of a plurality of stationary vendor members of the member network at a physical premises of the stationary vendor member, the physical encounter recognized by the handheld mobile communication device upon receiving a short range communication from a transmitting device of the stationary member, transmit a URL of the stationary vendor member and a URL of the individual member to the processing system automatically as a result of the physical encounter at the physical premises, thereby generating a location history entry, in at least the account of the individual member, that includes (i) the URL of, and a location of, the stationary vendor member, (ii) a time and date of the physical encounter, and (iii) an identity or the account of the individual member and of the stationary vendor member,

the URL of the individual member associated with the individual member before the physical encounter between the individual member and the stationary vendor member, a location of the individual member at the physical premises determined by a positioning system or by the key data of the stationary vendor member;

each application configured to maintain a viewable physical encounter history on the handheld mobile communication device that includes URLs from multiple stationary vendor members and is searchable from the handheld mobile communication device (i) by URL of the individual member and of the stationary vendor member, (ii) by geographic location, and (iii) by time of the physical encounter, the individual member's account having data transfer privileges that allow the physical encounter history to be accumulated through transmission of location history entries from multiple handheld mobile communication devices of the individual member over time;

the processing system including a database of physical encounter histories of members of the member network whose accounts received the location history entry that was generated,

wherein the physical encounter history of a particular individual member includes at least one visual timeline of physical encounters of the particular individual member."

A processing system connected to a telecommunications network is configured to operate a network by providing an account to stationary vendor members and to mobile individual members (defined in the claims as mobile communication devices of individual members) of the network, the accounts being associated with key data supplied (for example at the time they sign

up with the network) by each member such as a URL or identifier associated with the URL.  An application on the mobile communication devices configures each mobile communication device to transmit to the processing system a URL of the stationary vendor member and in some cases also a URL of the individual member upon an instance of a physical encounter between the mobile individual member and the stationary vendor member at the physical premise of the stationary vendor member.  The location of the physical encounter is determined by a positioning system that is in communication with the mobile communication device of the individual member or in some cases with a communication device of the stationary vendor member (i.e. pre-positioned on the vendor premises).  The application maintains a viewable searchable history of all the physical encounters recorded on a particular individual member's mobile communication device and the location history is searchable by the URL of the vendor member (and in some cases is in a calendar format – see claim 12 of the '910 patent).  The processing system maintains a database of the physical encounter histories.  Furthermore, the location history is arranged with a visual timeline – just like Google Maps does today in 2020.

As a result, the database of individual member's location histories as defined in part by URLs (and date/time of the encounter), is valuable for enhancing digital searching.  The processing system that maintains this information may also be linked to a search engine to use this information to increase or affect the ranking of search results (for example a search for a certain type of business) based for example on a relationship of a vendor (i.e. a search result) with another reference person (referred to in the claim of the '905 patent as a "useful person") whose location history may have a common profile with that of the searcher even though the search never had a physical encounter with the reference person (see '905 patent).  This is because internet searching – whether by mobile communication device or otherwise – is intimately tied up with URLs and because it was foreseen in Spring 2007 that an interaction in the physical world between mobile individuals and stationary business can be captured using URLs.  The '905 patent recites this enhanced digital searching feature amongst other limitations in claim 1 (as quoted word for word in the First Amended Complaint (ECF #15, ¶22) as follows:

"determining, by the processing system, a physical location relationship recorded in the database between a searching person who is a member of the member network, a reference individual member of the member network and a first stationary vendor member of the plurality of stationary vendor members, upon the searching person making a search query on a search engine having access to the processing system; and

responding to the search query by generating a computerized search result that increases a ranking of the first stationary vendor member based on the physical location relationship wherein the relationship is as follows:

(a) the reference individual member's physical location history includes key data of the first stationary vendor member; and (b) the searching person's physical location history and the reference individual member's physical location history each include key data of a second stationary vendor member of the plurality of stationary vendor members,

wherein the searching person's physical location relationship to the first stationary vendor member is such that the searching person has a physical location relationship with the second stationary vendor member who has a physical location relationship with the reference individual member who has a physical location relationship with the first stationary vendor member."

In addition, a geographic profile of the individual's location history may be used for enhancing digital searching (as Google does), as in the '911 patent.

In addition, as stated in Spec para. 0031 and 006, the location history creates a new venue for customized business advertising for the stationary vendor members based on the location history and preferences of the individual vendor members.

Furthermore, the URL on the location history is also a way for any vendor member to be more intimately connected to each individual potential customer since the URL is an actual link to a web site of the stationary vendor member's business where the most up-to-date version of the vendor member's web site is located with any offer the vendor member wants to make. Again, this is exactly what Google does.

In addition, this location history data can be sold to advertisers (as Google does) who now have the ability to advertise on the physical location histories of the individual users when the individual user approaches a certain geographic area or otherwise.  Note also that in certain modes the physical encounter history is not necessarily recording every physical encounter with a stationary vendor member but depending upon the settings of the individual member's mobile communication device only those physical encounters that the individual member considers significant enough to be recorded, see Spec. para. 0109, thereby providing further value to the businesses as to the consumer's unique tastes and preferences. This version appears in independent claim 1 of the '202 patent using the language "upon acceptance by the handheld mobile communication device … of an automatic proposal from the stationary vendor member").

Google in fact earns most of its revenues from Google Maps accumulating and selling to advertisers "information about a large group of people" (called 'big data') according to Google's

own publicly available financial information. See paragraph 0058 of the Specification referring to this "information about a large group of people" in Spring 2007 as one advantage of certain embodiments of the claimed invention.  The accumulation of this 'big data" occurs seamlessly and "is not difficult or time-consuming to accumulate" (see para.  0060 of the Specification). This also combines the interests of advertisers and ordinary potential customers" (see para. 0062 of the Specification).

All of these advantages – and many others - are outlined in the Specification in Spring 2007. See Spec. paras. 31-33, 44, 47-50, 53, 56, 58, 62-67 describing "objects and advantages" that may be present in particular embodiments.

Google trivializes all of the technical features while it uses them to bring in hundreds of billions of dollars.  It does not earn these revenues with the features of its trivial "Overview" – it earns them by infringing the actual recited claim features that it omitted from its Overview.

**1. Step One of Alice**

The claims as a whole are not 'directed to' an abstract idea under step one of the Alice framework.  As demonstrated conclusively, all of the claims of all of the patents recite highly specific components that interact with one another in a specifically recited manner to achieve a unique technological solution to drawbacks rooted in technology in a specifically recited way.

Google (at p. 17 of Memo in Supp.) describes the legal standard to be applied in step one of the Alice framework as follows: to "determine the 'abstract idea at the heart' of the patent claims".  This is simply not correct.  The very case Google cited for this assertion, Ultramercial, Inc. v. Hulu, LLC, 772 F.3d 709, 714 (Fed. Cir. 2014), cert. denied sub nom, Ultramercial, LLC v. WildTangent, Inc. , 135 S. Ct. 2907 (2015), does not describe the step one Alice inquiry that way – it merely noted that the lower court found that a particular abstract idea was "at the heart of" a particular patent.  See Ultramercial, Inc. v. Hulu, LLC, 772 F.3d at 714.  In fact, the legal inquiry at step one is to determine whether a claim is 'directed to' an abstract idea by considering its character as a whole. Enfish, LLC v. Microsoft Corp., 822 F.3d 1327, 1335 (Fed. Cir. 2016); Furthermore, the Federal Circuit has reiterated that the step one "directed to" inquiry is a "meaningful" one, focusing not on "whether the claims *involve* a patent-ineligible concept, because essentially every routinely patent-eligible claim involving physical products and actions *involves* a law of nature and/or natural phenomenon," but, rather, on whether the "character [of the claims] as a whole is *directed to* excluded subject matter." Enfish, LLC v. Microsoft Corp.,

13

822 F.3d 1327, 1335 (Fed. Cir. 2016). "It is not enough merely to *identify* a patent-ineligible concept underlying the claim; [the court] must determine whether that patent-ineligible concept is what the claim is 'directed to.'" Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc., 827 F.3d 1042, 1048 (Fed. Cir. 2016).

Besides applying the wrong legal standard, Google also blithely ignores the actual claimed invention recited in the claims.  In its attempt to devalue the invention Google creates its own novel "Overview" of the claimed invention which it seeks to pass off to this Court as the claimed invention. Google calls its "Overview" of the claims "recording human travel/interaction" (see Google Memo in Supp. pp. 2-14 and pp. 17-20).  Google then concludes that the claims, as defined by the Overview, are directed to an abstract idea of travel logs (recording human travel/interaction). But this utterly ignores important claim elements and dispenses with the essence of the claims, not to mention the fact that in inventing its own two step framework Google flagrantly violates the exact warning issued by the Federal Circuit as to what *not* to do when applying step one of the Alice framework: that to "describe the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule."" Enfish, 822 F.3d at 1337.

For example, in comparison to claim 14 of the '202 patent, Google's "Overview" completely overlooks at least the following claimed features recited therein:

"an application that configures a handheld mobile communication device of each individual member of the member network to, upon instances of a physical encounter between the individual member and the stationary vendor member of a plurality of stationary vendor members of the member network at a physical premises of the stationary vendor member, the physical encounter recognized by the handheld mobile communication device upon receiving a short range communication from a transmitting device of the stationary member, transmit a URL of the stationary vendor member and a URL of the individual member to the processing system automatically as a result of the physical encounter at the physical premises, thereby generating a location history entry, in at least the account of the individual member, that includes (i) the URL of, and a location of, the stationary vendor member, (ii) a time and date of the physical encounter, and (iii) an identity or the account of the individual member and of the stationary vendor member,

the URL of the individual member associated with the individual member before the

physical encounter between the individual member and the stationary vendor member, a location of the individual member at the physical premises determined by a positioning system or by the key data of the stationary vendor member;"

This claim language incorporates the following features "(i)", "(ii)", "(iii)" and (iv)":

(i) the way in which the URLs are obtained is through physical encounters in the physical world between a mobile communication device of an individual member (associated with a URL) going through their life and interacting with stationary vendor members that are each associated with a URL.   Instead of just getting a bunch of URLs like from the individual's surf history that do not really have anything meaningful to do with the surfer's life, when the claimed invention generates URLs the URLs reflect the specifics of an individual member's life in the physical world, and hence their unique tastes and characteristics.  This is because of the *way* they were generated – through physical encounters in the physical world. It requires more commitment to walk or drive to the particular stationary vendor members in the physical world than to surf their web sites so that when the individual enters the premises of a stationary vendor member as determined by a positioning system and ends up with its URL (associated with its account) on their location history (that is also associated with your URL and account), it has greater significance at capturing your "unique characteristics and tastes",

(ii) the fact that the physical encounters (what Google calls "interaction") are between a mobile communication device of an individual member associated with a URL and a stationary vendor member associated with a URL.  As a result, there are two different types of entities both of which possess URLs,

(iii) the fact that the accumulation of the location history occurs wirelessly (via a mobile communication device) and seamlessly merely as a result of the regular activities of the individual members as they go through their day. The relevant claim language of claim 14 of the '202 patent is "upon instances of a physical encounter …" In the '911 patent the relevant language is "upon the mobile communication device being set to enter instances of a physical encounter between the individual member carrying the mobile communication device and the stationary vendor member at a physical premises of the stationary vendor member" and in the '905 and the '910 patents the language is also consistent with seamlessly accumulating. This makes it much more attractive to individual member users, much more effective at inducing

participation of masses of individual members and much more liable to generate 'big data', thereby creating vast value for stationary vendor members and advertisers (and hence for Google).  In addition, with respect to the '202 patent and the '910 patent Google also ignores the claim language "wherein the physical encounter history of a particular individual member includes at least one visual timeline of physical encounters of the particular individual member" that converts the physical encounter history into a visual timeline for the viewing of the individual member to make participating in the network that much more appealing.  As of Spring 2007 wireless and seamless accumulation of location histories between mobile individual members and stationary vendor members, with data that include URLs, were not well known or conventional and were in fact unknown,

(iv) the fact that what is recorded from the physical encounters in the location history includes a URL of the stationary vendor member (or an identifier associated with such URL) and that the database includes the URL of the individual member (associated with the account), which are identifiers of the cyber world,

(v) As a further example, in comparison to claim 14 of the '202 patent, Google's "Overview" completely also overlooks at least the following claimed features recited therein:

The claim language "a processing system connected to a telecommunications network and to a positioning system and configured to provide an account to an individual member and to a stationary vendor member of a member network" combined with the earlier claim language  of "an application that configures a handheld mobile communication device of each individual member of the member network to, upon instances of …" cited above for features "(i)"-"(iv)" incorporates the following additional feature: that these URLs and other parts of the physical encounter histories of the whole network are accessible to the processing system that provides the accounts associated with the URLs, maintains the database of physical encounter histories and communicates with the individual member and stationary vendor member and/or positioning system, (which also belies Google's assertion spanning pp. 2-3 of its Memo in Supp. that "The log entries of the patent claims are not tailored in any way that differs from traditional human practice …").  Apple's system does not do this.  Only Google's system, which is based on Plaintiff Weisner's patents (and developed well after 2007), currently does this, which is one reason Google Maps far exceeds Apple's location services in reach,

As a further example, in comparison to claim 14 of the '202 patent, Google's "Overview"

completely also overlooks at least the following claimed features recited therein:

(vi) the claim language "each application configured to maintain a viewable physical encounter history on the handheld mobile communication device that includes URLs from multiple stationary vendor members and is searchable from the handheld mobile communication device (i) by URL of the individual member and of the stationary vendor member, (ii) by geographic location, and (iii) by time of the physical encounter" incorporates the following additional feature: the fact that the stationary vendor member URL or associated cyber identifier that appears in the location history of the individual member is a new form of advertising by the stationary vendor member that has been created by the invention, representing a solution to a drawback rooted in technology. [see Spec. paras. 0019, 0022, 0031, 0032, 0033, 0041, 0053, 0062, 0065, 0066, 0087, 0095, 0096, 0098, 0099, 0109, 0123, 0124, 0126, 0127, original claims 19-20]. The stationary vendor members want to be in the location histories.

(vii) the claim language in claim 14 of the '202 patent "each application configured to maintain a viewable physical encounter history on the handheld mobile communication device that includes URLs from multiple stationary vendor members and is searchable from the handheld mobile communication device (i) by URL of the individual member and of the stationary vendor member, (ii) by geographic location, and (iii) by time of the physical encounter" also incorporates the following additional feature: because the URL on the viewable physical encounter history is inherently clickable, this allows the individual member immediate access to current commercially significant key information of the stationary vendor member at the stationary vendor member's constantly updated web page or knowledge panel or web site, thereby making it more attractive also to the individual member who can check if what he wants to purchase is there, [see "Spec." para. 0056 and 0111 and Fig. 5, Fig. 8]. Note that the URLs in Fig. 5 and Fig. 8 are underlined in a way that signifies a clickable link as discussed in paragraphs 0056 and 0111,

(viii) the additional claim language of claim 14 of the '202 patent reciting "the processing system including a database of physical encounter histories of members of the member network whose accounts received the location history entry that was generated" and "the individual member's account having data transfer privileges that allow the physical encounter history to be accumulated through transmission of location history entries from multiple handheld mobile communication devices of the individual member over time" also incorporates the following

additional feature: the fact that information about a large group of people (called "big data") generated by the location histories creates a vastly valuable asset for the vast community of stationary vendor member advertisers (see Spec. paras. 0058 and paras. 0019, 0022, 0031, 0032, 0033, 0041, 0053, 0058 ("information about a large group of people"), 0062, 0065, 0066, 0087, 0095, 0096, 0098, 0099, 0109, 0123, 0124, 0126, 0127, original claims 19-20 (which Google has in fact exploited to the tune of hundreds of billions of dollars according to publicly available information),

(ix) claim 1 of the '905 patent recites

"A method of combining enhanced computerized searching for a target business with use of humans as physical encounter links, comprising: maintaining a processing system connected to a telecommunications network;

providing an application that allows a handheld mobile communication device of each individual member of a member network, the device in communication with a -positioning system, upon a physical encounter between the individual member and a stationary vendor member of a plurality of stationary vendor members of the member network at a physical premises of the stationary vendor member, to transmit  key data of the stationary vendor member and of the individual member to the processing system automatically as a result of the physical encounter, a location of each individual member's device determined by the positioning system, the key data being a URL or an identifier associated with the URL;

maintaining, using the processing system, a database of physical location histories of members of the member network whose key data was transmitted to the processing system during the physical encounters,

determining, by the processing system, a physical location relationship recorded in the database between a searching person who is a member of the member network, a reference individual member of the member network and a first stationary vendor member of the plurality of stationary vendor members, upon the searching person making a search query on a search engine having access to the processing system; and

responding to the search query by generating a computerized search result that increases a ranking of the first stationary vendor member based on the physical location relationship wherein the relationship is as follows:

(a) the reference individual member's physical location history includes key data of the

first stationary vendor member; and (b) the searching person's physical location history and the reference individual member's physical location history each include key data of a second stationary vendor member of the plurality of stationary vendor members,

wherein the searching person's physical location relationship to the first stationary vendor member is such that the searching person has a physical location relationship with the second stationary vendor member who has a physical location relationship with the reference individual member who has a physical location relationship with the first stationary vendor member."

This claim language means that even though the location histories are generated in a manner through activities in the physical world, they are configured to conveniently synergize with a search engine (because they are accessible to the processing system and to the individual member and because they are searchable by URL or an identifier associated with a URL and because the location history is customized to the individual member) and thereby enhance digital searching.  This applies to all four patents but the particular methods of enhancing digital searching (such as by adjusting the ranking of a search result based on various criteria) are outlined in the '911 patent, the '905 patent and claims 2-3 of the '202 patent, for example using criteria such as uniquely defined relationships or geographic location derived from the location history customized to the searcher. See Spec. para. 0012 which states that at the time of the Specification "the process of searching the world wide web does not adequately take cognizance of the unique characteristics and tastes of the searching person."  The invention solves this problem, among others. In general, there is a synergy between encounters occurring in the physical world and digital elements such as URL that allow enhanced digital searching to occur better in the digital world.  This is in contrast to the prior art as of Spring 2007 where one can get a "surf history" of one's recent searches which is in the digital world.

These features demonstrate conclusively that it is Google's Overview that is a meaningless abstract representation of the claims and that the actual claims are not directed to a patent ineligible abstract idea.  In addition, feature "(vii)", the URL on the searchable location history of the individual member providing swift access, for example using a mobile communication device of the individual member, to the stationary vendor member, is something novel and certainly not conventional about the <u>nature</u> of the location histories themselves.  This is an advantage to the stationary vendor member and to the individual member.  Furthermore, the

unique arrangement of the combination of such components (or steps), including the novel nature of the location histories and manner of generating the location histories is outlined above in features "(i)" through "(ix)".  These features of the invention have seamlessly integrated the location histories of the physical encounters of large swaths of the country's population with businesses as a part of a network that is in communication with a processing system linked to a positioning system so as to integrate the information into the cyber world.  This unified and enhanced selection of businesses by consumers, advertising by businesses to individual consumers and cyber searching as discussed in features "(vi)", "(vii)" and "(viii)" above.

These features also demonstrate that the system/method of the claims utilizes a unique arrangement of technological elements. As of Spring 2007 wireless and seamless accumulation of location histories between mobile individual members and stationary vendor members, with identifiers that include URLs, was not only not conventional – it was not known.  This is not a case of an abstract idea for which the computer is just a tool.  The components are uniquely arranged so as to generate a location history in a unique manner and having a unique nature that produces "tangible and useful result[s]" not existing before.  The Federal Circuit has held that a claim that provides a "new and improved technique" that produces "tangible and useful results" falls "squarely outside of those categories of inventions that are 'directed to' patent-ineligible concepts," and thus are patent-eligible at step one. See Rapid Litigation Management Ltd. v. Cellz Direct, 827 F.3d at 1048; Bascom, 827 F.3d at 1350.

In sum, not only can the claims not be pigeonholed into Google's travel log/interaction Overview, but all of the claims are directed to a unique technological arrangement that achieves an improvement with vast advantages that were by no means conventional in Spring 2007.  That is, if one considers the actual claims, as opposed to Google's virtually meaningless Overview of the claims.

## 2. The Claims Solve a Problem Rooted in Technology

On page 22-24 of its Memo (although this is part of Google's step two analysis, this is also relevant to step one) Google also argues that the claims "do not address a problem rooted in technology".  This is false.

Google apparently reaches this conclusion from its premise that the claims merely "use

computers as tools to implement the abstract idea of recording human travel/interaction"
something that can be accomplished without technology, Memo in Supp. p. 23.  Once again, this
premise is incorrect.  In fact, in its haste to oversimplify and downplay the claims (called its
"Overview") Google fails to capture their essence. As discussed above, the claims
technologically integrate the cyber world with the physical world in a highly innovative manner
that achieves vast unexpected advantages not expected by the prior art as of Spring 2007.

Unquestionably, the claims are not directed toward addressing the problem of merely
recording human travel/interactions.  In fact, let's be honest – if that is what they were directed
to they would not have been issued by the USPTO since patent eligibility must be considered by
the patent examiner and each of the four patents must be presumed legally valid.

The Specification, see para. 0003, discusses the existence of surf histories that exist only
in cyberspace.  The claimed invention of the four patents addresses the problem of capturing
events in the physical world so as to seamlessly incorporate and merge them into the cyber
world.  This is a problem rooted in technology and is a far cry from a mere automatic recording
of the time and place of individuals.

The claims of the '202 patent (and the other 3 patents) recite various versions of a unique
manner of generating specifically defined location histories that capture interactions between
mobile communication devices of individual members having URLs and stationary vendor
members who have URLs and integrating them into cyberspace by merging cyber identifiers
(namely a URL or another identifier associated with the URL in some cases) of both the
stationary vendor members and the individual members of a network of the digital or cyber
world with the individual member's (having a mobile communication device) physical
encounters with stationary vendor members in the physical world.  A processing system that
maintains the network, is in communication with a positioning system that determines the
location of the physical encounter and the processing system provides accounts to both
individual members and stationary vendor members and the accounts are specifically associated
with the cyber identifiers.  Furthermore, the physical encounters, which involve mobile
(wireless) communication devices of the individual member at the premise of the stationary
vendor member, trigger the transmission of the URLs to be integrated into a database of the
network in communication with a telecommunications system, for example when the physical
encounter triggers a wireless communication taking into consideration the premises of the

stationary vendor member, as determined by the positioning system.

Moreover, since the URL is inherently a kind of advertisement of the stationary vendor member on the location history and since the individual member can immediately access the web page of the stationary vendor member by for example clicking the URL appearing on their location history (or by other means), the claimed invention also merges advertising with business selections by the individual members that takes cognizance of the unique characteristics and tastes of that individual member.  The advertising is by the stationary vendor member (who either has their URL in the location history of individual members or who buys the location history data from the system owner (i.e. Google).  The individual members in turn receive easy access to current web page of the stationary vendor member using the URL in their digital location history.

One of the problems addressed by the invention is as described in the Specification at para. 0012 which states that at the time of the filing date of the Specification "the process of searching the world wide web does not adequately take cognizance of the unique characteristics and tastes of the searching person."  The claims of the '905 patent and the '911 patent and claims 2-3 of the '202 patent address this problem by reciting enhancing computerized searching, which is rooted in technology.  For example, claim 1 of the '905 patent (First Am. Compl. para. 15) which was previously quoted recites "A method of combining enhanced computerized searching for a target business with use of humans as physical encounter links" that, besides including the uniquely devised accumulation of the physical location histories, use those physical location histories as follows in enhancing computerized searching:

"determining, by the processing system, a physical location relationship recorded in the database between a searching person who is a member of the member network, a reference individual member of the member network and a first stationary vendor member of the plurality of stationary vendor members, upon the searching person making a search query on a search engine having access to the processing system; and

responding to the search query by generating a computerized search result that increases a ranking of the first stationary vendor member based on the physical location relationship wherein the relationship is as follows:

(a) the reference individual member's physical location history includes key data of the first stationary vendor member; and (b) the searching person's physical location history and the

reference individual member's physical location history each include key data of a second stationary vendor member of the plurality of stationary vendor members,

wherein the searching person's physical location relationship to the first stationary vendor member is such that the searching person has a physical location relationship with the second stationary vendor member who has a physical location relationship with the reference individual member who has a physical location relationship with the first stationary vendor member."

In contrast to the "905 patent, the '911 patent accomplishes the enhanced cyber searching by integrating the uniquely generated location histories with the search engine by reciting the following in claim 1:

"for each individual member having a location history who sends a search query to a search engine of the at least one processing system, the search query targeting a geographic area:

(1) searching, by the search engine, the database for URLs of stationary vendor members in the location history, the location history also identifying time and geographic place of the physical encounters therein, and

(2) assigning a priority, by the at least one processing system, in a search result ranking based on an appearance of one of the stationary vendor member URLs in the location history of the individual member, wherein that one of the URLs is of a particular stationary vendor member located in the target geographic area."

This specifically claimed integration of the specifically defined and uniquely accumulated physical location histories with an algorithm for prioritizing search results is totally unknown as of the spring of 2007.

The First Amended Complaint at paragraph 35 alleges that Google adopted the last group of limitations of the '905 and uses it in its Google Maps feature, "Your Timeline" and "Your Places" feature(s)  when Google's search engine provides search results to a mobile device or to a non-mobile device, and in doing so utilizes location history data obtained in connection with the Google Maps feature(s), citing the link https://searchengineland.com/google-maps-explore-adds-curated-recommendations-new-features-229711 to an article published September 2, 2015 showing that Google Maps "recommend[s] a place that's popular with other diners who visited a place you've been to in the past".  This is recited by the following '905 claim limitations:

"responding to the search query by generating a computerized search result that increases

a ranking of the first stationary vendor member based on the physical location relationship wherein the relationship is as follows:

(a) the reference individual member's physical location history includes key data of the first stationary vendor member; and (b) the searching person's physical location history and the reference individual member's physical location history each include key data of a second stationary vendor member of the plurality of stationary vendor members,

wherein the searching person's physical location relationship to the first stationary vendor member is such that the searching person has a physical location relationship with the second stationary vendor member who has a physical location relationship with the reference individual member who has a physical location relationship with the first stationary vendor member."

This means Google is more likely to serve you up a restaurant if that restaurant was frequented by someone who you've never met but he and you both used the same patent attorney, to take an example. This was never done before Spring 2007 – it's more than just not "well-known, routine and conventional activity" – it is highly nonobvious and patentable – and in fact has been granted a patent. The First Amended alleges that Google adopted it and has incorporated into its search algorithm as part of "Your Timeline" and "Your Places". This means that the search engine is better at "tak[ing] into cognizance the characteristics and tastes of the searching person". The beauty of this is that this enhanced searching occurs without the searcher even knowing it is happening and the searcher has never even met the person whose recommendation has affected the search results he is served with, yet the characteristics and tastes of the searching person have still been better customized.

The problem of taking into cognizance the characteristics and tastes of the individuals is also addressed by the remaining claims of the '202 patent – namely claims 1, 4-7 and 14-19 of the '202 patent (para. 59 of the First Amended Compl. alleges that in its cease and desist letter plaintiff advised Google that independent claims 1 and 14 are the independent claims of the '202 patent are infringed) which are directed to creating and using the physical location histories containing URLs, as well as by the claims of the '910 patent which are directed to method, system and computer-readable medium for accumulation of physical location histories containing URLs based on digital member entries using URL-possessing elements of a mobile web, since they generate the physical location histories with URLs in a unique manner and allow

for their use in digital searching to solve this problem.  For example, the '202 patent independent claim 1 recites "a processing system that is connected to a telecommunications network", "an application … upon instances of a physical encounter … transmits a URL of the stationary vendor member and a URL of the individual member to the processing system automatically, thereby generating a location history entry", "the application maintaining a viewable physical encounter history on the handheld communication device that includes URLs … and is searchable …by URL" and "maintaining, using the processing system, a database  of physical encounter histories …"  The claimed invention thereby creates a specifically-defined  URL-searchable database of physical location histories of physical encounters between mobile URL-possessing elements with URL-possessing stationary vendor members so the stationary vendor members have an automatic advertisement on the location histories of the individual members and so that the individual members have access by a simple click to the current web page of the stationary vendor members whenever they want it and so a processing system that maintains the database can "take cognizance of the unique characteristics and tastes of the searching person" based on their location history.  For their part, the individual members of the network benefit also because they would prefer to be able to automatically receive up to date information about their preferred businesses by clicking directly on their own private location history and being taken to the stationary vendor member's key date on a web page.  This is addressed by the unique nature of the location histories in all four patents that include URLs of the stationary vendor members and the unique manner that they were generated.  This addresses a problem rooted in technology.

Another problem rooted in technology, and one that all of the patents address [and which was discussed above in the list of features (vi) and (vii) omitted by Google in its Overview], is how to allow stationary vendor members (i.e. the businesses) and individual members to more easily communicate with each other what they want.  The businesses want to use the location histories not only for advertising but also for enhanced searching that increases the ranking of businesses to target individual members who are potential customers because that is in effect targeted advertising.

The patent claims integrate the physical world with the cyber world by seamlessly and wirelessly generating physical location histories in a unique manner so as to record location histories of their physical encounters with businesses as a part of a network that is in

communication with a processing system, a practical tool that affects cyber searching, business selections by consumers and business advertising to individual members.

For their part, the individual members of the network benefit also because they would prefer to be able to automatically receive up to date information about their preferred businesses by clicking directly on their own private location history and being taken to the stationary vendor member's key date on a web page.  This is addressed by the unique nature of the location histories in all four patents that include URLs of the stationary vendor members and the unique manner that they were generated.

Google also attempts to downplay the highly significant business advantages of the claims (that it itself exploits) by asserting that the purpose of the patents is merely nostalgia.  The Specification outlines many business purposes of various embodiments of the claimed invention in the Objects and Advantages section (see Spec. paras. 0024-0070) and in the Detailed Description (for example paras. 0095, 0096, 0102, 0106-0108, 0109, 0111, 0112, 0116-0119, 0123-0144), with nostalgia being merely one of them.  Plaintiff has outlined above in "(i) through "(ix)" some of the features that generate vast <u>business</u> advantages of the claimed invention in each of the 4 patents, which are grounded on the claims and Specification. These business advantages go well beyond nostalgia.  Google would prefer to ignore this and focus on the one advantage that suits its own conclusions.

As shown, with respect to all the claims, the character of the claim is not 'directed to' an abstract idea under Step one of <u>Alice</u>.  Rather, they are 'directed to' integrating communication components into a practical tool that merges the cyber world and physical world.  By seamlessly and wirelessly generating physical location histories in a unique manner so as to record location histories of their physical encounters with businesses as a part of a network that is in communication with a processing system, a practical tool is created that enhances cyber searching, business selections by consumers and business advertising.

Since the claims are not directed to an abstract idea, this Court need not reach step two of the <u>Alice</u> framework in order to find the claims patent eligible.  <u>See</u> <u>Rapid Litigation Management Ltd. v. Cellz Direct</u>, .827 F.3d 1042, 1050 (Fed. Cir. 2016).

### 3. Step Two of Alice

Even if the claims are somehow deemed to be 'directed to' an abstract idea (which would be erroneous), they recite claim elements, either individually or as an ordered combination, that nonetheless provide 'significantly more' than any alleged abstract idea.  This is sometimes called a search for an inventive concept.

Google never applies this standard correctly since it never correctly evaluates whether the ordered combination of claim elements in the claims recite 'significantly more' than any alleged abstract idea.  Actually, Google merely discusses what it understands to be "inventive concept", often confusing that with the inventiveness or uniqueness of the claims, which is not the legal standard under 35 U.S.C. § 101. See section headings in section III.C.1. of Google's Memorandum in Support.

Google first devotes pages 24-31 to discussing the individual components ("processing system", "telecommunications network", database", mobile communication device", "application" and "positioning system" and "URL") which it claims are not "inventive".  The Google then devotes about half a page (page 31 line 15 through page 32 line 5 of Memo in Supp.) to *nominally* evaluating whether the ordered combination of claim elements is 'significantly more' than any alleged abstract idea.  Its argument regarding the ordered combination of claim elements is as follows (Memo. in Supp. p.31): "the claims do not deviate from the ordinary usage **of each conventional component**" (emphasis added).

How can one evaluate whether the ordered combination of claim elements is 'significantly more' than any alleged abstract idea (and hence an inventive concept), if all one does is evaluate whether each individual component deviates from its ordinary usage?  Google is basically saying that since each component does what the original manufacturer of this component designed it to do when it was built (i.e. the mobile communication devices communicate, the processor processes, the positioning system finds the position, etc.), then there must be nothing special about the whole method or system that arises from the unique arrangement of all of the components together.  But this is the exact opposite of the truth.  As stated by the Federal Circuit in Bascom, 827 F.3d at 1350: "[t]he inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art. As is the case here, an inventive concept can be found in the non-conventional and non-generic

<u>arrangement of known, conventional pieces</u>." (emphasis added). <u>See</u> <u>also</u> <u>Cellspin Soft, Inc. v.</u> <u>Fitbit, Inc.</u> 927 F.3d 1306, 1318 (Fed. Cir. 2019) ("<u>even assuming that Bluetooth was</u> <u>conventional at the time of these inventions</u>, implementing a well-known technique with particular devices in a specific combination, like the two-device structure here, can be inventive") (emphasis added).

Accordingly, even if it were the case that each component operates the way it was designed to operate when the manufacturer built it, this would not detract from the unique manner of generating the system/method outlined in features "(i)" through "(iv)" above or the unique arrangement of the combination of such components (or steps), including the novel nature of the location histories outlined above in features "(i)" through "(ix)". In fact, as of Spring 2007 wireless and seamless accumulation of location histories between mobile individual members and stationary vendor members, with identifiers that include URLs, was not at all conventional – it was not even known. The second step of the <u>Alice</u> test is therefore satisfied since the claim limitations "involve more than performance of `well understood, routine, [and] conventional activities previously known to the industry.'" <u>Berkheimer</u>, 881 F.3d at 1367.

The Federal Circuit stated in <u>Bascom</u> that "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces" so as to satisfy step two of the <u>Alice</u> framework. <u>Bascom</u>, 827 F.3d at 1350. In this case, however, as of Spring 2007, even just the wireless and seamless accumulation of location histories between mobile individual members and stationary vendor members, with cyber identifiers that include URLs, was not only not conventional – it was novel and nonobvious. Accordingly, the claimed invention easily exceeds that which is required by the Federal Circuit in <u>Bascom</u>, <u>Cellspin</u>, <u>Enfish</u> and <u>Berkheimer</u>, for patent eligibility under step two of the <u>Alice</u> framework.

Furthermore, these claims elements were recited in the First Amended Complaint, which quoted the independent claims of each patent (besides attaching a copy of the full specification of each patent). In <u>Cellspin Soft, Inc. v. Fitbit, Inc.</u> 927 F.3d 1306, 1309-1314, 1316-1317 (Fed. Cir. 2019), the claimed invention was a data capture device that was connected to a mobile device so that captured data can be published to a web site. Cellspin argued that these techniques had not been implemented the same way before. The Federal Circuit in reversing the district court's grant of the motion to dismiss, stated: "accepting the allegations stated above as true, we cannot conclude that the asserted claims lack an inventive concept . . . we have no basis, at the

pleadings stage, to say that these claimed techniques, among others, were well-known or conventional as a matter of law.") <u>Cellspin,</u> 927 F.3d at 1318.  Applying step two, the Federal Circuit in <u>Cellspin</u> stated: "While we do not read <u>*Aatrix*</u> to say that any allegation about inventiveness, wholly divorced from the claims or the specification, defeats a motion to dismiss, plausible and specific factual allegations that aspects of the claims are inventive are sufficient. <u>As long as what makes the claims inventive is recited by the claims,</u> the specification need not expressly list all the reasons why this claimed structure is unconventional". <u>Cellspin, 927 F.3d at 1317 (emphasis added)</u>. While it was enough in <u>Cellspin</u> that the patentee's claimed invention was not conventional, in this case the combination of claimed elements are more than not conventional – they are novel and nonobvious.

In this case, the combination of claim elements is innovative and 'significantly more' than any alleged abstract idea.  The claims recite that the physical encounters are between a mobile communication device of an individual member associated with a URL and a stationary vendor member associated with a URL, that the accumulation of the location history occurs wirelessly (via a mobile communication device) and seamlessly ("upon instances of a physical encounter …" in '202 patent or "upon the mobile communication device being set to enter instances of a physical encounter between the individual member carrying the mobile communication device and the stationary vendor member at a physical premises of the stationary vendor member" in '911 patent) as a result of the regular activities of the individual members as they go through their day, that what is recorded from the physical encounters in the location history includes a URL of the stationary vendor member and that the database includes the URL of the individual member (associated with the account), that these URLs and other parts of the physical encounter histories of the whole network are accessible to the processing system that provides the accounts associated with the URLs, maintains the database of physical encounter histories and communicates with the individual member and stationary vendor member and/or positioning system, that the stationary vendor member URL or associated cyber identifier that appears in the location history of the individual member is a new form of advertising for the stationary vendor member, that because the URL in the viewable physical encounter history is inherently clickable, the individual member can easily access current commercially significant information of the stationary vendor member at the stationary vendor member's constantly updated web page or knowledge panel, thereby making it more attractive also to the individual

member who can check if what he wants to purchase is there, that information about a large group of people (called "big data") generated by the location histories creates a hugely valuable asset for the vast community of stationary vendor member advertisers and that by the URL being linkable to a search engine cyber searching is enhanced by increasing the ranking of a search result "hit" based on pre-defined relationships between the searcher searching for a stationary vendor member and the stationary vendor member whose URL is one of the search result hits.

Another reason the combination of claim elements is innovative is that the search engine provides search results to a mobile device or to a non-mobile device, and in doing so utilizes location history data to better "take into cognizance the characteristics and tastes of the searching person". The claim limitation of the '905 patent reciting "responding to the search query by generating a computerized search result that increases a ranking of the first stationary vendor member based on the physical location relationship wherein the relationship is as follows: (a) the reference individual member's physical location history includes key data of the first stationary vendor member; and (b) the searching person's physical location history and the reference individual member's physical location history each include key data of a second stationary vendor member of the plurality of stationary vendor members, wherein the searching person's physical location relationship to the first stationary vendor member is such that the searching person has a physical location relationship with the second stationary vendor member who has a physical location relationship with the reference individual member who has a physical location relationship with the first stationary vendor member" means Google is more likely to serve you up a restaurant if that restaurant was frequented by someone who you've never met but he and you both used the same patent attorney.

This is far more than just not "well-known, routine and conventional activity" – it is highly nonobvious.  The searcher has never even met the person whose recommendation has affected the search results he is served with, yet the characteristics and tastes of the searching person have still been better customized than was done in the prior art before Spring 2007.  This happened by merging the physical encounters of the physical world with the cyber searching of the cyber world in order to create a gigantic improvement in solving a problem rooted in technology.

In addition, claims 2-3 of the '202 patent recites similar language.  For example, claim 3 of the '202 patent refers back to claim 2 and recites "using results of the searching of the

physical encounter histories of the database by URL to affect a ranking of the first stationary vendor member in response to a search query" (where claim 2 recites "searching the physical encounter histories of the database by URL in response to a search query that utilizes a search engine").  Furthermore, the claims of the '911 are similar to the '905 patent claims in the fact that they integrate the physical location histories with the cyber searching.

Moreover, the above conclusion (that an ordered combination of the claims of the patents transforms any alleged abstract idea into a patent eligible invention) is certainly not lessened by Google's conclusory assertions that the individual components of the claims do what their manufacturer designed them to do in the general sense.

Another way of looking at the absurdity of Google's self-serving logic is that according to Google, since Plaintiff Weisner et al. did not invent the mobile phone, the processing system, applications that run on it, the positioning system or the URL, the claims of the four patents necessarily do not include any inventive concept (noting again that "inventive concept" need not be the nonobviousness of 35 USC §103 according to the Federal Circuit in Berkheimer).  According to that logic, a claim for a light bulb in 1879 would not show nonobviousness under 35 U.S.C. §103 because Thomas Edison did not invent a glass container, a filament, a vacuum and or an electric current, and because these components merely do what they were designed to do:  the glass container is designed to contain things, the electric current was known to make things hot, filaments were known to glow when heated (the filaments at the time were a wide variety of materials), and vacuums were to know to remove oxygen.  Although "inventive concept" is not synonymous with the nonobviousness test of 35 USC §103, the point is that if using components in the way they were designed to be used can still, in an appropriate case, amount to a fully nonobvious invention under 35 USC §103, it should certainly not automatically negate a finding of inventive concept under 35 USC §101, which requires less.

Google's second assertion on the same page (see Memo. in Supp. p.31) does not fare much better than its first: "the claims merely recite performing the traditional computing functions **of each component** in a conventional order" (emphasis added).  The only thing the second assertion adds to the first assertion is the notion of "order", which is understood to mean "sequence".  Google fails to realize that the holding by the Federal Circuit in Bascom that "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces" does not require an unusual sequence of operation of the component pieces

(although that too is present in the claims).  It is sufficient that the combination of components be arranged innovatively, which is clearly the case here.

Once again, Google ignores the fact that the *manner* in which the claimed system/method generates the location histories by merging the physical activity of a mobile URL-possessing individual member having physical encounters with the URL-possessing stationary vendor member is itself highly innovative (see above for example features "(i), "(ii)" "(iii)" and "(iv)" in the step one list of features overlooked by Google) and the fact that the nature of the location histories (containing URLs) is highly innovative (see at least feature "(vi)") as of Spring 2007.

Likewise, Google ignores the innovative arrangement of the components together.  The features omitted by Google from its "Overview" "(v)" through (ix)" are also highly innovative and unique and that this leads to achieving vast advantages set forth above.  This applies to all four patents.

Furthermore, the innovative interaction between the unusually generated location histories containing URLs and the responding by a search engine to the search inquiry so as to enhance the digital searching by defining relationships between the searching person and stationary vendor members in the location histories is so obviously unique and non-conventional (especially as of Spring 2007) that calling such an arrangement conventional is beyond far-fetched.  This particular inventive concept applies to the '905 patent, the '911 patent and claims 2-3 of the '202 patent.

The claim language of claim 1 of the '905 relating to the enhanced cyber searching by integrating the uniquely generated location histories with how the search engine responds to the search engine query is as follows:

"responding to the search query by generating a computerized search result that increases a ranking of the first stationary vendor member based on the physical location relationship wherein the relationship is as follows:

(a) the reference individual member's physical location history includes key data of the first stationary vendor member; and (b) the searching person's physical location history and the reference individual member's physical location history each include key data of a second stationary vendor member of the plurality of stationary vendor members,

wherein the searching person's physical location relationship to the first stationary vendor member is such that the searching person has a physical location relationship with the

second stationary vendor member who has a physical location relationship with the reference individual member who has a physical location relationship with the first stationary vendor member."

The claim language of claim 1 of the '911 patent accomplishing the enhanced cyber searching by integrating the uniquely generated location histories with how the search engine responds to the search engine query is as follows:

"for each individual member having a location history who sends a search query to a search engine of the at least one processing system, the search query targeting a geographic area:

(1) searching, by the search engine, the database for URLs of stationary vendor members in the location history, the location history also identifying time and geographic place of the physical encounters therein, and

(2) assigning a priority, by the at least one processing system, in a search result ranking based on an appearance of one of the stationary vendor member URLs in the location history of the individual member, wherein that one of the URLs is of a particular stationary vendor member located in the target geographic area."

Finally, the '910 patent is generally similar to the '202 patent except that it utilizes "a capture by the particular individual member of a digital member entry" (which may be a photo, see Specification at paras. 0075, 0100, 0104, 0106) and recites "wherein at least some of the digital member entries captured are of a vendor member or a second individual member, of the member network, during a physical encounter between the individual member and the vendor member or the second individual member."

These features further conclusively demonstrate that the system/method of the claims of the four patents utilizes a unique arrangement of technological elements under Federal Circuit case law.

In sum, Google ignores the specifically recited unique features "(i)" through "(ix)" associated with an "ordered combination" of claim elements that render the claims 'significantly more' than any alleged abstract idea, including but not limited to the fact that as of Spring 2007, wireless and seamless accumulation of location histories between mobile individual members and stationary vendor members, with cyber identifiers that include URLs, was not conventional, not well known and not routine and in fact was unknown (and even nonobvious).

On page 29 of its Memorandum in Support, Google also cites Intellectual Ventures I LLC

v. Erie Indemnity Co., 850 F.3d 1315 (Fed. Cir. 2017) (which it calls "IV/Erie") in its attempt to argue that using URLs in recording human travel/interaction [in searchable activity logs] is "well-understood, routine, conventional activity" and represent merely extra-solution features. Google cites column 1 lines 57-59 of the '202 Specification (which is paragraph 0006 of the Specification as defined by plaintiff) for support ("it is believed that in the not too distant future the distinction between business and individuals may be blurred since everyone will have a URL").  That portion of the Specification is a prophecy in which plaintiff states what then-patent-applicants expected will happen in the future.  Plaintiff proposed an innovative method and system that makes use of what they expected to happen in the future.  See Specification at para. 0109 which repeats and expands on the prediction and explains that the invention makes use of it.  The URLs in location histories therefore bears no relationship to the XML tags of Intellectual Ventures (IV/Erie), which the court found were well known at the time of and indeed prior to the invention.  This is doubly true considering the fact that unlike the XML tags, URLs as identifiers in location histories (as of Spring 2007) were not only not conventional but were novel (especially in combination with the other claim elements).  This is even more compelling when one considers the additional fact that these URLs are inherently links that provide the individual member swift access to the web page of the stationary vendor member from their own location history, something that was not available in Spring 2007.  See Spec. paras. 0056 and 0111 and Fig. 5, Fig. 8 including underlined URLs.

Accordingly, even if the court were somehow to erroneously conclude (which it should not) that the claims are directed to an abstract idea, the Court should still find that the claims are patent eligible since there are additional elements that transform the claims into a particular practical application of any alleged abstract idea. Bascom; Cellspin, Enfish.

The claims elements of any of the four patents, when considered as an ordered combination of claim elements demonstrates convincingly that there is significantly more than any alleged abstract idea (sometimes called an inventive concept) in each patent.

Beyond even that, the Federal Circuit has made it clear that step two of the Alice framework is satisfied when the claimed invention recites an improvement in a technical field. See Enfish, LLC v. Microsoft Corp., 822 F.3d 1327, 1337 (Fed. Cir. 2016) ("claims are directed to an improvement of an existing technology").  The improvement does not have to be to the functioning of computers per se for that to be the case. See Bascom, 827 F.3d at 1350 (inventive

34

distribution of a filtering tool at a specific location, remote from the end-users, with customizable filtering features specific to each end user to filter Internet content so as to take advantage of the ability of at least some ISPs to identify individual accounts that communicate with the ISP server, and to associate a request for Internet content with a specific individual account); Diamond v. Diehr, 450 U.S. 175, 187 (1981) (method of operating a rubber molding press to utilize a thermocouple inside the mold to constantly monitor the temperature).

In this case, the claimed invention solves a problem rooted in technology (see above at pages 24-29).  The merger of the physical location histories gathered in the physical world with the cyber world using cyber identifiers (URLs) represents a technical solution and improvement, as discussed.  Furthermore, '905, '911 and claims 2-3 of the '202 patents also create an additional improvement in computerized searching that utilize search engines. Not only does the claimed invention create an improvement with the vast advantages over the prior art outlined at pages 6-14 and 16-21, but the claim language recites specific functions of specific elements that describe *how* the claimed invention achieves those advantages.  This provides yet an additional reason why the four patents are patent eligible under step two.

### C. Google's Case Law is Easily Distinguishable

Google also contends, based on four cases cited on pages 20-22 of its Memo in Supp. section III.B.2, that "courts have found claims reciting similar subject matter abstract".  In fact, the claims in these cases bear no resemblance to the subject matter of the claims here in terms of patent eligibility. They are a complete mismatch and Google's reliance on them cannot save Google.  Google simply relies on cases whose claims as a whole are directed to abstract ideas and do not transform any such abstract idea into any particular, practical application of the abstract idea.

For example, the claims of the first case, In re TLI Commc'ns LLC, 823 F.3d 607 (Fed. Cir. 2016), recite recording and administrating digital images to extract data from checks.  A quick glance at representative claim 17 in TLI shows that it is not analogous to the claims of any of the four patents herein in terms of step one or two of the Alice framework:

"17. A method for recording and administering digital images, comprising the steps of: recording images using a digital pick up unit in a telephone unit, storing the images

recorded by the digital pick up unit in a digital form as digital images,

transmitting data including at least the digital images and classification information to a server, wherein said classification information is prescribable by a user of the telephone unit for allocation to the digital images,

receiving the data by the server,

extracting classification information which characterizes the digital images from the received data, and

storing the digital images in the server, said step of storing taking into consideration the classification information."

In TLI, receiving images, transmitting data, receiving data, extracting data and storing images was found to be directed to an abstract idea without significantly more – nothing surprising there.  It does not come close to having the unique features of the claims discussed above.

Likewise, Intellectual Ventures I LLC v. Erie Indemnity Co., 850 F.3d 1315 (Fed. Cir. 2017), also cited by Google, recites as its "exemplary" claim 1:

"1. A method for creating a database and an index to search the database, comprising the steps of:

creating the index by defining a plurality of XML tags including domain tags and category tags;

creating a first metafile that corresponds to a first domain tag; and

creating the database by providing a plurality of records, each record having an XML index component."

This is simply a claim for creating a database with no inventive concept.  There is nothing unique in the manner in which the database is created.  In contrast, the claims herein contain the 8 features listed above "(i)" through "(ix)" in combination with the other elements.  How can one even compare the claims in this case with the unidimensional idea of "creating an index and using that index to search for and retrieve data" and "remotely accessing user specific information."

Google also cites Search and Social Media Partners v. Facebook, Inc., C.A. No. 18-1424-LPS-CJB, 2019 WL 581616 (D. Del. Feb. 13, 2019).  But in that case, the court found the '179 patent eligible on a motion under FRCP 12(b)(6).  It merely found the '828 patent ineligible

because it found the following features did not amount to 'significantly more' under step two of

Alice:

> "a first social network environment" that includes a collection of servers and associated software that provide a website and applications with dynamically generated pages, which allow users to connect and interact with each other via subscriptions to one or more social groups and to other users;
> the "real-time news ticker component" that provides a scrolling electronic display of news in real-time for user accounts, with such news for display selected in connection with a user's database associations between user account records and common subscriptions; and
> Claim 11's "security comparison check that verifies the URL associated with a news item" to be displayed by the news ticker component."

Representative method claim 18 of the '828 patent in that case was found to be directed to an abstract idea because it recited:

> "18. A social network method comprising:
> receiving first account information at a first computer system via a first computer network, said first computer system comprising a data processor and a memory;
> storing said first account information in a first user account in said memory;
> storing a second user account, said first user account being different from said user account;
> verifying, via a first computer network, a relationship between said first user account and a first entity, wherein said first entity is one of a multitude of different entities in said social network;
> receiving, via said first computer network a first subscription in which said second user account is subscribed to said first user account; and
> distributing, via said first computer network, when said second user account is in use, a real-time news ticker per said first subscription, said real-time news ticker comprising real-time news related to said first user account or said first entity."

There was nothing unique in the manner of the receiving, storing, storing, verifying, receiving and distributing, unlike the claims here which exhibit the innovative 8 features described above in combination with the other elements.

Finally, Google cites OpenTV, Inc. v. Netflix Inc., 76 F. Supp. 3d 886, 893 (N.D. Cal. 2014) for the unsurprising proposition that "gathering information about one's intended market and attempting to customize the information" (claim 1 of the '691 patent) is directed to an abstract idea. The patent ineligible claim 1 of that case merely recited:

> "A method for providing targeted programming to a user outside of the user's home, the method comprising:
> [a] receiving a user identification associated with a user, the user identification

comprising an identifier corresponding to an account number used in a transaction;

[b] receiving reception site information to identify a user action and a site at which the user action is taking place;

[c] capturing additional user information from the identified user action and the reception site information;

[d] updating a user profile to include the captured additional user information;

[e] receiving the updated user profile based upon the user identification and the additional user information, the user profile including information characteristic of the user;

[f] processing the updated user profile to provide user determinations regarding user actions;

[g] selecting a targeted program based on the reception site information and the updated user profile and the user determinations, and

[h] providing the targeted program for presentation to a user outside of the user's home."

The court found it patent ineligible because it "simply takes "long prevalent" concepts" and because "the claim language itself does not even expressly call for the use of computers or the internet. As such, the claims unquestionably do no more than "simply instruct the practitioner to implement the abstract idea with routine, conventional activity."

Interestingly, though, in that very case, the court actually found the following claim to be patent eligible (method claim 1 of the '169 patent) even though all it recited was:

"A method comprising:

[a] receiving one or more directives, wherein said directives are indicative of an audio, video and/or graphic presentation which requires a set of resources;

[b] determining whether said one or more directives includes a prerequisite directive which indicates that acquisition of a subset of said set of resources is a prerequisite for initiating the presentation;

[c] initiating said presentation, in response to determining the one or more directives do not include said prerequisite directive; and

[d] prohibiting initiation of said presentation until said subset of resources are acquired, in response to determining the one or more directives include said prerequisite directive."

In sum, a review of the four cases relied on by Google provide no support for its step one or step two analysis as applied to the four patents in this case.

Google also attempts to buttress its unsupported attorney factual assertions of unconventionality by citing to four cases in which courts have dismissed pleadings for patent infringement either as judgments on pleadings or in two of them based on motions to dismiss. But once again the patents in these cases bear no resemblance to the claims here.

For example, a representative claim in <u>SAP Am., Inc. V. Investpic, LLC</u>, 898 F.3d 1161 (Fed. Cir. 2018) recited:

11. A method for providing statistical analysis of investment data over an information

network, comprising the steps of:

(a) storing investment data pertaining to at least one investment; (b) receiving a statistical analysis request corresponding to a selected investment; (c) receiving a bias parameter, wherein the bias parameter determines a degree of randomness in a resampling process; and, (d) based upon investment data pertaining to the selected investment, performing a resampled statistical analysis to generate a resampled distribution.

The representative claim 17 in In re TLI Commc'ns LLC, 823 F.3d 607 (Fed. Cir. 2016) (which was already discussed above) recites receiving images, transmitting data, receiving data, extracting data and storing images.  It was unsurprisingly found to be directed to an abstract idea without significantly more and does not come close to having the unique features of the claims discussed above.

Island Intellectual Property LLC v. Stonecastle Asset Mgmt. LLC, No. 19-cv-4792 (JPO), 2020 WL 2793000 (S.D.N.Y. May 29, 2020), also cited by Google, involved banking patents reciting a recipient bank distributing "deposited public funds to another usually larger bank [or banks] better positioned to receive public deposits, in exchange for funds from those banks that do not trigger the same regulatory requirements and that may be covered by federal deposit insurance. For example, in one embodiment, the first bank transfers the public deposit to another bank or network of banks with ample government securities to secure the deposit, in exchange for funds that can be loaned out to borrowers at profitable interest rates."

Lumen View Tech. v. Findthebest.com, Inc., 984 F. Supp. 2d 189 (S.D.N.Y. 2013), also cited by Google, recites a matchmaking method whereby a party on each side inputs attribute preferences and intensity of preference data and then the computer matches the parties on each side by closeness of fit and produces a list.

In short, SAP involved "storing", "receiving, "receiving" and "analyzing" investment data with nothing more.  TLI recited recording and administrating digital images to extract data from checks.  Island Intellectual Property involved banking patents with steps like depositing funds.  Lumen recited a simple matchmaking method.  These cases are far more likely to be found to be directed to an abstract idea with no inventive concept than the claims at issue herein. They are not comparable to the claims herein in terms of patent eligibility.

Finally, the policy reason behind Alice does not apply here.  In stark contrast to the claimed invention of each of the four patents herein, in Alice, the claim recited a pure business

39

method of mitigating the risk that only one party to a financial transaction will pay what it owes. Alice, 134 S. Ct. at 2351-2352.  The claim specifically recited a method of exchanging obligations as between parties … comprising the steps of: "(a) creating a shadow credit record … "(b) obtaining from each exchange institution a start-of-day balance for each shadow credit record …; "(c) for every transaction … the supervisory institution adjusting each respective party's shadow credit record …, allowing only these transactions that do not result in the value of the shadow debit record being less than … and "(d) at the end-of-day, the supervisory institution instructing on[e] of the exchange institutions to exchange credits or debits to the credit record and debit record of the respective parties in accordance with the adjustments …. Alice, fnote 2 at 2352.  The Supreme Court in Alice emphasized its concern that such a claim could "inhibit further discovery by improperly tying up the future use of" these building blocks of human ingenuity. Alice, 134 S. Ct. at 2354-55 citing Mayo, 132 S.Ct at 1301. This concern does not apply to the four patents in this case, whose claims clearly integrate the recited technological components into a specifically recited particular practical application that does not come close to tying up all possible ways of recording human travel interactions.

Accordingly, in addition to step one and step two analyses demonstrating that the claims are patent eligible, the whole policy reason for the two step Alice framework also requires that the four patents be found patent eligible and that Google's motion be dismissed.

## III. THE FIRST AMENDED COMPLAINT PLEADS PLAUSIBLE ALLEGATIONS OF PATENT INFRINGEMENT

### A. The First Amended Complaint Easily Meets the Pleading Standards

The Federal Circuit has held that patent eligibility can be determined at the Rule 12(b)(6) stage, see, e.g.,  Genetic Techs. Ltd. v. Merial L.L.C., 818 F.3d 1369, 1373 (Fed. Cir. 2016); Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A., Content Extraction, 776 F.3d 1343, 1346, 1351 (Fed. Cir. 2014), 776 F.3d 1343, 1346, 1351 (Fed. Cir. 2014), only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law. "[P]lausible factual allegations may preclude dismissing a case under § 101 where, for example, 'nothing on th[e] record . . . refutes those allegations as a matter of law or justifies dismissal under Rule 12(b)(6).'" FairWarning IP, LLC v. Iatric Sys., Inc., 839 F.3d 1089, 1097 (Fed. Cir. 2016)  (quoting Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC, 827 F.3d

1341, 1352 (Fed. Cir. 2016)).  The First Amended Complaint pleads plausible factual allegations of patent infringement and meets the notice pleading requirements of the case law.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955 (2007) ("Twombly") did not eliminate notice pleading.  Fed. R. Civ. Proc. Rule 8 sets forth the framework for pleadings. Rule 8(a) provides: "[a] pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought ..."

Contrary to Google's characterization of the legal standard, the Court of Appeals for the Federal Circuit holds that the so-called plausibility standard of Twombly "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to support the plaintiff's allegations. ." Nalco Co. v. Chem-Mod, LLC, 883 F.3d 1337, 1350 (Fed. Cir. 2018) (citing Twombly, 550 U.S. at 556, 127 S.Ct. at 1959).

Under Erickson v. Pardus, 551 U.S. 89, 93, 127 S. Ct. 2197 (2007) "when ruling on a motion to dismiss under Rule 12(b)(6), the court must accept as true all of the factual allegations contained in the complaint".  In fact, "factual disputes about whether an aspect of the claims is inventive may preclude dismissal at the pleadings stage under § 101." Cellspin, 927 F.3d at 1318 (citing Aatrix Software, Inc. v. Green Shades Software, Inc., 882 F.3d 1121, 1126-1127 (Fed. Cir. 2018)).  In this case, as demonstrated below, the First Amended Complaint alleges patent infringement properly under Twombly and Federal Circuit case law applying Twombly to pleadings involving patent infringement.

Regarding what complaints must do to explain how the accused product or activity infringes the patent claim, under Disc Disease Solutions Inc. v. VGH Solutions, Inc., 888 F.3d 1256 (Fed. Cir. 2018) ("Disc Disease") for simple technologies, details are not required.  Rather, patent owners must merely reasonably identify the accused products in a claim for direct infringement, but when the patent involves a simple technology, more detail is not required. While "simple" is a subjective term, under Google's own description of the invention, the claims at issue certainly meet this standard.  But this is true even under plaintiff's characterization of the character of the claims, which notes that the uniqueness lies in the manner of generating the location histories, the arrangement of the components and the nature of the location histories that use URLs and the merging of the cyber world with the physical world.

In <u>Disc Disease</u>, even though there were no claim charts or references to a specific claim or inclusion of any specific element-by-element analysis in the complaint, the Federal Circuit found the pleading to pass muster under <u>Twombly</u> in the context of a 12(b)(6) motion (reversing the district court).  The Federal Circuit analyzed the infringement allegations in the complaint under the <u>*Iqbal/Twombly*</u> pleading standard and found them to be sufficient. In particular, the court noted that (a) the infringement allegations were coupled with the specific identification of the accused products and (b) that there was a low number of independent claims factored into its decision (one of the patents had three independent claims and the other a single independent claim). Ultimately, the court reasoned that through the disclosures and allegations in the complaint, VGH Solutions was provided fair notice of infringement of the asserted patents.

Both of these factors strongly favor dismissal of defendant's motion in this case.  In this case, the First Amended Complaint identifies the product/service of Google that is infringing. Specifically, paragraphs 32, 34-35, 37, 39, 59-60, 67-68, 75-76 and 83-84 of the First Amended Complaint identify Google's "Your Timeline" feature and "Your Places" feature(s) under Google Maps as infringing the '2020, '905 and '911 patents and identifies Google's "Your Timeline" feature and "Your Places" feature(s) and "Your Photos" feature(s) that infringe the '910 Patent under Google Maps.   In addition, paragraph 35 of the pleading identifies a published Google product description that announces a method consistent with the algorithm recited in the '905 patent.  In addition, each of the four patents underlying the infringement claim have a small number of independent claims – a total of 2 or 3 independent claims, an additional factor identified by the Federal Circuit. Furthermore, the independent claims within each patent are generally similar. A third factor also favors dismissal of defendant's motion – the level of simplicity of the technology according to the defendant's own Mem. in Supp., one of the factors identified by the Federal Circuit in <u>Disc Disease</u> as requiring less detail. Consequently, the <u>Twombly</u> pleading standard is more than adequately met.

Even beyond that, although not even necessary under the <u>Disc Disease</u> pleading standard, the First Amended Complaint herein goes beyond what is needed to meet the pleading standard required by the Federal Circuit in <u>Disc Disease</u> by the fact that it specifically quotes the full recitation of two or three independent claims from each patent that Plaintiff alleges are infringed, something that was lacking in the pleading of <u>Disc Disease</u>.

42

Furthermore, decisions in this Court have accepted pleadings under Twombly with even a lower level of specificity than that of the First Amended Complaint.  For example, the Southern District of New York in Iron Gate Security, Inc. v. Lowe's Companies, Inc. 1:15-cv-08814, 2016 WL 1070853 at *3-4 (S.D.N.Y. March 16, 2016) held that a complaint that alleges that a specific product infringes the patent by virtue of "certain specific characteristics" meets the plausibility standard.  The First Amended Complaint specifies the products of Google that infringe the four patents at least in paragraphs 32, 33, 34, 35, 37, 38, 39, 59, 60, 67, 68, 75, 76, 83 and 84 thereof. According to this standard, plaintiff has more than met its burden under Twombly.

Under Iqbal/Twombly, the plaintiff in Disc Disease was required to "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. 1955. This plausibility standard is met when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009) (citing Twombly, 550 U.S. at 556, 127 S. Ct. 1955). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the ground upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93, 127 S. Ct. 2197 (2007) (alteration in original) (internal quotation marks omitted) (quoting Twombly, 550 U.S. at 555, 127 S.Ct. 1955).

The First Amended Complaint pleads plausible factual allegations of patent infringement, quotes the entire independent claims that are infringed (and attaches the full patent Specification), identifies the products/services of Google that implement the infringement, provides notice using only a relatively small number of independent claims and deals with relatively simple technology.  Moreover, "as long as what makes the claims inventive is recited by the claims, the specification need not expressly list all the reasons why this claimed structure is unconventional." Cellspin Soft, Inc. v. Fitbit, Inc., 927 F.3d at 1317 (Fed. Cir. 2019).  As demonstrated convincingly, the First Amended Complaint more than meets the legal standards of notice pleading for direct infringement and "allows the Court to draw the reasonable inference that [Google] is liable for the [patent infringement] alleged" therein. Twombly, 550 U.S. at 556-57, 127 S.Ct 1955.

B.  Google's Claim Construction is Contrary to the Plain Meaning of the Words of the

43

Claims and Should Be Rejected

After engaging in claim destruction to create its "Overview" of the claims for its patent ineligibility arguments, Google devotes pages 39-51 of its Memorandum to its own claim construction of the claims.  Its argument, that in each of the four patents the claims require multiple actors, rest on a claim construction contrary to the plain meaning of the words of the claims and should be rejected for that reason alone.  Beyond that, it should also be rejected because Google utterly fails to meet its heavy burden of demonstrating, on this motion to dismiss under Rule 12(b)(6), that no reasonable inference permits a claim construction other than one requiring multiple actors.

Google is asking the Court to dismiss the First Amended Complaint based on its own claim construction without a Markman hearing, and without any discovery based on an interpretation of the claims contrary to their plain meaning.  Yet under Erickson v. Pardus, 551 U.S. 89, 93, 127 S. Ct. 2197 (2007) "when ruling on a motion to dismiss under Rule 12(b)(6), the court must accept as true all of the factual allegations contained in the complaint".

Regarding the '202 patent, Google focuses on the method claim language that recites "providing an application that configures a handheld mobile communication device of each individual member of a member network to, upon instances of a physical encounter …, transmit a URL …" and on the '202 patent system claim language that recites "an application that configures a handheld mobile communication device of each individual member of the member network to, upon instances of a physical encounter …, transmit a URL …".  It then argues that the other three patents have similar language.

In fact, the recitation of "providing an application that configures" and the "application that configures" refers to providing an application that is already designed to do what it does (i.e. the configuring) well before the physical encounters.  Even the configuring itself  would be expected to occur before the physical encounters such as when the application is put into the device during manufacture or when the application is downloaded by a user onto the device.  The method claim merely requires providing the application and the system claim merely requires the application itself that "configures".  The "upon instances" language merely describes the circumstances under which the mobile device having been configured by the application carries out its job. Ensuring that the application configures the mobile communication device the way it

is supposed to is accomplished by writing the code in the application and this occurs when the application is provided by Google.  There is therefore no reason why Google would not alone be infringing these claims.

The same point applies to the "upon acceptance" limitation of method claim 1 of the '202 patent.

According to Google's logic a hypothetical claim that recites "providing an automobile suspension configured to, upon instances of a bump on a road, adjust a position of a spring" would not be infringed by a car company that provides the suspension that is configured to adjust the position of the spring under the circumstances of the car going over a bump.  Yet that is exactly what the claim recites by using the term "configured to".  Similarly, Google's incorrect claim construction ignores or contradicts the meaning of the term "providing an application that configures" and the "application that configures" as used in the '202 patent claim and is not a fair reading of the words of the '202 patent.

At the very least, the First Amended Complaint plausibly pleads infringement of the '202 patent.

The above points are equally true with respect to Google's parallel arguments relating to the other three patents.

Likewise, Google's argument that a positioning system is positively recited in each of the claims also fails.  For example, the '202 patent recites "a location of the physical encounter determined by a positioning system" in method claim 1 and "a location of the individual member at the physical premises determined by a positioning system or by the key data of the stationary vendor member" in system claim 14.  The location is data.  The claim is reciting how the application generates the location data for the "location history entry".  The claim in fact later recites "thereby generating a location history entry, … that includes … a location of, the stationary vendor member".  Similarly, the claim later recites "the application maintaining a viewable physical encounter history on the handheld mobile communication device … and is searchable from the handheld mobile communication device … by geographic location".  It is not positively reciting a positioning system.

In fact, in system claim 14 of the '202 patent the positioning system is even explicitly not needed since the claim recites "determined by a positioning system <u>or</u> by the key data of the stationary vendor member".

45

Likewise, regarding the '905 patent, the method claim 1 recites "providing an application that allows a handheld mobile communication device of each individual member of a member network, the device in communication with a positioning system, upon a physical encounter between the individual member and a stationary vendor member of a plurality of stationary vendor members of the member network at a physical premises of the stationary vendor member, to transmit  key data of the stationary vendor member and of the individual member to the processing system automatically as a result of the physical encounter, a location of each individual member's device determined by the positioning system, the key data being a URL or an identifier associated with the URL".  The claim is reciting the step of providing the application and explaining how the location data gets on the database of "physical location histories" as evidenced by the next recitation of "maintaining, using the processing system, a database of physical location histories of members of the member network whose key data was transmitted to the processing system during the physical encounters".  The claim is reciting a device in communication with a positioning system; not a device *and* a positioning system.  At a minimum, the First Amended Complaint more than complies with the pleading requirements.

Similarly, the system claim 11 of the '905 patent also recites "a handheld mobile communication device of each individual member of the member network, …the devices in communication with a positioning system and configured, upon the physical encounter between the individual member and the stationary vendor member of a plurality of stationary vendor members of the member network at a physical premises of the stationary vendor member, to transmit  key data of the stationary vendor member and of the individual member to the processing system automatically as a result of the physical encounter at the physical premises, a location of each individual member's device determined by the positioning system, the key data being a URL or an identifier associated with the URL".  The claim is clearly reciting the device in communication with a positioning system and not a device and a positioning system.

Regarding the '910 patent, the argument is generally similar to the '202 patent.

Regarding the '911 patent, the method claim 1 recites "maintaining a communication link between the mobile communication device  and the at least one processing system or the positioning system such that the mobile communication device is configured to accumulate a location history on a database maintained by the at least one processing system from physical encounters by the individual member at multiple stationary vendor members upon the mobile

communication device being set to enter instances of a physical encounter between the individual member carrying the mobile communication device and the stationary vendor member at a physical premises of the stationary vendor member, the positioning system determining a location of the individual member at the physical premises".  There is no reason why Google would not be doing this entire step and in fact its own public documents show that it does.  The claim merely requires a link to be maintained between the device and either the at least one processing system or the positioning system "such that the "device is configured to accumulate a location history on a database maintained by the at least one processing system from physical encounters upon the … device being set to enter instances of a physical encounter … the positioning system determining a location".  Again, the location is data obtained by the positioning system.  The claim is not positively reciting a positioning system.   There is absolutely no reason why Google would not perform all of the steps of independent method claim 1 of the '911 patent nor why it would not make, use, sell and/or import all of the system claim 12 of the '911 patent.

Without getting involved in all of the claim construction issues raised in a Markman hearing in the future after discovery, something not appropriate on this motion, Plaintiff Weisner simply also notes for the purposes of this motion that none of the drawings in any of the Specifications of the patents show a positioning system.

In sum, the fact that the systems and methods in many cases interact with a positioning system does not mean that a positioning system is positively recited in these claims.

Google also argues on page 47 of its Memo in Support that regarding the '905 patent method claims 1 and 14 require multiple actors due to the limitation that recites "determining, by the processing system, a physical location relationship recorded in the database between a searching person who is a member of the member network, a reference individual member of the member network and a first stationary vendor member of the plurality of stationary vendor members, upon the searching person making a search query on a search engine having access to the processing system".  Google bases this on the triggering condition "upon the searching person making a search query on a search engine having access to the processing system".

Google is once again mistaken. The claim explicitly recites that the "determining" is performed by the processing system.  The "upon" clause simply recites the circumstance/timing of the "determining".   Accordingly, there is no reason why Google alone would not be

infringing method claims 1 and 14 of the '905 patent. The pleading standards are more than met. See also paragraph 0138 of the Specification (beginning "Accordingly, the following broader method is presented…) for an example of an embodiment not involving a positive recitation of the searching person.

Moreover, at a minimum, Plaintiff's Weisner's interpretation of the plain meaning of the claims as set forth in the First Amended Complaint is plausible under the pleading standards of Twombly.  Google also makes the absurd argument on page 40 of its Memo in Support that Plaintiff somehow "tacitly acknowledges the actions of multiple actors" due to his alternative pleading of indirect infringement.  In fact, no acknowledgement by Plaintiff Weisner that multiple actors are required for any of the claims can possibly be deduced from Plaintiff Weisner's pleading of indirect infringement.  Alternative and even inconsistent pleading is explicitly provided for in Fed. R. Civ. Proc., Rule 8(d)(2) and Fed. R. Civ. Proc., Rule 8 (d)(3).

Regarding Google's argument on page 39 of its Memo in Support concerning "joint infringement", this is a species of direct infringement which Plaintiff has already properly plead. Nonetheless, Plaintiff Weisner reserves the option to amend the pleading to add a cause of action for divided infringement pursuant to Fed. R. Civ. Proc., Rule 8(d)(2) and (d)(3), or any other suitable claim, after discovery, or in a suitable case prior to discovery.

Google also relies on Lyda v. CBS Corp., 838 F.3d 1331 (Fed. Cir. 2016) relating to its joint infringement arguments (page 39 of Google's Memo in Support).  In Lyda, the decision was after a pre-trial conference in which the plaintiff was granted leave to amend which he decided to forego.  Id. at 1336.  More importantly, the pleading in Lyda was full of allegations of direction and control but was unable to plead anything but a possible cause of action of joint infringement.  The court in Lyda found that (a) the amended pleading "certainly leaves room for doubt regarding Plaintiff's theory of liability" and that (b) Mr. Lyda "fail[ed] to establish which of Defendants' alleged practices constitutes infringement, and he fail[ed] to demonstrate any connection between the alleged infringing activities and his patent claims." Id. at 1337.  In stark contrast, the First Amended Complaint is well plead and clearly pleads Google's infringing activities based on the claimed inventions of the four patents which do not require multiple actors.  Lyda, therefore, has no bearing on this case.

Regarding Google's argument on page 50 about "use" of the claimed systems, although Google makes the claimed system, Google also uses the claimed system.  Google unquestionably

directs its customers to turn on the location history features and requires its customers before downloading its Google Maps application to enter into an agreement to share location data which Google then sells as "big data" for vast amounts of money.  Google also benefits from each of the system elements including the application and the processing system.  Plaintiff is not obligated to plead each and every version of Google's sprawling infringement, rather just to plead sufficient facts, taken as true, to state a plausible claim for relief, something that it has done. <u>See</u> <u>Twombly</u>, 550 U.S. at 555-56.

Perhaps Google recognizes that its claim construction is contrary to the plain meaning and logic but is hoping to bind Plaintiff Weisner to his own claim construction.  Even that is something that it is not entitled to at this stage.  Plaintiff Weisner has asserted that the pleading is properly plead and reserves the right to assert any well-grounded claim construction at a future Markman hearing for any of the four patents.

Finally, Plaintiff Weisner notes that should Google introduce new arguments or approaches to support its claim construction in its Reply Brief not mentioned in its moving Memorandum of Law to convert its motion into a Markman hearing, this too should be rejected as procedurally defective without a proper Markman hearing after discovery.

### C. The First Amended Complaint Pleads Plausible Allegations of Indirect Patent Infringement

Regarding the indirect infringement claims, Google's first basis for dismissal of the indirect infringement claims is that these claims are not accompanied by plausible direct infringement claims.   This argument completely fails since Plaintiff has demonstrated that the direct infringement claims have been plead properly in accordance with the standards of <u>Twombly</u>.

Google's further arguments regarding the indirect infringement claims are that the First Amended Complaint does not sufficiently allege indirect infringement.  This is also not true.

### 1. The Contributory Infringement Counts Are Well-Plead

In <u>Lifetime Indus., Inc. v. Trim-Lok, Inc.</u>, 869 F.3d 1372, 1381 (Fed. Cir. 2107) the Federal Circuit, in finding a pleading of contributory patent infringement adequate, noted that

"[c]ontributory infringement occurs, *inter alia,* when a party sells "a component of a patented ... combination ... constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use." 35 U.S.C. §271(c) and concluded that "[w]e have held that contributory infringement requires "only proof of a defendant's *knowledge,* not *intent,* that his activity cause infringement." citing <u>Hewlett-Packard Co. v. Bausch & Lomb Inc.</u>, 909 F.2d 1464, 1469 (Fed. Cir. 1990)" (emphasis in original).  As shown below, the First Amended Complaint more than meets this standard.

All of the indirect infringement claims of the First Amended Complaint allege that Google had actual knowledge of all four patents (see (ECF 15) First Am. Compl. paras. 40, 41, 58, 66, 74 and 82 incorporated by reference in each of the indirect infringement Counts 2, 3, 5, 6, 8, 9, 11 and 12).  All of the indirect infringement claims also identify which patent claims are infringed and reincorporate the allegations quoting the actual infringed independent claims and attaching the full copies of all four patents.

Furthermore, for contributory infringement (Counts III, VI, IX, XII) the First Amended Complaint also alleges facts that allow an inference that the Google Maps application and software that is either downloaded into or in the case of Android mobile phones already comes built into the mobile communication devices and that Google sells to its customers are "especially made or especially adapted for use in an infringement of each of the patents, and not a staple article or commodity of commerce suitable for substantial noninfringing use".

Under <u>Erickson v. Pardus</u>, 551 U.S. 89, 93, 127 S. Ct. 2197 (2007) "when ruling on a motion to dismiss under Rule 12(b)(6), the court must accept as true all of the factual allegations contained in the complaint".  It is plausible for the court to infer that since Google sells components of the infringing system, namely Google's application, to customers (end users and/or mobile communication device manufacturers) and the application is configured to perform almost all of the detailed elements of the independent claims of the patents, that the application is a material part of the claimed invention of the four patents and is designed for the infringing system that infringes all of the elements of the respective independent system claim of each patent.  Such an application is "especially adapted for use in an infringement of" the patents

and is not "a staple article or commodity of commerce suitable for substantial noninfringing use".

The First Amended Complaint alleges in paragraph 99 (Count III) that "Google has indirectly infringed the '202 Patent pursuant to 35 U.S.C. § 271(c) by selling to its customers, purchasers, users, …applications and/or other products, the applications and/or other products being a component or components of the patented system of claims 14-18, knowing the application and/or other products to be especially made or especially adapted for use in an infringement of such '202 Patent, and not "a staple article or commodity of commerce suitable for substantial noninfringing use".

Moreover, the First Amended Complaint also alleges which Google products indirectly infringe since the indirect infringement counts reincorporate the allegations of paragraphs 32, 34-35, 37, 39, 59-60, 67-68, 75-76 and 83-84 of the First Amended Complaint identify Google's "Your Timeline" feature and "Your Places" feature(s) under Google Maps as infringing the '202, '905 and '911 patents and identifies Google's "Your Timeline" feature and "Your Places" feature(s) and "Your Photos" feature(s) that infringe the '910 Patent under Google Maps.

In addition, it is plausible that the application "is not a staple article or commodity of commerce suitable for substantial noninfringing use" since the application is a specially designed software module containing all the code designed specifically for the infringing use. The code is configured to perform what the programming instructions that embody it direct it to perform and in this case the First Amended Complaint plausibly alleges that besides directly infringing the claimed systems Google also indirectly infringes the claimed systems including those claimed system elements that recite the application.  In addition, at least with respect to independent system claim 14 of the '202 patent, the application itself occupies most of and is a material part of the independent claim.  In the '202 patent the claimed recitation of the "application" reads as follows:

"an application that configures a handheld mobile communication device of each individual member of the member network to, upon instances of a physical encounter between the individual member and the stationary vendor member of a plurality of stationary vendor

members of the member network at a physical premises of the stationary vendor member, the physical encounter recognized by the handheld mobile communication device upon receiving a short range communication from a transmitting device of the stationary member, transmit a URL of the stationary vendor member and a URL of the individual member to the processing system automatically as a result of the physical encounter at the physical premises, thereby generating a location history entry, in at least the account of the individual member, that includes (i) the URL of, and a location of, the stationary vendor member, (ii) a time and date of the physical encounter, and (iii) an identity or the account of the individual member and of the stationary vendor member,

the URL of the individual member associated with the individual member before the physical encounter between the individual member and the stationary vendor member, a location of the individual member at the physical premises determined by a positioning system or by the key data of the stationary vendor member;

each application configured to maintain a viewable physical encounter history on the handheld mobile communication device that includes URLs from multiple stationary vendor members and is searchable from the handheld mobile communication device (i) by URL of the individual member and of the stationary vendor member, (ii) by geographic location, and (iii) by time of the physical encounter, the individual member's account having data transfer privileges that allow the physical encounter history to be accumulated through transmission of location history entries from multiple handheld mobile communication devices of the individual member over time;

…

wherein the physical encounter history of a particular individual member includes at least one visual timeline of physical encounters of the particular individual member".

This is most of the independent claim 14 of the '202 patent and is clearly a material part of the claimed invention.

Furthermore, nothing in the First Amended Complaint suggests a non-infringing use of the application recited in the '202 patent system claims.

Likewise, with respect to the '905 patent, a material part or component of independent system claim 11 is:

"a handheld mobile communication device of each individual member of the member

network, each individual member comprising a link in the member network based on physical encounters between a first type of member of the member network and a second type of member of the member network, the first type being an individual member and the second type being a stationary vendor member,

the devices in communication with a positioning system and configured, upon the physical encounter between the individual member and the stationary vendor member of a plurality of stationary vendor members of the member network at a physical premises of the stationary vendor member, to transmit  key data of the stationary vendor member and of the individual member to the processing system automatically as a result of the physical encounter at the physical premises, a location of each individual member's device determined by the positioning system, the key data being a URL or an identifier associated with the URL"

The First Amended Complaint in paragraph 110 alleges that "Google has indirectly infringed the '905 Patent pursuant to 35 U.S.C. § 271(c) by selling to its customers, purchasers, users, and developers, their …products being a component or components of the patented system of claims 11-13, knowing the … products to be especially made or especially adapted for use in an infringement of such '905 Patent, and "not a staple article or commodity of commerce suitable for substantial noninfringing use."  It is plausible that the handheld mobile communication devices Google sells to its customers are especially made for use in infringing the '905 patent because the mobile phones are Android or Pixel phones that use Google's search engine and that also include Google's Google Maps application.  There is no other substantial noninfringing use – they are designed for the Google system.

Similarly, with respect to the '911 patent, the independent claim 12 recites "at least one processing system" which includes the following recitation:

the at least one processing system or the positioning system configured to maintain a communication link with the mobile communication device such that the mobile communication device is configured to accumulate a location history on a database maintained by the at least one processing system from physical encounters by the individual member at multiple stationary vendor members upon the mobile communication device being set to enter instances of a physical encounter between the individual member carrying the mobile communication device and the stationary vendor member at a physical premises of the stationary vendor member, the positioning system determining a location of the individual member at the physical premises".

The "at least one processing system" that is "configured to accumulate a location history …" as recited above has to be configured by software or an application to "accumulate a location history …".  Accordingly, when Google sells the application it necessarily sells components of the infringing system of the '911 patent to customers (i.e. end users and/or mobile communication device manufacturers or others) and the application is configured to perform at least a material part of the detailed elements of the claimed system of the '911 patent.  This component, the application, which is a material part of the claimed invention is also designed for the infringing system that infringes all of the elements of the claim.  Such an application is "especially adapted for use in an infringement of" the patents and "is not a staple article or commodity of commerce suitable for substantial noninfringing use".  The application is made of code that is written specifically for the at least one processing system and necessarily is specifically designed for that "at least one processing system".  In addition, when Google sells its own mobile communication devices (for example under the Pixel brand) containing its Google Maps application already built in, the same thing applies.

The First Amended Complaint alleges in paragraph 121 that "upon information and belief, in addition to directly infringing the '911 Patent, Google has indirectly infringed the '911 Patent pursuant to 35 U.S.C. § 271(c) by selling to its customers, purchasers, users, and developers, their applications and/or other products, the applications and/or other products being a component or components of the patented system of claims 12-21, knowing the application and/or other products to be especially made or especially adapted for use in an infringement of such '911 Patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use."    This is a plausible allegation that Google contributorily infringes the '911 patent.

With respect to the '910 patent, the analysis of contributory infringement is generally similar to that of the '202 patent except that the "Your Photos" feature(s) of Google Maps is additionally alleged in paragraphs 39, 83 and 84 of the First Amended Complaint to have been infringed as incorporated by reference in paragraph 131.  The '910 patent recites at the end "at least some of the digital member entries captured are of a vendor member or a second individual member, of the member network, during a physical encounter between the individual member

and the vendor member or the second individual member".  It is plausible that Google has separate code for situations in which the digital member entries captured are of a vendor member.

Furthermore, it is public knowledge that customers or end users who have mobile communication devices with the Google Maps application on them (essentially all Android phones and Google 's Pixel line of mobile communication devices) effectively cannot turn off their location history even when they try to.  See Complaint in State of Arizona, ex rel. Mark Brnovich, Attorney General v. Google LLC, CV2020-006219, of which Judicial Notice is requested.  See Hotel Employees & Rest. Employees Local 2 v. Vista Inn Mgmt. Co., 393 F. Supp. 2d 972, 977 (N.D. Cal. 2005), citing to Fed. R. Evid. 201(d).

In sum, the allegations of contributory infringement in Counts III, VI, IX and XII of the First Amended Complaint with respect to the four patents more than satisfy the pleading standards of Twombly and Disc Disease Solutions Inc. v. VGH Solutions, Inc., 888 F.3d 1256 (Fed. Cir. 2018).  The Federal Circuit recently reconfirmed that the plausibility standard of Twombly "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to support the plaintiff's allegations.  Nalco Co. v. Chem-Mod, LLC, 883 F.3d 1337, 1350 (Fed. Cir. 2018) (citing Twombly, 550 U.S. at 556, 127 S.Ct. at 1959).  The Federal Circuit in Nalco also stated that the plaintiff need not "prove its case at the pleading stage" and that t]he complaint must place the "potential infringer . . . on notice of what activity . . . is being accused of infringement." Nalco, 883 F.3d at 1350 ("Nalco's pleading clearly exceeds the minimum requirements under Rule 12(b)(6), **e**specially as "the Federal Rules of Civil Procedure do not require a plaintiff to plead facts establishing that each element of an asserted claim is met." Bill of Lading, 681 F.3d, 1323, 1135 (Fed. Cir. 2012).  In this case no discovery has taken place.  Plaintiff Weisner has more than met his pleading obligations.

### 2. The Inducement to Infringe Counts Are Well-Plead

With respect to Counts II, V, VIII and XI for inducement to infringe method claims, these Counts reincorporate the allegations of Google's actual knowledge of the four patents and

reincorporate the allegations specifically identifying the specific Google products infringed. These Counts also identify who Google induced to infringe.  For example, paragraph 95 alleges "upon information and belief … Google has indirectly infringed the '202 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including customers, purchasers, users and developers, to perform one or more of the steps of the method claims 1-7 … of the '202 Patent".  The First Amended Complaint plausibly alleges that Google's developers (certain of whom may be independent contractors) were induced by Google to infringe since the application or software had to have been tested before being sold.  Similarly, if some of Google's customers are providers of the Google system, then Google induced infringement of the four patents by these providers.  The Court can plausibly infer that software distributors like Google also typically require their customers to assent, before using the application, to (in this case) Google's use of the data it accumulates from the location histories, which Google then obtains vast sums for.

In addition, given that the First Amended Complaint plausibly alleged that Google had actual knowledge of the four patents, an instruction, direction or requirement by Google to its "customers, purchasers, users and developers" to infringe the patents plausibly means that Google specifically intended them to infringe the patents and knew that such acts would constitute infringement.  Therefore, this pleading is sufficient.  See Nalco, 883 F.3d at 1356 ("[f]or an allegation of induced infringement to survive a motion to dismiss, a complaint must plead facts plausibly showing that the accused infringer `specifically intended [another party] to infringe [the patent] and knew that the [other party]'s acts constituted infringement.'") citing Lifetime Indus., Inc. v. Trim-Lok, Inc., 869 F.3d 1372, 1379 (Fed. Cir. 2107) quoting Bill of Lading, 681 F.3d at 1339).

As noted, the Twombly plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to support the plaintiff's allegations. ." Nalco Co. v. Chem-Mod, LLC, 883 F.3d 1337, 1350 (Fed. Cir. 2018) (citing Twombly, 550 U.S. at 556, 127 S.Ct. at 1959).  Discovery has not taken place yet in this case.

In sum, the indirect infringement claims of Counts II, V, VIII and XI of the First Amended Complaint are also plead in accordance with the pleading standards enunciated in Twombly and in Disc Disease Solutions Inc. v. VGH Solutions, Inc.

## **CONCLUSION**

For each of the above reasons, Google's motion to dismiss under Fed. R. Civ. Proc. Rule 12(b)(6) should be denied in its entirety.  In the event, hypothetically, that the Court issues a decision short of a complete denial of Google's motion, Plaintiff Weisner requests the Court's leave to serve an amended pleading.


Dated: Monsey, New York               Respectfully submitted.
October 13, 2020                      JACOB GINSBURG, ESQ. PLLC

                                       _/s/Jacob Ginsburg
                                      By: Jacob Ginsburg, Esq.
                                      One Concord Drive
                                      Monsey, NY 10952
                                      (845) 371-1914
                                      Attorney for Plaintiff