| | |
|---|---|
| **UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK** | |
| SHOLEM WEISNER and SHMUEL NEMANOV,<br><br>       Plaintiff and Involuntary Plaintiff,<br><br>-against-<br><br>GOOGLE LLC,<br><br>       Defendant. | Case No.:  20-cv-02862- AKH<br><br>**SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Sholem Weisner ("Weisner" or "Plaintiff" or "Inventor"), by his attorney, for his Second Amended Complaint against Defendant Google LLC ("Amended Complaint") and Involuntary Party Shmuel Nemanov ("Nemanov", collectively with Weisner - "Weisner", "Plaintiff" or "Inventor") allege as follows:

### THE PARTIES

1.  Sholem Weisner ("Weisner") is an individual having his residence at 227 Hewes Street, Brooklyn, New York 11211.

2.  Google LLC ("Google" or "Defendant Google") is a Delaware Limited Liability Company with its principal place of business at 1600 Amphitheatre Parkway, Mountain View, CA 94043.  Google has registered with the New York State Department of State as a Foreign Limited Liability Company and has identified the Corporation Service Company, 80 State Street, Albany, New York, 12207-2543 as its Agent for Service of Process.

3.  Upon information and belief, Google LLC maintains a large office in this District at 111 Eighth Avenue, New York, New York.

4.  Involuntary Plaintiff Shmuel Nemanov ("Nemanov") was initially joined as an involuntary party in this action, pursuant to Rule 19(a) of the Federal Rules of Civil Procedure. *See* Indep. Wireless Tel. Co. v. Radio Corp. of Am., 269 U.S. 459, 468 (1926) ("If the owner of a patent, being within the jurisdiction, refuses or is unable to join an exclusive licensee as coplaintiff, the licensee may make him a party defendant by process,

and [*3] he will be lined up by the court in the party character which he should assume."); AsymmetRx, Inv. v. Biocare Med., 582 F.3d 1314, 1322 (Fed. Cir. 2009)("A patentee that does not voluntarily join an action prosecuted by its exclusive licensee can be joined as a defendant ...." (citation omitted)); Int'l Rediscount Corp. v. Hartford Accident & Indem. Co., 425 F. Supp. 669, 674-75 (D. Del. 1997)("An involuntary plaintiff is a party who is obligated to assist in prosecuting an action or to permit its name to be used but refuses to do so and who is thereafter joined … If a party is subject to service, however, it is not joined as an 'involuntary plaintiff.' Rather, it is served, joined as a defendant, and then realigned by the Court in the 'character which [it] should assume.'").

5. After service on the First Amended Complaint, following Nemanov's Motion and Plaintiff's Cross-Motion, the Court Ordered (ECF #67) that Nemanov be realigned as an Involuntary Party Plaintiff. At all times hereinafter mentioned, Nemanov was and now is a resident of Kings County, New York.

## JURISDICTION AND VENUE

6. This action arises under the Patent Act, 35 U.S.C. § 101 *et seq*. This Court has original and exclusive subject matter jurisdiction over this controversy pursuant to 28 U.S.C. §§ 1331 and 1338.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1400(b).

8. This Court has personal jurisdiction over Google. As alleged herein, Google has committed acts of direct infringement of one or more of Plaintiff's Patents in this District , and continues to do so. Upon information and belief, Google maintains an office within this District (New York, New York). Defendant's office in New York, New York is a regular and established place of business. In addition, the Court has personal jurisdiction over Google because minimum contacts have been established with the forum and the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice.

9. Nemanov is an owner of a minority, undivided interest in certain of Plaintiff Weisner's Patents pursuant to the Exhibit B Agreement Between Owners .

10. Under that Agreement, Plaintiff Weisner, as the majority owner of the undivided interest in certain patents and patent applications including those identified hereinbelow, has exclusive rights to sue for patent infringement.

## INVENTION BACKGROUND AND SYSTEM DETAILS EXPLAINED

11. The asserted claims of Plaintiff's U.S. Patent Nos. 10,380,202; 10,394,905; 10,642,911; 10,642,910 ("Plaintiff's Patents" or "Patents-In-Suit") are patent eligible and are directed to patent-eligible subject matter under 35 U.S.C. § 101.

12. The asserted claims of Plaintiff's Patents are not directed to abstract ideas and provide an inventive concept which through an element or combination of elements are sufficient to ensure that the Plaintiff's Patents in practice amount to and are significantly more than a patent upon merely an abstract idea. The "History of Personalized Search" and "Short description of Patent History**",** the Invention Background and System Details of Plaintiff's Patents clearly show that the Patents-In-Suit are directed to specific improved methods for a Personalized Search which were and remain revolutionary as at the date the Plaintiff Patents were filed with the USPTO.

### History of Personalized Search

13. With respect to the "Personalized Search":

*"Personalized Search was originally introduced on March 29, 2004 as a beta test of a Google Labs project. On April 20, 2005, it was made available as a non-beta service, but still separate from ordinary Google Search. On November 11, 2005, it became a part of the normal Google Search, but only to users with Google Accounts. Beginning on December 4, 2009, Personalized Search was applied to all users of Google Search, including those who are not logged into a Google Account.*

*In addition to customizing results based on personal behavior and interests associated with a Google Account, Google also implemented social search results in October 2009 based on people whom one knows. Operating on the assumption that one's associates share similar interests, these results would give a ranking boost to sites from within a user's "Social Circle". These two services integrated into regular results by February 2011 and expanded results by including content shared to users known through social networks".* (Source: https://en.wikipedia.org/wiki/Google_Personalized_Search#history).

14. By 2014 Google searches were customized using location data collected via

Plaintiff's described Patents-In-Suit:

"*This precise location data allows Google to give you information based on your current location as well as the places you have visited in the past.*

3

*If you are not connected to Google via a mobile device, it will get your location based off your IP address of your internet connection. It may not be as precise as GPC, but it gives them the general area you are located.*

*This location data is used to help you find information on nearby restaurants or other local businesses. These custom results are very helpful to the user".* (Source: https://www.portent.com/blog/seo/personalized-search-results.htm).

### Short description of relevant patent history

15. Prior to 2007, before the iPhone existed, mobile-web was in its infancy. Existing search engine and search algorithm technology used records of virtual encounters only to give the best possible results. Search engines, Google's PageRank included, were of little use when it came to real life services, businesses, or activities.[1] The Plaintiff/Inventor labored to find a way to marry our physical activities to the emerging virtual world so that dynamic, accurate and tailored search results could be obtained.

16. Prior to 2007, when a person searched the web for real life locations, such as fine dining, spas, or movie theaters, the person searching would be referred by the search engine to the highest-ranking Uniform Resource Locator ("URL") link. However, technology did not have the system to discern the most relevant physical location. Rather it used, amongst others, websites that had the most URL visitors, and the individual's cyber activity, surf history and so on, but it had no history of URL encounters in real life. It did not exist. Therefore, a person searching the web got results for fine dining that the Internet liked, but one could not get tailored results to one's specific liking based on their real-life interactions.[2] In fact, because searches were generic, and people usually click on the top results, it created an echo chamber that did not correspond to the user's inclinations.

17. Realizing that the solution requires a database of physical encounters the Plaintiff/Inventor struggled to find a way to avoid and solve the four major obstacles through:

---

[1] See patent specification in <u>Exhibit A</u>, column 1, lines 15-35
[2] See patent specification in <u>Exhibit</u> A, column 2, lines 50-60

a.   Collection of data requires one to walk around constantly recording encounters + geo + details manually;

b.   One must convince all his encounters, people and places (a/k/a location relatives), to keep those records as well;

c.   These manual entries could not update automatically, e.g. if the place moved, or another doctor joined the group, etc.;

d.   All records need to be stored in a central database, via a cyber medium (a/k/a URL encounters), to be retrieved by existing algorithm technology.

18. The Patents-in-Suit avoided and solved the above four major obstacles through innovative methods and a system that solves all issues by integrating the Patent Claims and Elements of the Invention to produce something significantly more, that yields a revolutionary, technological improvement, and in so doing accomplishes a marrying of the physical world to the virtual.[3] The system keeps dynamic cyber records of physical encounters that constantly update. It uses the same or similar algorithm used by existing search engines, only with physical encounters that are now searchable online just as cyber encounters were until now.

19. By recording the physical encounter in cyberspace automatically, search results are more accurate and specifically tailored to the search. Such methods and system also keep those URL interactions active by constantly updating the URL encountered so for example if the shop moves, or a new doctor joins the office, etc. the new information is reflected in the URL.

20. Thus, one can currently see one's visit from years ago, and most importantly, the current status of the URL encountered.

21. With the Patents-In-Suit, through methods and system, stationary URL members have additional major benefits that did not previously exist inter alia:

a)   Having a dynamic business URL on a person's location history is a new form of advertising in itself;[4]

---

[3] See patent specification in <u>Exhibit A</u>, column 1, lines 5-10
[4] See patent specification in <u>Exhibit A</u>, column 7, lines 0-5; page 19, column 11, lines 20-30

b)  Having entries of URL encounters recorded in a cyber database tagged with time and physical place tags, provides a nostalgic and experiential way to review URL profiles of stationary members/businesses[5];

c)  Stationary URL members such as stores, can now know and direct their online advertising efforts directly to people who have visited their location previously. Furthermore, a collection of URLs now exists in a database where one can narrow down location relatives to other 'useful businesses', accurately targeting potential customers[6];

d)  The Patents-In-Suit/Invention through methods and system, thus works by integrating the Patent Claims and Elements of the Invention to produce something significantly more, that yields a revolutionary, technological improvement by:

a. creating and assigning accounts to stationary tangible locations, creating, or using a virtual location for the tangible location.[7]
b. creating and assigning accounts to mobile users, i.e., people walking around, creating, or using a virtual location for the mobile person.[8]
c. storing the encounter, e.g., the physical visit to the tangible location, in a web searchable medium, as a visit from a user to a virtual site.[9]
d. instructing the system to capture and categorize URL encounters by frequency and time decay.[10]
e. when a user will search for a physical location to visit, the inventive system will search a list of the physical location URLs, and produce a result, based on:
  i.   past visit of such user, and past visits of location relatives of such user
  ii.  geographic location
  iii. business category
  iv.  frequency of visits of such users, and visits of location relatives and their frequency.

22. To illustrate the foregoing and by way of example: a person that frequents a gym and is now searching for a martial arts dojo. This novel system will search if any of the other members that frequent the same gym encountered a martial arts dojo in the

---

[5] See patent specification in Exhibit A, column 16, lines 25-40 & column 14 lines 65 - end
[6] See patent specification in Exhibit A, column 7, lines 15-25
[7] See patent specification in Exhibit A, column 20, line 65; & column 17, lines 20-35
[8] See patent specification in Exhibit A, column 20, line 65; & column 17, lines 20-35
[9] See patent specification in Exhibit A, column 15, lines 1-10
[10] See patent specification in Exhibit A, column 19, lines 5-25; & column 20, lines 35-45

geographic location being searched, and rank its recommendation based on how many connections (relatives, frequency of relative visits, etc.) they have, delivering a highly intuitively, specifically tailored result to the searcher's unique characteristics, and tastes.

23. These location relatives and "useful person" results are anonymous to all parties, and eliminates the inherent bias of pushing and referring places through conventional web searches.

24. The Plaintiff's Patents-In-Suit/Invention are thus methods and a system that are time, cost, and energy efficient, as it does not require any additional input. People just need to do their daily activities as before and the Plaintiff's system automatically and organically works behind the scenes by integrating the Patent Claims and Elements of the Invention to produce something significantly more, that yields a revolutionary, technological improvement.[11]

25. Defendant Google does every step, and derives enormous monetary benefits, by offering all of Plaintiff's patented methods and system to users. Defendant Google attracted a very large user base, and Defendant Google uses the data obtained through Plaintiff's patented methods and system, to sell very specifically tailored ads to the tune of billions of dollars annually.

26. It comes as no surprise that Defendant Google tries every argument to invalidate Plaintiff's Patents-in-Suit which Plaintiff invented through hard work, blood and sweat, and significant cost.

27. The Court should not allow Defendant Google to steal Plaintiff's patented methods and system in broad daylight, by discounting, and trivializing Plaintiff's patented methods and system and innovative product.

28. To be sure, Plaintiff is not claiming invention of "location history" entries. The Plaintiff inventor had licensing conversations with Apple in 2020, namely Jayna Whitt Director - IP Transactions, without claiming Apple's infringement. Apple currently uses a static basic "address book" to match locations without integrating physical activities

---

[11] See patent specification in Exhibit A, column 7, line 10

into a cyber medium. There are other methods and systems to provide location history that do not directly infringe on Plaintiff's unique URL physical encounter integration system.

*29. By using Plaintiff's patent specifications published on October 2, 2008 [12] (Publication #0244006) like an instruction manual, Google monopolized the mobile-web. (See Exhibit A-1 p.4, "Google Product - Exhibits taken from Google's public domain: https://drive.google.com/file/d/1wbZVJhsFusMXjpRsnRPYsjhthNJ5Sp-N).*

30. Each of the claims of the Plaintiff's Patents-In-Suit/Invention is directed to the same inventive system, with unique functions of the system, which integrates and converts the Patent Claims and Elements of the Invention to produce something significantly more,  that yields a revolutionary, technological improvement as identified hereinbelow.

### GOOGLE'S PATENT INFRINGEMENT

**United States Patent No. 10,380,202**

31. On August 13, 2019, the United States Patent and Trademark Office ("the USPTO") issued United States Patent No. 10,380,202, entitled Physical Location History With URL and Positioning System (the  "'202 Patent").  A true and correct copy of the '202 Patent is attached to this Amended Complaint as **Exhibit A**.

32. Independent claims 1 and 14 are exemplary claims of the '202 Patent.  Claim 1 states:

A method of creating and/or using physical location histories, comprising:

maintaining a processing system that is connected to a telecommunications network and configured to provide an account to an individual member and to a stationary vendor member of a member network;

providing an application that configures a handheld mobile communication device of each individual member of a member network to, upon instances of a physical encounter between the individual member and the stationary vendor member of a plurality of stationary vendor members of the member network at a physical premises of the stationary vendor member, a location of the physical encounter determined by a positioning system in communication with either the handheld mobile communication

---

[12] See Exhibit A, Page 2

device or a communication device of the stationary vendor member, and upon acceptance by the handheld mobile communication device of the individual member of an automatic proposal from the stationary vendor member, transmit a URL of the stationary vendor member and a URL of the individual member to the processing system automatically, thereby generating a location history entry, in at least the account of the individual member, that includes (i) the URL of, and a location of, the stationary vendor member, (ii) a time and date of the physical encounter, and (iii) an identity or the account of the individual member and of the stationary vendor member,

the URL of the individual member associated with the individual member before the physical encounter between the individual member and the stationary vendor member;

the application maintaining a viewable physical encounter history on the handheld mobile communication device that includes URLs from multiple stationary vendor members and is searchable from the handheld mobile communication device (i) by URL of the individual member and of the stationary vendor member, (ii) by geographic location, and (iii) by time of the physical encounter,

maintaining, using the processing system, a database of physical encounter histories of members of the member network whose accounts received the location history entry that was generated during the physical encounters, the individual member's account having data transfer privileges that allow the physical encounter history to be accumulated through transmission of location history entries from multiple handheld mobile communication devices of the individual member over time; and

wherein the physical encounter history of a particular individual member includes at least one visual timeline of physical encounters of the particular individual member.

33. Claim 14 of the '202 patent recites: A system for creating and/or using physical location histories, comprising:

a processing system connected to a telecommunications network and to a positioning system and configured to provide an account to an individual member and to a stationary vendor member of a member network;

an application that configures a handheld mobile communication device of each individual member of the member network to, upon instances of a physical encounter

between the individual member and the stationary vendor member of a plurality of stationary vendor members of the member network at a physical premises of the stationary vendor member, the physical encounter recognized by the handheld mobile communication device upon receiving a short range communication from a transmitting device of the stationary member, transmit a URL of the stationary vendor member and a URL of the individual member to the processing system automatically as a result of the physical encounter at the physical premises, thereby generating a location history entry, in at least the account of the individual member, that includes (i) the URL of, and a location of, the stationary vendor member, (ii) a time and date of the physical encounter, and (iii) an identity or the account of the individual member and of the stationary vendor member,

the URL of the individual member associated with the individual member before the physical encounter between the individual member and the stationary vendor member, a location of the individual member at the physical premises determined by a positioning system or by the key data of the stationary vendor member;

each application configured to maintain a viewable physical encounter history on the handheld mobile communication device that includes URLs from multiple stationary vendor members and is searchable from the handheld mobile communication device (i) by URL of the individual member and of the stationary vendor member, (ii) by geographic location, and (iii) by time of the physical encounter, the individual member's account having data transfer privileges that allow the physical encounter history to be accumulated through transmission of location history entries from multiple handheld mobile communication devices of the individual member over time;

the processing system including a database of physical encounter histories of members of the member network whose accounts received the location history entry that was generated,

wherein the physical encounter history of a particular individual member includes at least one visual timeline of physical encounters of the particular individual member.

34. The '202 Patent is generally directed to a method and a system of creating and/or using physical location histories and converts the Patent Claims and Elements of the Invention to produce something significantly more, that yields a revolutionary,

technological improvement.  One of the ways this is accomplished is by combining physical encounters between individual members and stationary vendor members of a network at the physical premises of the stationary vendor member in the 'brick and mortar' world with mobile web identifiers of the cyber world.

35. The '202 Patent was issued to Weisner and to Shmuel Nemanov ("Nemanov"). On or about July 9, 2019 Weisner and Nemanov executed an "Agreement Between Owners of Undivided Interests in the Patent" ("Agreement Between Owners"), under which Weisner, as the majority owner of the undivided interest in certain patents and patent applications including the application that matured into the '202 Patent, has exclusive rights to sue for patent infringement of the '202 Patent.  A copy of the "Agreement Between Owners" was recorded on or about September 4, 2019 in the U.S. Patent & Trademark Office Assignment Records under Reel/Frame 050259/0564 and is attached herein to the Amended Complaint as **Exhibit B**.

36. The '202 Patent is currently in full force and effect and has not expired or been abandoned, and there are no known prior adjudications of invalidity of any of the claims of the '202 Patent.

**United States Patent No. 10,394,905**

37. On August 27, 2019, the United States Patent and Trademark Office ("the USPTO") issued United States Patent No. 10,394,905, entitled Method and Apparatus for a Digital Leg History (the "'905 Patent").  A true and correct copy of the '905 Patent is attached to this Amended Complaint as **Exhibit C**.

38. Independent claims 1 and 11 are exemplary claims of the '905 Patent.  Claim 1 states:  A method of combining enhanced computerized searching for a target business with use of humans as physical encounter links, comprising: maintaining a processing system connected to a telecommunications network;

providing an application that allows a handheld mobile communication device of each individual member of a member network, the device in communication with a positioning system, upon a physical encounter between the individual member and a stationary vendor member of a plurality of stationary vendor members of the member network at a physical premises of the stationary vendor member, to transmit  key data of the stationary vendor member and of the individual member to the processing system

automatically as a result of the physical encounter, a location of each individual member's device determined by the positioning system, the key data being a URL or an identifier associated with the URL;

maintaining, using the processing system, a database of physical location histories of members of the member network whose key data was transmitted to the processing system during the physical encounters,

determining, by the processing system, a physical location relationship recorded in the database between a searching person who is a member of the member network, a reference individual member of the member network and a first stationary vendor member of the plurality of stationary vendor members, upon the searching person making a search query on a search engine having access to the processing system; and

responding to the search query by generating a computerized search result that increases a ranking of the first stationary vendor member based on the physical location relationship wherein the relationship is as follows:

(a) the reference individual member's physical location history includes key data of the first stationary vendor member; and (b) the searching person's physical location history and the reference individual member's physical location history each include key data of a second stationary vendor member of the plurality of stationary vendor members,

wherein the searching person's physical location relationship to the first stationary vendor member is such that the searching person has a physical location relationship with the second stationary vendor member who has a physical location relationship with the reference individual member who has a physical location relationship with the first stationary vendor member.

39. Claim 11 recites: A system of combining enhanced searching for a target business with use of humans as physical encounter links, comprising:

a processing system connected to a telecommunications network;

a handheld mobile communication device of each individual member of the member network, each individual member comprising a link in the member network based on physical encounters between a first type of member of the member network and a second type of member of the member network, the first type being an individual member and the second type being a stationary vendor member,

the devices in communication with a positioning system and configured, upon the physical encounter between the individual member and the stationary vendor member of a plurality of stationary vendor members of the member network at a physical premises of the stationary vendor member, to transmit  key data of the stationary vendor member and of the individual member to the processing system automatically as a result of the physical encounter at the physical premises, a location of each individual member's device determined by the positioning system, the key data being a URL or an identifier associated with the URL;

the processing system having a database of physical location histories of members of the member network whose key data was transmitted to the processing system during the physical encounters,

the processing system configured to determine a physical location relationship recorded in the database between a searching person who is a member of the member network, a reference individual member of the member network and a first stationary vendor member of the plurality of stationary vendor members, when the searching person makes a search query on a search engine,

the processing system or search engine configured to respond to the search query by generating a computerized search result that increases a ranking of the first stationary vendor member based on the physical location relationship wherein the relationship is as follows:

(a) the reference individual member's physical location history includes key data of the first stationary vendor member; and (b) the searching person's physical location history and the reference individual member's physical location history each include key data of a second stationary vendor member of the plurality of stationary vendor members.

40. The '905 Patent is generally directed to a method and system of combining enhanced computerized searching for a target business with use of physical encounters between individuals having communication devices and vendors and integrates and converts the Patent Claims and Elements of the Invention to produce something significantly more, that yields a revolutionary, technological improvement.  One of the ways this is accomplished is by increasing the ranking of vendor members in a digital search result by using physical location histories of physical encounters in the 'brick and

mortar' world between individual members having communication devices and the vendor members.

41. The '905 Patent was issued to Weisner and to Shmuel Nemanov ("Nemanov"). On or about July 9, 2019 Weisner and Nemanov executed an "Agreement Between Owners of Undivided Interests in the Patent" ("Agreement Between Owners"), under which Weisner, as the majority owner of the undivided interest in certain patents and patent applications including the application that matured into the '905 Patent, has exclusive rights to sue for patent infringement of the '905 Patent.  A copy of the "Agreement Between Owners" was recorded on or about September 4, 2019 in the U.S. Patent & Trademark Office Assignment Records under Reel/Frame 050259/0564 and is attached herein to the Amended Complaint as **Exhibit B**.

42. The '905 Patent is currently in full force and effect and has not expired or been abandoned, and there are no known prior adjudications of invalidity of any of the claims of the '905 Patent.

**United States Patent No. 10,642,911**

43. On May 5, 2020, the United States Patent and Trademark Office ("the USPTO") issued United States Patent No. 10,642,911, entitled Enhancing Digital Search Results for a Business in a Target Geographic Area Using URLs of Location Histories (the "'911 Patent").  A true and correct copy of the '911 Patent is attached to this Amended Complaint as **Exhibit D**.

44. Independent claims 1 and 12 are exemplary claims of the '911 Patent.  Claim 1 states:  A computer-implemented method of enhancing digital search results for a business in a target geographic area using URLs of location histories, comprising:

providing, by at least one processing system in communication with a positioning system, an account to (i) an individual member and (ii) a stationary vendor member, of a member network, the account associated with a URL, the individual member's account associated with a mobile communication device or multiple mobile communication devices,

maintaining a communication link between the mobile communication device and the at least one processing system or the positioning system such that the mobile communication device is configured to accumulate a location history on a database

maintained by the at least one processing system from physical encounters by the individual member at multiple stationary vendor members upon the mobile communication device being set to enter instances of a physical encounter between the individual member carrying the mobile communication device and the stationary vendor member at a physical premises of the stationary vendor member, the positioning system determining a location of the individual member at the physical premises;

for each individual member having a location history who sends a search query to a search engine of the at least one processing system, the search query targeting a geographic area:

(1) searching, by the search engine, the database for URLs of stationary vendor members in the location history, the location history also identifying time and geographic place of the physical encounters therein, and

(2) assigning a priority, by the at least one processing system, in a search result ranking based on an appearance of one of the stationary vendor member URLs in the location history of the individual member, wherein that one of the URLs is of a particular stationary vendor member located in the target geographic area.

45. Claim 12 of the '911 Patent recites: A system of enhancing digital search results for a business in a target geographic area using URLs of location histories, comprising:

at least one processing system in communication with a positioning system and configured to provide an account to (i) an individual member and (ii) a stationary vendor member, of a member network, the account associated with a URL, the individual member's account associated with a mobile communication device or multiple mobile communication devices,

the at least one processing system or the positioning system configured to maintain a communication link with the mobile communication device such that the mobile communication device is configured to accumulate a location history on a database maintained by the at least one processing system from physical encounters by the individual member at multiple stationary vendor members upon the mobile communication device being set to enter instances of a physical encounter between the individual member carrying the mobile communication device and the stationary vendor member at a physical premises of the stationary vendor member, the positioning system

determining a location of the individual member at the physical premises, the location history accumulated;

for each individual member having a location history who sends a search query to a search engine accessible by the at least one processing system, the search query targeting a geographic area, the at least one processing system configured to:

(1) search the database for URLs of stationary vendor members in the location history, the location history also identifying time and geographic place of the physical encounters therein, and

(2) assign a priority in a search result ranking based on an appearance of one of the stationary vendor member URLs in the location history of the individual member, wherein that one of the URLs is of a particular stationary vendor member located in the target geographic area.

46. The '911 Patent is generally directed to a method and system of enhancing digital search results for a business in a target geographic area using URLs of location histories and integrates and converts the Patent Claims and Elements of the Invention to produce something significantly more, that yields a revolutionary, technological improvement. One of the ways this is accomplished is by increasing the ranking of vendor members in a digital search result by using physical location histories of physical encounters in the 'brick and mortar' world between individual members having communication devices and the vendor members.

47. The '911 Patent was issued to Weisner and to Shmuel Nemanov ("Nemanov"). On or about July 9, 2019 Weisner and Nemanov executed an "Agreement Between Owners of Undivided Interests in the Patent" ("Agreement Between Owners"), under which Weisner, as the majority owner of the undivided interest in certain patents and patent applications including the application that matured into the '911 Patent, has exclusive rights to sue for patent infringement of the '911 Patent.  A copy of the "Agreement Between Owners" was recorded on or about September 4, 2019 in the U.S. Patent & Trademark Office Assignment Records under Reel/Frame 050259/0564 and is attached herein to the Amended Complaint as **Exhibit B**.

48. The '911 Patent is currently in full force and effect and has not expired or been abandoned, and there are no known prior adjudications of invalidity of any of the claims of the '911 Patent.

**United States Patent No. 10,642,910**

49. On May 5, 2020, the United States Patent and Trademark Office ("the USPTO") issued United States Patent No. 10,642,910, entitled Accumulation of Location History Based on Digital Member Entries from Multiple Devices of a Mobile Web (the "'910 Patent").  A true and correct copy of the '910 Patent is attached to this Amended Complaint as **Exhibit E**.

50.  Independent claims 1, 12 and 23 are exemplary claims of the '910 Patent.  Claim 1 recites: A computer-implemented method for accumulation of physical location histories based on digital member entries using URL-possessing elements of a mobile web, the method comprising:

maintaining a processing system that is connected to a telecommunications network and is configured to provide an account to individual members of a member network and to store a physical location history associated with the account, each account associated with a URL or an identifier associated with the URL;

providing an application that configures a handheld mobile communication device of a particular individual member of the member network who is mobile to, upon instances of a capture by the particular individual member of a digital member entry, transmit the digital member entry to the processing system at an account associated with the URL or associated identifier of the particular individual member automatically as a result of a communication from the handheld mobile communication device of the particular individual member to the processing system, a location of each particular individual member determined by a positioning system, the particular individual member's account configured to allow the particular individual member's physical location history to be accumulated from multiple handheld mobile communication devices of the particular individual member over time;

the application maintaining a viewable, searchable physical location history on each handheld mobile communication device, including multiple digital member entries

of the particular individual member, the physical location history searchable by URL or associated identifier; and

maintaining, using the processing system, a database identifying, by URL or associated identifier, the particular individual members whose physical location history was accumulated,

wherein the physical location history of the particular individual member includes at least one visual timeline of digital member entries of the particular individual member,

wherein at least some of the digital member entries captured are of a vendor member or a second individual member, of the member network, during a physical encounter between the individual member and the vendor member or the second individual member.

51. Claim 12 of the '910 Patent recites: A system for accumulation of physical location histories based on digital member entries using URL-possessing elements of a mobile web, the system comprising:

a processing system that is connected to a telecommunications network and is configured to provide an account to individual members of a member network and to store a physical location history associated with the account, each account associated with a URL or an identifier associated with the URL;

an application configured to be downloaded onto handheld mobile communication devices of a particular individual member of the member network, the application configured to, upon instances of a capture by the particular individual member of a digital member entry, transmit the digital member entry to the processing system at an account associated with the URL or associated identifier of the particular individual member automatically as a result of a communication from the handheld mobile communication device of the particular individual member to the processing system, a location of each particular individual member determined by a positioning system, the particular individual member's account configured to allow the particular individual member's physical location history to be accumulated into a calendar format from multiple handheld mobile communication devices of the particular individual member over time;

the application configured to maintain a viewable, searchable physical location history on each handheld mobile communication device, including multiple digital member entries of the particular individual member;

the processing system including a database identifying, by URL or associated identifier, the particular individual members whose physical location history was accumulated,

wherein the physical location history of the particular individual member includes at least one visual timeline of digital member entries of the particular individual member,

wherein at least some of the digital member entries captured are of a vendor member or a second individual member, of the member network, during a physical encounter between the individual member and the vendor member or the second individual member.

52. The '910 Patent is generally directed to a method, system and computer-readable medium for accumulating physical location histories based on digital member entries using a URL or an identifier associated with a URL and integrates and converts the Patent Claims and Elements of the Invention to produce something significantly more, that yields a revolutionary, technological improvement. One of the ways this is accomplished is by a particular individual member capturing digital member entries and accumulating a physical location history over time at an account associated with the URL or associated identifier of the individual member, the physical location history including at least one visual timeline of digital member entries, wherein at least some of the digital member entries captured are of a vendor member or a second individual member, during a physical encounter.

53. The '910 Patent was issued to Weisner and to Shmuel Nemanov ("Nemanov"). On or about July 9, 2019 Weisner and Nemanov executed an "Agreement Between Owners of Undivided Interests in the Patent" ("Agreement Between Owners"), under which Weisner, as the majority owner of the undivided interest in certain patents and patent applications including the application that matured into the '910 Patent, has exclusive rights to sue for patent infringement of the '910 Patent. A copy of the "Agreement Between Owners" was recorded on or about September 4, 2019 in the U.S.

Patent & Trademark Office Assignment Records under Reel/Frame 050259/0564 and is attached herein to the Amended Complaint as **Exhibit B**.

54. The '910 Patent is currently in full force and effect and has not expired or been abandoned, and there are no known prior adjudications of invalidity of any of the claims of the '910 Patent.

### Defendant Google's Infringement of the '202 Patent

55. Google is making, using and/or selling a copycat method and/or system of creating and/or using physical location histories as claimed in the '202 Patent.

56. Google literally infringes at least claims 1-7 and 14-18 of the '202 Patent. Google's infringement of the '202 Patent occurs through its Google Maps feature. Google Maps contains a "Your Timeline" and "Your Places" feature(s) that infringe the '202 Patent. Attached to this Amended Complaint as **Exhibit A-1** is a true and correct copy of Plaintiff's '202 Claim Chart  and annexed thereto as **Exhibits A-H** which demonstrate and evidence Defendant Google's Infringement of the '202 Patent.

### Defendant Google's Infringement of the '905 Patent

57. Google is making, using and/or selling a copycat method and/or system of combining enhanced computerized searching for a target business with use of physical encounters between individuals having communication devices and vendors as claimed in the '905 Patent.

58. Google literally infringes claims 1-14 of the '905 Patent.  Google's infringement of the '905 Patent occurs through its Google Maps feature. For example, Google's search engine integrates and converts enhanced digital search results to a mobile device or to a non-mobile device, and in doing so utilizes location history data obtained in connection with the Google Maps feature(s).  Attached to this Amended Complaint as **Exhibit C-1** is a true and correct copy of Plaintiff's '905 Claim Chart  and annexed thereto as **Exhibits A-C** which demonstrate and evidence Defendant Google's Infringement of the '905 Patent.

### Defendant Google's Infringement of the '911 Patent

59. Google is making, using and/or selling a copycat method and/or system of enhancing digital search results for a business in a target geographic area using location histories as claimed in the '911 Patent.

60. Google literally infringes claims 1-21 of the '911 Patent.  Google's infringement of the '911 Patent occurs through its Google Maps feature. For example, Google's search engine integrates and converts enhanced digital search results to a mobile device or to a non-mobile device, and in doing so utilizes location history data obtained in connection with the Google Maps feature(s). Attached to this Amended Complaint as **Exhibit D-1** is a true and correct copy of Plaintiff's '911 Claim Chart  and thereto are annexed  **Exhibits A-G** which demonstrate and evidence Defendant Google's Infringement of the '911 Patent.

### Defendant Google's Infringement of the '910 Patent

61. Google is making, using and/or selling a copycat method, system and/or computer-readable medium for accumulating physical location histories based on digital member entries as claimed in the '910 Patent.

62. Google literally infringes at least claims 1-10, 12-21 and 23-28 of the '910 Patent. Google's infringement of the '910 Patent occurs through its Google Maps feature. For example, Google Maps contains a "Your Timeline" and "Your Photos" feature(s) that infringe the '910 Patent when captures of a digital member entry are made and accumulated over time into the particular individual member's physical location history, including at least one visual timeline of digital member entries. Attached to this Amended Complaint as **Exhibit E-1** is a true and correct copy of Plaintiff's '910 Claim Chart  and thereto are annexed  **Exhibits A-C** which demonstrate and evidence Defendant Google's Infringement of the '911 Patent.

### WEISNER'S NOTICE OF INFRINGEMENT TO GOOGLE

63. Google is well aware of the '202 Patent and has continued its unauthorized infringing activity despite this knowledge.  Weisner gave written notice to Google of its infringement of the '202 Patent on or about July 1, 2019.  Weisner attempted, albeit unsuccessfully, to actively engage in good faith negotiations for approximately half a year with Google regarding the '202 Patent, including signing a Nondisclosure Agreement and having a number of telephonic meetings and including sending Google a claim chart outlining in detail its infringement of claims 1-7 and 14-18 on an element-by-element basis.  Google did not provide a detailed refutation of infringement as to any claims of the claim chart that Weisner sent Google. As such, Google has continued to

willfully, wantonly, and deliberately engage in acts of infringement of the '202 Patent permitting increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

64. Google is well aware of the '905 Patent, the '911 Patent and the "910 Patent and has continued its unauthorized infringing activity of each despite this knowledge. Weisner gave written notice to Google of its infringement of the '905 Patent and of the '911 Patent by letter sent by DHL on or about February 23, 2020, a courtesy copy of which was emailed to Google's in-house patent counsel on March 4, 2020 and acknowledged by said counsel on March 5, 2020 by email.  Weisner gave written notice to Google of its infringement of the '910 Patent on or about March 29, 2020 by email to Google's in-house patent counsel who acknowledged receipt of same on March 30, 2020 by email.  The written notice identifies features used by Google that infringe the '905 Patent, the '911 Patent and the "910 Patent.  Google did not provide a refutation of infringement as to any claims of the '905 Patent, the '911 Patent and the "910 Patent. As such, Google has continued to willfully, wantonly, and deliberately engage in acts of infringement of the '202 Patent, of the "905 Patent, of the '911 Patent and of the '911 Patent permitting increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

65. As a result of Google's infringement of the '202 Patent, Weisner has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.

66. Google's infringement of the '202 Patent causes harm to Weisner in the form of price erosion, loss of goodwill, damage to reputation, loss of business opportunities, inadequacy of money damages, and direct and indirect competition.

67. Monetary damages alone relating to the '202 Patent are likely to be shown as insufficient to compensate Weisner for these harms. Accordingly, Weisner is entitled to injunctive relief against Google's future acts of infringement, including manufacture, sale, and importation.

68. Google's infringement of the '202 Patent also has injured and continues to injure Weisner in an amount to be proven at trial, but not less than a reasonable royalty.

69. As a result of Google's infringement of the '905 Patent, Weisner has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.

70. Google's infringement of the '905 Patent causes harm to Weisner in the form of price erosion, loss of goodwill, damage to reputation, loss of business opportunities, inadequacy of money damages, and direct and indirect competition.

71. Monetary damages alone relating to the '905 Patent are likely to be shown as insufficient to compensate Weisner for these harms. Accordingly, Weisner is entitled to injunctive relief against Google's future acts of infringement, including manufacture, sale, and importation.

72. Google's infringement of the '905 Patent also has injured and continues to injure Weisner in an amount to be proven at trial, but not less than a reasonable royalty.

73. As a result of Google's infringement of the '911 Patent, Weisner has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.

74. Google's infringement of the '911 Patent causes harm to Weisner in the form of price erosion, loss of goodwill, damage to reputation, loss of business opportunities, inadequacy of money damages, and direct and indirect competition.

75. Monetary damages alone relating to the '911 Patent are likely to be shown as insufficient to compensate Weisner for these harms. Accordingly, Weisner is entitled to injunctive relief against Google's future acts of infringement, including manufacture, sale, and importation.

76. Google's infringement of the '911 Patent also has injured and continues to injure Weisner in an amount to be proven at trial, but not less than a reasonable royalty.

77. As a result of Google's infringement of the '910 Patent, Weisner has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.

78. Google's infringement of the '910 Patent causes harm to Weisner in the form of price erosion, loss of goodwill, damage to reputation, loss of business opportunities, inadequacy of money damages, and direct and indirect competition.

79. Monetary damages alone relating to the '910 Patent are likely to be shown as insufficient to compensate Weisner for these harms. Accordingly, Weisner is entitled to

injunctive relief against Google's future acts of infringement, including manufacture, sale, and importation.

80. Google's infringement of the '910 Patent also has injured and continues to injure Weisner in an amount to be proven at trial, but not less than a reasonable royalty.

**Google's Knowledge of the '202 Patent and Willful Patent Infringement**

81. Google has actual knowledge of and about the '202 Patent and had such knowledge before the filing of the Complaint.

82. In a cease desist letter dated July 1, 2019, Weisner informed Google that Google would infringe the then-allowed claims of the '202 Patent once said claims issue several weeks later if Google continues to make, use, offer to sell and/or sell its "Your Timeline" and "Your Places" feature(s) under Google Maps that literally infringe each and every one of the claim elements of independent method claim 1 and of independent system claim 14 as well as of at least several dependent claims.

83. In his July 1, 2019 cease and desist letter Weisner informed Google that "once a U.S. patent issues on the attached allowed claims", it had "to cease and desist from making, using, selling, offering to sell in the United States, or importing into the United States, any features, methods, systems or devices that infringe any of the claims of the patent including ceasing and desisting from any further making, using, selling or offering to sell in the U.S., or importing into the U.S., of Google's "Your Timeline" feature under Google Maps or Google's "Your Places" feature under Google Maps" and that "failure to comply with the above would result in Google infringing the Patent Act at 35 U.S. Code § 271(a), a statute that provides for damages for infringement in no event less than a reasonable royalty, including, where appropriate, increased damages up to three times the amount found or assessed, as well as injunctive relief, preliminary and permanent."

84. Google acknowledged receiving the July 1, 2019 letter on or about July 13, 2019.

85. Upon information and belief, Google also had knowledge of the '202 patent prior to its receipt of the July 1, 2019 letter.

86. In sum, Google was aware of the '202 Patent but intentionally embarked upon and continued its unauthorized infringing activity despite this knowledge.

87. Google has been making, using, offering for sale, and/or selling products that infringe the '202 Patent, and, despite Weisner's cease-and-desist letter and additional pre-suit communications, Google continues to do so in blatant and reckless disregard of Weisner's patent rights.

88. Google has acted recklessly and continues to willfully, wantonly, and deliberately engage in acts of infringement of the '202 Patent, justifying an award to Weisner of increased damages under 35 U.S.C. § 284, attorneys' fees and costs incurred under 35 U.S.C. § 285, and other remedies that the Court may impose.

**Google's Knowledge of the '905 Patent and Willful Patent Infringement**

89. Google has actual knowledge of and about the '905 Patent and had such knowledge before the service of the Amended Complaint.

90. In a cease desist letter dated February 23, 2020, Weisner informed Google that Google would infringe the claims of the '905 Patent if Google continues to make, use, offer to sell and/or sell its "Your Timeline" and "Your Places" feature(s) under Google Maps that literally infringe each and every one of the claim elements of independent method claims 1 and 14 of independent system claim 11 as well as of at least several dependent claims.

91. In his February 23, 2020 cease and desist letter Weisner informed Google that  it had "to cease and desist from making, using, selling, offering to sell in the United States, or importing into the United States, any features, methods, systems or devices that infringe any of the claims of the '905 Patent including ceasing and desisting from any further making, using, selling or offering to sell in the U.S., or importing into the U.S., of Google's "Your Timeline" feature under Google Maps or Google's "Your Places" feature under Google Maps" and that "failure to comply with the above would result in Google infringing the Patent Act at 35 U.S. Code § 271(a), a statute that provides for damages for infringement in no event less than a reasonable royalty, including, where appropriate, increased damages up to three times the amount found or assessed, as well as injunctive relief, preliminary and permanent."

92. Google acknowledged receiving the February 23, 2020 cease and desist letter at least on or about March 5, 2020.

93. Upon information and belief, Google also had knowledge of the '905 patent

prior to its receipt of the February 23, 2020 letter.

94. In sum, Google was aware of the '905 Patent but intentionally embarked upon and continued its unauthorized infringing activity despite this knowledge.

95. Google has been making, using, offering for sale, and/or selling products that infringe the '905 Patent, and, despite Weisner's cease-and-desist letter, Google continues to do so in blatant and reckless disregard of Weisner's patent rights.

96. Google has acted recklessly and continues to willfully, wantonly, and deliberately engage in acts of infringement of the '905 Patent, justifying an award to Weisner of increased damages under 35 U.S.C. § 284, attorneys' fees and costs incurred under 35 U.S.C. § 285, and other remedies that the Court may impose.

**Google's Knowledge of the '911 Patent and Willful Patent Infringement**

97. Google has actual knowledge of and about the '911 Patent and had such knowledge before the service of the Amended Complaint.

98. In a cease desist letter dated February 23, 2020, Weisner informed Google that Google would infringe the then-allowed claims of the '911 Patent once said claims issue several weeks later if Google continues to make, use, offer to sell and/or sell its "Your Timeline" and "Your Places" feature(s) under Google Maps that literally infringe each and every one of the claim elements of independent method claim 1 and of independent system claim 12 as well as of at least several dependent claims.

99. In his February 23, 2020 cease and desist letter Weisner informed Google concerning the then-allowed claims that later issued as the '911 Patent that "once a U.S. patent issues on the attached allowed claims", it had "to cease and desist from making, using, selling, offering to sell in the United States, or importing into the United States, any features, methods, systems or devices that infringe any of the claims of the patent including ceasing and desisting from any further making, using, selling or offering to sell in the U.S., or importing into the U.S., of Google's "Your Timeline" feature under Google Maps or Google's "Your Places" feature under Google Maps" and that "failure to comply with the above would result in Google infringing the Patent Act at 35 U.S. Code § 271(a), a statute that provides for damages for infringement in no event less than a reasonable royalty, including, where appropriate, increased damages up to three times the amount found or assessed, as well as injunctive relief, preliminary and permanent."

100. Google acknowledged receiving the February 23, 2020 cease and desist letter at least on or about March 5, 2020.

101. Upon information and belief, Google also had knowledge of the '911 patent prior to its receipt of the February 23, 2020 letter.

102. In sum, Google was aware of the '911 Patent but intentionally embarked upon and continued its unauthorized infringing activity despite this knowledge.

103. Google has been making, using, offering for sale, and/or selling products that infringe the '911 Patent, and, despite Weisner's cease-and-desist letter, Google continues to do so in blatant and reckless disregard of Weisner's patent rights.

104. Google has acted recklessly and continues to willfully, wantonly, and deliberately engage in acts of infringement of the '911 Patent, justifying an award to Weisner of increased damages under 35 U.S.C. § 284, attorneys' fees and costs incurred under 35 U.S.C. § 285, and other remedies that the Court may impose.

**Google's Knowledge of the '910 Patent and Willful Patent Infringement**

105. Google has actual knowledge of and about the '910 Patent and had such knowledge before the service of the Amended Complaint.

106. In a cease desist letter dated March 29, 2020, Weisner informed Google that Google would infringe the then-allowed claims of the '910 Patent once said claims issue several weeks later if Google continues to make, use, offer to sell and/or sell its "Your Timeline" and "Your Photos" feature(s) under Google Maps that literally infringe each and every one of the claim elements of independent method claim 1, of independent system claim 12, of independent computer-readable medium claim 23 as well as of at least several dependent claims.

107. In his March 29, 2020 cease and desist letter Weisner informed Google concerning the then-allowed claims that later issued as the '910 Patent that "once a U.S. patent issues on the attached allowed claims", it had "to cease and desist from making, using, selling, offering to sell in the United States, or importing into the United States, any features, methods, systems or devices that infringe any of the claims of the patent including ceasing and desisting from any further making, using, selling or offering to sell in the U.S., or importing into the U.S., of Google's "Your Timeline" feature under Google Maps or Google's "Your Photos" feature under Google Maps" and that "failure

to comply with the above would result in Google infringing the Patent Act at 35 U.S. Code § 271(a), a statute that provides for damages for infringement in no event less than a reasonable royalty, including, where appropriate, increased damages up to three times the amount found or assessed, as well as injunctive relief, preliminary and permanent."

108. Google acknowledged receiving the March 29, 2020 cease and desist letter on or about March 30, 2020.

109. Upon information and belief, Google also had knowledge of the '910 patent prior to its receipt of the March 29, 2020 letter.

110. In sum, Google was aware of the '910 Patent but intentionally embarked upon and continued its unauthorized infringing activity despite this knowledge.

111. Google has been making, using, offering for sale, and/or selling products that infringe the '910 Patent, and, despite Weisner's cease-and-desist letter, Google continues to do so in blatant and reckless disregard of Weisner's patent rights.

112. Google has acted recklessly and continues to willfully, wantonly, and deliberately engage in acts of infringement of the '910 Patent, justifying an award to Weisner of increased damages under 35 U.S.C. § 284, attorneys' fees and costs incurred under 35 U.S.C. § 285, and other remedies that the Court may impose.

## Count I

### Direct Infringement of the '202 Patent Pursuant to 35 U.S.C. § 271(a)

113. Weisner repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

114. Google has infringed and continues to infringe at least claims 1-7 and 14-18 of the '202 Patent in violation of 35 U.S.C. § 271(a).

115. Google's infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

## Count II

### Direct Infringement of the '905 Patent Pursuant to 35 U.S.C. § 271(a)

116. Weisner repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

117. Google has infringed and continues to infringe claims 1-14 of the '905 Patent in violation of 35 U.S.C. § 271(a).

28

118. Google's infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

**Count III**

**Direct Infringement of the '911 Patent Pursuant to 35 U.S.C. § 271(a)**

119. Weisner repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

120. Google has infringed and continues to infringe claims 1-21 of the '911 Patent in violation of 35 U.S.C. § 271(a).

121. Google's infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

**Count IV**

**Direct Infringement of the '910 Patent Pursuant to 35 U.S.C. § 271(a)**

122. Weisner repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

123. Google has infringed and continues to infringe at least claims 1-10, 12-21 and 23-28 of the '910 Patent in violation of 35 U.S.C. § 271(a).

124. Google's infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.


**PRAYER FOR RELIEF**

WHEREFORE, Weisner requests judgment in his favor and relief as follows:

A. An entry of judgment that Google has infringed and is infringing the '202 Patent, the '905 Patent, the '911 Patent and the '910 Patent;

B. A preliminary and permanent injunction against Google and its officers, employees, agents, servants, attorneys, instrumentalities, and/or those in privity with them, from infringing the '202 Patent, the '905 Patent, the '911 Patent, the '910 Patent, and for all further and proper injunctive relief pursuant to 35 U.S.C. §283;

C. An award to Weisner of such past damages through the date of judgment, not less than a reasonable royalty, as he shall prove at trial or otherwise against Google in an amount adequate to fully compensate Weisner for Google's infringement of the '202 Patent, the '905 Patent, the '911 Patent and the '910 Patent;

D. A determination that Google's infringement has been willful, wanton, and deliberate and that the damages against Google be increased up to treble on this basis or for any other basis in accordance with the law;

E. A finding that this case is "exceptional" and an award to Weisner of his costs and reasonable attorneys' fees, as provided by 35 U.S.C. § 285;

F. An accounting of all infringing sales and revenues, together with post judgment interest and prejudgment interest and costs from the first date of infringement of the '202 Patent, the '905 Patent, the '911 Patent and the '910 Patent; and

G. Such further and other relief as the Court may deem proper and just.

## DEMAND FOR JURY TRIAL

Weisner demands a trial by jury of all issues so triable by right under Rule 38 of the Federal Rules of Civil Procedure.

Dated: January 21, 2021                              Respectfully submitted

/s/ Jacob Ginsburg
Jacob Ginsburg, Esq.
Jacob Ginsburg, Esq. PLLC
One Concord Drive
Monsey, NY 10952
(845) 371-1914
jg@jacobginsburglaw.com
Attorney for Plaintiff  Sholem Weisner