UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x
SHOLEM WEISNER and SHMUEL NEMANOV,

     *Plaintiff and Involuntary Plaintiff,*

  -against-

GOOGLE LLC.

                               *Defendant.*
------------------------------------------------------------- x

**<u>ORDER GRANTING MOTION TO DISMISS</u>**

20 Civ. 2862 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

        Plaintiff Weisner and Involuntary Plaintiff Shmuel Nemanov (collectively "Plaintiffs") bring this action against Defendant Google, LLC ("Google") alleging direct and indirect patent infringement under 35 U.S.C. § 271 (a)-(c) of four patents related to the location history and tracking used in the Google Maps platform. Google seeks to dismiss Plaintiff's Second Amended Complaint ("SAC") under 35 U.S.C. § 101 as invalid patents, and under 12(b)(6) for failure to state a claim under which relief could be granted. ECF No 75. Google's motion to dismiss is granted.

## I.    BACKGROUND

        Plaintiffs are the co-inventors and co-owners of four patents, U.S. Patent Nos. 10,380,202; 10,394,905; 10,642,910; and 10,642,911 (the "202 Patent", the "905 Patent", the "910 Patent", and the "911 Patent," respectively). The patents were filed in 2007 and issued in August 2019. SAC ¶ 31, ECF No. 72. The patents all stem from a common parent application and share similar specifications.

### A.   The 202 Patent

The 202 Patent is "generally directed to a method and a system of creating and/or using physical location histories. . . by combining physical encounters between individual

members and stationary vendor members of a network at the physical premises of the stationary vendor member in the 'brick and mortar' world with mobile web identifiers of the cyber world." SAC ¶ 34.  The 202 Patent claims are directed to accumulating "a digital record of a person's physical presence across time."  202 Patent at 1:6-7.  This record of location histories would allow a person to review their own history "with the satisfaction, nostalgia, and practical value associated with a digital leg history that meaningfully characterizes that person's life and past physical activities."  *Id*. at 1:33-37.  Such records permit a person to review their "life history in a novel and interesting way."  *Id*. at 2:3-6, 2:41-43.  The record would also include a "visual timeline" of the included location histories and would include a URL for the vendor.  *Id.* at 21:64-67.

### B. The 905 Patent

The 905 Patent is "generally directed to a method and system of combining enhanced computerized searching for a target business with use of physical encounters between individuals having communication devices and vendors. . . by increasing the ranking of vendor members in a digital search result by using physical location histories of physical encounters in the 'brick and mortar' world between individual members having communication devices and the vendor members."  SAC ¶ 40.  In essence, the patent uses location history to provide suggestions and recommendations for places to go based on the location history of others with similar histories. Claim 1 identifies a "physical location relationship" between (1) "a searching person," (2) "a reference individual member," (3) "a first stationary vendor member," and (4) "a second stationary vendor member."  905 Patent at 21:38-43, 21:54-56.  The relationship limitation states that the location histories for the reference individual member and the searching person both include key data of a secondary vendor.  *Id.* at 21:52-56.  The second limitation states that "the reference individual member's physical location history includes key data of the

first stationary vendor". *Id*. at 21:50-52.  The system then generates "a computerized search result that increases a ranking of the first stationary vendor," in response to a request from the searching person, thereby creating suggestions for stores or restaurants based on the location histories of users who were previously in the area.  *Id*. at 21:46-49.

### C. The 910 Patent

The 910 Patent is "generally directed to a method, system and computer-readable medium for accumulating physical location histories based on digital member entries using a URL or an identifier associated with a URL."  SAC ¶ 52.  This occurs when an individual member "captur[es] digital member entries and accumulat[es] a physical location history over time at an account associated with the URL or associated identifier of the individual member, . . . [which includes] at least one visual timeline of digital member entries. . . of a vendor member or a second individual member, during a physical encounter."  SAC ¶ 52.  Claim 1 of the 910 Patent describes a unilateral physical encounter entry, where a user would input their own "digital member entry" through photos or entries.  910 Patent at 21:28-30.

### D. The 911 Patent

The 911 patent is aimed at "a method and system of enhancing digital search results for a business in a target geographic area using URLs of location histories . . . by increasing the ranking of vendor members in a digital search result by using physical location histories of physical encounters in the 'brick and mortar' world between individual members having communication devices and the vendor members."  SAC ¶ 46.  A user would be able to search for vendors within a specified geographic area and view their past location history and places visited.  *See Id.* ¶ 45.  Claim 1 of the 911 patent states that the search results are prioritized using the criteria of "an appearance of one of the stationary vendor member URLs in the location history of the individual member."  911 Patent at 21:48-51.

Plaintiff alleges that Google is "making, using and/or selling a copycat method and/or system" which infringes on the patents at issue. *See* SAC ¶¶ 55, 57, 59, 61. Specifically, Plaintiff claims that certain features contained within the Google Maps platform such as the "Your Timeline," "Your Places," and "Your Photos" infringe the patents. *See id.* ¶¶ 40, 47, Exhs. A-E.

## II. PROCEDURAL HISTORY

Plaintiff served Google with cease-and-desist letters in July 2019 and March 2020 regarding the patents. SAC ¶ 63. Weisner filed the instant suit against Google, alleging twelve counts of direct and indirect infringement of the four patents and seeking injunctive and monetary relief. *See* Am. Compl, ECF No. 15. On January 4, 2021, I ordered that Shmuel Nemanov be re-aligned as an involuntary plaintiff, and, in a separate order that same day, I dismissed the Amended Complaint, holding that Plaintiffs had failed to allege sufficient factual information to satisfy the pleading requirements. *See* ECF Nos. 67, 68. Following oral argument on January 5, 2021, I further held that the claims of the asserted patents are directed to an abstract idea and also noted that the disclosure of the patent may be insufficient to satisfy the requirements of 35 U.S.C. § 112. *See* ECF No. 69. I granted Plaintiffs leave to file a Second Amended Complaint and instructed Plaintiffs to "be specific with regard to infringement" and "allege what is claimed that is not an abstract idea." Hearing Tr. at 24:7-10, 19-24, ECF No. 70. On January 22, 2021, Plaintiffs filed the SAC. *See* ECF No. 72. Google again moves to dismiss the SAC on the grounds that the patents are invalid under 35 U.S.C. § 101. *See* Mot. Dismiss, ECF No. 76. Google also seeks dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief could be granted. *See id.*

## III. DISCUSSION

### A. 35 U.S.C. § 101- Patent Eligibility

4

"Patent eligibility, a question of law often involving subsidiary factual questions, can be decided on a motion to dismiss 'when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law.'" *Island Intellectual Property, LLC v. Stonecastle Asset Mgmt. LLC*, No. 19-cv-4792 (JPO), 2020 WL 2793000, at *2 (S.D.N.Y. May 29, 2020) (quoting *Pers. Beasties Grp. LLC v. Nike, Inc.*, 341 F. Supp. 3d 382, 386 (S.D.N.Y. 2018) (quoting *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125, 1128 (Fed. Cir. 2018)), aff'd, 792 F. App'x 949 (Fed. Cir. 2020). Although a court must construe the facts in the light most favorable to the non-moving party, it should not accept as true allegations that contradict matters subject to judicial notice, such as the patent claims, specification, and prosecution history. *See, e.g.*, *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017). Factual disputes about whether an aspect of the claims is inventive "may preclude dismissal at the pleadings stage under § 101." *Cellspin Soft, Inc. v. Fitbit, Inc.* 927 F.3d 1306, 1318 (Fed. Cir. 2019) (citing *Aatrix Software, Inc.*, 882 F.3d at 1126-1127).

The Supreme Court reiterated a two-step test for determining whether claims are directed to patent-ineligible subject matter in *Alice Corp. v. CLS Bank Int'l,* 573 U.S. 208, 217-18. (2014). Step One asks whether the claims as a whole are directed to a patent-ineligible concept, such as an abstract idea. *See id*. at 217-18; *Mayo Collaborative Servs. v. Prometheus Labs.*, Inc., 566 U.S. 66, 77-79 (2012); *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016). If the claims are directed to an abstract concept, then Step Two requires the court to "search for an 'inventive concept,'—i.e., an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon

the [ineligible concept] itself.'" *Alice*, 573 U.S. at 217-18, 221, 224-26 (quoting *Mayo*, 566 U.S. at 72-73).

### 1. Step One

"It is not enough merely to identify a patent-ineligible concept underlying the claim; [the court] must determine whether that patent-ineligible concept is what the claim is 'directed to.'" *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042,1048 (Fed. Cir. 2016). A claim that provides a "new and improved technique" that produces "tangible and useful results" falls "squarely outside of those categories of inventions that are 'directed to' patent-ineligible concepts," and thus are patent-eligible at step one. See *id.* at 1048*; Bascom Global Internet Services v. AT&T Mobility*, 827 F.3d 1341, 1350 (Fed. Cir. 2016); but see *Quantum Stream Inc. v. Charter Commc'ns, Inc.*, 309 F. Supp. 3d 171, 179 (S.D.N.Y. 2018) (patent ineligible where claims were "through seemingly differing arrangements of types of generic devices).

The "prohibition against patenting abstract ideas 'cannot be circumvented by attempting to limit the use of the formula to a particular technological environment' or adding 'insignificant post-solution activity.'" *Bilski v. Kappos*, 561 U.S. 593, 610-11 (2010); *see APPLE, INC. v. Ameranth, Inc.,* 842 F. 3d 1229 (Fed. Cir. 2016) (claims directed to broad abstract idea of "ability to generate menus with certain features"); *Affinity Labs v. DirecTV, LLC*, 838 F.3d 1253, 1257-58 (Fed. Cir. 2016) (claims directed to "providing out-of-region access to regional broadcast content"); *Electric Power Group, LLC v. Alstom SA,* 830 F. 3d 1350, 1351, 1354 (Fed. Cir. 2016) (claims directed to "gathering and analyzing information of a specified content, then displaying the results"); *In re TLI Commc'ns LLC Patent Litig.,* 823 F.3d 607, 611 (Fed. Cir. 2016) (claims directed to "classifying and storing digital images in an organized manner").

I hold that the patents at issue are all directed towards an abstract idea. The patents create a method to collect information on a user's movements and location history, and to electronically record that data. However, "[t]he concept of data collection, recognition, and storage is undisputedly well-known." *See Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1347 (Fed. Cir. 2014). Humans have consistently kept records of a person's location and travel in the form of travel logs, diaries, journals, and calendars, which compile information such as time and location. A "[w]holly generic computer implementation is not generally the sort of 'additional featur[e]' that provides any 'practical assurance that the process is more than a drafting effort designed to monopolize the [abstract idea] itself.'" *Alice*, 573 U.S. at 217-18; *see also Island Intellectual Property*, 2020 WL 2793000 at *2 ("[I]t is not enough that a patent invokes a computer 'merely as a tool' to execute an otherwise unpatentable idea."). Just as in *TLI*, where recording digital images, classifying them with "a date or timestamp," transmitting them to a server, and storing them in a database "taking into consideration the classification information" was invalidated as abstract, here, the patents focus on the use of generally known technology, such as GPS, and URLs to automate and digitize the process of collecting data on a user's location history record. *See TLI*, 823 F.3d at 610, 612- 613 (claims directed to uses of "conventional or generic technology" described by the specification in "purely functional terms" are abstract); *see also Search and Social Media Partners v. Facebook, Inc.*, C.A. No. 18-1424-LPS-CJB, 2019 WL 581616 at *5 (D. Del. Feb. 13, 2019) (patent claim directed to abstract idea of collection, organization, manipulation, and display of data where it was "likened to pinning pictures on a map or keeping them in a chronological photo album"). I therefore find that the patents at issue are directed to an abstract concept.

    **2. Step Two**

Under *Alice* Step Two, where a patent is directed to an abstract concept, the Court must determine whether there is an "inventive concept" —i.e., an element or combination of elements that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Alice*, 573 U.S. at 224-26. In order to find an "inventive concept" the patent must involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry,'" *Berkheimer v. HP, Inc.*, 881 F.3d 1360, 1367 (Fed. Cir. 2018). Simply reciting "concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea." *TLI*, 823 F.3d at 613; *Elec. Power Grp.*, 830 F.3d at 1355 (the mere "selection and manipulation of information," without any "new source or type of information, or new techniques for analyzing it," "does not transform the otherwise-abstract processes of information collection and analysis"). "The inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art. . . . an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Bascom*, 827 F.3d at 1350; *see also Cellspin Soft, Inc. v. Fitbit, Inc.* 927 F.3d 1306, 1318 (Fed. Cir. 2019) ("even assuming that Bluetooth was conventional at the time of these inventions, implementing a well-known technique with particular devices in a specific combination, like the two-device structure here, can be inventive").

Plaintiffs claim that the patents at issue solved four major obstacles. First, Plaintiffs claim that the collection of data under the patents no longer "requires one to walk around constantly recording encounters + geo + details manually." SAC ¶ 17. Next, a user no longer needs to "convince all his encounters, people and places (a/k/a location relatives), to keep those records as well." *Id*. Third, manual entries could not update relevant information automatically. *Id.* Finally, existing algorithm technology requires that all records be stored in a

central database.  *Id.*  Plaintiff also argues that the patents provided the additional benefits of being a new form of targeting advertising, providing "a nostalgic and experiential way to review URL profiles of stationary members/businesses."  SAC ¶ 21.  Plaintiffs also claim that the patents "yield a revolutionary, technological improvement" by "creating and assigning accounts to stationary tangible locations, . . . creating and assigning accounts to mobile users, . . . storing the encounter . . . in a web searchable medium, as a visit from a user to a virtual site, [and] instructing the system to capture and categorize URL encounters by frequency and time decay."  SAC ¶ 21.

I hold that the asserted patent claims do not contain an inventive concept.  Plaintiffs allege that prior to 2007, existing search engine and search algorithm technology "used records of virtual encounters only to give the best possible results," but would not discern relevant physical location or the history of URL encounters in real life.  SAC ¶ 15-16.  Plaintiffs repeatedly state that the patents "produce something significantly more, that yields a revolutionary, technological improvement."  *See* SAC ¶ 52.  To the contrary, Plaintiffs' patents rely on the use of existing technology to create a computerized version of such logs and do not "focus on a specific means or method that improves the relevant technology."  *See Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1241 (Fed. Cir. 2016).  Plaintiffs have not shown that the patents improved on the searchable database, so much as they have digitized that database.  It does not modify any of the conventional components like GPS, and the inclusion of URLs simply provides more information into the records in such a way that would not be a technological improvement or provide for any unique or unconventional method of using the components in creating the digital record.  Plaintiff alleges that the patented systems "keep dynamic cyber records of physical encounters that constantly update."  SAC ¶ 18.  However, keeping dynamic

cyber records is not an inventive concept- indeed, the URLs upon which Plaintiffs' patent relies are dynamic by nature, not by virtue of the patented systems. Plaintiffs do not claim to have invented the dynamic nature of the URL, or location history. *See* Hearing Tr. at 20:13-14 ("THE COURT: You're not claiming a URL, are you? MR. HOROWITZ: No, no no. Of course not."); SAC at ¶ 28.

The patents at issue further confirm that the patented search and data collection uses conventional techniques without an inventive concept. *See BSG Tech. LLC v. Buyseasons Inc.*, 899 F.3d 1281, 1290-91 (Fed. Cir. 2018) (no issue of material fact where the claim applies "an abstract idea using conventional and well-understood techniques")); *see also Alice,* 573 at 223-224 ("mere recitation of a generic computer" or "limiting the use of an abstract idea to a particular technological environment . . . cannot impart patent eligibility")). Plaintiffs allege that Google introduced a form of personalized search in March 2004, and eventually was included in the normal Google Search in November 2005. SAC ¶ 13. Google then implemented "social search results," based on the interests of a user's social circle, in October 2009. *Id.* Plaintiffs concede that the patents use "the same or similar algorithm used by existing search engines, only with physical encounters that are now searchable online just as cyber encounters were until now." *See* SAC ¶ 18. However, the patent claims themselves provide no algorithm or search function which would improve upon those pre-existing algorithms, but rather, contemplates others inventing such an improvement. *See* SAC ¶ 18, '202 Patent at 17:13-15 ("Algorithms can be easily imagined by those skilled in the art of search engine algorithms that would improve searching"); 20:58-61 ("[A]ll factors used by search engine algorithms today or in the future can be used in the method of the present invention involving using digital histories to improved [sic] web searching."). I therefore hold that the patents at issue are invalid, as they are directed to an

abstract idea and lack an inventive concept. Because the patents are invalid, I decline to address the merits of whether Plaintiff has stated a plausible claim for relief under Fed. R. Civ. P 12(b)(6).

## IV.   CONCLUSION

In conclusion, Defendant's motion to dismiss is granted. Plaintiff's request for leave to file an amended complaint is denied as futile and for repeated failure to cure deficiencies. *See Ruotolo v. City of New York,* 514 F.3d 184, 191 (2d Cir. 2008). Oral argument, currently scheduled for July 29, 2021, is hereby cancelled. The Clerk is instructed to terminate the open motion, ECF No. 75 and civil case 20-cv-2862.


SO ORDERED.

Dated:   July 28, 2021                                         /s/ Alvin K. Hellerstein
        New York, New York                              ALVIN K. HELLERSTEIN
                                                                United States District Judge