

| | 902 Broadway | 212.430.2600 |
|---|---|---|
| | 18th Floor | Fenwick.com |
| | New York, NY 10010-6035 | |

Kevin X. McGann
kmcgann@fenwick.com  |  212.430.2745

August 10, 2023

**VIA ECF**

Honorable Alvin K. Hellerstein
United States Courthouse
500 Pearl Street
New York, New York 10007

      Re:    <u>Weisner v. Google LLC,</u> 1:20-cv-02862-AKH (S.D.N.Y.)

Dear Judge Hellerstein:

      Pursuant to the Court's order regulating proceedings (Dkt. 156), counsel for Defendant Google LLC ("Google") submits this letter regarding its anticipated inequitable conduct defense. The defense would be based on whether Messrs. Weisner's and Nemanov's (collectively, the "Applicants") statement to the U.S. Patent and Trademark Office ("USPTO") that the entire period of delay in responding to a USPTO rejection for more than seven years properly qualifies as "unintentional" as required to revive their abandoned application. The USPTO relied on such a statement to grant Applicants' petition to revive abandoned U.S. Patent Application No. 11/811,165 (the "'165 application"), to which both patents-in-suit[1] claim priority as continuations. If Google proves that the Applicants committed inequitable conduct based on statements made to revive the '165 application, that will render the patents-in-suit unenforceable.

Brief Statement of Facts

      Applicants filed the parent '165 application on June 7, 2007. More than a decade later, Applicants filed the application leading to the '905 patent in October 2018 (U.S. Patent Application No. 16/175,878) and the application leading to the '911 patent in September 2019 (U.S. Patent Application No. 16/580,041).[2] But in 2010, the Applicants' failure to respond to the USPTO rejection of their claims caused the parent '165 application to become abandoned for more than **seven years**.

---

[1] The two patents-in-suit are U.S. Patent Nos. 10,394,905 (the "'905 patent") and 10,642,911 (the "'911 patent"). Both patents share the same disclosure and are nearly identical to the disclosure in the '165 application and both were filed as continuation applications, which can only be filed while the parent application they are continuations of is still pending.

[2] Google provided the Court with the full file histories on a USB drive during the April 3, 2023 claim construction hearing, but has attached excerpts of the histories as Exhibits A, C–E.

Honorable Alvin K. Hellerstein
August 10, 2023
Page 2

Shortly after responding to two initial office actions in 2008 and 2009 rejecting the claims in the '165 Application, Applicants went silent when the USPTO once again rejected their claims in 2009. Specifically, Applicants did not respond to a rejection dated September 30, 2009, within the 3-month response period. Nor did Applicants request an extension of time or respond within the allowable 6-month response period.

Because of this inactivity, on April 13, 2010, the USPTO notified Steven Horowitz, Applicants' patent counsel, that the application was abandoned. Exhibit A (FH-000294–96). The notice of abandonment also explained that the patent examiner tried to call Mr. Horowitz on April 6, 2010, and left a voicemail asking about status, but received no response. *Id.* at 2 (FH-000295). The USPTO at least twice emailed Mr. Horowitz at two different email addresses, patentattorney@aol.com and sh@patentny.com, and two more automated notifications were sent to sh@patentny.com. *Id.* at 1, 3 (FH-000294, -000296). Mr. Horowitz continues to use sh@patentny.com today as evidenced by his July 24, 2023 Motion to Withdraw (Dkt 153 at 1).

Despite repeated notice of abandonment, Applicants took no action on the '165 application until more than ***seven years later***. On June 1, 2017, another patent counsel, Mark Friedman, submitted a form petition to revive the '165 application, claiming that the entire delay was unintentional. According to his own biography, Mr. Horowitz joined Mr. Friedman's firm in 2009 (Exhibit B at 2 (https://friedpat.com/meet-the-team/)), before the abandonment and Mr. Horowitz continued to be involved in prosecution after the petition for revival (FH-000431 listing Mr. Horowitz as participant in interview with examiner in 2018).[3] Mr. Friedman submitted a power of attorney with the petition signed by Mr. Weisner alone. The USPTO denied the power of attorney because Mr. Nemanov had not signed, which he needed to do as the other named inventor.

Mr. Friedman then submitted a second form petition for revival on July 3, 2017, with powers of attorney signed by both Applicants. The petition was an endorsement by the named inventors and their counsel that the "entire delay in filing the required reply from the due date for the reply until the filing of a grantable petition under 37 C.F.R. § 1.137 was unintentional." Exhibit D (FH-000297–99) at 2 (FH-000298). The USPTO granted the petition to revive, relying entirely on the petitioner's duty of candor, including the duty to investigate the circumstances of the abandonment, which the USPTO expressly noted to Applicants in its decision as shown below:

---

[3] Mr. Weisner did not identify Mr. Friedman as having any information responsive to Google's discovery requests, including with respect to the specific prosecution decisions made regarding the '165 application, though he is certainly relevant given Mr. Friedman's direct involvement in reviving the abandoned '165 application. Mr. Friedman and Mr. Horowitz jointly appear on the same interview request form in 2018. Exhibit C (FH-000407–09) at 1 (FH-000407).

> This application has been abandoned for an extended period of time. ==The U.S. Patent and Trademark Office is relying on petitioner's duty of candor and good faith and accepting the statement that "the entire delay in filing the required reply from the due date for the reply until the filing of a grantable petition pursuant to 37 CFR 1.137 was unintentional."== See Changes to Representation of Others Before the United States Patent and Trademark Office, 73 Fed. Reg. 47650 (August 14, 2008), 1334 Off. Gaz. Pat. Office 338 (September 9, 2008) (==applicant obligated under 37 CFR 11.18 to inquire into the underlying facts and circumstances== when providing the statement required by 37 CFR 1.137 to the U.S. Patent and Trademark Office).

Exhibit E (FH-000359–62) at 2 (FH-000360) (Sept. 14, 2017, Decision on Petition).

Analysis

It is implausible that Applicants could have unintentionally delayed prosecuting the abandoned '165 application for over seven years. For example, it is unlikely that Applicants forgot about the application, if they believed the purported invention disclosed in that application was as important and revolutionary as Mr. Weisner alleges in the Second Amended Complaint. *See* Dkt. 72 ¶¶ 12, 18, 24. Indeed, Mr. Weisner appears to have actively monitored Google's personalized search development from 2004 through 2014. *Id.* ¶¶ 13, 14. Google's development, as described by Mr. Weisner, begins before the filing of the '165 application in 2007 and concludes in the middle of when it was abandoned. Mr. Weisner's apparent attention to Google's technological developments over this timeframe contrasts with Applicants' allegedly unintentional seven-year delay in prosecuting their own patent application.

The most reasonable explanation is that Applicants misled the USPTO by falsely claiming the entire seven-year delay was unintentional. Applicants' statement was material, as it led directly to the revival of the '165 application. *See In re Rembrandt Techs. LP Pat. Litig.*, 899 F.3d 1254, 1272–73 (Fed. Cir. 2018) (statement of unintentional delay in maintenance payments was material to patentability as it led the USPTO to revive a patent). Here, if Applicants were aware of, yet failed to respond to, the outstanding September 30, 2009, rejection and subsequent notice of abandonment, then they misled the USPTO by claiming unintentional delay in responding or taking corrective action for seven years.

Delay in responding to the USPTO rejection is not unintentional if it results from a deliberate course of action, even if Applicants believed they could later revive their application. *Id.* at 1273 (finding that those with a genuine belief that a patent could be revived years after the period for payment could have intentionally decided not to make a payment). The "resulting delay cannot be considered as 'unintentional'" because "the abandonment of such application is considered to be a deliberately chosen course of action." *Id.* For example, deferring patent fees and prosecution expenses does not make a delay "unintentional" under 37 C.F.R. § 1.137. Exhibit F, Manual of Patent Examining Procedure § 711.03(c) (9th Ed. Rev. 7) at II.C. Even an acquirer of an abandoned patent application cannot claim the delay was unintentional if the acquirer did not investigate the circumstances. *3D Med. Imaging Sys., LLC v. Visage Imaging, Inc.*, 228 F. Supp. 3d 1331, 1334–35, 1339 (N.D. Ga. 2017) (acquirer of abandoned application intentionally deceived USPTO by claiming unintentional abandonment without investigating why

Honorable Alvin K. Hellerstein
August 10, 2023
Page 4

predecessor failed to timely pay maintenance fees). Here, Applicants' likely knowledge of the USPTO office action, accompanied by a lack of corrective action for more than seven years would signify that the delay was not unintentional.

Telling the USPTO that the more than ***seven years*** of delay was unintentional—despite having intentionally taken or failed to have taken acts resulting in the abandonment of the '165 application and failing to correct it for over half a decade—would amount to inequitable conduct. *Rembrandt Techs.*, 899 F.3d at 1273–74 (statement of unintentional delay was material and, when coupled with intent, constitutes inequitable conduct); *3D Med. Imaging*, 228 F. Supp. 3d at 1338–39; *see also In re Rosuvastatin Calcium Pat. Litig.*, 703 F.3d 511, 519 (Fed. Cir. 2012) (patent applicant has engaged in inequitable conduct when it "(1) misrepresented or omitted information material to patentability, and (2) did so with specific intent to mislead or deceive the PTO").

Inequitable conduct renders a patent unenforceable. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011). Inequitable conduct during the prosecution of a parent patent application may also render patents from related child applications unenforceable. *Agfa Corp. v. Creo Prods. Inc.*, 451 F.3d 1366, 1379 (Fed. Cir. 2006) (inequitable conduct during prosecution of a parent patent application infected continuation patent, rendering it unenforceable). In *Agfa*, the court found a later patent "tainted" by inequitable conduct involving the parent patent because the later patent was a continuation and did not claim "subject matter sufficiently distinct from its parent." *Id.*; *see also Therasense*, 649 F.3d at 1288 ("[T]he taint of a finding of inequitable conduct can spread from a single patent to render unenforceable other related patents and applications in the same technology family."). *Fox Indus., Inc. v. Structural Pres. Sys., Inc.*, 922 F.2d 801, 804 (Fed. Cir. 1990) ("a breach of the duty of candor early in the prosecution may render unenforceable all claims which eventually issue from the same or a related application"). Here, the '905 and '911 patents are related to the same subject matter as the '165 application[4] and the continuation applications from which they issued could never have been filed if the '165 application had remained abandoned. There is no reasonable basis to suggest that the conduct that allowed the '165 application to be revived, if improper, does not infect the '905 and '911 patents. The applications for the '905 and '911 patents could only have been filed because the '165 application was revived.

To identify information relevant to this inequitable conduct defense, discovery into the circumstances of Applicants' communications and activity regarding prosecution of the '165 application around the September 2009 rejection, the 2010 abandonment, and the 2017 revival is necessary. Information regarding the contemporaneous knowledge and rationale of Applicants and their counsel in making these prosecution decisions is key to evaluating Applicants' intent to abandon and revive the '165 application. Such knowledge would be ascertainable, for example, from receipt of USPTO notices or attorney reports to Applicants about the USPTO notices or application status. Documents like these should still be in the possession of Applicants or their

---

[4] The '905 patent, the '911 patent, and the patent that issued from the '165 application all relate to the subject matter of digitally recording and viewing a person's physical activities over time and share the same Abstract, figures, and nearly identical specification.

Honorable Alvin K. Hellerstein
August 10, 2023
Page 5

agents, who were under a duty to preserve evidence—especially if they intended to bring suit against parties like Google whose products they were monitoring as early as 2004. For these reasons, Google seeks discovery into the individuals involved, their activities, and rationale surrounding Applicants' abandonment and revival of the '165 application.

                                       Respectfully submitted,

                                       FENWICK & WEST LLP

                                       Kevin X. McGann (#2842425)

## CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2023, I caused a copy of

**DEFENDANT GOOGLE LLC'S AUGUST 10, 2023 LETTER TO HONORABLE ALVIN K. HELLERSTEIN AND EXHIBITS A THROUGH F**

to be served upon the following in the manner indicated:

| | |
|---|---|
| **Jacob Ginsburg**<br>Jacob Ginsburg, Esq. PLLC<br>One Concord Drive<br>Monsey, NY 10952<br>Tel: 845-371-1914<br>Email: jg@jacobginburglaw.com | *VIA ECF* |
| **Shmuel Nemanov**<br>1361 St. John's Place<br>Apt. 1-B<br>Brooklyn, NY 11213<br>Email: snemanov@gmail.com | *VIA MAIL AND ELECTRONIC MAIL* |

*/s/ Kevin X. McGann*
Kevin X. McGann (NY Bar #2842425)