| UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK | |
| --- | --- |
| SHOLEM WEISNER,<br><br>             Plaintiff,<br>-against-<br><br>GOOGLE LLC and SHMUEL NEMANOV,<br><br>           Defendant and Involuntary Party. | 20 Civ. 2862 (AKH)<br>23 Civ. 8186 (AKH) |

**MEMORANDUM OF LAW
IN SUPPORT OF PLAINTIFF'S MOTION FOR
RECONSIDERATION; OPPOSITION TO GOOGLE'S MOTION TO AMEND ANSWER**

JACOB GINSBURG, ESQ. PLLC
Attorney for Plaintiff
One Concord Drive
Monsey, NY 10952
(845) 371-1914

**Of Counsel:**
JACOB GINSBURG, ESQ.

**TABLE OF CONTENTS**

TABLE OF CONTENTS ...................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ......................................................................................... 1

**Google solely placed Weisner's Medical Condition in issue** ....................................... 1

The Court's Prior Ruling And Google's Fishing Expedition ........................................... 6

**Horowitz's deposition demonstrates Plaintiff didn't put his medical condition in issue** ....... 7

**Google's Amended Answer also attempts to introduce Plaintiff's Medical Condition** ........ 10

**Plaintiff's 8.17.23 Letter to the Court (ECF #164) addressed Google's misconduct** ........... 10

**Google's Amended Answer impermissibly bootstraps on the medical condition Google has inserted into the litigation** ........................................................................................ 16

**Google Has Not Followed the Court's directives in filing an amended answer** ......................... 17

**Googles claim of inequitable conduct is frivolous and inappropriate** ...................................... 17

**CONCLUSION** ............................................................................................................ 20

**TABLE OF AUTHORITIES**

**Cases**

Abbott Labs. v. Sandoz, Inc., 544 F.3d 1341, 1358 (Fed. Cir. 2008) ............................. 18

Allied Colloids Inc. v. Am. Cyanamid Co., 64 F.3d 1570, 1578 (Fed. Cir. 1995) ............................ 18

Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech., 543 F.3d 657, 659 (Fed. Circ. 2008) ........... 12

Burlington Indus., Inc. v. Dayco Corp., 849 F.2d 1418, 1422 (Fed. Cir. 1988) ............................. 18

Exela Pharma Scis., LLC v. Lee, 781 F.3d 1349,1350 (Federal Circuit 2015) ................................ 12

Glycobiosciences, Inc. v. Innocutis Holdings, LLC, 2015 U.S. Dist. LEXIS 74738, *15-16 .............. 12

Hybrids, LLC v. Toyota Motor Corp., No. 03–4121, 2005 WL 189710 (D.Minn. Jan. 27, 2005)

..................................................................................................................... 20

In re Rosuvastatin Calcium Patent Litig.,703 F.3d 511, 519 (Fed.Cir.2012)................................. 20

Kimberly-Clark Corp. v. Johnson Johnson, 745 F.2d 1437, 1454 (Fed. Cir. 1984). ...................... 18

Magnivision, Inc. v. Bonneau Co., 115 F.3d 956, 960 (Fed. Cir. 1997) ......................................... 18

Multiform Desiccants, Inc. v. Medzam, Ltd., 133 F.3d 1473, 1482 (Fed. Cir. 1998)..................... 18

Network Signatures, Inc. v. State Farm Mut. Auto. Ins. Co., 731 F.3d 1239, 1242 (Fed. Cir.

2013) ..................................................................................................................... 20

Network Signatures, Inc. v. State Farm Mut. Auto. Ins. Co., 731 F.3d 1239, 1243 (Fed. Cir.

2013) ..................................................................................................................... 20

Nichia Corp. v. Feit Elec. Co., 2021 U.S. Dist. LEXIS 245834, *15-16 ........................................... 13

Rembrandt Techs., LP v. Comcast of Fla./Pa., LP (In re Rembrandt Techs. LP Patent Litig.), 899

F.3d 1254, 1260 (Federal Circuit, 2018)...................................................................... 15

Therasense v. Becton, Dickinson and Co., 649 F.3d 1276, 1288 (Fed. Cir. 2011)......................... 18

Therasense v. Becton, Dickinson and Co., 649 F.3d 1276, 1289 (Fed. Cir. 2011)......................... 18

Therasense v. Becton, Dickinson and Co., 649 F.3d 1276, 1291 (Fed. Cir. 2011).........................19

Therasense v. Becton, Dickinson and Co., 649 F.3d 1276, 1292 (Fed. Cir. 2011).........................19

Therasense, Inc. v. Becton, Dickinson & Co.,649 F.3d 1276, 1287 (Fed.Cir.2011) (en banc).......20

Therasense, Inc. v. Becton, Dickinson and Co., 649 F.3d 1285, 1287,1290 (Fed. Cir. 2011) (en

banc) ......................................................................................................................................14

## Statutes

35 U.S.C.S. § 285 ............................................................................................................................16

37 C.F.R. § 1.378(c)(3) ....................................................................................................................20

Fed. R. Civ. P. 9(b) ..........................................................................................................................15

Fed. R. Civ. P. Rule 9(b) ..................................................................................................................14

## PRELIMINARY STATEMENT

Plaintiff submits this Memorandum of Law  in Support of his Motion for

Reconsideration pursuant to SDNY Local Rule 6.3 in order to request that the Court reconsider

and reverse its February 7, 2024 Order (ECF #183 ¶2) annexed hereto as **Exhibit 1**:

"With regard to objections to the depositions of Weisner and Nemanov, objections made to answering questions about Weisner's medical conditions while the  patent was pending are overruled. Plaintiff procured the withdrawal of its denial for  abandonment by pleading that he suffered from medical incapacity. Google has the right to probe  that question.").

It is clear from the record that Plaintiff did not "procure[] the withdrawal of its denial

for  abandonment by pleading that he suffered from medical incapacity" (Id.).  Attached hereto

as **Exhibit 2** is a copy of the February 7, 2024 Status Conference Transcript.

Plaintiff also submits this Memorandum in Opposition to Google's Motion to Amend

Answer. (ECF #s 178-180).

## Google solely placed Weisner's Medical Condition in issue

Google's Counsel Marked as Exhibit 5 USPTO (annexed hereto as **Exhibit 3**) contains

Documents including the Petition for Revival of an  Application for Patent Abandoned

Unintentionally under 37 CFR 1.137(a).  As indicated on that  USPTO Revival Application (FH-

000297-298, 328-329), and in the Decision on Petition (FH-000360), the USPTO Decision to

revive stated:

This application has been abandoned for an extended period of time. The U.S. Patent and Trademark Office is relying on petitioner's duty of candor and good faith and accepting the statement that "the entire delay in filing the required reply from the due date for the reply until the filing of a grantable petition pursuant to 37 CFR 1.137 was unintentional." See Changes to Representation of Others Before the United States Patent and Trademark Office, 73 Fed. Reg. 47650 (August 14, 2008), 1334 Off. Gaz. Pat. Office 338 (September 9, 2008) (applicant obligated under 37 CPR 11.18 to inquire into the underlying facts and circumstances when providing the statement required by 37 CPR 1.137 to the U.S. Patent and Trademark Office).

At his January 9, 2024 deposition, Plaintiff's Patent Counsel Horowitz upon being

questioned by Google's Counsel testified:

Q: Right. My point was you made the  decision not to tell the Patent Office about  your
investigation or what you think you found in the investigation about the delay,  right?
MR. GINZBURG [sic]: Objection.
A: Completely false. What you are  saying is completely false. I made the decision to do exactly
what the Patent Office form said to do.
Q: And nothing more?
A No, that's false. You're making -- you're guessing. Don't guess.

**Exhibit 4,** Horowitz deposition Page130 lines 11-23.

Thus, <u>only</u> Google placed Weisner's Medical Condition in issue.  Reconsideration is

appropriate as the Court incorrectly believed that Plaintiff Weisner had put his Medical

Condition in issue with the Patent Office.  That is not the case.

Exhibit 4, shows that Counsel Horowitz upon questioning by Google's Counsel also

testified:

| Page | Line(s) |
|------|---------|
| 77 | 9 A That he had a medical -- that he<br>10 had a serious medical -- I don't know if it<br>11 was an accident or something that he was<br>12 just out of commission. He was literally<br>13 out of commission. He couldn't -- he<br>14 couldn't function to work with me like he<br>15 had been and that he eventually did to work<br>16 on the office action, that he had a serious<br>17 medical problem and --<br>18 Q Are -- sorry. Were you able to<br>19 give --<br>20 A No, I didn't finish. I didn't<br>21 finish. And that it -- and that it was an<br>22 infirmity that specifically affected his<br>23 ability to work and to work with me to<br>24 prepare a response. |
| 115 | 10 Q And that, you believe -- what<br>11 prompted him to come back to you was the<br>12 ending of his incapacity?<br>13 A Correct. |

| | |
|---|---|
| | 14 Q And you're not prepared to discuss<br>15 with me today any more detail about the<br>16 nature of that incapacity or what the<br>17 medical condition was or any treatment<br>18 Mr. Weisner was subject to?<br>19 A Well, he would -- he would know<br>20 all that. I only know he had documentation,<br>21 and it was serious and -- |
| 182-<br>183 | 22 A Generally speaking, my<br>23 investigation revealed that there was<br>24 documentation for serious medical issues<br>25 from reputable physicians and<br>Page 182<br>1 medical-related people. But I did not press<br>2 the client on anything that I thought was<br>3 going to embarrass him, because that wasn't<br>4 necessary, in my view. |
| 184 | 5 A I think I already said that there<br>6 may have been a car accident, but I'm not a<br>7 hundred percent sure of that. So I'm can<br>8 only say what I'm able to say, but there may<br>9 have been. |

The November 8, 2023 deposition of Mr. Nemanov provided prior testimonial evidence

which also confirmed that no inequitable conduct occurred whatsoever:

Q. Following the notice of abandonment 25 in -- in April of 2010, did there come a point in time where you and Mr. Weisner stopped talking about going to other attorneys or other things you could do?
A. It was impossible to talk to him at that time because he -- he was, you know, he can talk for himself. He wasn't -- I'm just going to say he wasn't in a condition to do anything at that time. (**Exhibit 5**, Nemanov Deposition, Page 79 lines 24-25, Page 80 lines 2-9)

Q. Okay. So did Mr. Weisner ever tell  you what prompted him to raise the issue of  reviving your patent application in 2017?
 A. He just told me that he was informed that -- that if you -- that if you -- you can just -- that you can just use psychological problems as an excuse. And I go, wow, okay. And I thought to myself, well, I could also -- I  probably could give you certain psychological problems, but I didn't end up being asked about it. But Mr. Weisner told me that he -- that his psychological problems made it possible because of some law change, and he thought that I could just -- I can do just as well. So I did.
MR. GINSBURG: Objection.
Q. Were you under psychiatric care from 2010 to 2017?

A. Yeah.

Q. For that entire period?

A. Possibly. I'd have to like look, but possibly.

Q. Are there records related to that?

A. Yeah.

Q. Was Mr. Weisner under psychological care from 2010 to 2017 for the entire period?

MR. GINSBURG: Objection.

A. I'm just not -- I'm not -- I will not further comment about Mr. Weisner at all.

MR. GINSBURG: Note my continuing objection to questions about his medical condition or the lack thereof.

Q. Well, sir, you -- it's your understanding that you believe that some combination of your and Mr. Weisner's medical condition is what allowed you to revive your patent application, is that your understanding?

A. Yes.

**Exhibit 5,** Nemanov Deposition, Page 92 lines 3-25, page 93 lines 1-15

Plaintiff Weisner (whose deposition is attached as **Exhibit 6**) without waiver of any

privilege, including his Medical/HIPAA privileges, testified about his serious

medical/psychological condition but failed to name the condition:

| Page | Lines |
|------|-------|
| 193 | 12 A More than seven years, about<br>13 eight years.<br>14 Q Eight years. So when did it<br>15 start?<br>16 A It started late 2008.<br>17 Q Okay. And when did the medical<br>18 condition stop?<br>19 A In the beginning of 2 -- 2017 it<br>20 started getting better.<br>21 Q Okay. Beginning in 2017,<br>22 meaning when, roughly, in 2017?<br>23 A February, March, starting -- I<br>24 started becoming a little bit better.<br>25 Q How did your medical condition |
| 194 | 1 affect you in that time, late 2008 to<br>2 early 2017?<br>3 A Affected me that I wasn't able<br>4 to do anything that a normal person does.<br>5 Q Wouldn't be able to have, like,<br>6 cookouts, parties with friends? What?<br>7 A What parties? I didn't -- I was<br>8 much worse than that. |

| | |
|---|---|
| | 9 Q Okay. So for the entire period<br>10 of late 2008 to early 2017, you couldn't<br>11 do anything?<br>12 A I didn't do anything. |
| 195 | 18 Was it one -- was it a<br>19 condition, or was it multiple conditions?<br>20 A Multiple.<br>21 Q Okay. Were they all from that<br>22 same time range, late 2008 to February<br>23 2017?<br>24 A This basically all happened --<br>25 the main events happened, yeah, like |
| 196 | 1 2000 -- 2008 to the end of 2008, a few<br>2 incidents happened, more than one<br>3 incident.<br>8 Q Okay. Did the condition affect<br>9 your ability to take care of yourself?<br>10 A To a certain extent, yes.<br>11 Q Okay. Did it affect your<br>12 ability to read, write, and understand<br>13 things?<br>14 A Yeah, way behind.<br>15 Q And what period of time did that<br>16 affect your ability to read, write, and<br>17 understand things?<br>18 A What do you mean?<br>19 Q Well, you said the condition<br>20 started late 2008 and continued to early<br>21 2017.<br>22 So was it for that entire period<br>23 of time that you --<br>24 A Well, it got worse and worse.<br>25 But by 2009, late 2009, I was already -- |
| 197 | 1 it was already bad.<br>2 Q Okay. Was it better in 2010?<br>3 A No.<br>4 Q Was it better in 2011?<br>5 A No. Worse.<br>6 Q Was it better or worse in 2012?<br>7 A Got worse.<br>8 Q Okay. Was it better or worse in<br>9 2013?<br>10 A It was about the same.<br>11 Q Okay. Was your condition better<br>12 or worse in 2014?<br>13 A I mean, it was about the same |

| 14 until 2017. Maybe early -- maybe early |
| 15 2017 it started getting better. |

Thus, there is no question that Plaintiff Weisner did not put his medical condition in issue and that only Google has done that.

<u>The Court's Prior Ruling And Google's Fishing Expedition</u>

At the 2023.11.15 Status Conference, a true and correct copy of the Transcript is attached as **Exhibit 7**, the Court denied Google's Motion to Amend Answer to add Abandonment as an Affirmative Defense and to enlarge discovery. " (2023.11.15 Tr. p.3, L.5-9). The Court called Google's request to Depose Plaintiff's prior patent Counsel a "fishing expedition". (2023.11.15 Tr. p.3, L.25, p.4., L1). The Court ruled that the Patent Office in reviving the Patent had found that the delay was unintentional ("The issue was raised by the patent office, and an answer was given. " 2023.11.15 Tr. p.5, Ls. 3-4). At that Status Conference Defendant Google's Counsel McGann argued depositions of Plaintiff's patent Counsel was necessary to show the statements made in the Revival Application were "false" made with "intent to deceive" in the context of a seven year abandonment. (2023.11.15 Tr. p.4 Ls. 3,17- 18). Plaintiff's Counsel objected that the patent office had "given its ruling", and that Mr. Nemanov's deposition showed the delay was the result of "Medical issues" and no "inquiry of counsel in Israel" needs to be done. (2023.11.15 Tr. p.7 Ls. 7-11).

This was reiterated in Plaintiff's Letter ECF #177 filed January 12, 2024 (of which judicial notice is requested), in which Plaintiff wrote the Court to Oppose Google's Application to impermissibly expand the Scope of Discovery.

At Mr. Nemanov's 2023.11.8 deposition, Mr. Nemanov testified that Weisner was

"quite a bit out of his mind", "completely not useful as far as doing something with the patent", was not "communicative in a practical way" in 2009 and 2010, and didn't "get well" until "about 2016, 2017". **Exhibit 5** Nemanov Depo.. p.86 Ls.12-14, p.87, Ls. 11-12, 17-18, p.88, Ls. 6-8, Ls 16-25. Mr. Nemanov testified that he was under psychiatric care and Plaintiff Weisner had psychological problems that would permit revival of the abandoned patent. (**Exhibit 5** Nemanov Depo. p.87, Ls 16-17; p.92, Ls. 13-15, Ls 18-20).

While the Court first denied Google's request to depose Plaintiff's prior patent Counsel in Israel, calling it "fishing expedition" (2023.11.15 Tr. p.3, L.25, p.4, L1), it was upon Google Counsel's representation as to the limited nature of the depositions to Abandonment, namely, to determine whether the Plaintiff's Patent Office Revival Petition's representation that "all the delay was unintentional for the entire period" was "false" made with "intent to deceive" in the context of a "seven year abandonment" (2023.11.15 Tr. p.4 Ls. 3,17-18; p.5, Ls. 9-16), that the Court then permitted the depositions of Plaintiff's prior patent Counsel in Israel. As the Court had ordered it, Plaintiff did not oppose and consented to Google's Motion. Thus, as it was unopposed, the Court formally ordered those depositions. (ECF #s 167; 173-175).

**Horowitz's deposition demonstrates Plaintiff didn't put his medical condition in issue**

As indicated above, Patent Attorney Horowitz's deposition was conducted on 2024-1-9. (**Exhibit 4)** is the Horowitz Deposition transcript.

Mr. Horowitz testified multiple times, to the evident dismay of Defendant Google's Counsel , that his investigation of the period of abandonment, namely 2010 through 2017, showed that Plaintiff Weisner's very serious mental and physical incapacity began before the

abandonment (**Exhibit 4** Horowitz Depo. p.133, Ls 23-24) and continued during the period

2009 through 2017 (**Exhibit 4** Horowitz Depo. pp. 103, Ls.  4-15, 184 Ls 1-9). Horowitz testified

that during the period 2010-2016 Weisner was  not able to respond and Nemanov was not

able to respond without Weisner, that he (Horowitz) knew that in 2010; he testified that

Weisner was seriously incapacitated. (**Exhibit 4** Horowitz Depo.  pp. 93 Ls 4-12; 96 Ls 5-15).

Horowitz made sure that the incapacity was not the lack of funds because they had access to

funds. (**Exhibit 4** Horowitz Depo.  p.104, Ls. 16-17, 20-22; p.106, Ls. 21-23;  Horowitz knew

Weisner had documentation and it was serious (**Exhibit 4** Horowitz Depo.. p.115, Ls 19-21);

Horowitz didn't demand to see the documentation because he didn't want to embarrass

Weisner. (**Exhibit 4** Horowitz Depo. p.116, Ls 6-9, Ls. 24-25). The foregoing clearly supported

the Revival Petition that Horowitz filed was properly granted by the USPTO.  Again, Plaintiff

Weisner did not put his medical condition in issue herein.

As indicated above, Plaintiff's Patent Counsel simply did what the Revival Petition

required.   Plaintiff was ready to provide back-up, but the Patent Office accepted Plaintiff's 37

CFR 1.137(a) Certification.  Google is attempting to impermissibly put Plaintiff's Medical

Condition in issue.  Plaintiff's Counsel argued that this is a Patent Case not a Medical

Malpractice Case at the February 7, 2024 hearing.  There was no Joint Letter submitted prior

to the hearing and the Court based its ruling which is the subject of this Motion based upon

the argument of counsel.  Thus, the Court was correct, Google was on a "fishing expedition".

Therefore, reconsideration and reversal of the Court's prior ruling (ECF #183 ¶2), is

appropriate because Plaintiff did not "procure[] the withdrawal of its denial for  abandonment

by pleading that  he suffered from medical incapacity."   Plaintiff didn't "plead" anything.

Google should not have "the right to probe that question." February 7, 2024 Order (**Exhibit 1 ECF #183 ¶2**). Plaintiff respectfully requests that the Court reconsider and reverse its ruling and deny any further inquiry by Google into Plaintiff's Medical Condition because he did not procure[] the withdrawal of its denial for abandonment by pleading that he suffered from medical incapacity." (Id.).

The deposition given by Mr. Horowitz affirmed that the revival of the patents was filed correctly, after proper investigation and with full candor. Mr Horowitz affirmed that plaintiff's medical issues leading up to and during the intervening years of abandonment were factual and true.

Q But he was -- Mr. Nemanov was in communication with you before just before the September 30th office action that you - that the inventors failed to respond to, right?
A Yes. When I say -- let me - well, yes. And I want to clarify, when I say "he was not able to," I don't mean physically or mentally or -- I don't mean that. I mean that there was a clear understanding -- he felt that -- that Sholem had to be involved. Remember what we're talking about. We're not talking about paying -- making a payment. This could be -- people could misunderstand a petition to revive. It involved strategizing. It involves deciding what you want to do, what the coverage, what kind of coverage you want, and what kind of claims, which claims you want to use and stuff like that. I'm simply saying that my investigation indicated -- revealed to me that he felt that he could not do that without -- just to take over the matter without Sholem Weisner and that -- and that Sholem Weisner had to be involved.
Q So Mr. Nemanov, in your view, made a decision that he couldn't continue to prosecute the applications in 2009?
A I did not say that at all. Kevin, I didn't say that. I don't know where you're getting it from. I'm -
Q Then I don't understand what you're saying. A Well, okay. Let me -- let me a try –
Q Let me –
A No. Let me address your question. They both were very keenly interested in this application. The only reason it got abandoned was because Weisner was incapacitated. They both were keenly interested in this -- it was -- it was an abandonment.
**Exhibit 4**, Horowitz Deposition, Page 70 lines 20-25, Page 71 lines 1-25, Page 72 lines 1-13

Horowitz completed blocked Google's attempt to twist his testimony:

Q Right. My point was you made the decision not to tell the Patent Office about your investigation or what you think you found in the investigation about the delay, right?
MR. GINZBURG: Objection.

A Completely false. What you are  saying is completely false. I made the decision to do exactly what the Patent Office form said to do.
 Q And nothing more?
A No, that's false. You're making -- you're guessing. Don't guess
**Exhibit 4**, Horowitz Deposition, Page130 lines 11-23


Q Do you have any understanding of how these conditions affected Mr. Weisner physically?
MR. GINZBURG: Objection.
 A Yes.
Q Okay. How did they affect Mr. Weisner physically?
A I believe it -- it deeply affected his energy level and ability to focus and his overall health and strength of his body.
**Exhibit 4**, Horowitz Deposition, Page 184 lines 13-25

### Google's Amended Answer also attempts to introduce Plaintiff's Medical Condition

On January 26, 2024 Defendant submitted an amended answer with added defenses and allegations despite no supporting evidence arising from depositions or discovery for their inequitable conduct defense to proceed.

In support of its concocted issue, Google's Counsel sent the attached January 31, 2024 email (**Exhibit 8**) to Plaintiff's Counsel in which it argued based upon the State Law Cases cited that Google had the right to inquire about Plaintiff's Medical Condition and get Plaintiff's medical records which Plaintiff has opposed.  Plaintiff's Medical Privileges need to be respected herein.  Without waiver, Plaintiff testified about his serious disabling medical condition at his January 11, 2024 Deposition, a copy of which is annexed as **Exhibit 6**.  As is clear from the record, having had a fully inquiry made by Counsel Horowitz beforehand, Plaintiff didn't rely upon anything other than the representation in 37 CFR 1.137 that the abandonment was unintentional.

### Plaintiff's 8.17.23 Letter to the Court (ECF #164) addressed Google's misconduct

In Plaintiff's August 17, 2023 Letter (annexed as **Exhibit 9**) Plaintiff  asked the Court to

deny Google's request for a "look back" to 2010 for document discovery of Plaintiff instead of

January 1, 2017 (the date the Court ordered at the August 1, 2023 Conference (that transcript is

annexed hereto as **Exhibit 10** - Tr. p.7 Ls. 23-24; Tr. p.26, L.11). Plaintiff argued "improper

revival" is not an affirmative defense and there is not a scintilla of evidence of "inequitable

conduct" which Google failed to preserve in its Answer. Yet, Google has bootstrapped its

wrongful introduction of Plaintiff's Medical Condition herein as the foundation for its ill-advised

attempt to amend its answer very late in these proceedings.

At the August 1, 2023 Conference ( **Exhibit 10)**, the Court correctly stated that an

"abandoned, revived and issued patent" was "not unenforceable" and as such discovery

thereon is "legally irrelevant":

THE COURT: The patent can't be enforced until after it's issued. If it was abandoned by some
motion within the patent office and then restored, it has no effect on anything in the case. (Tr. Ls.
3-6). …
THE COURT: But if the patent office revived it and issued a patent, it's presumptively valid. (Tr.
Ls. 12-13).
MR. McGANN: Well, that's true of every patent, but sometimes patents are held unenforceable,
and this is an example -- p.27 Ls 14-68).
THE COURT: Not because of earlier abandonment that had been cured. (Tr. p.27 Ls 17-18).
…
THE COURT: … It's an issue of legal relevance. Mr. McGann, will you give me a brief——I
will give you the date in a minute——to the effect that the defense of abandonment remains even
though cured within the patent office? In other words, my words may not be artful, but what I
have in mind is someone in the patent office, after claiming something is abandoned, decides to
restore it to the calendar and then issue a patent, is that an abandonment for law purposes now?
(Tr. p.28 Ls 15-23).

At the August 1, 2023 Conference Google's Counsel also stated: "MR. McGANN: It can

-- as a defendant, we can challenge as a defense in our litigation that it was improperly revived,

and therefore it's unenforceable. We don't have -- people have tried to do this, your Honor. They

have tried to sue the patent office to say that it was improperly revived, and the Federal Circuit

has said that's not reviewable that way, but it is still a defense in litigation. The only course for us

to raise it is in this case. We can't go to the patent office and do anything about it." (Tr.p.28 Ls. 24-25; p.29 Ls 1-7).

At the August 1, 2023 Status Conference, Google's Counsel acknowledged that as to Google "We can't go to the patent office and do anything about it". Indeed, Google as a third party, is debarred from attacking a revival decision. Exela Pharma Scis., LLC v. Lee, 781 F.3d 1349,1350 (Federal Circuit 2015)(third party challenge of PTO revival rulings under the Administrative Procedure Act is not legislatively intended and not subject to third party collateral challenge).

However, as the Court pointed out (supra) Google is also precluded from a "defense" of improper revival: "Improper revival" is not a cognizable defense in an action involving the validity or infringement of a patent. Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech., 543 F.3d 657, 659 (Fed. Circ. 2008); Glycobiosciences, Inc. v. Innocutis Holdings, LLC, 2015 U.S. Dist. LEXIS 74738, *15-16 ("However, the relief Defendants seek would effectively require an affirmative defense to be available, i.e., it would require the litigation exception to impose a condition on reinstatement that could be asserted in litigation, after the PTO has already reinstated a patent. Had Congress intended to create an affirmative defense, it could have done so expressly, as it has in other parts of the Patent Act. … But in Aristocrat, the Federal Circuit made clear that improper revival of an abandoned application cannot give rise to an invalidity by anticipation defense. Indeed, "[t]he threshold issue in [Aristocrat was] whether 'improper revival' may be raised as an invalidity defense in an action involving the infringement or validity of a patent." … The Federal Circuit held that it may not, because "improper revival is [not] 'made a defense' by title 35," and thus it may not be invoked in this manner." Nichia Corp. v.

Feit Elec. Co., 2021 U.S. Dist. LEXIS 245834, *15-16 (internal citations omitted).

Recognizing that it may not affirmatively defend against the USPTO's revival decision, Google's Letter Motion (ECF #s 162,165) concocted an "inequitable conduct" argument for a seven year look back of discovery fishing expedition" (to 2010 – Tr. p.26 L.11), not based upon any facts but rather upon supposition and conjecture: "**If** Google proves that the Applicants committed inequitable conduct based on statements made to revive the '165 application, that will render the patents-in-suit unenforceable. … Here, **if** Applicants were aware of, yet failed to respond to, the outstanding September 30, 2009, rejection and subsequent notice of abandonment, then they misled the USPTO by claiming unintentional delay in responding or taking corrective action for seven years." (ECF #162, Letter Motion p.1,3; emphasis supplied). Google also argues that it is "implausible" that Applicants could have "unintentionally delayed prosecuting the abandoned '165 application" and that the "petition was an endorsement" the "entire delay" was "unintentional" (Id. p.2) and concludes "The most reasonable explanation is that Applicants misled the USPTO by falsely claiming the entire seven-year delay was unintentional." (Id. pp.2,3).

Plaintiff asks the Court to take judicial notice of its docket with respect to the ECF citations herein.

Google's conjecture that it is "implausible" for a seven year delay to occur without there having been inequitable conduct thus flies in the face of the very USPTO document (the USPTO's grant of Applicant's petition to revive) that Google incorporates into the top of page 3 of its Letter Motion.  In granting Plaintiff (then Applicant's) petition to revive, the USPTO obviously knew the exact length of the delay and specifically noted that "this Application has been abandoned for an extended period of time".  (Id.). Obviously, the fact of the seven year

delay in revival did not lead the USPTO to conclude that the revival was improper or that its rules governing a proper revival must have been breached. Google's conjecture that the mere fact of a seven year delay suggests inequitable conduct is a baseless, and spurious conjecture.

In point of fact, Plaintiff (then Applicant) and his then Patent Counsel Horowitz investigated the underlying facts and circumstances of the unintentional abandonment to make sure that it was in fact unintentional abandonment by USPTO rules and standards prior to filing the petition to revive. No false statements or false omissions were made to the USPTO.

Google's "If", "Implausible", "must have misled" conjecture argument to support its Letter Motion's request for a seven year look back "fishing expedition" also mischaracterized the evidentiary standard needed for "inequitable conduct". The standard of proof required for "inequitable conduct" is greater than Fed. R. Civ. P. Rule 9(b)'s particularity requirement for fraud. Inequitable conduct, while a broader concept than fraud, must be pled with particularity under Fed. R. Civ. P. 9(b). This particularity, the Federal Circuit has noted, requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the United States Patent and Trademark Office (USPTO). The Federal Circuit added two additional requirements: (1) knowledge of the withheld material information or of the falsity of the material misrepresentation, and (2) specific intent to deceive the USPTO. Front Row Techs., LLC v. NBA Media Ventures, LLC, 163 F. Supp. 3d 938, 946.

Inequitable conduct thus requires proving by clear and convincing evidence that the Applicant failed to disclose material information (or disclosed false information) with the specific intent to deceive the USPTO. Therasense, Inc. v. Becton, Dickinson and Co., 649 F.3d 1285, 1287,1290 (Fed. Cir. 2011) (en banc). "A finding that the misrepresentation or omission amounts to gross negligence or negligence under a "should have known" standard does not

satisfy this intent requirement". Id. at 1290. Google would thus have to show by clear and convincing evidence that Plaintiff, (then Applicant) made false statements or misleadingly false omissions to the USPTO and did so with specific intent to deceive the USPTO. Nothing in Google's Letter Motion comes close to forming a basis for alleging both false material information and intent to deceive the USPTO (by clear and convincing evidence).

Google's Letter Motion and Google's proposed Amended Answer both implicitly acknowledge that it has no basis for meeting Fed. Civ. P. 9(b)'s particularity for fraud requirements, let alone alleging the two elements of an inequitable conduct defense. Google's Answer (ECF #131) failed to allege or preserve the inequitable conduct defense. In fact, nowhere in Google's Answer do the words "inequitable conduct" even appear. It is difficult to understand what Google has "learned" since December 22, 2022 when it filed its Answer, (or since January 22, 2021 when the Plaintiff's Second Amended Complaint was filed – ECF #72) to support its request for discovery on this "issue". Apparently nothing, since its Letter Motion is full of words like "if", "implausible", "must have misled" conjecture argument without any clearly asserted facts.

Other than surmise and conjecture about a seven year period which the USPTO was aware of yet granted revival of and then issued Plaintiff's patent, Google's Letter Motion (for a seven year look back to 2010 for discovery of Plaintiff) is devoid of any facts, let alone material facts, upon which its alleged defense of inequitable conduct could be based.

Google's Motion's (ECF #s 162,165) citation to Rembrandt Techs., LP v. Comcast of Fla./Pa., LP (In re Rembrandt Techs. LP Patent Litig.), 899 F.3d 1254, 1260 (Federal Circuit, 2018) in support of Google's need for discovery dating back to 2010 due to its non-preserved-in-its-

Answer "inequitable conduct" defense is misplaced.  <u>Rembrandt</u> an "exceptional" case under 35 U.S.C.S. § 285, found that "appellant's conduct, and conduct that was attributable to appellant, showed that appellant litigated the case in an unreasonable manner, including its wrongful inducements, spoliation, and the assertion of fraudulently revived patents".  (id.). None of that is even close to being present in our case. Again, as Google's Letter Motion Exhibits plainly show, Plaintiff's patent was properly revived then issued by the USPTO.  Herein, Plaintiff simply revived his Patents.

Thus, Google's "fishing expedition" for discovery for the period 2010-2017, as requested in its Letter Motion must be denied because it is predicated on an "affirmative defense - improper revival" which was rejected by the Federal Circuit in Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech., 543 F.3d 657, 659 (Federal Circuit 2008), et al., supra, and may not be maintained under the guise of inequitable conduct which is wholly lacking herein.  Based upon the foregoing,  Google's Letter Motion should be denied.

**<u>Google's Amended Answer impermissibly bootstraps on the medical condition Google has inserted into the litigation</u>**

On January 26, 2024 Defendant submitted an amended answer with added defenses and allegations despite no supporting evidence arising from depositions or discovery for their inequitable conduct defense to proceed.

**<u>Google Has Not Followed the Court's directives in filing an amended answer</u>**

The Court in its November 15, 2023 Order(Exhibit 11, ECF #167 ¶1) ordered that "The Defendant may take the depositions of the two attorneys who prosecuted the patents, Steven Horowitz and a Mr. Friedman, both of whom live in Israel, provided that they complete such by January 17, 2024. If Defendant wishes to move to amend its answer to add this defense **in light**

**of the discovery** obtained, it shall do so by January 26, 2024." (Emphasis supplied).

Google was only granted leave to amend their answer pending new information they hoped to find during deposition discovery. Indeed, quite the opposite occurred whereby all discovery and additional depositions only confirmed that no form of inequitable conduct had occurred. Indeed, the depositions of Horowitz, Nemanov and Weisner, showed that there was no inequitable conduct and in point of fact, Weisner's serious medical condition was the cause of the unintentional abandonment. Google, against the Court's directive has proceeded to amend its answer without a scintilla of relevant new information or evidence to justify that. This serves only to burden Plaintiff with further litigation, legal fees and personal vexation if not abuse from Google as to the events of and concerning his serious medical condition which occurred many years ago. Google's fishing expedition caught no fish and indeed underscores the irrelevant, abusive and vexatious nature of Googles motion practice in this case.

In Google's prior argument and submissions Google did not attach the complete depositions of Horowitz, Nemanov and Weisner, but rather it cherry-picked and disingenuously argued that Nemanov "knew" the Patent had been abandoned, but Google failed to inform the Court that Nemanov, Horowitz and Weisner clearly testified that Weisner's serious medical condition meant that the Patent could not be revived until 2017. See above.

**Googles claim of inequitable conduct is frivolous and inappropriate**

Defendant Google was instructed by the court that Google had an opportunity to amend their answer if new documents or testimony was found to support their assertion of inequitable conduct ("If Defendant wishes to move to amend its answer to add this defense **in light of the discovery** obtained" Exhibit 11). In fact, after all the requested depositions were held the

combined testimonies completely contradicted Defendant Googles allegations of inequitable conduct. Despite this Google filed a motion to amend Google's answer by making material misrepresentations of both the Horowitz and Nemanov depositions and circuit court opinions.

Google attempts to draw out and prolong the case by resorting to prejudicial tactics such as use of a spurious Inequitable conduct defense in order to impermissibly "increas[e] the complexity, duration and cost of patent infringement litigation that is already notorious for its complexity and high cost." See Therasense v. Becton, Dickinson and Co., 649 F.3d 1276, 1288 (Fed. Cir. 2011). Defendants behavior is prejudicial to Plaintiff Weisner, does not address their infringement of Weisner's patents and is not in line with the Court's directives.

In the Therasense v. Becton, Dickinson and Co., opinion the Court states that " Inequitable conduct "has been overplayed (Id.), is appearing in nearly every patent suit, and is cluttering up the patent system." Kimberly-Clark Corp. v. Johnson Johnson, 745 F.2d 1437, 1454 (Fed. Cir. 1984). "[T]he habit of charging inequitable conduct in almost every major patent case has become an absolute plague. Reputable lawyers seem to feel compelled to make the charge against other reputable lawyers on the slenderest grounds, to represent their client's interests adequately, perhaps." Burlington Indus., Inc. v. Dayco Corp., 849 F.2d 1418, 1422 (Fed. Cir. 1988); see also Abbott Labs. v. Sandoz, Inc., 544 F.3d 1341, 1358 (Fed. Cir. 2008); Multiform Desiccants, Inc. v. Medzam, Ltd., 133 F.3d 1473, 1482 (Fed. Cir. 1998); Magnivision, Inc. v. Bonneau Co., 115 F.3d 956, 960 (Fed. Cir. 1997); Allied Colloids Inc. v. Am. Cyanamid Co., 64 F.3d 1570, 1578 (Fed. Cir. 1995); Molins, 48 F.3d at 1182. Therasense v. Becton, Dickinson and Co., 649 F.3d 1276, 1289 (Fed. Cir. 2011).

Further Google in no way meets the burden of proving inequitable conduct in the Circuit

Court's threshold set forth in their opinion that; "the party alleging inequitable conduct bears the burden of proof, the "patentee need not offer any good faith explanation unless the accused infringer first . . . prove[s] a threshold level of intent to deceive by clear and convincing evidence." Star, 537 F.3d at 1368. The absence of a good faith explanation for withholding a material reference does not, by itself, prove intent to deceive. Therasense v. Becton, Dickinson and Co., 649 F.3d 1276, 1291 (Fed. Cir. 2011).

Further the reason for unintentional abandonment is immaterial outside of egregious misconduct as the Circuit Court goes on to say " After all, the patentee obtains no advantage from misconduct if the patent would have issued anyway. See Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 245 (1933(("The equitable powers of the court can never be exerted in behalf of one . . . who by deceit or any unfair means has gained an advantage.") (emphasis added) (internal citations omitted). Moreover, enforcement of an otherwise valid patent does not injure the public merely because of misconduct, lurking somewhere in patent prosecution, that was immaterial to the patent's issuance.

"Although but-for materiality generally must be proved to satisfy the materiality prong of inequitable conduct, this court recognizes an exception in cases of affirmative egregious misconduct. This exception to the general rule requiring but-for proof incorporates elements of the early unclean hands cases before the Supreme Court, which dealt with "deliberately planned and carefully executed scheme[s]" to defraud the PTO and the courts. Hazelr-Atlas, 322 U.S. at 245, 64 S.Ct. 997. Therasense v. Becton, Dickinson and Co., 649 F.3d 1276, 1292 (Fed. Cir. 2011).

In a different case Network Signatures, Inc. v. State Farm Mut. Auto. Ins. Co a threshold

for inequitable conduct is established as "To prove inequitable conduct, the challenger must show by clear and convincing evidence that the patent applicant (1) misrepresented or omitted information material to patentability, and (2) did so with specific intent to mislead or deceive the PTO." In re Rosuvastatin Calcium Patent Litig.,703 F.3d 511, 519 (Fed.Cir.2012) (citing Therasense, Inc. v. Becton, Dickinson & Co.,649 F.3d 1276, 1287 (Fed.Cir.2011) (en banc)). "Materiality and intent must be separately established." Id; Network Signatures, Inc. v. State Farm Mut. Auto. Ins. Co., 731 F.3d 1239, 1242 (Fed. Cir. 2013).

The current regulation, 37 C.F.R. § 1.378(c)(3), requires only a statement that the delay was "unintentional." The standard PTO form requires no details for "unintentional" delay, and contains the preprinted "statement" that: "The delay in payment of the maintenance fee to this patent was unintentional," without requesting further detail: "The record shows no irregularity in Mr. Karasek's actions. He submitted the NRL petition on the form provided by the PTO; the form does not require a statement of the reasons for the initial non-payment and for the changed position. In Field Hybrids, LLC v. Toyota Motor Corp., No. 03–4121, 2005 WL 189710 (D.Minn. Jan. 27, 2005) the court held that there was not inequitable conduct in representing that the delay was unintentional, for the attorney "simply used the standard language required by federal regulations." Id. at *9. Network Signatures, Inc. v. State Farm Mut. Auto. Ins. Co., 731 F.3d 1239, 1243 (Fed. Cir. 2013).

## <u>CONCLUSION</u>

The Court should grant Plaintiff's Motion for Reconsideration and deny Google's Motion to Amend Complaint.

Dated: Monsey, New York          Respectfully submitted.
February 20, 2024                  JACOB GINSBURG, ESQ. PLLC

_/s/Jacob Ginsburg_
By: Jacob Ginsburg, Esq.
One Concord Drive
Monsey, NY 10952
(845) 371-1914
Attorney for Plaintiff