**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SHOLEM WEISNER and SHMUEL NEMANOV )
              )   Case No.:  20-cv-02862-AKH
     Plaintiff and Involuntary Plaintiff  )   ("*Weisner I*")
              )   Case No.:  23-cv-08186-AKH
  v.             )   ("*Weisner II*")
              )
GOOGLE LLC        )
              )
     Defendant       )
              )
              )

---

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT ON**
**AFFIRMATIVE DEFENSES OF INEQUITABLE CONDUCT**
**AND PROSECUTION LACHES**

---

    Comes the Plaintiff, SHOLEM WEISNER, pursuant to Local Civil Rule 56.1 and Federal

Rule of Civil Procedure 56, by and through counsel, and provides the following Memorandum in

support of his Motion for Summary Judgment on Google's affirmative defenses of inequitable

conduct and prosecution laches.

1

## **TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES………………………………………………………...ii-iv

INTRODUCTION………………………………………………………....…..1-3

SUMMARY JUDGMENT STANDARD…………………………………………………….3-4

RELEVANT PROCEDURAL BACKGROUND……………………………………………4-5

RELEVANT FACTS………………………………………………..……………...5-9

ARGUMENT……………………………………………………………...…9-30

   I.   Google cannot establish Inequitable Conduct by clear and convincing evidence……..9-18

      a.  There is no evidence in the record of misrepresented or omitted
         information material to the Petition to Revive the '165 Application………….11-13
      b.  There is no evidence in the record to establish that the Petition to Revive
         would <u>not</u> have been granted if more information *had* been provided……….13-16
      c.  There is no evidence in the record of specific intent to deceive or mislead
         the PTO………………………………………………………………….16-17
      d.  Specific intent to deceive is not the single most reasonable inference
         to be drawn from the evidence……………………………………………..17-18

   II.   Google cannot establish that it is entitled to the defense of Prosecution Laches……..18-30

      a.  There is no rebuttable presumption………………………………………...20-21
      b.  There was no unreasonable or unexplainable delay between June of
         2007 and February of 2015…………………………………………………21-25
      c.  There was no unreasonable or unexplainable delay after February of 2015….25-29
      d.  Because Google cannot establish that any period of delay was unreasonable
         *and* unexplainable, any possible prejudice is irrelevant………………………29-30

CONCLUSION………………………………………..………………………...30-31

i

## **TABLE OF AUTHORITIES**

**Cases:**                                                                                                               **Page(s)**

*A.C. Aukerman Co. v. R.L. Chaides Const. Co.*,
    960 F.2d 1020 (Fed. Cir. 1992)……………………………………………………20, 29

*A & E Prods. Grp., L.P. v. Mainetti USA Inc.*,
    No. 01 CIV. 10820 (RPP), 2004 WL 345841 (S.D.N.Y. Feb. 25, 2004)……………18, 28

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)…………………………………3

*Baker v. City of New York*,
    551 F. Supp. 3d 258 (S.D.N.Y. 2021)…………………………………………………3, 18

*Bristol–Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*,
    326 F.3d 1226 (Fed. Cir. 2003)……………………………………………….……10, 18

*Burlington Indus., Inc. v. Dayco Corp.*,
    849 F.2d 1418 (Fed.Cir.1988)……………………………………………...………..10

*Cancer Research Tech. Ltd. v. Barr Labs., Inc.*,
    625 F.3d 724 (Fed.Cir.2010)……………………………………………...……18, 21, 29

*Celotex Corp. v. Catrett*,
    477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)…………………………………3

*Chiron Corp. v. Genentech, Inc.*,
    268 F. Supp. 2d 1139 (E.D. Cal. 2002)……………………………………….………..29

*Coutard v. Mun. Credit Union*,
    848 F.3d 102 (2d Cir. 2017)…………………………………………………………..4

*Dayco Products, Inc. v. Total Containment, Inc.*,
    329 F.3d 1358 (Fed. Cir. 2003)……………………………………………...……10, 12, 17

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
    575 F.3d 1312 (Fed. Cir. 2009)……………………………………………..4, 11, 21

*Ferguson Beauregard/Logic Controls Div. of Dover Res., Inc. v. Mega Sys., LLC*,
    No. 99–CV–437, Slip Op. (E.D.Tex. Aug. 14, 2000)………………………….……4, 11

*FMC Corp. v. Manitowoc Co., Inc.*,
    835 F.2d 1411, 5 USPQ2d 1112 (Fed.Cir.1987)……………………………………...16

*Hyatt v. Hirshfeld*,
   998 F.3d 1347 (Fed. Cir. 2021)…………………………………..….20, 22, 23, 25, 29

*ICOS Vision Sys. Corp. N.V. v. Scanner Techs. Corp.*,
   No. 10 CIV 0604 PAC, 2012 WL 512641 (S.D.N.Y. Feb. 15, 2012)…………..………4, 18

*In re Bogese*,
   303 F.3d 1362 (Fed.Cir.2002)…………………………………..….21, 22, 23, 25, 29, 30

*In Re Rembrandt Technologies LP v. Comcast of Florida/Pennsylvania, LP*,
   899 F.3d 1254 (Fed. Cir. 2018)……………………………………………...…….14

*In re Rosuvastatin Calcium Patent Litig.*,
   703 F.3d 511 (Fed. Cir. 2012)……………………………………………...……9

*Intuitive Surgical, Inc. v. Computer Motion, Inc*.,
   No. CIV.A. 01-203-SLR, 2002 WL 31833867 (D. Del. Dec. 10, 2002)…………..….21, 30

*Kingsdown Med. Consultants, Ltd. v. Hollister Inc*.,
   863 F.2d 867 (Fed. Cir. 1988)……………………………………………..10, 27

*Network Signatures, Inc. v. State Farm Mut. Auto. Ins. Co.*,
   731 F.3d 1239 (Fed. Cir. 2013)……………………………………………13, 16

*Nicholas v. Bratton*,
   376 F. Supp. 3d 232 (S.D.N.Y. 2019)……………………………………...…….4

*Sauder Mfg. Co. v. J Squared, Inc*.,
   No. 3:14 CV 962, 2017 WL 11541154 (N.D. Ohio July 19, 2017)………………………13

*SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*,
   580 U.S. 328, 137 S. Ct. 954, 197 L. Ed. 2d 292 (2017)………………………………20

*Scott v. Harris*,
   550 U.S. 372, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007)………………………………4

*Therasense, Inc. v. Becton, Dickinson and Co.*,
   649 F.3d 1276 (Fed. Cir. 2011)……………………………………………10, 14, 17

*Ulead Systems, Inc. v. Lex Computer & Management Corp.*,
   351 F.3d 1139 (Fed. Cir. 2003)……………………………………………...……17

*Wanlass v. Gen. Elec. Co*.,
   148 F.3d 1334 (Fed. Cir. 1998)……………………………………..………………20

iii

*Webster Electric v. Splitdorf Electric*,
    264 U.S. 463 (1924)……………………………………………………..22, 23, 25, 29

*Woodbridge v U.S.*,
    263 U.S. 50 (1923)…………………………………………...…………..22, 23, 25, 29

**Rules:**                                                                    **Page(s)**

Fed. R. Civ. P. 56…………………………………………………………………..…..3, 4

**Statutes:**                                                                   **Page(s)**

35 U.S.C. § 286…………………………………………………………………………..20

## INTRODUCTION

In its Answers to the operative Complaints in these consolidated matters, Google asserts the affirmative defenses of inequitable conduct and prosecution laches. Despite having over five years since the Complaint was filed in *Weisner I*, Google has completely failed to develop any evidence with which to establish a genuine issue as to the facts material to either defense. Rather than merely defending itself on the merits of the patent infringement claims, █████████████

████████████████████████████████

████████████████████████████████

███████

As set out hereinbelow, Google hired a private investigator and ██████████████

████████████████████████████████ a

tactic that this Court later put a stop to. SUMF, ¶¶ 21, 22. Google also disclosed an expert medical doctor, with whom it shared Weisner's confidential medical information, only to never produce any opinion or report from that (or any other) doctor █████████████████

SUMF, ¶ 25. Unable to produce any competent evidence to refute █████████████

by the close of discovery, Google still amended its Answers to assert these affirmative defenses based on nothing more than speculation, innuendo, and legally insufficient inference.

Plaintiff, on the other hand, has produced the █████████████████

████████████████████████████████

████████████████████████████████

[1] ██████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████



█████████████████████████████████ SUMF, ¶ 13. ████████

████████████████████████████████████████

SUMF, ¶ 14. ████████████████████████████ *Id*. ████████

████████████████████████████████████████

████████████████████████████████████████

SUMF, ¶ 14(b). ████████████████ is exactly the same conclusion initially reached eight

years ago by Attorney Steven Horowitz, based on his own investigation prior to filing a Petition

to Revive the '165 Application.[2] Google alleges that Horowitz failed to conduct "a reasonable

investigation;" however, as explained below, Horowitz not only conducted a thorough

investigation, but his conclusion that ████████████████████████████

██████████████████████████ has now been unequivocally

confirmed by ████████████████ SUMF, ¶¶ 13, 14(b), 45.

Accordingly, after over five years of litigation and Google's extensive discovery (and extra-

judicial investigations) on these subjects, Plaintiff has more than ample evidence of ████████

in the form of both contemporaneous and ████████████ - while Google has nothing but

supposition. The evidence in the record is clearly insufficient to establish a genuine issue of fact

as to either defense, such that no reasonable trier of fact could find either defense appropriate. With

respect to the elements of both defenses, there is a complete lack of direct evidence, and there is

---

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████ SUMF, ¶ 13.

[2] As used herein, "the '165 Application" refers to U.S. Patent Application No. 11/811,165, under
which the applications
that issued as the patents-in-suit (the '905, '911, '839, '068 and '667 Patents) were filed as
continuations. SUMF, ¶¶ 63, 68-71.

no indirect evidence which can reasonably support an inference of the required facts. The circumstances related to the prosecution of the relevant patents (and applications) do not even begin to resemble the types of conduct which these defenses have historically and <u>exclusively</u> been employed by courts to redress. As to each element, of both defenses, there is no genuine issue of material fact because there is a complete lack of the required evidence. For the reasons set out below, Plaintiff Weisner respectfully requests that the Court enter summary judgment striking Google's affirmative defenses of inequitable conduct and prosecution laches.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of pointing out evidence in the record, "which it believes demonstrate[s] the absence of a genuine issue of material fact ...." *Baker v. City of New York*, 551 F. Supp. 3d 258, 264–65 (S.D.N.Y. 2021) (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant may support an assertion that there is no genuine dispute of any material fact by "showing ... that [the] adverse party cannot produce admissible evidence to support the fact." *Id*., (*quoting* Fed. R. Civ. P. 56(c)(1)(B)). If the movant fulfills its preliminary burden, the onus shifts to the non-movant to raise the existence of a genuine issue of material fact. *Id*., (*citing* Fed. R. Civ. P. 56(c)(1)(A); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

The applicable substantive law identifies which facts are material. *Anderson*, 477 U.S. at 248. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. *Id*. Courts should "decline to infer facts to support a claim that must be pled with particularity," as an Answer (alleging inequitable conduct) with anything less "will not be

sufficient to unleash the mischief" of the defense. *Exergen Corp. v. Wal-Mart Stores, Inc*., 575 F.3d 1312, 1328 (Fed. Cir. 2009) (*quoting Ferguson Beauregard/Logic Controls Div. of Dover Res., Inc. v. Mega Sys., LLC*, No. 99–CV–437, slip op. at 10 (E.D.Tex. Aug. 14, 2000)).

In cases involving cross-motions for summary judgment, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration. *Nicholas v. Bratton*, 376 F. Supp. 3d 232, 257 (S.D.N.Y. 2019) (*citing Coutard v. Mun. Credit Union*, 848 F.3d 102, 114 (2d Cir. 2017)). The court resolves all ambiguities and draws all factual inferences in favor of the nonmovant, but "only if there is a 'genuine' dispute as to those facts." *ICOS Vision Sys. Corp. N.V. v. Scanner Techs. Corp.,* No. 10 CIV. 0604 PAC, 2012 WL 512641, at *4 (S.D.N.Y. Feb. 15, 2012) (*quoting Scott v. Harris,* 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (*citing* Fed.R.Civ.P. 56(c)). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Id*.

## RELEVANT PROCEDURAL BACKGROUND

In these consolidated actions, Plaintiff claims that Google has infringed on five Continuation Patents.[3] *Weisner I*, Dkt. 15; *Weisner II*, Dkt. 10. The operative Amended Complaint in *Weisner I* was filed on June 16, 2020. *Weisner I*, Dkt. 15. The operative Amended Complaint in *Weisner II* was filed on September 28, 2023. *Weisner II*, Dkt. 10. Seventeen months after fact-discovery in *Weisner I* closed,[4] and shortly before fact discovery in *Weisner II* closed,[5] Google amended its Answers in both matters, asserting the affirmative defenses of inequitable conduct and

---

[3] The patents-in-suit, the '905 and '911 Patents (in *Weisner I*), and the '839, '068 and '667 Patents (in *Weisner II*) are all Continuation Patents of the '871 Patent. SUMF, ¶¶ 63, 68-71.
[4] Fact discovery in *Weisner I* closed on January 17, 2024. *Weisner I*, Dkt. 167, ¶ 2.
[5] Fact discovery in *Weisner II* closed on June 30, 2025. *Weisner II*, Dkt. 61.

prosecution laches. *Weisner I*, Dkt. 119, Pages 33-63 of 67, ¶¶ 16-134; and, *Weisner II*, Dkt. 304, Pages 25-56 of 59, ¶¶ 9-127.Thereafter, the Court ordered that motions for summary judgment as to these affirmative defenses be filed by July 31, 2025. *Weisner I*, Dkt. 318; *Weisner II*, Dkt. 132.

## RELEVANT FACTS

On June 7, 2007, on behalf of Plaintiff Weisner ("Weisner") and Involuntary Plaintiff Nemanov ("Nemanov"), Attorney Steven Horowitz ("Horowitz") filed U.S. Patent Application No. 11/811,165 ("the '165 Application"), titled, "Method and Apparatus for a Digital Leg History," with the USPTO.[6] SUMF, ¶¶ 2, 3. Between the filing of the '165 Application, and September 30, 2009, Attorney Horowitz (on behalf of Weisner and Nemanov) continually responded in a timely fashion to requests for action from the PTO examiner, including the cancellation and amendment of various claims in the application in response to the examination. SUMF, ¶ 5. █████████ ██████████████████████████████████████████████████████████████ ██████████████████████████ SUMF, ¶ 6. *Id.* ████████████████ ███████████████████████████████████████████████ █████████████████████████████████ SUMF, ¶¶ 12, 24(a).

On September 30, 2009, the PTO issued a Non-Final Office Action rejecting all pending claims in the '165 Application. SUMF, ¶ 7. Horowitz sent several emails in an attempt to notify both Weisner and Nemanov of the September 30, 2009, Office Action, and that "failure to respond by March 29, 2010, would cause the '165 Application to be abandoned." SUMF, ¶¶ 8, 10. Weisner never saw the emails, and Horowitz never received any response from Weisner. SUMF, ¶¶ 9, 10. Horowitz came to learn, at that time, that ████████████████████████████████████

---

[6] "USPTO" refers to the United States Patent and Trade Office, and is also referred to herein as the "PTO."

████████ and, even though he was able to speak once before the deadline with Nemanov, they couldn't do anything because ██████████████████████ and Nemanov "felt strongly that Weisner must be involved" in any response. SUMF, ⁋ 11. For those reasons, no response was filed to the September 30, 2009, Office Action; and, on April 13, 2010, the PTO mailed to Horowitz a Notice of Abandonment of the '165 Application. SUMF, ⁋⁋ 16, 17.

████████████████████████████████████████████
████████████████████████████████ SUMF, ⁋ 14(b). ████████
████████████████████████████████████████████
█████████████ SUMF, ⁋ 14(b). ██████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
█████████████ SUMF, ⁋⁋ 19, 20, 23. ████████████████
████████████████████████████████████████████
████████████████████████████████████████████
█████████████ SUMF, ⁋⁋ 14(b)(c). ██████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████ SUMF, ⁋⁋24(e)(f). ████████████████████████████
████████████████████████████████████████████
████████████████████████████ SUMF. ⁋ 23.

Weisner testified that he didn't even think about the patent again until sometime in early

2017, ███████████████████████████████ SUMF, ¶ 27. ████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████████████ SUMF, ¶¶

24(e)(f). Weisner testified that he recalls having had a conversation at a schvitz (where he would

go to meditate), sometime in early 2017, with a man who happened to be a patent attorney. SUMF,

¶ 27. In the course of that conversation, Weisner remembered and mentioned to the lawyer that he

"once had a patent;" but, when the lawyer asked him what had happened with it, Weisner replied,

"I don't know. I just – I don't know." *Id*. In response, the lawyer "suggested he do something about

it." *Id*. Weisner testified that he was not aware as of that conversation that the '165 Application

had been deemed "abandoned," but shortly after the conversation, he contacted Attorney Horowitz.

SUMF, ¶ 28. As of 2017, Horowitz had relocated and was then employed by the firm of Dr. Mark

Friedman in Israel. SUMF, ¶ 29.

On June 1, 2017, under the electronic signature[7] of Friedman, Horowitz prepared and

submitted a Petition to Revive the abandoned '165 Application to be filed with the PTO. SUMF,

¶¶ 31, 40. The form required by the USPTO was prepopulated with a required "Statement"[8] to the

effect that, "The entire delay in filing the required reply from the due date for the required reply

until the filing of a grantable petition under 37 CFR 1.137(a) was unintentional." SUMF, ¶ 34.

---

[7] Dr. Friedman testified that everything filed from his office bore his electronic signature on it
(even if actually done by his partner, Attorney Horowitz) "for insurance reasons." SUMF, ¶¶ 35,
37. Dr. Friedman also testified that Attorney Horowitz exclusively did the professional work
related to the Weisner/Nemanov patent applications, and "basically handl[ed] his client[s] solo."
SUMF, ¶ 36.
[8] As set out in more detail hereinbelow, 37. C.F.R. § 1.137(b)(4) requires this statement.

Horowitz had not spoken with Weisner at all between 2009 and when Weisner contacted him in 2017 about reviving the '165 Application. SUMF, ¶ 45. Being sensitive to what the Patent Office considered an appropriate basis for filing a petition to revive a patent application that was abandoned unintentionally, Horowitz conducted an investigation prior to filing the Revival Petition. SUMF, ¶¶ 41, 46.[9] Horowitz made notes about his investigation (which included speaking with both Weisner and Nemanov), and his investigation revealed to his professional satisfaction that ████████████████████████████████████████████████████████████████████ ███████████████████████████████████████ SUMF, ¶ 45.[11] As a result of his investigation, and in accordance with examples published by the PTO as to when an abandonment will be considered "unintentional," Horowitz determined that he could represent to the PTO that the entire period of abandonment of the '165 was, in fact, unintentional.[12] SUMF, ¶ 47.

Without requesting any additional information supporting the Petition for Revival, the PTO granted the petition on September 14, 2017. SUMF, ¶ 55. When the petition was filed, Horowitz also filed amendments to narrow the claims (as the previous September 30, 2009, Office Action

---

[9] Horowitz testified that, although Dr. Friedman was not involved in his investigation, he discussed his investigation with Friedman long enough "for him to know what I was doing," and that by electronically signing the Petition, Friedman was "relying on" him. SUMF, ¶¶ 41-43.

[10] Horowitz specified that he confirmed ████████████████████████████████ ████████████████████ and that Nemanov felt he could not step in and handle prosecution of the '165 Application without Weisner's involvement. SUMF, ¶ 45. Horowitz also specifically determined that a lack of funds in 2009 was not the basis for the abandonment. SUMF, ¶ 46.

[11] ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ SUMF, ¶¶ 83, 84.

[12] Horowitz specifically testified that his investigation concluded that, ████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ SUMF, ¶ 48.

had rejected all pending claims). SUMF, ¶¶ 7, 32. Following the granting of the Petition for Revival, there was a series of office actions by the PTO, followed by timely and corresponding further amendments to claims filed by Attorney Horowitz. SUMF, ¶ 56. Thereafter, on August 24, 2018, the PTO closed the prosecution on the merits of the '165 Application and issued a Notice of Allowance, and Patent Number 10146871 ("the '871 Patent")[13] was issued on December 4, 2018. SUMF, ¶¶ 56, 66.

Beginning October 31, 2018, and continuing through December 8, 2020, (on behalf of Weisner and Nemanov) Horowitz filed Continuation Applications based on the '165 Application, all of which have the same descriptions and specifications as found in the '165 Application. SUMF, ¶¶ 63, 68-71, 72. The patents-in-suit[14] eventually issued from those Continuation Applications, all with terminal disclaimers by virtue of being continuations of the '165 Application; therefore, none of the Continuation Applications served to extend the life of any other patent. SUMF, ¶¶ 63, 68-71, 78, 79.

## ARGUMENT

### I.    Google cannot establish Inequitable Conduct by clear and convincing evidence.

#### APPLICABLE LAW

A finding of inequitable conduct requires a showing that the patentee: "(1) misrepresented or omitted information material to patentability, and (2) did so with specific intent to mislead or deceive the PTO." *In re Rosuvastatin Calcium Patent Litig.,* 703 F.3d 511, 519 (Fed. Cir. 2012). "The accused infringer must prove both elements - intent and materiality - by clear and convincing

---

[13] Google is not accused in these matters of having infringed on the '871 Patent, as Plaintiff Weisner testified that he didn't include such a claim because Google was infringing on "the other patents." SUMF, ¶ 76.
[14] As used herein, the "patents-in-suit" refer collectively to the patents in both *Weisner I* (the '905 and '911 Patents) and *Weisner II* (the '839, '068 and '667 Patents).

evidence." *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1287 (Fed. Cir. 2011). The party claiming inequitable conduct must meet the heavy burden of proving the materiality and intent elements with clear and convincing evidence. *Bristol–Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 326 F.3d 1226, 1233 (Fed. Cir. 2003). Inequitable conduct requires not merely intent to withhold, but rather intent to deceive (which <u>cannot be inferred</u> simply from a decision to withhold "where the reasons given for the withholding are plausible"). *Dayco Products, Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1367 (Fed. Cir. 2003) (emphasis added). The judicially created doctrine of inequitable conduct developed from three Supreme Court cases decided in the 1930s and '40s which dismissed patent enforcement suits based on the defense of unclean hands. *See Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1285, 1287 (Fed. Cir. 2011) (*en banc*).

Since the doctrine's creation, "charging inequitable conduct" has been "overplayed" and "has become an absolute plague." *Therasense*, at 1289 (*quoting Burlington Indus., Inc. v. Dayco Corp.*, 849 F.2d 1418, 1422 (Fed.Cir.1988)). Because of the catastrophic impact of its application on both the courts and "the entire patent system," the Federal Circuit sitting *en banc* narrowed the doctrine's application in *Therasense* to prevent further "overuse[ ] to the detriment of the public." *Id*. at 1290. The Court noted that its past attempts to address this plague, by "raising the intent standard alone," [15] had not worked, therefore the defense needed to be further circumscribed by raising the bar for establishing materiality as well. *Id*., at 1291. Consequently, the Court held that, henceforth, "the materiality required to establish inequitable conduct is ***but-for materiality***," and

---

[15] The Court cited its opinion in *Kingsdown Med. Consultants, Ltd. v. Hollister Inc*. (863 F.2d 867, 876 (Fed. Cir. 1988)) in which it "established that 'the involved conduct ... must indicate sufficient culpability to *require* a finding of intent to deceive.'" *Therasense*, 649 F.3d at 1291.

the doctrine "should only be applied in instances where the patentee's misconduct resulted in an unfair benefit of receiving an unwarranted claim." *Id*. at 1291-2 (emphasis added).

There is no direct evidence in the record of any intent to misrepresent or withhold any information from the PTO, or intent to deceive the PTO, with respect to any matter. SUMF, ¶¶ 80, 81. Google last amended its Answers in these matters on May 16, 2025 (six weeks before all discovery ended), and has not sought further leave to amend the same. (SUMF, ¶ 1). Therefore, Google has only the allegations contained within in its Answers, because Courts should "decline to infer facts to support a claim that must be pled with particularity," as an Answer (alleging inequitable conduct) with anything less "will not be sufficient to unleash the mischief" of the defense. *Exergen Corp. v. Wal-Mart Stores, Inc*., 575 F.3d 1312, 1328 (Fed. Cir. 2009) (*quoting Ferguson Beauregard/Logic Controls Div. of Dover Res., Inc. v. Mega Sys., LLC*, No. 99–CV–437, slip op. at 10 (E.D.Tex. Aug. 14, 2000)).

### a. There is no evidence in the record of misrepresented or omitted information material to the Petition to Revive the '165 Application.

As set out hereinabove, before preparing and filing the Petition for Revival, Attorney Horowitz conducted an investigation. SUMF, ¶¶ 41, 46. He did so because he was sensitive to what the Patent Office considered an appropriate basis for filing the petition to revive a patent application that was abandoned unintentionally. SUMF, ¶ 45. Although Dr. Friedman was not involved in his investigation, Horowitz discussed his investigation with Friedman long enough "for him to know what I was doing," and by electronically signing the Petition, Friedman was "relying on" Horowitz. SUMF, ¶¶ 41-43. Horowitz's investigation revealed to his professional satisfaction that ███████████████████████████████████████████████ ███████████████████████████████████████████ a conclusion later unequivocally confirmed by ███████████████████████████████████████ SUMF, ¶¶ 13, 14(b), 45.

11

After determining to his own satisfaction that the entire period of delay did, in fact, qualify as "unintentional," Horowitz prepared and submitted the application, in which Friedman agreed with the required "Statement"[16] to the effect that, "The entire delay in filing the required reply from the due date for the required reply until the filing of a grantable petition under 37 CFR 1.137(a) was unintentional." SUMF, ¶¶ 34, 35, 43. It matters not that Dr. Friedman did not *personally* conduct an investigation because he was relying on Horowitz's investigation, which was detailed in his deposition. SUMF, ¶¶ 41-43.

There was never a decision not to provide the PTO with additional information (beyond that required in the official form), as Horowitz knew that if the PTO wanted additional information, they could and would ask for it. SUMF, ¶ 51. Had the PTO requested additional information, Horowitz certainly could have then sought the opinion of ████████████████████ ██████ as has now been done; however, no additional information was requested. SUMF, ¶ 54. There is no direct evidence in the record of any intent to misrepresent or withhold any information from the PTO with respect to any matter. SUMF, ¶ 80. Even assuming, for the purposes of argument, that Horowitz's failure to *proactively* "offer" additional information could somehow be considered "omitting" or "withholding" information (an argument for which there is no case law support), as a matter of law, intent to deceive <u>cannot be inferred</u> simply from a decision to withhold "where the reasons given for the withholding are plausible." *Dayco Products, Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1367 (Fed. Cir. 2003).

It also does not matter if Horowitz's conclusion as to the unintentionality of the abandonment was wrong (which it wasn't). "Even if false, the attorney's certification - [merely] using the standard language required by the PTO … - does not constitute "clear and convincing

---

[16] 37. C.F.R. § 1.137(b)(4) requires this statement.

evidence of withholding of material information with intent to deceive the Director.'" *Sauder Mfg. Co. v. J Squared, Inc.*, No. 3:14 CV 962, 2017 WL 11541154, at *2 (N.D. Ohio July 19, 2017) (*citing and quoting Network Signatures, Inc. v. State Farm Mut. Auto. Ins. Co.*, 731 F.3d 1239, 1243 (Fed. Cir. 2013)).

The evidence establishes that Horowitz conducted an investigation; he discussed his investigation with Friedman; and, Friedman then relied on Horowitz's investigation when he agreed to the statement already included on the form by virtue of his electronic signature. SUMF, ¶¶ 31, 35, 41-43. Horowitz determined from his investigation that the abandonment was caused by ███████████████████████ a conclusion also later shared by ███████████████ ███████████████████ SUMF, ¶¶ 13, 14(b), 45. As set out in more detail hereinbelow, the PTO could have asked[17] for more information, especially since it noted the long period of abandonment – but it did not. SUMF, ¶ 54. By merely agreeing to the statement included on the form, without further request from the PTO for further information, it cannot be said that the petition in any way misrepresented or omitted material information. *See Sauder Mfg. Co.*, 2017 WL 11541154, at *2, supra (citing and quoting *Network Signatures, Inc. v. State Farm Mut. Auto. Ins. Co.*, 731 F.3d 1239, 1243 (Fed. Cir. 2013)).

Google is free to allege that Attorney Horowitz was wrong, and that ███████████ is wrong, but they cannot maintain an affirmative defense without evidence. A complete absence of evidence that material information was misrepresented or withheld makes it impossible for Google to meet its heavy burden, by clear and convincing evidence, that any material information was misrepresented or omitted with respect to the Petition for Revival.

> **b. There is no evidence in the record to establish that the Petition to Revive would <u>not</u> have been granted if more information *had* been provided.**

---

[17] SUMF, ¶ 51.

As noted above, the Federal Circuit held in *Therasense* that "the materiality required to establish inequitable conduct is ***but-for materiality.***" 649 F.3d at 1291-2 (emphasis added). Employing "but-for" analysis in the matter of *In Re Rembrandt Technologies LP v. Comcast of Florida/Pennsylvania, LP* (899 F.3d 1254 (Fed. Cir. 2018)), the Court actually examined 37 C.F.R. § 1.378(a) (2013) to determine what notice the PTO originally provided in the Federal Register regarding how it intended to interpret the word "unintentional" with respect to petitions to revive a patent application declared to have been abandoned. *In Re Rembrandt Technologies*, 899 F.3d at 1273. The Court justified relying on that source when analyzing but-for materiality by saying, "where the PTO's procedural rules are unambiguous, deciding what it would have done in a particular circumstance does not require us to second-guess the agency." *Id*., at 1272. A copy of "Changes to Patent Practice and Procedure, 62 FR 53132-01," dated October 10, 1997,[18] is attached as Exhibit 13 to the Declaration of Aaron W. Davis.

As enunciated therein, the PTO gave clear examples of the kind of conduct it would consider to constitute "deliberately permit[ting] an application to become abandoned, specifically conclusions by the patentee "that the claims are unpatentable, that a rejection in an Office action cannot be overcome, or that the invention lacks sufficient commercial value to justify continued prosecution." *Id*., at 53159. According to the PTO's guidance, it would consider the abandonment of an application for such reasons to be a <u>deliberately chosen course of action</u>, and the resulting delay would not be considered to have been "unintentional" within the meaning of § 1.137(b).[19]

---

[18] The version of "the Federal Register notice that the PTO published when it first introduced this language [and] explained what it meant by 'unintentional.'" *In Re Rembrandt Technologies*, 899 F.3d at 1254.

[19] 37 C.F.R. § 1.137(b)(4) contains the PTO regulation requiring "[a] statement that the entire delay in filing the required reply from the due date for the reply until the filing of a grantable petition pursuant to this section was unintentional" be included in every petition for revival. *Id*. at 53158.

14

*Id.*, at 53159. Attorney Horowitz testified that he was specifically aware of such published examples, and that he determined he could truthfully and with good basis represent to the PTO that the entire period of abandonment of the '165 Application was unintentional. SUMF, ¶47.

37 C.F.R.§ 1.378(a) also provides notice that where a petition for revival is filed more than one year after the date of abandonment, the PTO "*may* require (1) Further information as to when the applicant (or the applicant's representative) first became aware of the abandonment of the application; and (2) a showing as to how the delay in discovering the abandoned status of the application occurred despite the exercise of due care or diligence on the part of the applicant." *Id.* at 53159 (emphasis added). Attorney Horowitz specifically acknowledged that he was aware that the PTO might ask for additional information in connection with the petition. SUMF, ¶ 51.

In the case of the Petition to Revive the '165 Application, the PTO *did not* actually require any such "further information" or "showing." SUMF, ¶ 54. Therefore, Plaintiff Weisner (and/or Attorneys Horowitz or Friedman) can hardly be accused of <u>intentionally withholding that which the PTO never even asked for or required</u>. Additionally, the factual basis for the underlying abandonment, actually believed to be true by Horowitz (███████████████████████████████ ████████████████████████████████████)[20] is not given as an example of "intentional" abandonment in the PTO's materials or publications, nor does it even resemble such examples. There is nothing in the PTO's guidance to suggest it would *not* consider ███████████████ to be "unintentional," nor to have given Horowitz reason to suspect so. Had the PTO challenged the basis for the Petition to Revive, Horowitz could have secured an opinion from someone like ███████████ at that time – but it didn't make such a challenge.[21]

---

[20] SUMF, ¶¶ 45, 48.

[21] As noted above, ████████████████████████████████████████████████████████

Lastly, despite having the burden of persuasion on this affirmative defense, Google has not presented a shred of evidence suggesting that the PTO would <u>not</u> have granted the Petition for Revival even if it *had been made aware* of all the facts determined by Horowitz's investigation. Accordingly, Google cannot establish but-for materiality by clear and convincing evidence.

### c. There is no evidence in the record of specific intent to deceive or mislead the PTO.

There is no <u>direct</u> evidence in the record of any intent to deceive the PTO with respect to any matter. SUMF, ¶ 81. "To be guilty of inequitable conduct, one must have intended to act inequitably." *FMC Corp. v. Manitowoc Co., Inc.*, 835 F.2d 1411, 1415, 5 USPQ2d 1112, 1115 (Fed.Cir.1987). Merely attesting to the language required by the PTO in a petition, without providing additional information that is not even requested by the PTO, cannot – <u>in and of itself</u> - provide clear and convincing evidence of withholding of material information with the intent to deceive the Director. *Network Signatures, Inc. v. State Farm Mut. Auto. Ins. Co.*, 731 F.3d 1239, 1243 (Fed. Cir. 2013).

Attorney Horowitz testified very clearly that, he understood the PTO would be "relying on the petitioner's duty of candor and good faith," and he wanted to be "doubly sure" with his own investigation, and that (in the end) the PTO "had a good basis to rely on" the Petition for Revival "because we investigated it." SUMF, ¶ 52. That sworn testimony, from the prosecuting counsel, is the antithesis of evidence of intent to deceive or mislead the PTO (especially when Horowitz's good faith belief has now been confirmed by ████████████████████ [22] There is absolutely no evidence of intent to deceive in either of these matters, on the part of any person

[22] SUMF, ¶¶ 13, 14(b), 45.

involved in the revival of the '165 Application. SUMF, ⁋ 81. It simply doesn't exist. Therefore, Google cannot establish intent to deceive by clear and convincing evidence.

### d. Specific intent to deceive is not the single most reasonable inference to be drawn from the evidence.

Even though the law allows Google to *attempt* to prove intent from indirect and circumstantial evidence, it must still actually prove specific intent by clear and convincing evidence, which means that "the specific intent to deceive must be ***the single most reasonable inference***." *Therasense*, 649 F.3d at 1290 (emphasis added). Consequently, "when there are multiple reasonable inferences that may be drawn, intent to deceive <u>cannot</u> be found." *Id*. (emphasis added). Inequitable conduct requires not merely intent to withhold, but rather intent to deceive which cannot be inferred simply from a decision to withhold "where the reasons given for the withholding are plausible." *Dayco Products, Inc. v. Total Containment, Inc*., 329 F.3d 1358, 1367 (Fed. Cir. 2003). *See also Ulead Systems, Inc. v. Lex Computer & Management Corp.*, 351 F.3d 1139, 1146 (Fed. Cir. 2003) (reversing finding of inequitable conduct on summary judgment where sworn statements indicated absence of intent).

Not only is there no direct evidence of intent to withhold anything from the PTO, there is also no indirect or circumstantial evidence in the record from which intent to deceive can be inferred – because there are other inferences which can reasonably be drawn. As set out hereinabove, Attorney Horowitz provided a perfectly reasonable explanation as to why the Petition to Revive maintained that the entire period of abandonment was unintentional, and why he did not volunteer any additional information in support thereof. Horowitz's explanations are not only ***perfectly plausible***, but his explanation for maintaining that the abandonment was unintentional – as caused by ███████████ – must now be seen as ***more than plausible*** based on the conclusions ███████████ SUMF, ⁋⁋ 13, 14(b), 45. Therefore, it cannot be said that intent to

deceive can be inferred from any evidence in the record, which means (by definition) it can't be the "single most reasonable inference" to be drawn from all the indirect or circumstantial evidence.

For all of the reasons set forth above, the record in this matter simply does not establish a genuine dispute of any material fact as to either intent to deceive or but-for materiality because Google "cannot produce admissible evidence to support [either] fact." *Baker v. City of New York*, 551 F. Supp. 3d 258, 265 (S.D.N.Y. 2021). Google has no evidence whatsoever with which to create a genuine issue of dispute, therefore it certainly cannot meet its heavy burden of clear and convincing evidence. *See Bristol–Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc*., 326 F.3d 1226, 1233 (Fed. Cir. 2003). For those reasons, Plaintiff is entitled to summary judgment striking Google's affirmative defense of inequitable conduct.

## II. Google cannot establish that it is entitled to the defense of Prosecution Laches.

### APPLICABLE LAW

Prosecution laches is an equitable tool which has been applied sparingly in only the most egregious cases. *A & E Prods. Grp., L.P. v. Mainetti USA Inc*., No. 01 CIV. 10820 (RPP), 2004 WL 345841, at *3 (S.D.N.Y. Feb. 25, 2004). Prosecution laches requires proving two elements: (1) the patentee's delay in prosecution must be unreasonable ***and*** unexplainable; and, (2) the accused infringer must have suffered prejudice ***attributable to the delay***. *ICOS Vision Sys. Corp. N.V. v. Scanner Techs. Corp*., No. 10 CIV. 0604 PAC, 2012 WL 512641, at *7 (S.D.N.Y. Feb. 15, 2012) (*citing Cancer Research Tech. Ltd. v. Barr Labs., Inc*., 625 F.3d 724, 728 (Fed.Cir.2010) (emphasis added). Reasonableness is a fact-intensive inquiry "and must include consideration of the circumstances of the [patentee] as patent prosecutor." *Id*. Further, the unreasonable and unexplained delay in prosecution must constitute an "***egregious misuse of the statutory patent system*** under the totality of the circumstances." *Id*., (emphasis added). Lastly, to establish

prejudice, "an accused infringer must show evidence of intervening rights, i.e., that either the accused infringer or others invested in, worked on, or used the claimed technology during the period of delay." *Id.*

Despite having over five years since the Complaint was filed in *Weisner I*, Google's recently amended Answers do not sufficiently even *allege* facts to support the application of prosecution laches. As set out below, Google has also completely failed to develop any evidence with which to establish a genuine issue as to the facts material to the defense. Apparently, either in search of evidence tending to ███████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████ Google hired a private investigator and dispatched him to █████████████████

████████████████████████████████████████████████████████████████

SUMF, ¶ 21. Google's efforts turned up no evidence to support its affirmative defenses; but ████

████████████████████████████████████████████████████████████ *Id.*

The Court ordered a stop to Google's tactic, after Plaintiff filed a joint-letter. SUMF, ¶ 22.

On June 3, 2025, nearly four months after the deposition of Weisner, Google also identified a purported expert witness, ███████████████████████████████████████████████

████████████████ with whom it also shared ███████████████████████████ only to never mention him again[23] or produce any sort of opinion or report refuting ████████████████

███████████████ SUMF, ¶ 25. What's more, at the July 15, 2025 status conference, Google completely disavowed its reliance on any ████████████████████ stating that "we don't believe that [it] is necessary," and asserted that ██████████████ can be decided "from the

---

[23] In its portion of the parties' Joint Letter to the Court dated July 14, 2025, Google made no mention of any evidence to be offered by Dr. Glass, and did not list him among the witnesses it proposed to call at any bench trial on its affirmative defenses. SUMF, ¶ 25.

testimony of the plaintiff alone." SUMF, ⸿ 82. But the fact is, Weisner's testimony counters Google's affirmative defenses. Despite its best efforts to develop any evidence tending to refute Weisner's claim, Google produced nothing that would support its allegations that any period of delay in the prosecution of the patents-in-suit was somehow unreasonable or unexplainable. SUMF, ⸿ 25 To the contrary, as set out hereinabove, Weisner has produced more than sufficient evidence to both explain the delay, <u>and</u> to establish its reasonableness.

### a. There is no rebuttable presumption.

To begin with, Google is not entitled to any rebuttable presumption because, "with respect to laches," the six-year period[24] is "six years after the date the patentee knew or should have known of the alleged infringer's activity." *A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992), abrogated on other grounds[25] by *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 580 U.S. 328, 137 S. Ct. 954, 197 L. Ed. 2d 292 (2017). "The six years for laches begins with a patentee's knowledge of infringement and counts forward." *Id.*, at 1034. Even though Plaintiffs accuse far more than merely Google's Timeline feature, the *only* product or feature referenced by Google in its allegations supporting prosecution laches is Timeline. Because Google has not again amended its Answers, the Court should "decline to infer facts to support a claim that must be pled with particularity," and determine whether a presumption applies based on

---

[24] In its assertions of the affirmative defense of Prosecution Laches, Google cited to *Hyatt v. Hirshfeld*, 998 F.3d 1347, 1369 (Fed. Cir. 2021) (*quoting Wanless v. Gen. Elec. Co.*, 148 F.3d 1334, 1337 (Fed. Cir. 1998)), for the proposition that the six-year period begins from the date of the original '165 Application. But that is wrong. Indeed, Google neglected to note that, in *Wanless*, the Federal Circuit cited to its decision in *A.C. Aukerman Co.*, in which (as set out above) the Court expressly held that it begins to run from "the date the patentee knew or should have known of the alleged infringer's activity." The Court in *A.C. Aukerman* began its analysis by noting that it took the case "*in banc*" to clarify and apply principles of laches and equitable estoppel. 960 F.2d at 1028.
[25] The only issue on which *A.C. Aukerman* was abrogated was in terms of not being able to assert post-issue laches within the six-year limitation period provided in 35 U.S.C. § 286. *SCA Hygiene*, 580 U.S. at 346.

Google's pleadings. *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328 (Fed. Cir. 2009). Plaintiff Weisner testified that he was not specifically aware of Google's Timeline feature until "sometime in 2018 or 2019," and Attorney Horowitz testified he had no knowledge whether Weisner was aware of it as of 2017. SUMF, ¶¶ 50, 73. Therefore, there is no presumption for Plaintiffs to overcome because Google has not presented any evidence.

### b. There was no unreasonable or unexplainable delay between June 2007 and February of 2015.

The threshold inquiry which must be undertaken by the Court, in deciding whether prosecution laches applies, is to determine whether a patent "was obtained after an unreasonable and unexplained delay in prosecution." *Intuitive Surgical, Inc. v. Computer Motion, Inc.*, No. CIV.A. 01-203-SLR, 2002 WL 31833867, at *3 (D. Del. Dec. 10, 2002) (*quoting In re Bogese*, 303 F.3d 1362, 1367 (Fed.Cir.2002)). No other aspect of patent law (intervening rights, terminal disclaimers, **prejudice**, patent specification disclosures, the alleged infringer's knowledge, or the patentee's right to draft claims to cover competitors' products in the marketplace) is even relevant "until the threshold inquiry is conducted and the court finds that the delay at issue was unreasonable and unexplained." *Id.*, n.2 (emphasis added).

The question is not whether there was a *literal* delay between the filing of the '165 Application, and February of 2015; but, whether any delay was unreasonable and unexplained. As established above with respect to inequitable conduct, the record contains more than sufficient evidence to establish that the *literal* delay between the '165 Application and the '871 Patent was both reasonable and explained. Considering the particular circumstances of Plaintiff Weisner "as patent prosecutor," as required by the Federal Circuit[26] when analyzing reasonableness, it simply

---

[26] *See Cancer Research Tech. Ltd. v. Barr Labs., Inc.*, 625 F.3d 724, 728 (Fed.Cir.2010).

cannot be said that any *literal* delay was legally "unreasonable." Therefore, <u>Google's quest for prosecution laches must end here</u>.

The *literal* delay from 2007 to February of 2015 had nothing whatsoever to do with the kinds of conduct that the equitable remedy of prosecution laches has historically, and <u>exclusively</u>, been approved to redress. As explained by the Federal Circuit in *Hyatt v. Hirshfeld* (998 F.3d 1347, 1360 (Fed. Cir. 2021)), the defense originated as a matter of federal common law[27] in the matters of *Woodbridge v U.S.* (263 U.S. 50 (1923)) and *Webster Electric v. Splitdorf Electric* (264 U.S. 463 (1924)). In *Woodbridge*, the patentee originally asked the PTO to delay issue of the patent for one year; the PTO then failed to issue the patent at the expiration of one year; yet, Woodbridge waited eight and a half years to complain, only then to amend the specifications and claims in order to ***specifically*** "capture related innovations that arose during the course of the delay." *Woodbridge*, 263 U.S. at 56-57. On those established facts, the Supreme Court held that Woodbridge forfeited his right to a patent by his "designed delay." *Id*., at 57. Likewise, in *Webster*, because the patentee added two new claims eight years after application, ***specifically*** "to copy a recently issued patent," the Court permitted the affirmative defense because it determined Webster had "simply stood by and awaited developments." *Webster*, 264 U.S. at 465.

In 2002, the Federal Circuit approved the defense for the first time in the matter of *In re Bogese*. 303 F.3d 1362, 1363 (Fed. Cir. 2002). In that case, over a period of eight years, the applicant filed twelve "continuation applications without amendment or addressing the reasons for the rejection and each time abandoned the previous application." *Id*. at 1365. The patent examiner concluded, and the Court ultimately agreed, that "the harm caused … was not only the delayed

---

[27] With enactment of §282 of the Patent Act of 1952, Congress intended to codify "the defenses to infringement that were available at that time," which would include the defense of prosecution laches. *Hyatt*, 998 F.3d at 1360-61.

disclosure of his invention, but also 'the ***deliberate*** delay of the term of any monopoly granted by

a patent" until a time 'when the industry has developed and matured to such a point as to be more

financially beneficial to the applicant and hence more harmful or prejudicial to the public.'" *Hyatt*,

998 F.3d at 1361 (*quoting In re Bogese*, at 1366) (emphasis added).  But that in no way resembles

what happened here.

No matter how strongly Google disagrees with Plaintiff's assertion of unintentionality, the

*literal* delay between 2009 and 2015 simply cannot be viewed in the same category as the

behaviors in *Woodbridge*, *Webster*, or *Bogese*. In order to succeed on its assertion of prosecution

laches, Google would have to argue (and present evidence) that ███████████████████

███████████████████████████████████████████████████

███████████████████████████████ as part of a ***designed effort to delay***

the issuance of the '871 patent – so that he could then file related Continuation Applications – all

just so that he could sue Google some five years later ***for his benefit***. That is a bridge too far even

for Google, as it makes no such patently absurd allegation. But, in order to ***deserve*** the protection

historically granted via the defense of prosecution laches, Google <u>would have to make such an

argument, and then produce evidence to establish it</u>. Google did not do so.

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

SUMF, ¶ 13. Fro██████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

SUMF, 14(b). ████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

SUMF, ¶¶ 14(b)(c),19, 20, 23. ████████████████████████

████████████████████████████████████████████████

█████████████████████ thereby providing a perfectly reasonable explanation as to why Weisner

didn't even think about his patent again until he struck up a conversation one day with a man who

happened to be a patent lawyer. SUMF, ¶¶ 24(e)(f), 27. Weisner testified that he was not aware as

of that conversation that the '165 Application had been deemed "abandoned," but shortly after the

conversation, he contacted Attorney Horowitz, who then prepared and submitted a Petition to

Revive the '165 Application (under the electronic signature of Dr. Friedman). SUMF, ¶¶ 28, 31,

40. Therefore, the evidence establishes that the *literal* delay was <u>entirely</u> reasonable and

explainable.

On June 3, 2025, Google identified, ████████████████████████████████

████████████████████████████████████████████

██████████████████████████ SUMF, ¶ 25. Google represented that it intended to disclose

████████████████████████████████████████████

██████ *Id*. As of the date by which the parties were to file motions for summary judgment as to

the affirmative defenses of inequitable conduct and prosecution laches, Google has failed to

produce any expert opinion of ████████ *Id*. In its portion of the parties' Joint Letter to the Court

dated July 14, 2025, Google also conspicuously made no mention of any evidence to be offered

by ████████ and did not list him among the witnesses it proposed to call at any bench trial on its

affirmative defenses. *Id*. Indeed, at the July 15, 2025 status conference, Google completely

---

[28] This would have included all evidence related to Weisner's drug use, rehab, and aftercare.

disavowed its reliance on any ████████████████████████ stating that "we don't believe that [it] is necessary."  SUMF, ⁋ 82.

Google has presented no evidence, expert or otherwise, tending to suggest (let alone establish) that ████████████████████████████████████████ ████ *Id*. Google is free to *allege* that it was "unreasonable and unexplainable" that ████████ ████████████████████████████████████████ ████████████████████████████ - but it is not permitted to assert the defense of prosecution laches without actual evidence as to the required elements. As explained by the Federal Circuit in *Hyatt, supra* (and as reflected in the foundational decisions in *Woodbridge*, *Webster*, and *In Re Bogese, supra*), in order for a delay to be considered "unreasonable" it must be the product of intention - a "designed delay" calculated to somehow benefit the patentee by delaying the issuance (or extending the life) of a patent.

There is not a shred of evidence that ███████████████████████████████ ███████████████████████ "designed" by him, or that they were in any way calculated to benefit him by delaying the issuance of the '871 Patent. Therefore, Google cannot establish that any *literal* delay before February of 2015 was unreasonable and unexplainable as a matter of law.

### c.  There was no unreasonable or unexplainable delay after February of 2015.

In addition, assuming for the purposes of argument that there could be a separate, second possible period of delay - being post February 2015 - the record is still devoid of any evidence suggesting any unreasonable <u>and</u> unexplainable delay. To the contrary, the evidence establishes that any delay after February of 2015 was also reasonable and explainable. Specifically addressing the period of time between December 2, 2014 ███████████████████████████████ ███████████████████████████████████████████████



SUMF, ¶ 24(a).

SUMF, ¶ 24(d).

SUMF, ¶24(f). Google has offered nothing in the way of competent evidence to refute ███ ███████ findings and opinions.

In addition, Plaintiff Weisner testified that the reason why he[29] started filing Continuation Applications following the revival of the '165 Application was because he felt that, based on the description and the claims that would ultimately be included in the '871 Patent, there were still "a lot of claims" he could write in order to "cover the full description." SUMF, ¶ 75. He also denied, under oath, having ever specifically written a claim, or making changes to any claims, in any of the continuation patents, based on having found out about anything that Google was doing at the time the Continuation Applications were filed. SUMF, ¶ 74. There is no evidence in the record establishing that Weisner wrote or amended any claim in any of the Continuation Applications based on any specific knowledge he had as to any particular Google product or feature. SUMF, ¶ 77.

The first Continuation Application was filed one day before the Issuance Fee for the '871 Patent was paid, by which date the claims that would be included in the '871 Patent would have

---

[29] Although Involuntary Plaintiff Nemanov is listed as both an "Applicant" and "Inventor" on the Continuation Patents, he testified that he really had nothing to do with those applications "after 2017." SUMF, ¶ 62.

been known. Additional Continuation Applications (for patents in the same family) were also filed for a period of just over two years (October 2018 – December 2020); and, by November of 2021 (less than a year after the last Continuation Application was filed), all of the patents-in-suit had been issued. SUMF ⁋⁋ 63, 68-71. Plaintiff Weisner also testified that the only reason he hasn't claimed that Google has infringed on the '871 Patent is because he believed Google was infringing on "the other patents" (being the patents-in-suit). SUMF, ⁋ 76.

Google has developed no proof whatsoever to support its allegation that specific Google features were "were calculated to read on Google's later-released features based on Google's post-abandonment product disclosures." *See Weisner II*, Dkt. 304, Page 53 of 59, ⁋120. The "Google feature" referenced in an email from Plaintiff Weisner to Attorney Horowitz on October 26, 2018,[30] is not a Google feature that is even accused in these matters, whether by name or by description. Rather, the link provided by Plaintiff was to an internet article about a new "Explore Tab" in Google Maps which contained lists of "the highest rated places" in certain areas "***based on information from local experts.***" SUMF, ⁋ 59 (emphasis added). Nothing in the article mentions that the feature used Location History of Google users to inform search results or in connection with advertising. This <u>one example</u> is the only attempt by Google to allege any such "later-released feature, and it does not suffice to carry Google's evidentiary burden."

The email response[31] from Horowitz back to Weisner (on October 28, 2018) also does not even begin to suggest (let alone prove) that any Google features were specifically targeted[32] by the

---

[30] SUMF, ⁋ 58.

[31] SUMF, ⁋ 60.

[32] Even if there were such evidence (which there isn't), there is nothing improper, illegal or inequitable in filing a patent application for the purpose of obtaining a right to exclude a known competitor's product from the market; nor is it in any manner improper to amend or insert claims intended to cover a competitor's product the applicant's attorney has learned about during the prosecution of a patent application. *Kingsdown Med. Consultants, Ltd. v. Hollister Inc*., 863 F.2d

Continuation Applications, because nothing in the record even establishes to which two patents Horowitz was referring. SUMF, ⁋ 61. The email itself uses Horowitz's internal docket numbers to refer to them, and Horowitz was unable to discern or remember during his deposition herein which patents they were (or, whether they were even filed). SUMF, ⁋ 61. An earlier email[33] with which Google also attempts to support this defense establishes nothing other than Attorney Horowitz's attempt to do that which any reasonable patent attorney would do in the circumstances - he was properly advising his client. SUMF, ⁋ 30. To begin with, why wouldn't a competent patent attorney, approaching the attempted revival of a patent deemed abandoned seven years earlier, at least advise his client of the **_possibility_** of intervening rights? Furthermore, Horowitz did not reveal any specific knowledge (or even a belief) that anyone (let alone Google) <u>actually **_had_** developed</u> intervening rights. He merely informed Weisner that it was a possibility. SUMF, ⁋ 30.

Lastly, and again only if the Court were to consider a separate, second possible period of delay beginning February 2015, the record establishes that no patent durations were extended, because all of the Continuation Patents contain a terminal disclaimer. SUMF, ⁋⁋ 78, 79. This undisputed fact also supports a determination that Plaintiffs' actions are simply not the kind that are remediated by prosecution laches, as "[t]he presence of terminal disclaimers in a continuation patent makes any delay more reasonable." *A & E Prods. Grp., L.P. v. Mainetti USA Inc.*, No. 01 CIV. 10820 (RPP), 2004 WL 345841, at *3 (S.D.N.Y. Feb. 25, 2004). While there is no "bright line rule," the filing of a terminal disclaimer "weigh[s] **_strongly_** in favor of finding the delay is

---

867, 874 (Fed. Cir. 1988). Any such amendment or insertion must comply with all statutes and regulations, of course, but, if it does, its genesis in the marketplace is simply irrelevant and cannot of itself evidence deceitful intent. *Id*.

[33] May 20, 2017, email from Attorney Horowitz to Plaintiff Weisner, discussing the possibility that "someone (like Google)" might have developed intervening rights during the period of abandonment. SUMF, ⁋ 30.

reasonable." *Chiron Corp. v. Genentech, Inc.*, 268 F. Supp. 2d 1139, 1143 (E.D. Cal. 2002) (*citing A.C. Aukerman v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1032 (Fed. Cir.)) (emphasis added).

No matter whether the period examined is between 2009 and 2015, or beyond 2015, the record simply does not contain evidence establishing a genuine issue as to whether any *literal* delay was ***unreasonable*** and ***unexplained***. Google has zero evidence that any portion of the delay was "designed" to extend the term of any patent (per *Woodbrige*, as discussed by *Hyatt*), or was done deliberately to "copy a recently issued patent" (per *Webster* as discussed by *Hyatt*), or was done deliberately in an attempt to delay the issuance date to a "more financially beneficial date" (as in *In Re Bogese*, as discussed by *Hyatt*). The totality of the circumstances simply does not even *suggest* the kinds of egregious misuse of the statutory patent system which laches has always, and exclusively, been intended to remedy.

The evidence establishes that none of Weisner's actions after February of 2015 were in any way "designed" by him to delay prosecution of any patent, nor were they in any way calculated to benefit him. Therefore, Google also cannot establish that any *literal* delay after February of 2015 was unreasonable and unexplainable.

### d. Because Google cannot establish that any period of delay was unreasonable *and* unexplainable, any possible prejudice is irrelevant.

As set out hereinabove, prosecution laches requires proving two elements. The doctrine of prosecution laches requires **both** an unreasonable and unexplained delay in prosecution **and** material prejudice ***attributable to the delay***. *Cancer Rsch. Tech. Ltd. v. Barr Lab'ys, Inc.*, 625 F.3d 724, 729 (Fed. Cir. 2010). A plain reading of those elements reveals that, if there is no unreasonable and inexcusable delay under the first prong, there can be no prejudice – because the prejudice must be "attributable to the delay." *Id*. Because the period of abandonment in these matters was not unreasonable and unexplained, as a matter of law there is no "delay" to which any prejudice can

be "attributed." <u>No other aspect of patent law</u> [including] prejudice … is even relevant "until the threshold inquiry is conducted and the court finds that the delay at issue was unreasonable <u>and</u> unexplained." *Intuitive Surgical, Inc. v. Computer Motion, Inc*., No. CIV.A. 01-203-SLR, 2002 WL 31833867, at *3 n.2 (D. Del. Dec. 10, 2002) (*quoting In re Bogese*, 303 F.3d 1362, 1367 (Fed.Cir.2002)) (emphasis added). Because Google cannot establish that any period of delay was both unreasonable and unexplainable, any prejudice it claims to have suffered is irrelevant as a matter of law.

For all of the reasons set forth above, the record in this matter simply does not establish a genuine dispute of any material fact as to whether there was an unreasonable and unexplainable delay in the prosecution of any patent-in-suit, therefore whether Google suffered any prejudice is irrelevant. Google has no evidence whatsoever with which to create a genuine issue of dispute, therefore Plaintiff is entitled to summary judgment striking Google's affirmative defense of prosecution laches.

## CONCLUSION

There is no evidence in the record that any material information was misrepresented or withheld from the PTO in connection with the Petition to Revive the '165 Application, or that the PTO would actually have rejected the petition even if additional information *had* been provided. There is no direct evidence in the record of an intent to deceive the PTO with respect to any matter, and there is no evidence from which such intent can be inferred. The PTO did not challenge the factual basis for the Petition to Revive, therefore Horowitz provided none. When Google challenged it herein, Plaintiff Weisner produced ███████████████████ ███████████████ establishing that Horowitz's initial conclusion was – in fact – reasonable. Google produced nothing. The record in this matter simply does not establish a genuine dispute of

any material fact as to either intent to deceive or but-for materiality because Google cannot produce admissible evidence to support either fact. Google has no evidence whatsoever with which to create a genuine issue of dispute, therefore it certainly cannot meet its heavy burden of clear and convincing evidence. For those reasons, Plaintiff is entitled to summary judgment striking Google's affirmative defense of inequitable conduct.

The evidence establishes a perfectly plausible reason, and explanation, for any literal delay in the prosecution of the '165 Application, and there is no evidence at all of any delay in the prosecution of the Continuation Patents. The record in this matter simply does not establish a genuine dispute of any material fact as to whether there was an unreasonable and unexplainable delay in the prosecution of any patent-in-suit, therefore whether Google suffered any prejudice is irrelevant. Google has no evidence whatsoever with which to create a genuine issue of dispute, therefore Plaintiff is entitled to summary judgment striking Google's affirmative defense of prosecution laches.

WHEREFORE, for all of the reasons set forth hereinabove, Plaintiff respectfully requests the Court enter summary judgment in favor of Plaintiff and striking Google's affirmative defenses of inequitable conduct and prosecution laches.

Dated:  July 31, 2025                    Respectfully Submitted,


                                         _/s/ Aaron W. Davis_____.
                                         Aaron W. Davis, Esq. (admitted *Pro Hac Vice*)
                                         VALHALLA LEGAL, PLLC
                                         P.O. Box 735
                                         Custer, SD 57730-0735
                                         Phone: (763) 957-2397
                                         Email: davis@valhallalegal.com

Jacob Ginsburg, Esq.
JACOB GINSBURG, ESQ. PLLC
One Concord Drive
Monsey, NY 10952
Phone: (845) 371-1914
Email: jg@jacobginsburglaw.com

Of Counsel on Legal Issues:
Alan M. Dershowitz, Esq. (admitted *Pro Hac Vice*)
1500 Ocean Drive
Miami Beach, FL  33139
Email:  alandersh@gmail.com

*Attorneys for Plaintiff Sholem Weisner*

## CERTIFICATE OF SERVICE:

This will certify that a true and accurate copy of the foregoing was filed and served electronically on all counsel of record via the Court's CM/ECF system, on this the 31st day of July, 2025.

*/s/ Aaron W. Davis* .
*Attorney for Plaintiff, Sholem Weisner*