UNITED STATED DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| SHOLEM WEISNER and SHMUEL NEMANOV | ) | |
| | ) | Case No.:  20-cv-02862-AKH |
| Plaintiff and Involuntary Plaintiff | ) | ("*Weisner I*") |
| | ) | Case No.: 23-cv-08186-AKH |
| v. | ) | ("*Weisner II*") |
| | ) | |
| GOOGLE LLC | ) | Valerie Figueredo |
| | ) | U.S. Magistrate Judge |
| Defendant | ) | |
| | ) | |
| | ) | |

---

**PLAINTIFF SHOLEM WEISNER'S RESPONSE TO GOOGLE'S
ORAL MOTION FOR DISMISSAL UNDER RULE 41(b)**

---

Comes Plaintiff, SHOLEM WEISNER ("Plaintiff"), by and through counsel, and provides

the following response to the oral motion, made in open court on October 21, 2025, to dismiss

Plaintiff's claims herein pursuant to Rule 41(b):

## <u>INTRODUCTION</u>

Dismissal under Rule 41(b) is an extraordinary sanction reserved for only the most extreme

circumstances—those involving willful neglect, contemptuous conduct, or prolonged delay. This

case presents none of those circumstances. To the contrary, Plaintiff has prosecuted his claims

diligently and continuously for more than five years, including appealing to the Federal Circuit

twice and ensuring the case remains on track for a February 2026 jury trial. Plaintiff has complied

with all court orders, timely filed all required submissions, and appeared through counsel at the

October 21, 2025 proceedings, prepared to participate in a hearing on the pending summary

judgment motions. The record shows not delay, not defiance, but a good-faith effort to comply

1

with the Court's directives while preserving Plaintiff's fundamental right to have any trial on the merits conducted by an Article III judge.

Rule 41(b) does not permit dismissal where a party's conduct is both reasonable and rooted in a legitimate legal position. The Second Circuit has repeatedly emphasized that dismissal for failure to prosecute is a "harsh remedy to be utilized only in extreme situations," and that a trial court must weigh the *Drake* factors carefully in light of the entire record. *U.S. ex rel. Drake v. Norden Sys., Inc.*, 375 F.3d 248, 254 (2d Cir. 2004). Here, every one of those factors—lack of delay, absence of prejudice, Plaintiff's notice and participation, the balance of calendar concerns against the right to be heard, and the ineffectiveness of any sanction—compels denial of Google's motion.

Plaintiff did not "fail to prosecute" within the meaning of Rule 41(b); rather, he sought only to safeguard his statutory and constitutional entitlement to trial before an Article III judge. His conduct was respectful, measured, and consistent with a reasonable interpretation of the Court's orders and unanimous, unrebutted case law—far removed from the kind of willful or contemptuous behavior that has ever justified dismissal in this Circuit. Dismissal here would not serve the interests of justice, but would instead punish a party for asserting a well-grounded legal objection in good faith.

For these reasons, and as discussed in detail below, all five *Drake* factors weigh heavily against dismissal, and Google's motion under Rule 41(b) must be denied.

## **FACTUAL & PROCEDURAL BACKGROUND**

In its order of October 15, 2025, the Federal Circuit held that "[t]o be sure, some courts have concluded that magistrate judges typically lack 'the authority to perform fact-finding on the merits of [a] case because that function is the essence of a trial, and magistrate judges cannot

2

conduct trials without the parties consent.'" *In Re Weisner*, No. 26-100, at \*3 (Fed. Cir. Oct. 15, 2025) (*quoting Beazer E., Inc. v. Mead Corp.*, 412 F.3d 429, 439 (3rd Cir. 2005)).  At the time, the Federal Circuit denied mandamus relief because it was then allegedly "far from clear that the magistrate judge ***will conduct*** the upcoming proceedings, regarding cross-motions for summary judgment, in a manner that would exceed her statutory authority." *In Re Weisner*, No. 26-100, at \*3 (emphasis added).  While it may not have been clear on October 15, 2025 – that the magistrate judge ***would conduct*** the proceedings in a manner that would exceed her statutory authority – it is now indisputable that ***she actually did conduct*** those proceedings in such a manner, trying the merits of Google's affirmative defenses of inequitable conduct and prosecution laches concerning Plaintiff's patents-in-suit.  Indeed, both consolidated dockets confirm: "Minute Entry for proceedings held before Magistrate Judge Valerie Figueredo: ***Bench Trial*** began and completed on 10/21/2025." Exhibit 1 (emphasis added).

Tellingly, the Federal Circuit did not cite a single case that authorized a magistrate judge to conduct fact-finding of the merits of a non-prisoner case in any proceeding—regardless of the label used for it—without consent.  To the contrary, the Federal Circuit only cited cases that precluded such fact-finding on the merits by a magistrate judge without consent.  The Federal Circuit also quoted from 12 Wright & Miller's Federal Practice and Procedure § 3068.1 (3d ed. 2025) that "absent consent of the parties, the magistrate judge cannot conduct a trial."  *In Re Weisner*, at \*3, n.3 (citing Fed. R. Civ. P. 72).

Following the issuance of the Federal Circuit's order, Plaintiff moved the Court on October 16, 2025, to vacate the October 21, 2025, proceedings in order to "conform to opinion in *In Re Weisner*, No. 26-100 (Fed. Cir. Oct. 15, 2025)." ECF 435. Plaintiff stated in that motion that he stood "ready to attend an oral argument on the parties' cross-motions for summary judgment on

October 21, 2025," but "chooses not to continue with his case in any proceeding where there is the presentation of evidence for the making of factual findings on the merits of the case by the Magistrate Judge without Plaintiff's consent" because the magistrate judge "may not conduct without consent any fact-finding proceeding in order to issue a report and recommendation purporting to resolve factual disputes on the merits." *Id.*, at 4. On October 17, 2025, District Judge Hellerstein entered an order denying that motion, holding that "28 U.S.C. § 636(b)(1) allows me to refer the matter to a magistrate judge for a report and recommendation," and that "here ***the hearing relates to a summary judgment motion*** on certain of Google's affirmative defenses." ECF 439 (emphasis added).

In a teleconference, also on October 17, Plaintiff again objected that, while the magistrate judge had authority to conduct "a hearing" consisting of oral arguments on the cross-motions as already submitted, she did not have the authority (*per Beazer* and other law) to conduct any proceeding that included fact-finding on the merits of the affirmative defenses. Plaintiff also stated that he would not participate in any proceeding that included fact-finding because he had not consented to the same as required by 28 U.S.C. § 636. Later that same day, Magistrate Judge Figueredo entered a separate order warning Plaintiff that "failure to appear [on October 21] may result in a contempt sanction [and] other sanctions for failing to appear, including bearing Google's costs for preparing for the proceeding, and/or ***Google succeeding on its affirmative defenses through Plaintiff's default***." ECF 440 (emphasis added).

On October 21, 2025, Plaintiff was represented at the proceedings before the magistrate judge by the undersigned counsel; Plaintiff himself did not appear in person, and he was not ordered to personally appear in person.[1] With reference to Judge Hellerstein's most recent order

---

[1] In the magistrate judge's order of October 16, 2025 (ECF 437), she ordered "Counsel for the parties, as well as Plaintiff Sholem Weisner" to appear at a teleconference on the 17th, and Mr. Weisner did attend that

characterizing his referral as one "for a report and recommendation on the summary judgment motions" (ECF 439), Plaintiff's counsel stated for the record,

> So on that basis and in compliance with your Honor's separate order on Friday, which is ECF 440, requiring appearance today, I am present here today to represent plaintiff in a hearing as to the summary judgment motions only, not to participate in receiving any new evidence or the weighing of such evidence that would constitute an improper fact-finding on the merits respectfully by your Honor.

Exhibit 2, Transcript of Proceedings of 10-21-25, 3:12-18. Plaintiff's counsel also cited to the Second Circuit opinion in *Rupp v. City of Buffalo*, 91 F.4th 623, 634 (2d Cir. 2024), for the rule that the function of a district court in considering a motion for summary judgment is ***not to resolve disputed questions of fact*** but only to determine as to whether any material issue a genuine factual dispute exists; and that, in considering whether a fact issue exists, the court is ***not to make credibility determinations or weigh evidence***. *Id.*, 4:7-17. Plaintiff's counsel also cited to the opinion in *Agosto v. Immigration and Naturalization Service*, 436 U.S. 748 (1978), wherein the Supreme Court held that, "[a] district court generally cannot grant summary judgment based on its assessment of the credibility of evidence presented [and] ***controverted allegations can only be resolved by a trial on the merits, not on summary judgment***." *Id.*, 7:18-23 (emphasis added).

Plaintiff's counsel also stated that Plaintiff "fears that participation in anything that resembles a trial on the merits or involves fact-finding by your Honor could later be construed as complicit consent." *Id.*, 5:1-3. On those bases, on behalf of Plaintiff, the undersigned counsel "respectfully" objected "to the extent your Honor intends to receive any evidence not already submitted in the various filings and support in opposition to the parties' cross-motions for summary judgment … or to conduct any fact-finding." *Id.*, 5:3-8.

---

conference. By contrast, in her order of October 17 (ECF 440) regarding the October 21 proceedings, she simply ordered that, "Plaintiff is hereby ordered to appear."

In response to Plaintiff's objections, Google first asked for relief in the form of two alternatives. Google orally moved for a dismissal under Rule 41(b) (*citing to Peart v. New York* 992 F.2d 458 (2nd Cir. 1993)) on the grounds that "Plaintiff did not appear;" and alternatively for entry of judgment in Google's favor on the basis that "our evidence is unrebutted here because the plaintiff has not shown up and the other co-inventor has not shown up, so the only thing on the record here is Google's evidence." *Id*., 6:15-7:7. Google then also offered another basis for entry of judgment in its favor, to wit: "because the plaintiff did not show up here, you would not even need to weigh evidence because there would not be a genuine dispute as to material fact because only Google presented evidence and there's nothing in response." *Id*., 7:9-13.[2]

> Plaintiff's counsel responded to Google's oral motions and arguments, saying,
>
> I'll note for the record that this proceeding is not unrebutted, and the evidence is not unrebutted. This issue has been briefed extensively by both parties. The plaintiff, Mr. Weisner, has vigorously litigated this case up and down … to the Federal Circuit once already earlier in the case where the case was actually, the first case here was dismissed, and prevailed at the Federal Circuit, came back, and the case has continued and has been going on for five years. So this is not a situation in which the plaintiff has failed to prosecute his case. He is participating here today by me on his behalf. I am objecting to the taking of any new evidence.

---

[2] With all due respect, Plaintiff submits that the substance of these theories as to why Magistrate Judge Figueredo should find in favor of Google at the conclusion of the proceedings of October 21, 2025—on summary judgment—reflects just how irregular this entire situation has become. For, if the matter were truly being resolved on summary judgment, under Rule 56, and since Plaintiff has already submitted no less than three memoranda citing those "particular parts of materials in the record" (per Rule 56(c)) which he believes supports his motion and opposes Google's motion—it is an obvious *non sequitur* to somehow suggest that Google's evidence is "unrebutted." Conversely, if the matter were being decided following a bench trial on the merits, then in terms of the evidence presented that day, he might have a point (setting aside the fatal constitutional and statutory flaws by a magistrate judge conducted such a trial without consent). Yet, counsel for Google argued at the trial that the magistrate judge should issue a report and recommendation finding in favor of "***Google's motion for summary judgment***" on the basis that "there's no genuine dispute as to material fact ... [because] no one showed up on the other side, and there's no facts or evidence on the other side." Exhibit 2, Transcript, 102:2-10. Plaintiff submits that these statements by his counterpart reflect that Google knows that what the magistrate judge actually conducted was a bench trial (as district judges are authorized to do under Rule 52, but magistrate judges are only authorized to do under Rule 73, with consent), but that Google is trying to "save" the proceeding by nonsensically asking the magistrate judge to decide the trial under Rule 56 (pursuant to her authority under Rule 72(b)), which would result in her being a fact-finder on the merits of the case, which is another constitutional and precedential violation.

*Id.*, 9:14-25.

Plaintiff's counsel went on to ask the magistrate judge whether the purpose of the proceedings was to engage in fact-finding on the merits or not, saying, "[I]t sounds like, just to be clear, that the purpose of the proceeding today is to do fact-finding on the merits of Google's affirmative defenses; that is, whether or not plaintiffs' patents are unenforceable. Is that right, your Honor?" *Id.*, 10:1-5. Magistrate Judge Figueredo did not specifically answer counsel's question by affirmatively stating whether she intended to engage in fact-finding; however, after voicing confusion at Plaintiff's position, she said, "I still have a referral order indicating that if the summary judgment motions cannot be resolved on the papers, I should move forward with an R and R to resolve them." *Id.*, 10:15-18.

To be clear, Plaintiff's counsel again repeated the scope of Plaintiff's objections and the underlying legal bases therefore, saying,

> To the extent that Judge Hellerstein did refer this for a trial on the merits without the parties' consent, then obviously plaintiff objects to that strenuously, but his most recent order specifically states that it's referred for report and recommendation as it relates to a summary judgment motion. And so from everything I'm hearing, the exhibits and case in chief and a trial and everything, this is a trial. Everybody agrees that this is a trial. And that is a finding on the merits of the case. It involves weighing credibility, new witnesses, exhibits, you know, staring into the eyes, determining credibility. That is clear from the Federal Circuit itself, all the cases that were cited even denying our mandamus request, all were cases involving the limits of a magistrate judge's authority. With all due respect, your Honor, it specifically says: Absent consent of the parties, a magistrate judge cannot conduct a trial. Magistrate judge cannot conduct trials without the parties' consent. I am here. Plaintiff is here on the cross-motions for summary judgment on a hearing on that. But any taking of evidence, any fact-finding on the merits is clearly not allowed; and nobody, not this court, not Judge Hellerstein, not Google, not us, have been able to find a single case that allows this proceeding to go forward on the merits as to fact-finding. We can move forward on summary judgment, but that's it.

*Id.*, 12:2-13:4. Magistrate Judge Figueredo responded by saying,

I just want to be clear, he's referred it. I had indicated at a prior conference, we had reviewed the cross-motions for summary judgment, ***I think there's an issue of fact***. ***Because of the expedited timing*** that Judge Hellerstein wanted me to decide this, I went ahead and scheduled the proceeding because ***we didn't have a lot of available time*** and that ***I would issue an R and R on a summary judgment motion and then an R and R following this proceeding***; that the parties then could take their objections to Judge Hellerstein. But I just want to be clear that I am not overstepping his referral because ***he's been very clear to me that if there is an issue of fact, I am to have a hearing, take testimony from the witnesses, and then issue an R and R***.

*Id.*, 13:12-24 (emphasis added).

Thereafter, Google presented its evidence, which included some of the evidence it had previously submitted in support of the summary judgment pleadings, but also consisted of <u>new evidence not yet in the record</u>—primarily the purported expert testimony of Robert Stoll, a patent attorney and former patent examiner. *Id.*, 15:18-44:25. Google went on to submit into evidence select excerpts of video testimony from the discovery depositions of Plaintiff Sholem Weisner, Involuntary Plaintiff (and Co-Inventor) Shmuel Nemanov, and patent attorney Dr. Mark Friedman, as well as numerous documentary exhibits. *Id.*, 45:2-71:3. The magistrate judge admitted all of Google's evidence over the continued objections by Plaintiff.

At one point, in response to the continued objection by Plaintiff's counsel, coupled with an objection that Google's counsel was improperly commenting on the evidence as it was being offered, the magistrate judge reasoned that a particular way of going forward would be sufficient, "Maybe because this isn't a jury trial." *Id.*, 48:6-9. At the conclusion of Google's "evidence," Plaintiff's counsel again objected, saying,

Your Honor, I note for the record that all of these issues were briefed extensively by the parties in their cross motions for summary judgment, opposition statements of material fact, responses to those material facts. All those were addressed by Mr. Weisner with deposition transcripts; complete transcripts, not just these blurbs that have been put in by Google today. All of these issues have been addressed and responded to, objected to in the responses to the statements of material fact. And we also, of course, make the same objection as to the presentation of any evidence

here today under the constitutional and federal law grounds that we've already stated; that to review this testimony in its limited form and as the purposes set forth today would be weighing evidence and determining credibility, which are not permitted on any kind of summary judgment motion, and are otherwise objectionable.

*Id.*, 71:4-19. Google then gave what the magistrate judge called a "closing statement." *Id.*, 71:22-102:25. In closing, Google asked the magistrate judge:

1) To "issue a report and recommendation finding that Google's motion for summary judgment of unenforceability due to inequitable conduct and prosecution laches … because there's no genuine dispute as to material fact ... [as] we have nothing on the other side. So we're having a hearing about the motions for summary judgment, and no one showed up on the other side, and there's no facts or evidence on the other side." *Id.*, 102:2-10.

    And,

2) To also rule in Google's favor on the Rule 41(b) motion because that motion and summary judgment "rely on different facts." *Id.*, 103:7-10.

Counsel for Plaintiff responded by saying,

The first thing I want to note is the counsel for Google stated that there's nothing in the record to dispute any of these facts, that the plaintiff hasn't put anything on the record. That is demonstrably false. We obviously have had extensive briefing on cross motions for summary judgment, responses to statements of material fact, statements of material fact, declarations, exhibits, all kinds of things that have been put into the record, and all of those part of summary judgment record before your Honor.

*Id.*, 105:18-106:1. After pointing out that all of those parts of the summary judgment record that were actually before the magistrate judge (if this was a "hearing" on summary judgment), Plaintiff's counsel then argued how the record supported summary judgment in Plaintiff's favor. Based solely on the evidence and pleadings previously filed on the cross-motions for summary judgment, Plaintiff is entitled to summary judgment for the following reasons:

1) There is zero evidence of a specific intent to deceive, as there's absolutely no evidence from Nemanov, Weisner, Friedman, Horowitz, or anybody else, saying that they intended to deceive the PTO, or even an implication that any of them

intended to deceive the PTO.  To the contrary, <u>Plaintiff's evidence</u> was clear and convincing that there was no intent to deceive the patent office.

2) There is no evidence from which intent to deceive can be inferred, and intent to deceive cannot be inferred simply from a decision to withhold "where the reasons given for the withholding are plausible." *Dayco Products, Inc. v. Total Containment, Inc*., 329 F.3d 1358, 1367 (Fed. Cir. 2003).

3) Plaintiff was severely incapacitated by severe medical conditions from 2009 to 2015—as established by over 600 pages of medical records, by deposition testimony establishing that Plaintiff's condition was so bad that his close friends thought he would die, and by nationally-renowned  expert medical testimony of Dr. Laurence Westreich (which remains unrebutted[3]); and that Plaintiff continued to suffer cognitive defects (memory gaps and "haziness") from those severe medical conditions through at least 2017 (based on the same unrebutted expert medical testimony).  Again, Plaintiff's medical evidence of medical incapacitation was completely unrebutted and established his severe medical conditions throughout the entire alleged abandonment period by clear and convincing evidence.

4) Attorney Horowitz testified:[4]
   a. That "not having the money" in 2009 was not the basis for the original abandonment;
   b. That Plaintiff's participation was needed in order to prosecute the patents because he worked very closely with Horowitz on the language of the patents;
   c. That Plaintiff was physically unable to work on responding to the office action in 2009-2010, and that Nemanov simply could not proceed without Plaintiff being able to participate;
   d. That he knew the USPTO would be relying on the petitioner's duty of candor and good faith, so he conducted an investigation to be "doubly sure" before filing the revival petition;
   e. That Dr. Friedman "would have conducted an investigation through" him, and that he discussed his investigation with Dr. Friedman, and that by signing the petition, Friedman was "relying on" Horowitz's investigation; and,

---

[3] In its memorandum opposing Plaintiff's motion for summary judgment, Google presented no expert medical proof, but merely claimed that it had hired a medical expert of its own "only if the Court indicates that it would like to hear one ***at trial***." ECF 372, Memorandum, Page 37-8 of 44 n.9 (emphasis added— further clearly reflecting Google's prior understanding that a trial would be necessary if summary judgment was not granted either party on the papers alone).  Google did not offer any medical evidence at the bench trial either.

[4] Horowitz represented the inventors during the original patent application and actually prepared the petition to revive, even though it was submitted to the USPTO using Dr. Friedman's firm's (who Horowitz was a member of) standard practice of signing all submissions with Friedman's information, which was commonly done on thousands of files only for insurance reasons.

f. That he was specifically was aware of the guidance on this very issue published by the PTO, and that he determined in light of that guidance that he could truthfully and with good basis represent to the PTO that the entire period of abandonment of the '165 application was unintentional;

g. That he knew that if the PTO wanted additional information, they could and would ask for it; and,

h. That he was not concerned that the patent office would have found his investigation inadequate to support the representation of unintentionality if he had shared it with them.

5) Attorney Dr. Friedman testified:

a. That he really had no specific memory of the facts surrounding the petition to revive the '165 Application, because it was from seven years prior and he has personally reviewed "hundreds of documents every week for the last 31 years;"

b. That the revival matter was entirely handled by Attorney Horowitz, as a member of Friedman's firm;

c. That the petition for revival would have been submitted under his signature only for insurance purposes, as was everything filed from his office— regardless of who worked on it; and,

d. That he "personally made no investigation" supporting the revival petition, but "Horowitz most likely" did.

6) Mr. Nemanov testified:

a. That he personally "bore witness" to Plaintiff's incapacitation;

b. That he never refused to join the revival;

c. That he agreed to the revival; and,

d. That he was celebrating and was very happy about the revival.

e. He also continually waffled back and forth over whether the signature at issue was actually his, specifically admitting that it could be his because he simply doesn't remember.

7) There is no court decision holding that a medical incapacity does not constitute an unintentional delay.

8) Not providing the patent office information they never asked for cannot be considered intentionally withholding information. As a matter of law, attorney's certification merely using the standard language by the PTO does not constitute clear and convincing evidence of withholding material information with intent to deceive the director. *See Sauder Manufacturing Co. v. J Squared, Inc.*, 2017 WL 11541154 (N.D. Oh. July 19, 2017) (*quoting Network Signatures v. State Farm*, 731 F.3d 1239 (Fed. Cir. 2013)).

9) Intent to deceive cannot be found by clear and convincing evidence to be the single, most reasonable inference. When there are multiple, reasonable inferences that can be drawn, intent to deceive cannot be found. *See Therasense,*

*Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011). Therefore, Google failed to meet its burden as to inequitable conduct.

10) None of Google's evidence met the clear and convincing standard. Even evidence which may "appear troubling" does not meet the burden, as even evidence that "may cast some doubt on another version of facts is far from clear and convincing evidence." *See Star Science Inc. v. R.J. Reynolds Tobacco*, 537 F.3rd 1357 (Fed. Cir. 2008).

11) There was a complete lack of any evidence by Google as to its investment in the Timeline feature. According to *Google v. Sonos* (998 F.3d 1347 (Fed. Cir. 2021), overturning *Sonos v. Google* (2023 WL 6542320 (N.D. Cal. Oct. 6, 2023))), Google cannot meet its burden in the absence of any evidence on that issue. Google merely alleged that it began developing its products in 2014 or that it released its products in 2015, but it didn't present a shred of evidence to substantiate its investment in the accused products. Therefore, per the Federal Circuit's recent opinion, Google has completely failed to meet its burden as to one of the required elements of prosecution laches.

*Id.*, 106:2-121:4; *see also* ECF 351, 373, 381). Google countered <u>again</u> by saying,

So what actually we should be looking at is what did we introduce into evidence. And the only one introducing testimony or exhibits into evidence is Google … [W]hat we need to consider here today is what was actually presented. And if we look at what was actually presented, there is nothing on the other side. And that's the basis for granting summary judgment. So if we think about it, we have summary judgment, we had the opportunity to submit all the papers, and what Judge Hellerstein said is: Let's have an evidentiary hearing so that we can hear everything and sort it all out where we actually introduce the evidence, we actually call the witnesses, we actually see what the evidence says live. And I would argue that it's been very instructive to see the witnesses testify live and see how they're saying things that contradict what they're representing to the Court. And that's why we're doing this process.

And

Here we have indisputable evidence. And what's more is, there's nothing on the other side to refute that. So of course there is prejudice to Google, and that's the evidence we introduced. So looking at what actually happened here, there is no genuine dispute of material fact on the evidence that's actually in the record in this particular proceeding, which is why we're here today.

*Id.*, 121:22-122:15. Magistrate Judge Figueredo then offered that she believed Plaintiff had

willfully, intentionally violated her order (ECF 440) to appear personally, and that she was

"struggling to understand … the basis for that," even though her order did not specifically require him to appear personally (as her order of October 16 specifically had). *Id.*, 124:20-125:8. She then continued by saying,

> I think ___on the papers there was in my mind an issue of fact that precluded the___ ___granting of summary judgment to either side___. We could have taken the evidence; heard from the various witnesses; you would have preserved your objection. If you would have disagreed with whatever R and R I had issued then, you could have raised objections to Judge Hellerstein. You could have then raised those objections on appeal to the Federal Circuit.

*Id.*, 125:11-18 (emphasis added). She concluded the proceedings by saying that she would, "go ahead and issue an R and R on the summary judgment motion,"[5] and wait for a response from Plaintiff on the Rule 41(b) motion.

Google continually argued that Magistrate Judge Figueredo should find for Google on the summary judgment motions—yet based <u>only</u> on the evidence it presented on October 21, 2025— <u>not</u> in the motion briefing—as "no one showed up on the other side, and there's no facts or evidence on the other side." Likewise, the magistrate judge concluded by saying that she would "issue an R and R on the summary judgment motion." Yet, in stark contrast, Google also argued that, "it's been very instructive to see the witnesses testify live and see how they're saying things that contradict what they're representing to the Court [and] that's why we're doing this process," and Magistrate Judge Figueredo ruled on an objection on the basis that "this isn't a jury trial." Further conflating matters, if that's possible, the magistrate judge said there was "an issue of fact that precluded the

---

[5] As Plaintiff has argued multiple times, to this Court and to the Federal Circuit, federal law is clear that when genuine issues of material fact preclude summary judgment for either side, the matter must proceed to a "trial." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). For that reason alone, Plaintiff posits that everything that occurred in the proceedings of October 21, 2025, actually constituted a trial, as the magistrate judge could no longer have been ruling on the summary judgment motions under Rule 56.

granting of summary judgment to either side," as she had previously to the parties[6]—indeed she continually stated that to be the reason for conducting a "bench trial." Lastly, as noted at the outset, the record in this matter clearly reflects that a "bench trial" was begun and concluded on October 21, 2025.

Regardless of what happens next, it is indisputable that Magistrate Judge Figueredo conducted a <u>bench trial</u> on the merits of the unenforceability of Plaintiff's patents based on Google's affirmative defenses. Such is exactly what Plaintiff objected to, from beginning to end— respectfully—on the basis of the law cited by the Federal Circuit.

## APPLICABLE LAW

Rule 41(b) provides that, "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it."[7] The Second Circuit has held that, "dismissal for failure to prosecute is a "harsh remedy to be utilized only in extreme situations." *U.S. ex rel. Drake v. Norden Sys., Inc.,* 375 F.3d 248, 254 (2d Cir. 2004) (*citing Peart v. City of New York*, 992 F.2d 458, 461 (2d Cir.1993)). In *Drake*, the Court repeated the "guiding rules that limit a trial court's discretion in this context," to wit: (1) the plaintiff's failure to prosecute caused a delay of significant duration; (2) plaintiff was given notice that further delay would result in dismissal; (3) defendant was likely to be prejudiced by further delay; (4) the need to alleviate court calendar congestion was carefully balanced against plaintiff's right to an opportunity for a day in court; and (5) the trial court adequately assessed the efficacy of lesser sanctions. *Drake*, 375 F.3d at 254 (*citing Martens v. Thomann*, 273 F.3d 159, 180 (2d Cir.2001)).

---

[6] "We've come to the conclusion that there is an issue of fact that would preclude ruling on the motions on the papers, which is why I believe my law clerk had reached out to, sort of, get the parties to hold October 21st through the 23rd for a trial." Exhibit 3, Transcript, 4:9-14.

[7] The rule further provides that, "Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits."

The *Drake* Court further held that no one factor is dispositive, and that dismissal must be considered "in light of the record as a whole." *Id*.

Peart was also later distinguished by the Second Circuit in *Scott v. Perkins*, 150 F. App'x 30 (2d Cir. 2005), when the Court reversed a district court's dismissal with prejudice (for failure to prosecute under Rule 41(b)), after the plaintiff failed to appear on the first day of a scheduled trial in his Section 1983 case. In *Scott*, the Court criticized the district court for not having considered and employed any lesser sanction. *Id.*, at 34. The Court distinguished Scott's failure to appear with cases such as *Peart* in which "the attorney's 'contemptuous and disrespectful behavior' justified harsh sanctions." *Id*. (*citing Peart* at 463). Reversing the dismissal in *Scott*, the Second Circuit noted, "there has been no showing that Scott has been disrespectful, vexatious, or otherwise worthy of a harsh sanction." *Id*. Because one option available to the district court was to simply select a jury and "set a later date" for the trial, the Scott Court held that, "[t]here must be compelling evidence of an extreme effect on court congestion before a litigant's right to be heard is subrogated to the convenience of the court." *Id*. (*quoting Lucas v. Miles*, 84 F.3d 532, 535-36 (2d Cir. 1996)).

## **ARGUMENT**

### I.    **Dismissal under Rule 41(b) is inappropriate as all five *Drake* factors weigh heavily <u>against</u> dismissal.**

*Factor No. 1*

As to the first factor, <u>Plaintiff has not failed to prosecute his case</u>, and has not caused any delay—let alone delay of significant duration. Herein, there has been absolutely no failure to prosecute, and no delay in the proceedings at all. As reflected by Judge Hellerstein's order of October 17, 2025 (ECF 439), the referral to Magistrate Judge Figueredo was for "a hearing on the summary judgment motion." First, Plaintiff fully and completely briefed the summary judgment motions in a timely manner. Second, Plaintiff, through counsel, also appeared on October 21, 2025,

to attend the proceedings on the parties' cross-motions for summary judgment. Though he objected to the proceedings on the basis that the magistrate judge lacked authority to conduct fact-finding, if anything, Plaintiff's objection to participating actually shortened the proceedings (which were originally scheduled for three days) and thereby saved both the Court and Google both significant time and expense. There has been no delay.

Plaintiff has prosecuted his case vigorously for over five years, including appealing to the Federal Circuit twice in this litigation. In fact, throughout the proceedings, Plaintiff has consistently advocated for a faster schedule than Google has desired. Jury trial is currently scheduled for February 2, 2026, and Plaintiff has no intention of seeking any continuance of that date. "It is plaintiff's obligation to move his case to trial, and should he fail to do so in a reasonable manner, his case may be dismissed with prejudice as a sanction for his unjustified conduct." *West v. City of New York*, 130 F.R.D. 522, 524 (S.D.N.Y. 1990). Plaintiff has done everything possible, for over five years, to "move his case to trial."[8]

Through counsel, Plaintiff made an appearance on October 21, and very respectfully made a record as to the legal reasons why he objected to participating in the proceedings but only "to the extent your Honor intends to receive any evidence not already submitted in the various filings and support in opposition to the parties' cross-motions for summary judgment … or to conduct any

---

[8] The authorities cited by the Federal Circuit in *In Re Weisner*, *supra*, made clear that Magistrate Judge Figueredo may not, under 28 U.S.C. § 636(b)(1)(B), be delegated the authority to: (i) Engage in fact-finding on the merits of the case; or (ii) Issue a report and recommendation resolving factual disputes on the merits of the case. Further, the Second Circuit has explicitly held that, "[t]he function of the district court in considering the motion for summary judgment is *not to resolve disputed questions of fact* but only to determine whether, as to any material issue, a genuine factual dispute exists. In considering whether such a fact issue exists, the court is not to make credibility determinations or weigh the evidence." *Rupp v. City of Buffalo*, 91 F.4th 623, 634 (2d Cir. 2024) (emphasis in original). And the Supreme Court has clearly held that, "[A] district court generally cannot grant summary judgment based on its assessment of the credibility of the evidence presented" (*Agosto v. Immigr. & Naturalization Serv.*, 436 U.S. 748, 756 (1978)), and that controverted allegations "can only be resolved by a trial on the merits," not on summary judgment. *Free v. Bland*, 369 U.S. 663, 671 (1962).

fact-finding." Exhibit 2, Transcript, 5:3-8. In advance of the October 21 proceedings, those proceedings were continually referred to as a "bench trial" or "trial." (*See, e.g.,* ECF 408, 409, 416, 434.) Yet, Judge Hellerstein's latest order referred to it merely as "a hearing on the summary judgment motions." (ECF 439.) Faced with the threat of sanctions for not showing up, Plaintiff made an appearance by counsel, and was prepared to participate in a hearing on the summary judgment motions, but also prepared to object to participating in a bench trial on the merits as he had not consented.

The only thing Plaintiff declined to do—respectfully (as compared to the conduct involved in *Peart*) —was to participate in a bench trial by a magistrate judge to which he did not consent, consistent with every opinion of federal law ever presented by any party and every court that has been involved in this matter. In light of the language in Judge Hellerstein's most recent order, Plaintiff was far from clear what exactly Magistrate Judge Figueredo intended to do, or would do, when October 21 arrived. Therefore, he caused his counsel to appear, ready to proceed if the matter truly was only a hearing on summary judgment, but ready to object if she intended to conduct something more "akin to a trial."[9] Therefore, it cannot be said that Plaintiff failed to comply with any court order, or has in any way failed to prosecute his case—as contemplated by Rule 41(b).

"Failure to prosecute is not defined in Rule 41(b)," but "[t]he primary rationale underlying a dismissal under 41(b) is the failure of plaintiff in his duty to process his case diligently." *Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 42-43 (2d Cir. 1982). "Civil contempt should not be resorted to where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct,"

---

[9] "Because equitable apportionment is at the very core of a CERCLA contribution action, and involves considerable judicial discretion in the resolution of factual disputes going to the merits of the case, the proceeding is ***akin to a trial*** and cannot be referred to a magistrate judge for report and recommendation." *Booth Oil Site Admin. Grp. v. Safety-Kleen Corp.*, 532 F. Supp. 2d 477, 513 (W.D.N.Y. 2007) (*citing Beazer E., Inc. v. Mead Corp.*, 412 F.3d 429, 439 (3d Cir. 2005)).

or when "a party's attempt at compliance was 'reasonable.'" *Taggart v. Lorenzen*, 587 U.S. 554, 561 (2019) (*citing* 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2960, pp. 430–431 (2013)). This standard is an objective one. *Id.* Even though Google disagrees with Plaintiff's objection, and even though the magistrate judge said she didn't understand Plaintiff's conduct, Plaintiff attempted to comply with all court orders in a "reasonable" fashion, and submits that there is "a fair ground of doubt" as to whether his conduct was in any way wrongful, particularly given the fact that every case cited by the Federal Circuit – and the parties and Court in this case – precludes magistrate judges from conducting fact-finding proceedings on the merits without consent.

For those reasons, Factor No. 1 weighs in favor of denying Google's Rule 41(b) motion.

### Factor No. 3

As to the third factor, Google has not been prejudiced—and there has been no delay. Over Plaintiff's objection, Google was permitted by the Magistrate Judge to put on its evidence during the October 21 proceeding.  Google presented the live testimony of Robert Stoll,[10] a patent attorney and former patent examiner (Exhibit 2, Transcript, 15:18-44:25); and select excerpts of video testimony from the discovery depositions of Plaintiff Sholem Weisner, Involuntary Plaintiff (and Co-Inventor) Shmuel Nemanov, and patent attorney Dr. Mark Friedman; as well as numerous documentary exhibits (*Id.*, 45:2-71:3). The magistrate judge admitted all of Google's evidence over the continued objections of Plaintiff.

---

[10] Evidence that Google <u>did not submit</u> either in support of its motion for summary judgment, or in opposition to Plaintiff's motion for summary judgment. Mr. Stoll's expert report is dated as of August 29, 2025, yet the briefing on the cross-motions for summary judgment concluded on August 19, 2025 (See ECF 384, Google's Reply Memorandum in support of its motion; and ECF 386, Plaintiff's Reply Memorandum in support of his motion).

Google hasn't even attempted to explain how it has been prejudiced by Plaintiff's objection to the proceedings. In fact, paradoxically,[11] Google actually used Plaintiff's declination to participate in order to argue in its own favor, asserting that the magistrate judge should issue a report and recommendation finding for Google on its motion for summary judgment "because there's no genuine dispute as to material fact ... [as] we have nothing on the other side ... no one showed up on the other side, and there's no facts or evidence on the other side." *Id.*, 102:2-10. Accordingly, if anything, Google is on record claiming out of one side of its mouth to have benefitted from Plaintiff's refusal to participate; therefore, it cannot now genuinely claim prejudice out of the other side of its mouth.

What is more, Google told the Federal Circuit that Google would be prejudiced if it was "forced to try the case without two of its important defenses." (*In re Weisner*, ECF 8 at 38.) Therefore, even Google agrees that the unenforceability defenses could be tried during the February 2, 2026 trial, thereby alleviating any argument now by Google of prejudice, no matter how strained.

The fact of the matter is only Plaintiff has been prejudiced by the bench trial being held by a magistrate judge without his consent before the February 2, 2026 trial. Plaintiff did not object

---

[11] The depth and gravity of this paradox cannot be either overlooked or dismissed, especially in any analysis as to whether Plaintiff willfully violated any court order as contemplated in Rule 41(b). As stated hereinabove, federal law is clear that even a district judge is not to resolve disputed questions of fact when considering a motion for summary judgment (*see Rupp v. City of Buffalo*, *supra*); Magistrate Judge Figueredo stated both before and during the October 21 proceedings that she believed there were genuine issues of material fact that precluded summary judgment for either party—therefore a "bench trial" was necessary (*see* Exhibit 3); she declined to answer Plaintiff's counsel at the commencement of the proceedings "whether the purpose of the proceedings was to engage in fact-finding on the merits or not;" during the proceedings, Google "admitted evidence" into the record that had not previously been part of the summary judgment pleadings; and, the official Court docket reflects that a "Bench Trial" was conducted on October 21; yet, in the end, Google argued that it should now prevail on summary judgment because all of the evidence presented on October 21 was completely unrebutted. If the October 21 proceedings were indeed a hearing on the summary judgment motions, then it was improper for the magistrate judge to have received and/or weighed any evidence. If the proceedings were not such a hearing, then by definition they constituted a bench trial, to which Plaintiff never consented.

to Judge Hellerstein conducting the bench trial on September 11, 2025, over six weeks ago,[12] because he is an Article III judge and he knows the parties and the case.  Instead of agreeing to try its defenses at the February 2, 2026 trial – as Google told the Federal Circuit it wanted to do – Google pushed the magistrate judge to conduct fact-finding proceedings on the merits of the case improperly without consent.  (*See, e.g.,* ECF 411-2 at 1-3/8.)  Therefore, any prejudice claimed by Google is of its own making.

For those reasons, Factor No. 3 weighs in favor of denying Google's Rule 41(b) motion.

*Factor No. 4*

As to the fourth factor, there has been absolutely no balancing of the purported need to alleviate court calendar congestion against plaintiff's right to an opportunity for a day in court, as Plaintiff has repeatedly requested that Google's affirmative defenses be tried along with the rest of the claims at the February jury trial, with the Court making a determination of the equitable issues afterwards—as is often done by district courts.  Other courts within this district have employed that very technique before. *See Telcor, Inc. v. Recoton Corp.*, No. 89 CIV. 6032 (LLS), 1991 WL 275498 (S.D.N.Y. Dec. 18, 1991) (The equitable and infringement issues were presented to a jury, with the Court ruling on the equitable defense of inequitable conduct afterwards, based on specific factual determinations made by the jury). The Federal Circuit itself has specifically approved of trying the entire matter together in such a fashion. *See Flex-Rest, LLC v. Steelcase, Inc.*, 455 F.3d 1351 (Fed. Cir. 2006).[13]

---

[12] Any bench trial on Google's affirmative defenses of unenforceability that might be necessary was originally scheduled before Article III Judge Hellerstein on September 11, 2025, a schedule that Plaintiff agreed to.  (ECF 318.)  All the briefing on the parties' summary-judgment motions was completed on August 19, 2025.  (Id.)

[13] *See also, Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*, No. 98 CIV. 7766 (PAC), 2008 WL 2787981, at *4 (S.D.N.Y. July 17, 2008) ("As a practical matter, it makes no difference whether the Court assesses inequitable conduct at the fee, rather than the trial, stage. If a court concludes at any stage of the

Judge Hellerstein has stated to the parties (as has been repeated by Magistrate Judge Figueredo), that he *desires* that Google's equitable defenses be addressed before the February jury trial. But neither Google nor the Court has ever suggested that there is <u>any reason</u> why these issues cannot be tried simultaneously with the infringement claims. To the contrary, Google argued to the Federal Circuit that it would be prejudiced if it was "forced to try the case without two of its important defenses." (*In re Weisner*, ECF 8 at 38). Therefore, even Google agrees that the unenforceability defenses could be tried during the February 2, 2026 trial.

Moreover, any bench trial on Google's affirmative defenses of unenforceability that might have been necessary was originally scheduled before Article III Judge Hellerstein on September 11, 2025, a schedule that Plaintiff agreed to. (ECF 318.) All the briefing on the parties' summary-judgment motions was completed on August 19, 2025. (*Id*.) Only after the magistrate judge made it clear that she was going to hold a bench trial without Plaintiff's consent did Plaintiff object as to the unconstitutional nature of such a proceeding. But even then, Plaintiff never delayed the bench trial from happening over his objection.

If such balancing is conducted presently, no Rule 41(b) sanction is appropriate. Plaintiff has not willfully disobeyed any court orders, and has not delayed at all, and Google has not been prejudiced in any fashion. At the same time, all Plaintiff has done, in declining to personally participate in the October 21 proceedings, was to continually insist on his Constitutional and statutory rights that any trial on the merits of Google's affirmative defenses be conducted during the February 2, 2026 trial or by an Article III judge. From what the magistrate judge has repeatedly said on the record, the reason she conducted a bench trial, without Plaintiff's consent, thereby forcing Plaintiff to object, was to try the merits of the case *before* the February 2, 2026 trial. That

---

proceedings that a party obtained a patent by way of inequitable conduct, then the patent is automatically deemed unenforceable.").

procedure occurred on October 21, 2025, as scheduled.  Accordingly, the fourth factor weighs in favor of denying Google's motion.

For those reasons, Factor No. 4 weighs in favor of denying Google's Rule 41(b) motion.

*Factor No. 5*

The fifth factor, as to the efficacy of lesser sanctions, is not even relevant because no sanction is warranted at all. There has been no delay—in fact, Plaintiff's objection saved both the Court and Google two whole days that were otherwise scheduled for the "bench trial." There has been no prejudice—to the contrary, Google actually used Plaintiff's refusal to put on evidence to argue in its favor, claiming that "on summary judgment" its evidence was somehow now magically unrebutted. Google has been spared two days' worth of attorney and expert witness fees, and any other costs ancillary to having such a large contingent present for the "bench trial." The magistrate judge informed the parties that she will proceed to issue a report and recommendation (although, Plaintiff is still unsure whether there will only be one R & R as to the summary judgment motions, or whether there will also be a second R & R following the "bench trial" as she previously said she would do).

As soon as she issues her Report(s) and Recommendation(s), in accordance with Rule 72 Plaintiff and Google can then both file any objections each may have, and the case can continue moving forward. There simply is no basis for dismissal under Rule 41(b), <u>or any other sanction</u>. Google has born no expense that should now be shouldered by Plaintiff, as it has actually likely ***saved money*** due to the shortened proceeding.

For those reasons, Factor No. 5 weighs in favor of denying Google's Rule 41(b) motion.

*Factor No. 2*

Even the second factor—whether "plaintiff was given notice that further delay would result in dismissal"—which Google attempts to claim in its favor, ultimately weighs decisively for Plaintiff once the record is fairly examined.  While Plaintiff's counsel did state during the October 17 teleconference that he did not plan to attend the October 21 proceedings, he did so after being commanded to by the magistrate judge's order issued after the conference on October 17. As stated above, Plaintiff did not know exactly what Magistrate Judge Figueredo intended to do, or would do, when October 21 arrived. Therefore, he caused his counsel to appear, ready to proceed if the matter truly was only a hearing on summary judgment, but ready to object if she intended to conduct something more "akin to a trial."  Plaintiff was not personally commanded to appear, as he was for the October 17 teleconference, therefore he did not personally violate any order.

Despite all of the previous briefing on this issue (in both the district court and the Federal Circuit), Judge Hellerstein's order of October 17, 2025 (ECF 439), made absolutely no mention that the proceedings of October 21-23, 2025, were going to be a "bench trial" after all. Disagreeing over the difference between "a bench trial on the merits" and a "hearing on summary judgment" is clearly not splitting hairs, or asserting a difference without a distinction. Plaintiff has continually said that he did not object to the magistrate judge issuing a report and recommendation on the summary judgment motions, including an oral argument hearing on the same, but he vehemently disagreed with her conducting a bench trial or any proceeding where there would be fact-finding on the merits. On the eve of October 21, Plaintiff read Judge Hellerstein's October 17 order as a possible indication that he was now ***limiting*** the October 21 proceedings to only an oral argument hearing on the summary-judgment motions, in order to conform them to the Federal Circuit's opinion (as Plaintiff asked in his emergency motion). If that was the case, Plaintiff would obviously

have no objection come the morning of the 21st. However, if Judge Hellerstein was not making any change by his last order, and a bench trial was to be conducted on the 21st, Plaintiff would obviously object. Faced with that uncertainty, and with no indication either way from Magistrate Judge Figueredo's last order of October 17 (simply commanding Plaintiff to appear), Plaintiff chose to have his counsel represent him solely to participate in a hearing, but to object to anything "akin to a trial."

To the extent that the October 21 "proceedings" were only to constitute a "hearing on the summary judgment motions"—and not a trial on the merits—Plaintiff's personal appearance was not required and Plaintiff participated, even making through counsel his arguments in favor of summary judgment in his favor. Plaintiff's personal testimony, from multiple discovery depositions, had already been presented to the Court as part of the summary judgment briefing by both Plaintiff and Google. As the Court can read for itself from the transcripts of his deposition attached to the summary judgment pleadings, Plaintiff was thoroughly examined by Google—*for three days*—on every single fact question related to the summary judgment motions. Therefore, it cannot be said that Plaintiff failed to comply with any court order. For those reasons, Factor No. 2 also weighs in favor of denying Google's Rule 41(b) motion.

*Record as a Whole*

The Second Circuit has "repeatedly emphasized that 'dismissal is a harsh remedy to be utilized only in extreme situations.'" *Scott*, 150 F. App'x at 33 (quoting *Minnette v. Time Warner*, 997 F.2d 1023, 1027 (2d Cir.1993)). Any dismissal for failure to prosecute under Rule 41(b) must be reviewed "in light of the whole record." *Alvarez v. Simmons Market Research Bureau, Inc.*, 839 F.2d 930, 932 (2d Cir.1988). There can be little doubt that, whatever course this litigation eventually takes—absent a settlement—the Federal Circuit is going to be reviewing it again on

24

appeal some day in the future. The only practical question is when they will be asked to review it, and on what bases. The Court of Appeals is, by now, thoroughly familiar with this matter, and with the most recent record in this matter.

The undersigned is confident that none of the participants in this action—including counsel, Judge Hellerstein, or Magistrate Judge Figueredo—has ever encountered a scenario like the one that occurred on October 21, 2025: a fact-finding proceeding on the merits presided over by a magistrate judge without the parties' consent. No party, and no court, has yet to produce a single federal case in which a magistrate judge was authorized—without consent—to conduct a bench trial on the merits of a case. Moreover, this situation bears no resemblance to the types of conduct that have ever warranted dismissal under Rule 41(b).

As noted above, throughout the proceedings, Plaintiff has consistently advocated for a faster schedule than Google has desired. The only delay has been caused by Google's two-year "fishing expedition"[14] in an effort to find any way to invalidate the patents-in-suit other than by defending the infringement claims on the merits. During the December 12, 2024 *Markman* hearing in *Weisner II* (at which time Judge Hellerstein consolidated the cases), Plaintiff pushed for an earlier trial date than Google wanted, and advocated for conducting all discovery simultaneously as opposed to the longer process proposed by Google.[15]

---

[14] In a November 15, 2023 hearing, Judge Hellerstein initially denied Google's motion to amend its Answer to assert these affirmative defenses, surmising that Google was "embarking upon … a fishing expedition." (*See Weisner I*, ECF 168, Transcript, at 3 of 24). Google's fishing expedition delayed the matter in order that it could spend the next 22 months conducting seven depositions primarily focused on the issue of abandonment, desperately seeking any evidence to support its affirmative defenses.

[15] Plaintiff pushed to set a trial date and proceed with all discovery simultaneously (*see Weisner II*, ECF 63, Transcript, 13:15-16), but Google wanted to delay all damages discovery until fact discovery on the *Weisner II* patents was concluded (*see id.*,14:10-18). Google then suggested that discovery remain open until June or July (of 2025), while Plaintiff suggested it conclude by the end of April. (*See id.*, 22:21-23:4).

Again, during a scheduling conference with Judge Hellerstein on July 15, 2025, Plaintiff continued to advocate for a faster schedule than Google wanted. Plaintiff agreed to Judge Hellerstein conducting a bench trial on Google's affirmative defenses (with no mention of referral to a magistrate judge), saying, "We also don't want to hold up the rest of the case in the meantime with expert disclosures." (*See Weisner II*, ECF 140, 9:8-22). During that hearing, Google took the position that no more evidence was needed on the summary judgment issue, opining that Judge Hellerstein could decide it "from the testimony of the plaintiff alone." (*See id.*, 10:18-11:7). Judge Hellerstein explicitly recognized Plaintiff's "***desire for an early trial***," and said he was thinking about a February trial date; but Google responded that it didn't believe the case would be ready for trial until "summer of next year." (*see id.*, 11:15-12:4) (emphasis added). Judge Hellerstein ultimately reserved September 11, 2025, for a bench trial, if necessary, <u>to be conducted by himself</u>, and scheduled a jury trial for February 2, 2026. (13:20-21, 16:24).

Only after Judge Hellerstein made the referral to Magistrate Judge Figueredo did Google then begin pushing for her to conduct a bench trial on the merits of these defenses—regardless of whether Plaintiff consented or not.[16] Even though Google argued to the Federal Circuit that it would be "greatly prejudice[d]" if it was "forced to try the case [to a jury in February] without two of its important defenses,"[17] Google has consistently refused to simply agree to do just that—try these equitable defenses with the infringement claims in February (with Judge Hellerstein deciding the equitable issues post-trial). Therefore, the only delay that has actually occurred in this matter has all been caused by Google—most recently when it unilaterally urged the magistrate judge to conduct a bench trial without Plaintiff's consent, contrary to all established legal authority.

---

[16] *See, e.g.*, ECF 411-2 at 1-3, 8.

[17] *See In Re Weisner*, No. 26-100, ECF 38, Consolidated Response, at 38.

For more than five years, Plaintiff has prosecuted his claims diligently and respectfully, including appealing to the Federal Circuit and preparing for the upcoming February 2026 jury trial. The only thing Plaintiff declined to do was participate in what was plainly a bench trial on the merits before a magistrate judge who lacked constitutional and statutory authority to conduct it. That decision was not a failure to prosecute; it was a principled and reasonable exercise of Plaintiff's fundamental right to trial before an Article III judge. Sustaining Plaintiff's objection, and leaving these affirmative defenses to be tried alongside the infringement claims in February, would result in no delay at all (and Google has not even claimed so).

Therefore, the backdrop of the "record as a whole" establishes that it is entirely disingenuous for Google to now claim that Plaintiff has somehow caused delay, only because he objected to the improper bench trial for which Google has persistently and unilaterally advocated. The record contains no evidence of delay, willful disobedience, or disrespect—only a legitimate legal dispute regarding constitutional authority. Unlike the misconduct present in *Peart v. City of New York* and similar cases upholding sanctions, the record here reflects diligence, consistency, and good faith.  For those reasons, the Plaintiff suggests that the record as a whole weighs heavily in favor of denying Google's Rule 41(b) motion.

## CONCLUSION

Where "the district court has the means to move [the] case forward efficiently without the cudgel of extreme sanctions," dismissal under Rule 41(b) is inappropriate. *Baptiste v. Sommers*, 768 F.3d 212, 219 (2d Cir. 2014). Google and Plaintiff will obviously never agree on this issue. At the same time, considering Google's motion for the extreme sanction of dismissal under Rule 41(b), the Court certainly has the means to keep moving this case forward "without the cudgel of extreme sanctions." Google has not been prejudiced. Plaintiff's objections saved both Google and

the Court both time and significant expense. Plaintiff appeared and made a record of that which he was agreeing to do, and that to which he objected—and stated legal reasoning for his position which has yet to be overcome by a single case cited by Google or the Court.

For all the foregoing reasons, the magistrate judge should recommend DENYING Google's Rule 41(b) motion in its entirety.

Furthermore, as argued on October 21st, and regardless of the proceedings on October 21st, Google has failed to meet its burden on either of its affirmative defenses. Google's **inequitable conduct defense** fails because no clear and convincing evidence supports an inference of intent to deceive. Multiple reasonable inferences exist, and nothing in the record—whether testimony or documents—suggests any intent to mislead the PTO. The undisputed evidence shows that Plaintiff's prolonged medical incapacitation explains the delay, that counsel's actions were consistent with PTO guidance and undertaken in good faith, and that all participants acted with transparency rather than deceit. Failing to provide information the PTO never requested cannot be deemed deceptive, and the use of standard PTO certification language cannot satisfy the demanding standard for inequitable conduct.

Google's **prosecution laches defense** likewise fails because it produced no evidence of investment in its accused products or that Plaintiff's delay was unreasonable given his unrebutted medical incapacity, required elements of the defense. Having shown neither bad faith nor prejudice, Google cannot meet its burden.

For all the foregoing reasons, the magistrate judge should issue a recommendation that Judge Hellerstein GRANT Plaintiff's motion for summary judgment in its entirety and STRIKE Google's affirmative defenses of unenforceability.

Dated:  October 27, 2025

Respectfully Submitted,

*/s/ Aaron W. Davis*                         .
Aaron W. Davis, Esq. (admitted *Pro Hac Vice*)
VALHALLA LEGAL, PLLC
P.O. Box 735
Custer, SD 57730-0735
Phone: (763) 957-2397
Email: davis@valhallalegal.com

Jacob Ginsburg, Esq.
JACOB GINSBURG, ESQ. PLLC
One Concord Drive
Monsey, NY 10952
Phone: (845) 371-1914
Email: jg@jacobginsburglaw.com

*Attorneys for Plaintiff Sholem Weisner*

**CERTIFICATE OF SERVICE:**

This will certify that a true and accurate copy of the foregoing was filed and served electronically on all counsel of record via the Court's CM/ECF system, on this the 27th day of October, 2025.

*/s/ Aaron W. Davis*                   .
*Attorney for Plaintiff, Sholem Weisner*