**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHOLEM WEISNER and SHMUEL NEMANOV<br><br>         Plaintiff and Involuntary Plaintiff,<br><br>    v.<br><br>GOOGLE LLC<br><br>        Defendant. | Civil Action No. 20-cv-02862-AKH ("*Weisner I*")<br>Civil Action No. 23-cv-08186-AKH ("*Weisner II*") |

**DEFENDANT GOOGLE LLC'S REPLY IN SUPPORT OF**
**<u>GOOGLE'S MOTION FOR DISMISSAL UNDER RULE 41(b)</u>**

# <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ...................................................................................................1

FACTUAL BACKGROUND ...................................................................................2

I.    IN RESPONSE TO GOOGLE'S ALLEGATIONS OF INEQUITABLE CONDUCT AND PROSECUTION LACHES, MR. WEISNER CLAIMS HE WAS INCAPACITATED FOR OVER SEVEN YEARS. .................................2

II.   PLAINTIFF DELAYS DISCOVERY ON MR. WEISNER'S MEDICAL INCAPACITY DEFENSE. ..................................................................................3

III.  JUDGE HELLERSTEIN REFERS THE SUMMARY JUDGMENT MOTIONS TO JUDGE FIGUEREDO AND PLAINTIFF FILES SERIAL "EMERGENCY" MOTIONS TO VACATE. ...............................................................................5

IV.  MR. WEISNER THREATENS TO NOT APPEAR AND IS REPEATEDLY ORDERED TO APPEAR ON PENALTY OF DISPOSITIVE SANCTIONS. ..................6

V.   MR. WEISNER AND MR. NEMANOV WILLFULLY FAIL TO APPEAR AND PLAINTIFF'S COUNSEL FAILS TO MEANINGFULLY PARTICIPATE IN THE HEARING. ...........................................................................................8

LEGAL STANDARDS .........................................................................................13

ARGUMENT .......................................................................................................14

I.    PLAINTIFF'S EXCUSES ARE FRIVOLOUS. ................................................14

     A.   Plaintiff's Contention That He Did Not Violate The Court's Orders Is Frivolous. ...............................................................................................15

         1.   Judge Figueredo Explicitly And Repeatedly Warned Mr. Weisner To Appear. .................................................................................15

         2.   Plaintiff's Arguments That He Did Not Violate The Court's Orders Are Frivolous. ..........................................................................17

     B.   Plaintiff's Contention That He Can Ignore The Court's Orders Is Frivolous. ...............................................................................................19

II.   THE FIVE FACTORS WEIGH HEAVILY IN FAVOR OF DISMISSAL WITH PREJUDICE. ...........................................................................................21

     A.   Factor 1 Weighs For Dismissal Because Plaintiff Delayed, Failed To Comply With Court Orders, And Otherwise Demonstrated A Lack Of Respect For The Court. ............................................................................22

B.    Factor 2 Weighs For Dismissal Because Plaintiff Had Clear And Repeated Notice That Failure To Appear Risked Case Ending Sanctions. ..........................24

C.    Factor 3 Weighs For Dismissal Because Google Has Been Prejudiced And Would Be Further Prejudiced By Additional Delay. ...............................................26

D.    Factor 4 Weighs For Dismissal Because The Court Carefully Balanced The Need To Alleviate Court Congestion And A Party's Right To Due Process. .................................................................................................................28

E.    Factor 5 Weighs For Dismissal Because Lesser Sanctions Would Not Be Effective..................................................................................................................29

F.    The Record As A Whole Weighs Heavily In Favor Of Dismissal With Prejudice Because This Case Is More Egregious Than The Cases That The Parties Have Cited.................................................................................................30

CONCLUSION.....................................................................................................................32

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Copeland v. Rosen*,
    194 F.R.D. 127 (S.D.N.Y. 2000) ............................................................................23

*Ent. by J & J, Inc. v. Lounge*,
    Case No. 775 (HBP), 2003 WL 1878242 (S.D.N.Y. Apr. 11, 2003) ......................18

*Feurtado v. City of New York*,
    225 F.R.D. 474 (S.D.N.Y. 2004) ............................................................................22

*Harding v. Federal Reserve of New York*,
    707 F.2d 46 (2d Cir. 1983)......................................................................................14

*Island Software and Computer Service, Inc. v. Microsoft Corp.*,
    413 F.3d 257 (2d Cir. 2005)..............................................................................12, 27

*Lewis v. Rawson*,
    564 F.3d 569 (2d Cir. 2009)....................................................................................31

*Maness v. Meyers*,
    419 U.S. 449 (1975)....................................................................................2, 20, 21

*Merker v. Rice*,
    649 F.2d 171 (2d Cir. 1981)....................................................................................14

*Peart v. City of New York*,
    992 F.2d 458 (2d Cir. 1993)........................................................................... *passim*

*Romandette v. Weetabix Co.*,
    807 F.2d 309 (2d Cir. 1986)....................................................................................14

*Scott v. Perkins*,
    150 F. App'x 30 (2d Cir. 2005) ..............................................................................31

*U.S. ex rel. Drake v. Norden Sys., Inc.*,
    375 F.3d 248 (2d Cir. 2004)....................................................................................32

## RULES

Fed. R. Civ. P. 41(b) ...................................................................................... *passim*

Fed. R. Civ. P. 46 ................................................................................................19

Fed. R. Evid. 103(b)............................................................................................19

## **INTRODUCTION**

The relevant facts are straightforward.  The Court explicitly and repeatedly ordered the Plaintiff, Mr. Weisner, to appear at the October 21 proceeding and warned him, both orally and in writing, that he could be sanctioned if he failed to appear.  Nevertheless, Mr. Weisner willfully defied the Court and thus did not testify concerning allegations that he committed inequitable conduct before the Patent Office and unjustifiably delayed prosecuting the asserted patents.  In such circumstances, the Court can and should exercise its broad discretion to dismiss this case with prejudice under Fed. R. Civ. P. 41(b).  Any other result would allow Plaintiff to benefit from strategically refusing to answer questions about his inequitable conduct and inconsistent deposition testimony.

Incredibly, Plaintiff denies these facts and boldly asserts that "Plaintiff has complied with all court orders" and "he was not ordered to personally appear in person."  Dkt. 443 ("Opp.") at 1, 4.[1]  Plaintiff's assertions do not pass the straight face test.  Mere days before the proceeding, Judge Figueredo ordered Mr. Weisner to personally attend a telephonic hearing and told Mr. Weisner: "I just want to make sure we're absolutely clear. I want to warn you that you risk being held in contempt and being sanctioned for failing to appear at this hearing on Tuesday, given that you're a key witness, given that you are the plaintiff in the case" and "I'm ordering you to appear on Tuesday."  Dkt. 444, Attached as Ex. B (10/17/2025 Hearing Tr.) at 8:5–21.  The Court followed up with a written order: "[d]uring today's conference, Plaintiff indicated that he does not intend to appear for the proceeding scheduled for October 21, 2025. Plaintiff is hereby ordered to appear on **Tuesday, October 21, 2025 at 9:00 a.m.** in Courtroom 26-B. Plaintiff is warned that failure to appear may result in a contempt sanction. . . . including . . . Google succeeding on its affirmative

---

[1] All Dkt. cites refer to *Weisner I* unless otherwise indicated.

defenses through Plaintiff's default." Dkt. 440 (emphasis in original). Plaintiff's refusal to take responsibility for—or even acknowledge—his misconduct demonstrates why he should be sanctioned.

Plaintiff also argues that his failure to appear was necessary to preserve his objections. That argument is nonsense. Plaintiff knows full well that he already preserved his objections by filing serial "emergency" motions before this Court and the Federal Circuit. And at the October 17 conference, Judge Figueredo explicitly told Plaintiff that "you've made an ample record. You've preserved your objection." Dkt. 444, Ex. B at 7:7–8. The Supreme Court has explained that "[i]f a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal. Persons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect. . . . While claims of error may be preserved in whatever way the applicable rules provide, counsel should neither engage the court in extended discussion once a ruling is made, nor advise a client not to comply." *Maness v. Meyers*, 419 U.S. 449, 458–59 (1975). Stated otherwise, Plaintiff cannot ignore the Court's orders even if he disagrees with them, and enforcing those orders ensures that litigants will not make "private determinations of the law and refuse to obey an order." *Id.*

## FACTUAL BACKGROUND

I.    **In Response To Google's Allegations Of Inequitable Conduct And Prosecution Laches, Mr. Weisner Claims He Was Incapacitated For Over Seven Years.**

Plaintiff Sholem Weisner asserts five patents against Google in these two consolidated cases. In response, Google raises the equitable defenses of inequitable conduct and prosecution laches. Dkt. 304 at 25–56. Regarding inequitable conduct, Google alleges that Mr. Weisner, Mr. Nemanov (the co-inventor and an involuntary plaintiff in this action), and Dr. Friedman (their

2

prosecuting attorney) committed inequitable conduct by fraudulently representing that the entire delay in prosecuting the original patent application was unintentional. *Id.* at 25–48. Regarding prosecution laches, Google alleges that those same parties unjustifiably delayed in prosecuting the asserted patents to the prejudice of Google. *Id.* at 48–56. Those allegations are described in detail in Google's summary judgment briefing. *See generally* Dkt. 347.

To justify his delay, Mr. Weisner contends he was "incapacitated," "nonfunctional," and "out of commission" with "very, very, very minimum function" for the "entire time" during the abandonment. Dkt. 344–1 at 214:12–19; Dkt. 350–1 at 40:9–41:11, 49:21–25. That is the one and only reason that Plaintiff contends that his abandonment was "unintentional." Dkt. 350–1 at 40:9–14, 41:4–11.

## II.    Plaintiff Delays Discovery On Mr. Weisner's Medical Incapacity Defense.

Plaintiff refused to provide discovery on his medical incapacity excuse, forcing Google to spend significant time and effort chasing that discovery. During Mr. Weisner's first deposition, Plaintiff's counsel, Mr. Ginsburg, shut down questioning on Plaintiff's medical incapacity excuse:

> MR. GIN[S]BURG: Okay. I'm asserting the -- his medical and his HIPAA privilege in this case, and ***I'm instructing him not to answer*** because his medical condition has been adequately addressed in the prior depositions and in this case, because of his medical condition, and this is the subject of a privilege.
>
> Q Sir, are you going to follow your counsel's instructions?
>
> A All I can say is that there was a medical condition, and I don't feel comfortable talking to you about it. And if I have a right under -- any right of HIPPA right, I will not waive my right.

Ex. J, 1/11/2024 Weisner Dep. Tr. at 184:1–16; *see also id.* at 182:8–183:23; 184:17–190:25; *see also* Ex. K, 11/8/2023 Nemanov Dep. Tr. at 72:20–73:11. Google raised the issue with the Court and during a February 7, 2024 teleconference. The Court granted additional discovery, ruling that:

> With regard to objections to the depositions of Weisner and Nemanov, objections made to answering questions about Weisner's medical conditions while the patent

3

was pending are overruled. ***Plaintiff procured the withdrawal of its denial for abandonment by pleading that he suffered from medical incapacity. Google has the right to probe that question***.

Dkt. 183 at 2; *see also* Dkt. 184 at 29:24–33:11.  Then, on December 12, 2024 the Court granted Google three additional hours of deposition time to investigate Mr. Weisner's claim of medical incapacitation.  *See* Dkt. 257 ¶ 3; *see also Weisner II* Dkt. 63 at 15:3–18:1.

With Plaintiff no longer obstructing discovery, Google proceeded to retake Mr. Weisner's and Mr. Nemanov's depositions.  At deposition, Mr. Weisner contended that he was incapacitated because he was taking illegal "hard drugs."  Dkt. 347 at 25.  He also made a series of stunning admissions, including that during the abandonment period, he signed legal documents, went to social events, used a computer, talked on the phone, went to rehab and became "sober," played chess, drove a car, went hiking in upstate New York, spoke about his abandoned patent application in 2016, strategized about asserting against Google, and engaged in several other activities—all when he was supposedly "incapacitated."  *See generally* Dkt. 347 at 20–26.  He also admitted that even after suing Google twice, he did not preserve documents during the relevant period because "I don't preserve anything. I'm not a preserver."  *See generally Weisner II* Dkt. 92.  Incredibly, Mr. Weisner has still failed to produce a single email in this case, including during the critical abandonment period.  For his part, Mr. Nemanov testified that he abandoned the patent application due to lack of money, he let the patent stay abandoned due to a misunderstanding of the law, he brokered a meeting at Mr. Weisner's request regarding the patent application in the 2012–2014 timeframe, and that he was "almost certain" that the signature on the revival petition was "fake." *See generally* Dkt. 347 at 9, 26–30.  Following the depositions, the Parties cross moved for summary judgment on Google's defenses of inequitable conduct and prosecution laches.  Dkt. 347; Dkt. 351.

**III.    Judge Hellerstein Refers The Summary Judgment Motions To Judge Figueredo And Plaintiff Files Serial "Emergency" Motions To Vacate.**

On August 26, 2025, after summary judgment briefing closed, Judge Hellerstein "refer[red] these motions, and any bench trial that may be appropriate, to U.S. Magistrate Judge Valerie Figueredo . . . ." Dkt. 392. On September 26, pursuant to this referral, Judge Figueredo set proceedings to begin on October 21. Dkt. 409.

In anticipation of the October 21 proceeding, the Parties prepared to examine Mr. Weisner and Mr. Nemanov before Judge Figueredo. On September 30, 2025, Google identified Mr. Weisner and Mr. Nemanov as "will call" witnesses. Ex. C at 2. On October 10, 2025, Plaintiff confirmed that Mr. Weisner would testify live, stating that "***Plaintiff Weisner intends to <u>call live himself</u>, Mr. Nemanov, and Dr. Laurence M. Westreich***." Ex. D at 1. Contemporaneously, Google requested "that the Court order involuntary plaintiff Shmuel Nemanov to attend the October 21–23 bench trial and permit service of both the order and a trial subpoena to his email address, snemanov@gmail.com." The Court granted that order the next day. Dkt. 420 ("Shmuel Nemanov is ordered to appear between **October 21, 2025 at 9:00 a.m. and October 23, 2025 at 2:45 p.m.** at Courtroom 26-B, 500 Pearl Street, New York, New York." (emphasis in original)). Google promptly served that order on Mr. Nemanov, who responded "Thank you for your attention to this and your response. Your email is sufficient there is no need for further action." Ex. E at 1.

On September 29, the Plaintiff filed its first Emergency Motion to Vacate the Bench Trial. Dkt. 410. On October 1, Judge Hellerstein denied that motion. Dkt. 414. Judge Hellerstein explained that: "[c]ourts routinely refer dispositive motions for summary judgment to magistrate judges for report and recommendation, including with the directive to hold hearings and take testimony from witnesses, and doing so here does not violate federal law." *Id.* Then, on October 6, Plaintiff filed a Petition for Writ of Mandamus and Emergency Motion to Stay before the Federal

Circuit.  Dkt. 415.  Over the next week, the parties submitted 94 pages of briefing to the Federal

Circuit on an expedited schedule.  On October 15, the Federal Circuit denied mandamus.  Dkt.

433.

## IV.     **Mr. Weisner Threatens To Not Appear And Is Repeatedly Ordered To Appear On Penalty Of Dispositive Sanctions.**

On October 15, the same day the Federal Circuit denied mandamus, Plaintiff filed yet

another "emergency" motion before this Court asking for the same relief as its first motion.  Dkt.

435.  In that motion, Mr. Weisner proclaimed that "***he chooses not to continue*** with his case in

any proceeding . . . by the magistrate judge without plaintiff's consent":

> ***Plaintiff Weisner hereby respectfully notifies the Court, as he has
> counsel, that he chooses not to continue with his case in any
> proceeding***, whether it is the presentation of evidence or the making
> of factual findings on the merits of the case ***by the magistrate judge
> without plaintiff's consent*** . . . .

*Id.* at 4 (emphasis added).  In response, Judge Figueredo promptly scheduled a status conference

for October 17 and ordered Mr. Weisner to personally attend.  Dkt. 437.

At the October 17 conference, Judge Figueredo made clear that she set the conference

specifically to address Mr. Weisner's apparent intention to not personally appear at the October

21 proceeding: "The reason I asked for the conference was I saw the submission at ECF 435 filed

on October 15 by plaintiff seeking an emergency motion to vacate the proceeding, and I wanted to

just have the conference because there was a line on page four that made me think there was the

potential that ***Plaintiff Weisner would not appear on Tuesday***."  Dkt. 444, Ex. B at 3:22–4:3.  She

continued, "I'd like to get confirmation that ***Mr. Weisner will be here on Tuesday***."  *Id.* at 4:14–

16 (emphasis added).  Plaintiff responded with a lengthy statement preserving his rights.  *Id.* at

4:17–6:7.  Judge Figueredo then made absolutely clear what she was asking: "Mr. Davis, I just

need a yes or a no.  I think my question is: ***Is Mr. Weisner not planning on attending on Tuesday,***

6

*Wednesday, or Thursday?*" *Id.* at 6:8–12 (emphasis added). Mr. Davis responded, "He does not plan on attending, that is correct." *Id.* at 6:13–14.

Judge Figueredo explained that she carefully reviewed the Court's schedule and could not accommodate further delay: "I had previously indicated to the parties that I scheduled the trial -- I scheduled this for Tuesday because we had to get this done for Judge Hellerstein in time to rule on any objections. I don't really have time later in the calendar to postpone this any further." Dkt. 444, Ex. B at 6:23–7:3. She then explicitly warned Plaintiff: "If Mr. Weisner does not attend on Tuesday, I can hold him in contempt. I can sanction him. I can certainly move forward without him there." *Id.* at 7:4–6. She also confirmed that Plaintiff had preserved his objections and that she had no choice but to move forward: "I don't understand, I guess -- you've made an ample record. You've preserved your objection. But if he doesn't plan to move forward on Tuesday, I have no choice but to continue moving forward. I just want to make that clear for everyone on the record." *Id.* at 7:7–12.

Judge Figueredo then spoke directly to Mr. Weisner, one-on-one, and made "absolutely clear" that Mr. Weisner understood that "you risk being held in contempt and being sanctioned for failing to appear at this hearing on Tuesday" as "a key witness":

> THE COURT: Okay. So Mr. Weisner is on the phone. Is that correct, Mr. Weisner?
>
> THE PLAINTIFF: Yes, I'm here, Your Honor.
>
> THE COURT: Okay. So I just -- ***I just want to make sure we're absolutely clear. I want to warn you that you risk being held in contempt and being sanctioned for failing to appear at this hearing on Tuesday, given that you're a key witness, given that you are the plaintiff in the case.*** So, absent some stay or decision from Judge Hellerstein, if you're not here on Tuesday, there could be repercussions, and I want to make sure that you're aware of that."
>
> MR. WEISNER: Your Honor, am I being forced to prosecute my case?

THE COURT: I think ***I'm ordering you to appear on Tuesday***.

Dkt. 444, Ex. B at 8:5–21 (emphasis added).  After hearing this extraordinary exchange, Google's counsel reserved the right to seek dismissal with prejudice: "I will just say on the record that Google reserves the right to seek dismissal with prejudice or an adverse inference and sanctions should the plaintiff not appear."  *Id.* at 11:13–16.

Later that day, Judge Hellerstein denied Plaintiff's third emergency motion, finding that "Plaintiff's motion is an attempt to relitigate the same issue I addressed in my opinion and order on October 1, 2025."  Dkt. 439 at 1 (citing Dkt. 414).  The Court concluded that "Magistrate Judge Figueredo ***shall proceed as scheduled*** on October 21-23, 2025."  *Id.* (emphasis added).  By informing the parties that things would "proceed as scheduled," *id.*, Judge Hellerstein confirmed that "the directive to . . . take testimony from witnesses" was unchanged from his prior decision denying Plaintiff's motion to vacate.  Dkt. 414 at 3.

The same day, Judge Figueredo issued a written Order that once again explicitly warned Mr. Weisner to appear:

> During today's conference, Plaintiff indicated that he does not intend to appear for the proceeding scheduled for October 21, 2025. Plaintiff is hereby ordered to appear on **Tuesday, October 21, 2025 at 9:00 a.m.** in Courtroom 26-B. Plaintiff is warned that failure to appear may result in a contempt sanction. Plaintiff may also be subject to other sanctions for failing to appear, including bearing Google's costs for preparing for the proceeding, and/or Google succeeding on its affirmative defenses through Plaintiff's default.

Dkt. 440 (emphasis in original).

## V.    Mr. Weisner And Mr. Nemanov Willfully Fail To Appear And Plaintiff's Counsel Fails To Meaningfully Participate In The Hearing.

In violation of the Court's oral and written orders, Mr. Weisner did not appear at the October 21 proceeding.  Judge Figueredo made clear to Plaintiff's counsel that Mr. Weisner was violating her orders, despite the attendance by Mr. Weisner's counsel:

> Mr. Davis, I understand your client objects to the proceeding moving forward. I think he's made that abundantly clear. ***But there was a court order that I issued***, after Judge Hellerstein denied your second emergency motion, ***indicating that Mr. Weisner had to be here today. And he's not here.***

> And what I just don't understand is how he can completely disregard that order when you've made these arguments to Judge Hellerstein twice now.

Ex. F, 10/21/2025 Hearing Tr. at 10:6–14.  Plaintiff's counsel expressed no surprise at being told that his client was in violation of court orders.  Nor did Plaintiff's counsel claim to have misunderstood the Court's orders.  Nor did Plaintiff's counsel offer to make Mr. Weisner available the next day.  Instead, Plaintiff's counsel brazenly attempted to impose an ultimatum based on Plaintiff's own views and preferences about how he believed the Court should proceed: "[A]ny taking of evidence, any fact-finding on the merits is clearly not allowed . . . . We can move forward on summary judgment, ***but that's it.***"  *Id.* at 12:22–13:4.

Due to Mr. Weisner's failure to appear, Google asked the Court to take a Rule 41(b) dismissal under advisement and proceed to hear the evidence.  *Id.* at 15:6–12.  The Court agreed, *id.*, and Google proceeded to call witnesses and present evidence.  Google first called Mr. Stoll, an expert on Patent Office procedures and policies, live.  Mr. Stoll explained the applicants' obligations of candor and good faith (*id.* at 22:12–23:12), why applicants' conduct amounted to intentional abandonment under Patent Office policies (*id.* at 28:8–29:1; 30:9–25; 36:4–21; 36:23–39:17; 39:18–40:21; 42:20–43:16.), why applicants' failure to disclose the nature of their abandonment was material (*id.* at 21:16–22; 21:25–23:25; 32:23–33:5; 34:9–20; 36:4–23), that Patent Office procedures allow applicants to continue prosecution even if an inventor becomes incapacitated (*id.* at 25:1–14), why Dr. Friedman's submission of an averment that the entire delay was unintentional without investigating the truth of that statement violated his duties to the Patent Office (*id.* at 32:25–34:5; 36:4–21; 40:23–42:6), how Google suffered prejudice from applicants'

unreasonable delay (*id.* at 42:8–43:25; 44:4–17), and why applicants' misrepresentations and unreasonable delay invoked prosecution laches. *Id.* Plaintiff did not cross-examine Mr. Stoll, and it offered no rebuttal to Mr. Stoll's dispositive testimony.

Additionally, Google offered unrebutted testimony from each of Mr. Weisner, Mr. Nemanov, and Dr. Friedman demonstrating that summary judgment is appropriate. Because Mr. Weisner "willfully, intentionally violated the order on Friday to appear," Google was forced to "string together" deposition clips that Google put together for impeaching a live witness. Ex. F, 10/21/2025 Hearing Tr. at 124:9–23. Nevertheless, even that limited testimony was devastating. Mr. Weisner testified that he had used hard drugs in 2008 while he actively prosecuted his patent application (Ex. G, Weisner 2/12/2015 Dep. Clips at 55:4–6; 57:16–21; 58:5–7); that despite being allegedly incapacitated "every single quarter of the day" (*id.* at 57:16–57:21), he could play chess (*id.* at 144:24–145:6), drive a car (*id.* at 37:20–25; 38:08–11; 38:19–22), use a computer (*id.* at 143:25–144:5), and travel out of state to plead to crimes (*id.* at 79:21–23; 80:4–6; 80:11–14; 80:15–18; 81:17–25); that he was sober for years before the revival (*id.* at 135:14–18; 151:22–152:17); that he consciously thought about his patent for months before the revival (*id.* at 131:2–131:21; 131:22–132:8; 132:9–132:17); and that by 2017 Mr. Nemanov "wasn't interested" in the patent anymore, *i.e.*, he had intentionally abandoned it (*id.* at 350:2–8; 350:9–15; 351:19–352:14; 352:15–25). Google introduced exhibits corroborating that testimony. (*See* Exhibits DX-AI (party photo), DX-AJ (party photo), DX-AR (plea to cheating in casino), DX-AS (sworn affidavit submitted to DA when allegedly incapacitated), DX-BI (email discussing Google's intervening rights), DX-CE (email strategizing future case against Google), DX-CJ (Google Maps link discussed during prosecution), JX-A (file history), JX-B (abandonment notification email), JX-C

(abandonment notification email), JX-D (abandonment notification email), and JX-G (medical form confirming months of sobriety even before rehab).)

Google next called by deposition Dr. Friedman, the prosecuting attorney who filed the petition to revive. Dr. Friedman testified that he signed the unintentional abandonment averment (Ex. H, Friedman Dep. Clips at 13:7–14:5), intended for the Patent Office to rely on his averment (*id.* at 23:3–15), but "did not do any investigation whatsoever" to confirm his signed averment was true (*id.* at 21:13–21:18).

Lastly, Google played its limited cross clips for Mr. Nemanov, who similarly violated an order to appear for trial. In those limited clips, Mr. Nemanov admitted that the patent was abandoned because Mr. Weisner ran out of money—not because of any medical issue (Ex. I, Nemanov 11/8/2023 Dep. Clips. at 60:22–61:2; 67:7–10; 67:11–14; 71:15–25); that Mr. Nemanov could "very easily have finished" the prosecution without Mr. Weisner (*id.* at 60:3–60:16); that Mr. Nemanov chose to not revive the patent in 2010 because he thought it was "dead" after being "most probably intentionally" misinformed (Ex. I, Nemanov 4/11/2025 Dep. Clips. at 70:20–71:21; 71:22–72:2; 72:5–20; 74:4–6; 74:10–18); that during Mr. Weisner's period of alleged incapacity, Mr. Nemanov played chess with Mr. Weisner (*id.* at 128:11–128:16; 129:12–129:14), went to social events and parties with Mr. Weisner (*id.* at 100:21–101:15; 103:14–103:17), knows that Mr. Weisner was involved in the production of a video interview with one of Mr. Lebovitz's alleged victims (*id.* at 152:3–154:3), and arranged meetings for the patent application in the 2012–2014 timeframe—meetings that Mr. Weisner conducted (*id.* at 131:7–131:13 [2014 is incorrectly transcribed as 2017]; 131:14–131:17); that Mr. Weisner first illegally tried to revive the patent without Mr. Nemanov (*id.* at 179:18–179:24; 180:10–180:17), and then submitted a second revival petition with an "almost certain[ly]" fake Nemanov signature (*id.* at 197:8–16; 201:4–202:5); and

generally that these patents "are the product of fraud" after Mr. Weisner "did very illegal things" (*id*. at 66:18–67:13; 189:19–191:3). Google also admitted additional corroborating evidence. *See* Exhibits DX-CB (April 11, 2025 sample of Mr. Nemanov's signature), DX-CC (email confirming Mr. Nemanov was misinformed by Mr. Weisner "about the possibility of revival"), DX-AT (news article discussing the 2011 video Mr. Weisner filmed in Florida), and DX-CG (response from Brooklyn District Attorney confirming Mr. Weisner submitted an affidavit and Florida video in Lebovitz case).

Plaintiff waived the right to cross-examine any of Google's witnesses. Plaintiff waived its right to introduce any exhibits. And Plaintiff waived the right to call any of its own witnesses in rebuttal. In other words, Plaintiff refused to meaningfully participate in the proceedings and waived the right to contest Google's evidence.[2]

At the end of the hearing, both Parties presented closing statements. Google cited the evidence presented to the Court—the testimony and exhibits that Google had introduced. *See generally* Ex. F, 10/21/2025 Hearing Tr. at 73:21–102:25. In contrast, Plaintiff largely cited evidence from its summary judgment briefing. *Id.* at 105:17–121:4. For example, Plaintiff cited the testimony of its medical expert, Dr. Westreich, who plaintiff disclosed as "will call" on its witness list but did not bring to the hearing. *Id.* at 107:3–108:22. Because Plaintiff did not call Dr. Westreich, Google did not have the opportunity to cross-examine him at the proceeding.

---

[2] In *Island Software and Computer Service, Inc. v. Microsoft Corp*., the Second Circuit found that arguments not presented at a summary judgment hearing were not preserved for the appeal record, which led to its affirmance of the district court's grant of summary judgment. 413 F.3d 257, 262 (2d Cir. 2005). In reaching that conclusion, the court explained, "[w]e have previously held that ***objections and arguments not advanced during the summary judgment hearing need not be addressed on appeal***. . . . [Plaintiff] had every reason to point out to the district court at the summary judgment hearing [the unpreserved argument]." *Id.* (citations omitted).

Judge Figueredo had several unanswered questions about Mr. Weisner's deposition testimony. Judge Figueredo asked Plaintiff's counsel how Mr. Weisner could say he was incapacitated after he left rehab and got sober in February 2015: "THE COURT: Let's say we forget about the period prior to when he leaves rehab in February 2015. How do you explain away the February 2015 to 2018 period?" *Id.* at 108:23–25. Plaintiff's counsel relied on Dr. Westreich, who did not appear at the proceeding. *Id.* at 109:1–5 ("I don't explain it away. Dr. Westreich testified about that…."). Judge Figueredo asked about the conversation Mr. Weisner had with Mr. Rice about reviving the patent application in 2016. *Id.* at 109:6–8. Plaintiff's counsel brushed this concern aside with attorney argument: "This was just some guy he was in the spa with to find out about what is this abandonment thing." *Id.* at 109:17–18. Judge Figueredo asked, "How do you square away this testimony that he was severely incapacitated with the conduct that he admittedly engages in. So he is playing online chess games. He is quite good at it apparently. He is playing against Nemanov." *Id.* at 110:5–9 (also referencing other activities). In response, Plaintiff's counsel offered his own dubious medical analysis: "It is a lot of chess. I mean, we can go in Central Park and we can find all kinds of people who are suffering from various mental incapacitations. … They are not literally laying on the ground. That's obviously incapacitated too…" *Id.* at 111:2–12. Thus, the Court was forced to settle for rank speculation from Plaintiff's counsel—not live testimony from the key witnesses or citations from documentary exhibits.

## LEGAL STANDARDS

Under Fed. R. Civ. P. 41(b), "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) . . . operates as an adjudication on the merits." The Second Circuit has "long recognized that 'dismissal for want of prosecution is a matter committed to the discretion of the trial judge.'" *Peart v. City of New York*,

13

992 F.2d 458, 461 (2d Cir. 1993) (citing *Merker v. Rice*, 649 F.2d 171, 173 (2d Cir. 1981)).  Since

dismissal is a "drastic remedy," the "judge's undoubtedly wide latitude is conditioned by certain

minimal requirements." *Id.* (citing *Harding v. Federal Reserve of New York*, 707 F.2d 46, 50 (2d

Cir. 1983)).  In particular, the Second Circuit looks at the following factors:

> (1) the duration of plaintiff's failures;
>
> (2) whether plaintiff had received notice that further delays would result in dismissal;
>
> (3) whether defendant is likely to be prejudiced by further delay;
>
> (4) whether the district judge has carefully balanced the need to alleviate court calendar congestion and a party's right to due process; and
>
> (5) whether the court has assessed the efficacy of lesser sanctions.

*Id.* (citing *Romandette v. Weetabix Co.*, 807 F.2d 309, 312 (2d Cir. 1986) and *Harding*, 707 F.2d

at 50).

## ARGUMENT

### I.    Plaintiff's Excuses Are Frivolous.

Plaintiff advances two primary excuses for failing to appear.  ***First***, Plaintiff blatantly

misrepresents the record to argue that the Court only ordered Plaintiff's counsel to appear in

person, not Plaintiff himself, so he did nothing wrong.  *See, e.g.*, Opp. at 4 ("Plaintiff himself did

not appear in person, and he was not ordered to personally appear in person."); *id.* at 1 ("Plaintiff

has complied with all court orders, timely filed all required submissions, and appeared through

counsel at the October 21, 2025 proceedings, prepared to participate in a hearing on the pending

summary judgment motions."); *id.* at 23 ("Plaintiff was not personally commanded to appear, as

he was for the October 17 teleconference, therefore he did not personally violate any order.").

***Second***, Plaintiff argues that he was permitted to ignore the Court's order because he disagreed

with it. *See id.* at 2 ("Plaintiff did not 'fail to prosecute' within the meaning of Rule 41(b); rather, he sought only to safeguard his statutory and constitutional entitlement to trial before an Article III judge."); *id.* at 5 ("Plaintiff's counsel also stated that Plaintiff 'fears that participation in anything that resembles a trial on the merits or involves fact-finding by your Honor could later be construed as complicit consent.'" (Citing 10/21/2025 Tr. at 5:1–3)). Both arguments are frivolous.

### A.    Plaintiff's Contention That He Did Not Violate The Court's Orders Is Frivolous.

#### 1.    Judge Figueredo Explicitly And Repeatedly Warned Mr. Weisner To Appear.

Judge Figueredo explicitly and repeatedly ordered Mr. Weisner to appear in person at the October 21 proceedings and warned him of the potentially case-dispositive implications if he failed to appear.

First, Judge Figueredo scheduled the October 17 conference specifically to address Mr. Weisner's suggestion that he might not appear. In his October 15 motion, Plaintiff threatened: "Plaintiff Weisner hereby respectfully notifies the Court, as he has counsel, that ***he chooses not to continue*** with his case in any proceeding, whether it is the presentation of evidence or the making of factual findings on the merits of the case by the magistrate judge without plaintiff's consent." Dkt. 435 at 4. At the beginning of the October 17 conference, Judge Figueredo explained: "The reason I asked for the conference was I saw the submission at ECF 435 filed on October 15 by plaintiff seeking an emergency motion to vacate the proceeding, and I wanted to just have the conference because there was a line on page four that made me think there was the potential that Plaintiff Weisner would not appear on Tuesday." Dkt. 444, Ex. B at 3:22–4:3. She continued, "I'd like to get confirmation that ***Mr. Weisner will be here on Tuesday***." *Id.* at 4:14–16. There can be no mistaking why Judge Figueredo asked Mr. Weisner to personally attend the October 17 hearing: she wanted to address Mr. Weisner's threat to not personally appear.

Second, at the October 17 conference Judge Figueredo referred to Mr. Weisner by name to warn the Parties of the consequences should he fail to appear: "If ***Mr. Weisner* does not attend on *Tuesday***, I can hold him in contempt. I can sanction him. I can certainly move forward ***without him* there**." Dkt. 444, Ex. B at 7:4–6.

Third, at the conference, Judge Figueredo took the extraordinary step of specifically addressing Mr. Weisner directly to make "absolutely clear" that he understood that "***you*** risk being held in contempt and being sanctioned for failing to appear at this hearing on Tuesday, given that ***you're a key witness***, given that ***you are the plaintiff*** in the case":

> THE COURT: Okay. So Mr. Weisner is on the phone. Is that correct, Mr. Weisner?
>
> THE PLAINTIFF: Yes, I'm here, Your Honor.
>
> THE COURT: Okay. So I just -- ***I just want to make sure we're absolutely clear. I want to warn you that you risk being held in contempt and being sanctioned <u>for failing to appear</u> at this hearing on Tuesday, given that <u>you're a key witness</u>, given that <u>you are the plaintiff in the case</u>.*** So, absent some stay or decision from Judge Hellerstein, if you're not here on Tuesday, there could be repercussions, and I want to make sure that you're aware of that."
>
> MR. WEISNER: Your Honor, am I being forced to prosecute my case?
>
> THE COURT: I think ***<u>I'm ordering you to appear on Tuesday</u>***."

Dkt. 444, Ex. B at 8:5–21. There can be no mistaking the words directed to Mr. Weisner: "I'm ordering ***you*** to appear on Tuesday." *Id.*

Fourth, Judge Figueredo confirmed her order later that day by issuing a written order, which stated:

> During today's conference, Plaintiff indicated that he does not intend to appear for the proceeding scheduled for October 21, 2025. Plaintiff is hereby ordered to appear on **Tuesday, October 21, 2025 at 9:00 a.m.** in Courtroom 26-B. Plaintiff is warned that failure to appear may result in a contempt sanction. Plaintiff may also be

subject to other sanctions for failing to appear, including bearing Google's costs for preparing for the proceeding, and/or Google succeeding on its affirmative defenses through Plaintiff's default.

Dkt. 440 (emphasis in original).  Once again, the Court was explicit in ordering Plaintiff Sholem Weisner to appear.

### 2. Plaintiff's Arguments That He Did Not Violate The Court's Orders Are Frivolous.

In its opposition brief, Plaintiff fabricates an alternate reality where "Plaintiff has complied with all court orders."  Opp. at 1.  To support this false narrative, Plaintiff misrepresents the October 17 order: "In the magistrate judge's order of October 16, 2025 (ECF 437), she ordered 'Counsel for the parties, as well as Plaintiff Sholem Weisner' to appear at a teleconference on the 17th, and Mr. Weisner did attend that conference. By contrast, in her order of October 17 (ECF 440) regarding the October 21 proceedings, she simply ordered that, 'Plaintiff is hereby ordered to appear.'"  Opp. at 4 n.1.  Thus, Plaintiff concludes, "Plaintiff himself did not appear in person, and he was not ordered to personally appear in person."  Opp. at 4.

This argument is a frivolous post-hoc rationalization for Plaintiff's willful misconduct.

First, this argument completely ignores the conference earlier that day, which made "absolutely clear" to Mr. Weisner that "*you* risk being held in contempt and being sanctioned for failing to appear at this hearing on Tuesday, given that *you're a key witness*, given that *you are the plaintiff* in the case" and stated in no uncertain terms directly to Mr. Weisner, "I'm ordering *you* to appear on Tuesday."  Dkt. 444, Ex. B at 8:9–21.  Even setting aside the October 17 written order, the Plaintiff violated the oral order from earlier that day.

Second, Plaintiff ignores the rest of the text of the October 17 order.  The order states, "*During today's conference*, Plaintiff indicated that *he* does not intend to appear for the proceeding scheduled for October 21, 2025."  By referring back to what Mr. Weisner said at

"today's conference" and referring to Plaintiff as "he," Judge Figueredo left no doubt that she was ordering Mr. Weisner to physically appear, just as she had done orally earlier that day.

Third, Plaintiff compares the October 16 order and the October 17 order to argue that Plaintiff believed the Court was ordering counsel to attend rather than Plaintiff Weisner. The text of the orders, however, contradicts Plaintiff's position.[3] The October 16 order refers to "Counsel for the parties" on the one hand and "Plaintiff Sholem Weisner" on the other hand. Dkt. 437. The October 17 order does not refer to "Counsel for the parties," it refers solely to "Plaintiff," which is consistent with "Plaintiff Sholem Weisner" from the October 16 order, as depicted below.

| October 16 Order | October 17 Order |
|---|---|
| Counsel for the parties, as well as Plaintiff Sholem Weisner, are directed to attend. | During today's conference, Plaintiff indicated that he does not intend to appear for the proceeding scheduled for October 21, 2025. Plaintiff is hereby ordered to appear on Tuesday, October 21, 2025 at 9:00 a.m. in Courtroom 26-B. Plaintiff is warned that failure to appear may result in a contempt sanction. Plaintiff may also be subject to other sanctions for failing to appear, including bearing Google's costs for preparing for the proceeding, and/or Google succeeding on its affirmative defenses through Plaintiff's default. |

Thus, there can be no dispute that Judge Figueredo was referring to Plaintiff Sholem Weisner.[4]

---

[3] Moreover, the Court would have had no need to issue an explicit order to compel counsel to appear at the hearing; counsel are automatically required to attend all court proceedings. *See, e.g.*, *Ent. by J & J, Inc. v. Lounge*, Case No. 775 (HBP), 2003 WL 1878242, at *1 (S.D.N.Y. Apr. 11, 2003) (sanctioning attorney for failing to attend conference).

[4] Plaintiff also takes the confusing position that Judge Hellerstein's October 17, 2025 supposedly excuses Mr. Weisner's behavior. Opp. at 17. Yet Judge Hellerstein's order is abundantly clear— it flatly "DENIED" Plaintiff's requested relief. Dkt. 439. It also confirmed that "Magistrate Judge Figueredo shall *proceed as scheduled* on October 21–23, 2025." Dkt. 439. By informing the parties that things would "proceed as scheduled," *id.*, Judge Hellerstein confirmed that "the directive to … take testimony from witnesses" was unchanged from his prior decision denying Plaintiff's motion to vacate. Dkt. 414. Further, Judge Hellerstein's order had no effect on Judge Figueredo's oral order to appear, which remained in full force. Further still, Judge Figueredo's written order to appear was issued *after* Judge Hellerstein's order. *Compare* Dkt. 439, *with* Dkt. 440.

Fourth, at the beginning of the October 21 proceeding, Judge Figueredo made clear to Plaintiff's counsel that Mr. Weisner violated her order for failing to appear:

> Mr. Davis, I understand your client objects to the proceeding moving forward. I think he's made that abundantly clear. *But there was a court order that I issued*, after Judge Hellerstein denied your second emergency motion, *indicating that Mr. Weisner had to be here today. And he's not here*.
>
> *And what I just don't understand is how he can completely disregard that order when you've made these arguments to Judge Hellerstein twice now*.

Ex. F, 10/21/2025 Hearing Tr. at 10:6–14.  In response, Plaintiff's counsel expressed no surprise when the Court stated that Mr. Weisner had violated the Court's order.  Nor did Plaintiff's counsel claim to have misunderstood the Court's explicit orders.  Nor did Plaintiff's counsel offer to call Mr. Weisner or make Mr. Weisner available the next day.  Plaintiff's argument that he misunderstood the Court's order completely contradicts the behavior of Plaintiff counsel at the October 21 proceeding.

In sum, Plaintiff's argument contradicts Judge Figueredo's oral order, contradicts Judge Figueredo's written order, and contradicts the actions of Plaintiff's counsel.  There is little doubt Plaintiff's argument was made in bad faith and shows why the Court should sanction Plaintiff.

**B.      Plaintiff's Contention That He Can Ignore The Court's Orders Is Frivolous.**

Plaintiff has no basis to argue that he can ignore orders that he disagrees with.  Under Fed. R. Civ. P. 46, "[a] formal exception to a ruling or order is unnecessary. When the ruling or order is requested or made, a party need only state the action that it wants the court to take or objects to, along with the grounds for the request or objection."  Under Fed. R. Evid. 103(b), "[o]nce the court rules definitively on the record — either before or at trial — a party need not renew an objection or offer of proof to preserve a claim of error for appeal."  Here, Plaintiff clearly stated "the ground for the request or objection" and thus "need not renew an objection … to preserve a claim of error

for appeal." He did so repeatedly, in writing and orally. *See, e.g.*, Dkt. 414; Dkt. 433; Dkt. 435; Dkt. 444, Ex. B at 5:11–19. Lest there be any doubt, the Court explicitly recognized that Plaintiff preserved his rights. *See, e.g.*, Dkt. 444, Ex. B at 7:7–12 ("You've preserved your objection."); Ex. F, 10/21/2025 Tr. at 10:6-8 ("Mr. Davis, I understand your client objects to the proceedings moving forward. I think he's made that abundantly clear.").

Parties cannot violate court orders—even if they have good-faith objections. To find otherwise would give parties a blank check to ignore the court based on their own subjective judgments. The result would be chaos. Parties would boycott depositions despite orders compelling discovery, defendants would skip out on trial when they thought they should have won summary judgment, and—as has happened here—plaintiffs would ignore proceedings that might dismiss their case while pushing towards an expensive jury trial on the issues that benefit them. One key mechanism to prevent such misconduct is sanctions under Fed. R. Civ. P. 41(b).

The Supreme Court case of *Maness v. Meyers* explains these basic legal principles well. 419 U.S. 449, 458–60 (1975). First *Maness* explains that parties must comply with court orders or face contempt, even when they disagree with those orders.

> We begin with the basic proposition that all orders and judgments of courts must be complied with promptly. If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal. Persons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect. The orderly and expeditious administration of justice by the courts requires that 'an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings.' This principle is especially applicable to orders issued during trial.

*Id.* (internal citations omitted). *Maness* further explains that parties must promptly comply with court orders because the alternative would frustrate and disrupt legal proceedings.

> Such orders must be complied with promptly and completely, for the alternative would be to frustrate and disrupt the progress of the trial with issues collateral to the central questions in litigation. This does not mean, of course, that every ruling by a presiding judge must be accepted in silence. Counsel may object to a ruling. An objection alerts opposing counsel and the court to an issue so that the former may respond and the latter may be fully advised before ruling. But, once the court has ruled, counsel and others involved in the action must abide by the ruling and comply with the court's orders.

*Id.* (internal quotation omitted). *Maness* also explains that counsel are not permitted to advise a client not to comply with orders—even if they disagree.

> While claims of error may be preserved in whatever way the applicable rules provide, ***counsel should neither engage the court in extended discussion once a ruling is made, nor advise a client not to comply.*** A lawyer who counsels his client not to comply with a court order during trial would, first, subject his client to contempt, and in addition, if he persisted the lawyer would be exposed to sanctions for obstructing the trial. Remedies for judicial error may be cumbersome but the injury flowing from an error generally is not irreparable, and orderly processes are imperative to the operation of the adversary system of justice.

*Id.* (emphasis added) (footnote omitted).

Mr. Weisner is represented by experienced counsel, including Mr. Aaron Davis, Professor Alan Dershowitz, Mr. Max Moskowitz, Mr. William Niro, and Mr. Jacob Ginsburg, who collectively have many decades of legal experience. *See* Ex. L. Plaintiff's extensive legal team surely knows that Plaintiff must comply with Court orders.

## II.    The Five Factors Weigh Heavily In Favor Of Dismissal With Prejudice.

All five factors—(1) the duration of plaintiff's failures; (2) whether plaintiff had received notice that further delays would result in dismissal; (3) whether defendant is likely to be prejudiced by further delay; (4) whether the district judge has carefully balanced the need to alleviate court calendar congestion and a party's right to due process; and (5) whether the court has assessed the efficacy of lesser sanctions—heavily weigh in favor of dismissal.

**A.     Factor 1 Weighs For Dismissal Because Plaintiff Delayed, Failed To Comply With Court Orders, And Otherwise Demonstrated A Lack Of Respect For The Court.**

Plaintiff significantly delayed discovery into his medical incapacity defense.  During the depositions of Mr. Weisner and Mr. Nemanov on January 11, 2024 and November 8, 2023, Plaintiff's counsel instructed the witnesses not to answer questions and prevented Google from investigating the issue.  Ex. J, 1/11/2024 Weisner Dep. Tr. at 184:1–16; *see also id.* at 182:8–183:23; 184:17–190:25; *see also* Ex. K, 11/8/2023 Nemanov Dep. Tr. at 72:20–73:11.  Google was forced to raise the issue with the Court, which eventually granted Google more time to depose Mr. Weisner and Mr. Nemanov.  Dkt. 183 at 2; *see also* Dkt. 184 at 29:24–33:11; *see* Dkt. 257 ¶ 3; *see also Weisner II* Dkt. 63 at 15:3–18:1.  As a result, Google had to wait to re-depose Mr. Weisner and Mr. Nemanov for over a year, causing significant delay.  Now, Plaintiff has obstructed questioning on those issues again at the October 21 proceeding.  Plaintiff should not be rewarded for his continued obstruction with more delay.

Setting aside Plaintiff's delay, "[t]he duration factor is of limited significance where a party deliberately disobeys court orders." *Feurtado v. City of New York*, 225 F.R.D. 474, 478 (S.D.N.Y. 2004).  As explained in detail above, in Factual Background Section VI.A., Plaintiff deliberately disobeyed the Court's oral and written orders to appear.  Plaintiff disobeyed the October 17 Oral Order stating "I'm ordering you to appear on Tuesday." Dkt. 444, Ex. B at 8:9-21.  And Plaintiff disobeyed the October 17 written order stating "Plaintiff is hereby ordered to appear on **Tuesday, October 21, 2025 at 9:00 a.m.** in Courtroom 26-B."  Dkt. 440 (emphasis in original).  Thus, even setting delay aside, this factor weighs towards dismissal.

Finally, Plaintiff's "disrespect" for the Court further weighs for dismissal.  *See Copeland v. Rosen*, 194 F.R.D. 127, 131–132 (S.D.N.Y. 2000).  Plaintiff makes a point of emphasizing that counsel used the word "respectfully" when addressing the Court.  *See, e.g.* Opp. at 5, 17.  But

respect is not simply a matter of lip service.  Here, Plaintiff has disrespected the Court by repeatedly making false statements.  Plaintiff falsely claims that "Plaintiff has complied with all court orders," "Plaintiff himself did not appear in person, and he was not ordered to personally appear in person," "Plaintiff has not willfully disobeyed any court orders," "Plaintiff attempted to comply with all court orders in a 'reasonable' fashion," "Plaintiff was not personally commanded to appear, as he was for the October 17 teleconference, therefore he did not personally violate any order," and "it cannot be said that Plaintiff failed to comply with any court order."  Opp. at 1, 4, 18, 21, 23, 24.  As explained above, in Argument Section I.A, those statements are flat-out false.

Plaintiff also disrespected the process by misleading Google.  On October 10, 2025, while Plaintiff was attempting to vacate the October 21 proceeding (Dkt. 418), Plaintiff nevertheless represented that if the proceeding moved forward, "***Plaintiff Weisner intends to call <u>live</u> <u>himself</u>, Mr. Nemanov, and Dr. Laurence M. Westreich***."  Ex. D at 1.  Google relied on that representation. First, Google spent significant resources preparing to cross-examine Mr. Weisner and Dr. Westreich.  As argued above, Mr. Weisner's revisionist excuses for not appearing are frivolous. And Plaintiff does not even attempt to explain why he did not call Dr. Westreich.  Second, Google had carefully selected and ordered deposition clips by subject matter for cross examination. Because Mr. Weisner did not show up, Google was forced to rearrange those deposition clips during a brief recess in the proceeding to play chronologically, without transition questions that would have made them easier to understand, significantly hampering Google's hearing presentation.  Third, Google should have had the opportunity to prove its case with live witnesses who would have had to look the judge in the eye, testify under oath, and explain their prior inconsistent testimony.

Finally, Plaintiff disrespected the Court at the October 21 proceeding. Plaintiff's counsel attempted to impose his view of how the proceedings should proceed: "I am here. Plaintiff is here on the cross-motions for summary judgment on a hearing on that. But any taking of evidence, any fact-finding on the merits is clearly not .... We can move forward on summary judgment, *but that's it.*" Ex. F, 10/21/2025 Hearing Tr. at 13:3–4. As the proceeding continued, Plaintiff's counsel did not follow the procedures the Court set for introducing exhibits and calling witnesses; he chose to mostly remain silent until closing, when he cited the summary judgment briefing rather than the evidence actually presented. *Id.* at 105:17–121:4.

Because Plaintiff obstructed discovery into Google's equitable defenses, disobeyed court orders, and disrespected the Court, Factor 1 weighs heavily in favor of dismissal. *See Peart*, 992 F.2d at 461 (finding that this factor weighed in favor of dismissal even where there was no delay because the Plaintiff has disobeyed court orders).

### B. Factor 2 Weighs For Dismissal Because Plaintiff Had Clear And Repeated Notice That Failure To Appear Risked Case Ending Sanctions.

Plaintiff willfully violated the Court's orders. To start, Plaintiff should not be surprised to face Rule 41(b) sanctions. Rule 41(b) states "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). Plaintiff's October 15 motion stated "Plaintiff Weisner hereby respectfully notifies the Court … that *he chooses not to continue* with his case in any proceeding where there is the presentation of evidence for the making of factual findings on the merits of the case by the Magistrate Judge without Plaintiff's consent . . . ." Dkt. 435 at 4. Plaintiff literally told the Court that he "chooses not to continue with his case," which mirrors the language of Rule 41(b). Plaintiff confirmed that he decided not to prosecute this case in the following remarkable exchange with the Court:

> MR. WEISNER: *Your Honor, am I being forced to prosecute my case?*
>
> THE COURT: I think *I'm ordering you to appear on Tuesday.*"

Dkt. 444, Ex. B at 8:9–21.

Moreover, the Court repeatedly warned Mr. Weisner of the consequences of failing to appear. The Court told Mr. Weisner at the October 17 conference: "If Mr. Weisner does not attend on Tuesday, I can hold him in contempt. I can sanction him. I can certainly move forward without him there." Dkt. 444, Ex. B at 7:4-6. When speaking directly to Mr. Weisner, the Court said "I just want to make sure we're absolutely clear. I want to warn you that you risk being held in contempt and being sanctioned for failing to appear at this hearing on Tuesday, given that you're a key witness, given that you are the plaintiff in the case." Dkt. 444, Ex. B at 8:9–21. The Court followed up with a written order stating: "Plaintiff is warned that failure to appear may result in a contempt sanction. Plaintiff may also be subject to other sanctions for failing to appear, including bearing Google's costs for preparing for the proceeding, and/or Google succeeding on its affirmative defenses through Plaintiff's default." Dkt. 440. The Court did everything possible to warn the Plaintiff of the consequences, so this factor weighs heavily in favor of dismissal.

One additional aggravating factor here is that Mr. Weisner's co-inventor and co-plaintiff, Mr. Nemanov, also failed to appear. The Court issued an order stating: "Shmuel Nemanov is ordered to appear between **October 21, 2025 at 9:00 a.m. and October 23, 2025 at 2:45 p.m.** at Courtroom 26-B, 500 Pearl Street, New York, New York." Dkt. 420 (emphasis in original). And Google promptly served that order on Mr. Nemanov, who responded "Thank you for your attention to this and your response. Your email is sufficient there is no need for further action." Ex. E at 1. Yet just like Mr. Weisner, Mr. Nemanov inexplicably failed to appear. Both Mr. Weisner and Mr. Nemanov reside in New York.

### C.  Factor 3 Weighs For Dismissal Because Google Has Been Prejudiced And Would Be Further Prejudiced By Additional Delay.

Google has been severely prejudiced by Plaintiff's misconduct.  Even though Plaintiff obstructed discovery into Google's equitable defenses, Google eventually exposed egregious inequitable conduct orchestrated by Mr. Weisner, Mr. Nemanov, and/or Dr. Friedman.  After months of discovery and weeks of preparation for the October 21 proceeding, Google finally looked forward to its day in court.  Google would have the opportunity to question the key witnesses live, in front of a judge.  Google would press on Mr. Weisner's incredible contention that he was incapacitated for over seven years in the face of overwhelming evidence that he was not.  Google would unravel Mr. Nemanov's testimony about the "fraud," "fake" signature, and "very illegal" conduct at the heart of the revival petition.  And Google would demonstrate that Dr. Westreich's dubious definition of "incapacitated" meant being more than capable of continuing to prosecute a patent application.  But Mr. Weisner, Mr. Nemanov, and Dr. Westreich did not appear, depriving Google of its day in court.  Moreover, Plaintiff's false representation that Mr. Weisner would appear live prevented Google from making a full deposition video.  Plaintiff's unilateral decision to violate the Court's order and veto Google's ability to question the key witnesses is inexcusable.[5]

---

[5] Plaintiff has repeatedly argued that the Court cannot hold a summary judgment hearing upon finding a factual dispute.  *See, e.g.*, Opp. at fns 5, 8, 11; *see also* Dkt. 411 at 6-7, 433 at 3, 435 at 4.  But courts routinely hold such hearings to evaluate the merits of each party's arguments through live witness testimony, which helps determine whether there are any genuine issues of factual dispute beyond the papers alone.  *See, e.g.*, *Dyal v. Adames*, 16-cv-2133, 2018 WL 2103202, at \*2 (E.D.N.Y. May 7, 2018) ("When a dispositive motion is filed, ***this court requires the parties and their attorneys to appear for a hearing***. These hearings—a mixture of attorney argument and witness testimony—allow the court to assess the case and provide litigants with a chance to state their position in the lawsuit ***in a way relying on the papers and arguments of counsel alone cannot achieve***.").

Plaintiff has the nerve to argue that Google suffered no prejudice.  Opp. at 19.  But make

no mistake, Plaintiff is attempting to exploit its misconduct.  As Plaintiff openly admits, he seeks

to leverage the deposition testimony and other evidence that it did not bring to court:

> The first thing I want to note is the counsel for Google stated that there's nothing in the record to dispute any of these facts, that the plaintiff hasn't put anything on the record. That is demonstrably false. We obviously have had extensive briefing on cross motions for summary judgment, responses to statements of material fact, statements of material fact, declarations, exhibits, all kinds of things that have been put into the record, and all of those part of summary judgment record before your Honor.

Opp. at 9 (citing 10/21/2025 Tr. at 105:18–106:1).  In its brief, Plaintiff elaborates on deposition

testimony that was not presented on October 21.  Opp. at 9–12.  In other words, Plaintiff wants to

rely on the evidence it likes while denying Google the ability to challenge that evidence in Court.

That tactic is severely prejudicial to Google and contrary to the purpose of the hearing.

To be clear, separate from this Motion, which seeks dismissal under Rule 41(b), Google

contends the evidence that the Parties did not present on October 21 has been waived[6] and therefore

the Court should grant summary judgment for Google on the merits.  But Plaintiff is wrong to

blame Google for the fact that Plaintiff chose not to defend himself.  Opp. at 19 n.11 (blaming

Google for supposedly creating a "paradox").  Plaintiff does not have the option to overrule the

Court and declare that there is no prejudice because it would prefer to shield its witnesses from

vigorous cross examination.

Indeed, it appears that the Court is troubled by Mr. Weisner's inconsistent testimony and

would have welcomed the opportunity to hear the witnesses explain themselves live.  Judge

Figueredo questioned Plaintiff's counsel on the period when Mr. Weisner was sober, Ex. F,

---

[6] *See, e.g.*, *Island Software*,  413 F.3d at 262 ([O]bjections and arguments not advanced during the summary judgment hearing need not be addressed on appeal." (citations omitted)).

10/21/2025 Tr. 108:23–25, when he talked to Mr. Rice about his patent in 2016, *id.* at 109:6–8, when he played chess, *id.* at 110:5–9, and several other inconsistencies, *id.* But the Court had to settle for attorney argument rather than Plaintiff's sworn, live testimony.

### D. Factor 4 Weighs For Dismissal Because The Court Carefully Balanced The Need To Alleviate Court Congestion And A Party's Right To Due Process.

Plaintiff falsely asserts that "there has been absolutely no balancing of the purported need to alleviate court calendar congestion against plaintiff's right to an opportunity for a day in court." Opp. at 20. To the contrary, throughout the scheduling process, Judge Figueredo explained that court congestion was top of mind. In fact, during the October 17, 2025 hearing, she reminded the Parties that "I had previously indicated to the parties that I scheduled the trial -- I scheduled this for Tuesday because we had to get this done for Judge Hellerstein in time to rule on any objections. I don't really have time later in the calendar to postpone this any further." Dkt. 444, Ex. B at 6:23–7:3. She then explained that because of this issue, "If Mr. Weisner does not attend on Tuesday, I can hold him in contempt. I can sanction him. I can certainly move forward without him there." *Id.* at 7:4–6. As the *Peart* court found, this factor is met where "it is well established that the failure to be ready for trial . . . is one of the basic causes creating a backlog of calendars." *Peart*, 992 F.2d at 462 (citations omitted).

Regarding Factor 4, Plaintiff demands that the Court should reward his misconduct by giving him what he always wanted: a single trial of Plaintiff's claims and Google's affirmative defenses. First, Plaintiff confirms that he "has ***repeatedly requested*** that Google's affirmative defenses be tried along with the rest of the claims at the February jury trial, with the Court making a determination of the equitable issues afterwards—as is often done by district courts." Opp. at 20. Second, Plaintiff acknowledges that "Judge Hellerstein has stated to the parties (as has been repeated by Magistrate Judge Figueredo), that he *desires* that Google's equitable defenses be

addressed before the February jury trial. But neither Google nor the Court has ever suggested that there is <u>any reason</u> why these issues cannot be tried simultaneously with the infringement claims." *Id.* at 21 (emphasis in original).  Third, Plaintiff states, "all Plaintiff has done, in declining to personally participate in the October 21 proceedings, was to continually insist . . . that any trial on the merits of Google's affirmative defenses be conducted during the February 2, 2026 trial . . . ." *Id*. at 21.  Let's be clear about what Plaintiff is admitting here: (1) Plaintiff "has repeatedly requested" that the Court delay addressing Google's affirmative defenses until February, (2) Plaintiff knows that Judge Hellerstein "desires" addressing them earlier, and as a result (3) Plaintiff "declin[ed] to personally participate" in the October 21 proceeding to circumvent Judge Hellerstein's preferred schedule.  Plaintiff cannot simply "decline" to follow the Court's schedule, and he should be sanctioned for doing so.

### E.  Factor 5 Weighs For Dismissal Because Lesser Sanctions Would Not Be Effective.

Plaintiff's willful violation of Court orders despite repeated warnings justifies dismissal and demonstrates that a lesser sanction would not be effective.[7]  Indeed, because the Court does not have time to hold another proceeding on Google's equitable defenses before the February trial, unless Google prevails on its inequitable defenses now, Plaintiff will benefit from its misconduct.

Incredibly, Plaintiff argues that the Court and Google should be thankful because "Plaintiff's objection saved both the Court and Google two whole days that were otherwise scheduled for the 'bench trial'" and that "Google has been spared two days' worth of attorney and expert witness fees, and any other costs ancillary to having such a large contingent present for the 'bench trial.'"  Opp. at 22.  That argument is insulting.  Google devoted considerable resources preparing for the October 21–23 proceeding.  Google prepared witnesses; created demonstratives;

---

[7]  Google reserves the right to move for fees and costs against Plaintiff and/or Plaintiff's counsel.

researched potential legal issues; drafted examinations for Mr. Weisner, Mr. Nemanov, and Dr. Westreich; engaged a technology firm to prepare and present exhibits, demonstratives, and deposition clips; booked plane tickets and hotel rooms for attorneys and other personnel flying across the country; hired vendors to print and prepare documents; coordinated with the Court's AV team to install and prepare technology; ordered court transcripts; and reserved space near the courthouse.  Oussayef Decl. at ¶¶ 3-8.  Google also incurred tens of thousands of dollars in expenses.  *Id.* at ¶ 9.  No doubt the Court incurred its own burdens and expenses.  Now Plaintiff argues that the Court should ignore Plaintiff's misconduct, pretend that the October 21 hearing never happened, and decide the summary judgment motions on the papers.  If Plaintiff gets its way, all of the Court's and Google's preparation and expenses will have been in vain.  The Court should refuse to condone such behavior and dismiss the case now.

### F.  The Record As A Whole Weighs Heavily In Favor Of Dismissal With Prejudice Because This Case Is More Egregious Than The Cases That The Parties Have Cited.

The record as a whole—Plaintiff's delay and gamesmanship, Plaintiff's willful violation of court orders despite clear warnings, Plaintiff's misrepresentations of the record, the severe prejudice to Google, the Court's congested schedule, and the fact that a lesser sanction would reward Plaintiff's conduct—all justify dismissal with prejudice.   A comparison of Plaintiff's conduct with the applicable caselaw highlights why dismissal is particularly warranted here.

In this case, Plaintiff refused to follow a direct order from this Court.  In a similar situation in *Peart*, the Second Circuit upheld a dismissal when the plaintiff said, "I will not be here on Monday" and the court "told [plaintiff] in no uncertain terms to inform her client that failure [] to appear when ordered would result in dismissal of her client's case and possibly other sanctions."  *Peart*, 992 F.2d at 461.   The Second Circuit held that dismissal was necessary to "reform [plaintiff's] conduct and to re-establish the court's authority to manage its calendar."  *Id.* at 463.

Similarly, here Plaintiff threatened not to attend the hearing and was warned of the consequences. Like the plaintiff in *Peart*, Mr. Weisner should be held accountable for those consequences. And here the conduct is even more egregious because here—unlike *Peart*—the Plaintiff does not contend that there is any scheduling conflict. *See id.* at 460. And here—unlike *Peart*—three critical witnesses on Plaintiff's "will call" list (Mr. Weisner, Mr. Nemanov, and Dr. Westreich) all failed to appear. And here—unlike *Peart*—the plaintiff has misrepresented the record to attempt to escape the consequences of his actions.

Plaintiff argues that Mr. Weisner's appearance through counsel makes this situation distinguishable from *Peart*. Opp. at 16–17. But the Second Circuit has held that the failure of a plaintiff to testify as a witness can support a dismissal even when counsel is present. In *Lewis v. Rawson*, a prison inmate refused to testify at trial because he "fear[ed] for his life" after being transferred to a detention facility where the defendants were prison guards. 564 F.3d 569, 572–74 (2d Cir. 2009). Despite the presence of the plaintiff's counsel at the trial—and the mitigating circumstances that the inmate feared for his life—the Second Circuit upheld the court's dismissal, discussing that "[i]t is beyond dispute under our precedent that a district court may dismiss a case under Rule 41(b) when the plaintiff refuses to go forward with a properly scheduled trial" and that "[o]ur sister circuits agree." *Lewis*, 564 F.3d at 580 (citations omitted). Here, Mr. Weisner did not fear for his life; instead, he chose to disobey this Court's order to keep the details of his misrepresentations to the Patent Office from seeing the light of day. And the presence of his counsel does not negate this Court's authority to enforce its orders, particularly given that Mr. Weisner was ordered to appear as a "key witness." Dkt. 444, Ex. B at 8:5–17.

Cases where the Second Circuit has overturned dismissals involved far less egregious conduct. Plaintiff cites *Scott v. Perkins* for the proposition that sanctions are only appropriate

where there has been "contemptuous and disrespectful behavior [to] justif[y] harsh sanctions." 150 F. App'x 30, 31 (2d Cir. 2005); Opp. at 15. But *Scott* is nothing like this case. In *Scott*, Mr. Scott failed to appear at his trial because his "financial difficulties upon his release from prison prevented him from making the trip to Albany" for the trial. *Scott*, 150 F. App'x at 31. Here, Mr. Weisner does not profess any financial hardship. To the contrary, Mr. Weisner's failure to comply with this Court's order was made for *strategic reasons* and is indicative of exactly the type of "contemptuous and disrespectful behavior" that Plaintiff argues *is* appropriate to "justify harsh sanctions." *See* Opp. at 15 (discussing "applicable law").

Plaintiff's reliance on *U.S. ex rel. Drake v. Norden Sys., Inc.* is similarly unpersuasive. 375 F.3d 248 (2d Cir. 2004); Opp. at 14. In *Drake*, the Plaintiff missed "a court-imposed deadline for amending his complaint." *Drake*, 375 F.3d at 250. Failing to file an amended complaint is akin to a clerical mistake and is far less egregious than violating this Court's direct, explicit, and repeated orders. Additionally, the *Drake* court found that the Plaintiff had not received sufficient warnings, unlike here where this Court provided Plaintiff with a clear warning "that failure to appear may result in a contempt sanction . . . including . . . Google succeeding on its affirmative defenses through Plaintiff's default." Dkt. 440; *see Drake*, 375 F.3d at 255. Both of Plaintiff's cases are completely different from the circumstances here.

In light of the totality of the record, including Mr. Weisner's unexcused defiance of this Court's authority, it is appropriate for this Court to "reform [Plaintiff's] conduct and to re-establish the court's authority" by dismissing Plaintiff's case. *See Peart*, 992 F.2d at 463.

## CONCLUSION

For all the reasons above, the Court should sanction Plaintiff and dismiss this case with prejudice.

Dated: November 3, 2025     By:    */s/ Karim Z. Oussayef* _____

Karim Z. Oussayef (NY Bar #4681334)
koussayef@desmaraisllp.com
Jamie L. Kringstein (NY Bar #5318928)
jkringstein@desmaraisllp.com
Ashley DaBiere (NY Bar #6117766)
adabiere@desmaraisllp.com
**DESMARAIS LLP**
230 Park Avenue
New York, NY 10169
Tel: (212) 351-3400
Fax: (212) 351-3401

Michael R. Rhodes (NY Bar #5379961)
mrhodes@desmaraisllp.com
Kevin J. Gu (*pro hac vice*)
kgu@desmaraisllp.com
**DESMARAIS LLP**
101 California Street, Suite 3000
San Francisco, CA 94111
Tel: (415) 573-1900
Fax: (415) 573-1901

*Counsel for Defendant Google LLC*

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that a true and correct copy of the foregoing document was filed electronically on November 3, 2025.  As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system.

*/s/ Karim Z. Oussayef*
Karim Z. Oussayef
