UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x
                                                                   :
SHOLEM WEISNER and                                                 :    **OPINION AND ORDER**
SHMUEL NEMANOV,                                                     :    **SETTING BENCH TRIAL ON**
                                                                   :    **AFFIRMATIVE DEFENSE**
                         Plaintiff and Involuntary Plaintiff,      :
                                                                   :
        -against-                                                  :
                                                                   :    20 Civ. 2862 (AKH) (VF)
                                                                   :
GOOGLE LLC,                                                        :
                                                                   :
                                          Defendant.               :
------------------------------------------------------------------ x

ALVIN K. HELLERSTEIN, U.S.D.J.:

Plaintiffs Sholem Weisner and Shmuel Nemanov own patents for internet systems that track visits to locations by history and frequency. Their suit against Google LLC for patent infringement is ready for trial, and a date to select a jury and begin trial was set, February 2, 2026. In advance of trial and after completion of discovery, both sides moved for summary judgment regarding two equitable defenses relating to the procurement of the patents: Plaintiffs' inequitable conduct and prosecution laches. Plaintiffs move to strike the defenses; Defendant moves to uphold the defenses and dismiss the complaint.

The defenses are equitable in nature and triable to the Court. The proofs are separable from the merits of the infringement lawsuit. If either defense is proved, the complaint must be dismissed. The defenses should be determined before a trial jury is selected.

The principal issue relating to the defenses of inequitable conduct is the consequence of a seven-year lapse in the prosecution of the patents, between April 13, 2010, when the U.S. Patent and Trademark Office ("PTO" or "Patent Office") issued a Notice of Abandonment, and June 1, 2017, when Plaintiffs filed a revival petition.

The parties presented an extensive record in support of, and in opposition to, their summary judgment motions. On August 26, 2025, I referred the motions to United States Magistrate Judge Valerie Figueredo for report and recommendation, *see* 28 U.S.C. § 636(b)(1)(B)-(C), ECF Nos. 392-93, and authorized her to conduct any bench trial that she might find necessary. She filed her report and recommendation on November 21, 2025 (the "R&R" or the "Report"). Plaintiff Weisner timely filed Objections, and Google filed a Response to Plaintiff's objections.

Judge Figueredo's 103-page R&R thoroughly examined the deposition transcripts, affidavits, and other materials presented by the parties and conducted an evidentiary hearing to elicit the procedures of the Patent Office in considering revival applications after abandonment of patent prosecutions. Sholem Weisner and Shmuel Nemanov refused to testify, though subpoenaed and ordered to comply.

Judge Figueredo recommended that summary judgment not be granted, either to strike or to grant the affirmative defense of inequitable conduct, because of material issues of fact regarding the issue at the heart of the defense, whether Plaintiffs, in their revival application, had certified accurately and in good faith that "the entire period of delay was unintentional," as required by 37 C.F.R. § 1.137. She recommended granting Weisner's motion that summary judgment on the defense of prosecution laches had not been proved. And she made numerous findings of fact based on the parties' Local Rule 56.1 statements, deposition testimony, and exhibits. Judge Figueredo recommended, on the merits, that I find that Google had proved Weisner's and Nemanov's inequitable conduct clearly and convincingly, that their refusal to testify, and to comply with court orders and subpoenas requiring them to testify, justified adverse inferences against them, and that on all the evidence, the affirmative defense of inequitable conduct should be granted. Furthermore, Judge Figueredo recommended, that Plaintiffs' refusal to comply with court orders commanding

2

them to testify warranted involuntary dismissal of their complaint pursuant to Rule 41(b), Fed. R. Civ. P.

I have reviewed *de novo* all disputed issues. I accept the R&R's recommended findings of undisputed fact as set out below, see R. 56(g), Fed. R. Civ. P. I believe that these would be sufficient to grant judgment dismissing the complaint for inequitable conduct but, to avoid doubt, I grant Weisner and Nemanov leave to re-open the record, testify themselves if they wish to do so, add any other information, and elicit any other testimony, relevant to the issue in dispute. I decline either to accept, or reject, Judge Figueredo's recommended disposition that the affirmative defense of inequitable conduct be granted. I reserve consideration of Judge Figueredo's recommended disposition on the affirmative defense of inequitable conduct until after the hearing described below.

The affirmative defense of inequitable conduct will be heard by me at 10:00 am, February 2, 2026, in Courtroom 14D, 500 Pearl Street, New York, NY 10007, and, if needed, on February 3, 2026 and February 9, 2026 at 10:00 am. The scheduled final pretrial conference on January 27, 2026 shall be limited to the issues of the bench trial on the affirmative defense of inequitable conduct. The findings of fact made below will be incorporated in the record of the bench trial. In the meantime, and pending determination of the affirmative defense, the trial previously ordered to begin February 2, 2026 is adjourned to a date to be set, if necessary, by my order determining the affirmative defense.

Google does not object to Judge Figueredo's recommendation that the affirmative defense of prosecution laches was not proved, and I adopt the recommendation. The defense is struck for the reasons in Judge Figueredo's recommendation. The Report's recommendation of adverse inference for Plaintiffs' failure to appear and testify is reserved. The recommendation that the

3

complaint be dismissed under Rule 41(b) is rejected. Judge Figueredo's recommendations limiting Robert Stoll's testimony are accepted.

## BACKGROUND

Weisner filed his complaint on April 6, 2020, alleging that Google infringed on his patents. On July 31, 2025, the parties cross-moved for summary judgment on Google's affirmative defenses of inequitable conduct and prosecution laches. *See* ECF Nos. 339, 342.

At the status conference of July 15, 2025, in declaring their intent to cross-move for summary judgment, the parties agreed that if factual disputes existed as to Google's equitable defenses, they should be resolved by a bench trial, rather than through a jury trial. *See* Tr. of July 15, 2025 Stat. Conf. at 4-5, 9, 11; *see also Modine Mfg. Co. v. Allen Grp., Inc.*, 917 F.2d 538, 541 (Fed. Cir. 1990) ("The ultimate question of whether inequitable conduct occurred is equitable in nature, committed to the discretion of the trial court").

I referred the motions for summary judgment to Magistrate Judge Figueredo on August 26, 2025 for a report and recommendation on the summary judgment motions and any evidentiary hearing as may be necessary. ECF No. 392. Judge Figueredo scheduled evidentiary hearings to take place on October 21-23, 2025. On September 29, 2025, Weisner filed an emergency motion to vacate the referral to Judge Figueredo, arguing that the scheduled hearings exceeded the magistrate judge's authority. ECF No. 410. I denied the motion on October 1, 2025, by written order, stating that the referral was properly within the scope of a magistrate judge's authority. ECF No. 414. Weisner then filed a petition for mandamus before the Federal Circuit, which the Federal Circuit denied on October 7, 2025, finding that while "some courts have concluded at magistrate judges typically lack the authority to perform fact finding on the merits" without the parties' consent that here "it is far from clear and indisputable" that the magistrate judge would exceed her

4

authority. ECF No. 433 at 3. Weisner filed a second motion to stop the evidentiary hearing on October 15, 2025, which I again denied by written order. ECF No. 439. Judge Figueredo held the evidentiary hearing on October 21, 2025, at which Messrs. Weisner and Nemanov did not appear, in violation of a court order that they do so. *See* ECF No. 448. Judge Figueredo submitted her report and recommendation to this Court on November 21, 2025.

Weisner filed objections to the Report on December 5, 2025. Weisner objects to the Report's recommendation of denial of Weisner's motion for summary judgment on inequitable conduct, to the entirety of Part II of the Report (the recommended findings of fact and law after the evidentiary hearing) on the basis that Judge Figueredo exceeded her statutory authority, and to the recommendation of dismissal under Rule 41(b). ECF No. 451 ("Weisner Obj."). Google did not file any objections to the Report and does not object to the recommendations of denials of its motions for summary judgment.

## LEGAL STANDARD

In reviewing a Report and Recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). A district court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(2). However, the court need only apply clear error review when a party "makes only conclusory or general objections, or simply reiterates his original arguments." *Bunbury v. Commissioner of Soc. Sec.*, 18-cv-10722, 2019 WL 6830204, at *1 (S.D.N.Y. Dec. 13, 2019).

Under Federal Rule of Civil Procedure 56(g) if "the court does not grant all the relief requested" by a summary judgment motion, the court "may enter an order stating any material fact ... that is not genuinely in dispute and treating the fact as established in the case." Fed. R. Civ. P.

5

56(g). "Whether to treat certain facts as established pursuant to Rule 56(g) is a matter of discretion." *Stapleton v. Prince Carpentry, Inc.*, 2025 WL 2591519, at *3 (E.D.N.Y. Sept. 8, 2025).

## DISCUSSION

### I. The Court adopts the Report's recommendations to deny summary judgment on the affirmative defense of inequitable conduct.

The Report recommends denying the cross motions for summary judgment on Google's affirmative defense of inequitable conduct because of disputed issues of fact.[1] Weisner objects to the denying of his motion for summary judgment on this issue, contending that Google failed to meet its burden of proving by clear and convincing evidence that Weisner engaged in inequitable conduct. Google does not object to the denial of its cross motion for summary judgment.

Weisner argues that under *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011) (en banc) on summary judgment, Google bore the burden of proof of establishing inequitable conduct and that if it could not meet that burden then the court must enter summary judgment in Weisner's favor. Weisner Obj. at 14. However, this misunderstands the requirements for proof on summary judgment. A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). There exists a genuine dispute of fact where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The moving party bears the initial burden of demonstrating 'the absence of a genuine

---

[1] The Report also recommends granting Weisner's motion for summary judgment on Google's affirmative defense of prosecution laches. Neither party objects to this recommendation. Absent objection, a magistrate judge's recommendations are reviewed for clear error. *Bunbury*, 2019 WL 6830204, at *1. There is no clear error in the Report's recommended finding on this issue.

6

issue of material fact.'" *Fed. Deposit Ins. Corp. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quoting *Celotex*, 477 U.S. at 323).

*Therasense* adds that "[b]ecause direct evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence. However, to meet the clear and convincing evidence standard, the specific intent to deceive must be the single most reasonable inference able to be drawn from the evidence." *Therasense*, 649 F.3d at 1290. This created a "single most reasonable inference" standard, requiring that the court make a finding that by clear and convincing evidence that the single most reasonable inference from the record is an intent to deceive. *See GS Cleantech Corp. v. Adkins Energy LLC*, 951 F.3d 1310, 1331 (Fed. Cir. 2020). However, this does not change the summary judgment requirements. A finding of a material dispute of fact and that a reasonable factfinder could make such a factual finding of a specific intent to deceive is sufficient for denial of a motion for summary judgment.

Judge Figueredo properly applied this standard in making recommendations on the motions for summary judgment on inequitable conduct. Report at 15. Weisner makes no other objections to the Report's recommendations on summary judgment, and I therefore adopt the Report's recommendations in Part I, granting in part and denying in part the cross motions for summary judgment.

## II.    The Court reserves judgment on inequitable conduct, subject to a bench trial, and adopts undisputed facts.

Weisner additionally objects to the Report's recommended findings of fact and law following the evidentiary hearing conducted on October 21, 2025. Weisner does not specifically object to the findings of fact and legal conclusions made in Part II, holding that he intentionally and materially misrepresented to the PTO that the entire period of delay in prosecution of his patent was unintentional. Weisner does object, broadly, to Judge Figueredo's authority to make findings

7

based on the evidentiary hearing. However, the findings made by Judge Figuerdo were made based on parties' Local Rule 56.1 statements, deposition testimony, and exhibits, as described below.

### A. The Court adopts the Report's recommendation that the testimony of Robert Stoll should be limited.

First, I address the scope of the testimony of Robert L. Stoll, a former Commissioner for Patents in the Patent Office, who testified concerning the PTO's general practices and procedures, specifically related to the abandonment and revivals of patent prosecutions. Weisner moved to preclude testimony from Stoll consistent with the opinions Stoll expressed in Sections VI, VIII, and IX of his expert report, arguing that the testimony included improper legal conclusions and speculation. ECF No. 425 at 1.

The Report recommended finding that Stoll was broadly qualified as an expert and that his testimony as to the procedures before the PTO relating to patent applications was helpful to the trier of fact. Report at 46. But the Report recommends excluding, and did not rely on, the testimony relating to conclusions of law regarding the intentionality of Weisner's and Nemanov's delay in petition for revival of their patent application. Report at 47-49.

I agree with the Report's treatment of the testimony of Stoll. Assessment as to whether the patent was abandoned, the mental state of Plaintiffs, the intentionality of the delay, and any alleged misrepresentations is left to the factfinder and are not appropriate for expert opinion.

### B. The court makes findings of undisputed fact.

I find the following facts, set out in the R&R and developed from the parties' Local Rule 56.1 statements, deposition testimony, and exhibits, as undisputed. These facts shall be incorporated into the record pursuant to Rule 56(g), Fed. R. Civ. P.

1.  **Actions by the Patent and Trademark Office.**

    1.  Weisner created a system where one can track, update, and view the locations where a person had been. Report at 4. Weisner patented this invention under U.S. Patent Nos. 10,394,905 (the "'905 Patent"), 10,642,911 (the "'911 Patent"), 10,685,068 (the "'068 Patent"), 10,860,667 (the "'667 Patent"), and 11,163,839 (the "'839 Patent") (collectively, the "Claimed Patents"). *Id.* Each of these Claimed Patents were included in U.S. Patent Application No. 11/811,165 (the "'165 Application"). *Id.*

    2.  On June 7, 2007, Steven Horowitz, as prosecuting attorney, filed the '165 Application with the PTO. *Id.* Weisner and Nemanov were the named coinventors. *Id.* at 5.

    3.  On July 29, 2008, the PTO issued a non-final rejection of the '165 Application, to which Horowitz filed a response on October 29, 2008. *Id.*

    4.  The PTO issued a final rejection on February 13, 2009. *Id.*

    5.  On August 13, 2009, Horowitz, on behalf of Weisner and Nemanov, filed a request for continued examination, and another response. *Id.*

    6.  On September 30, 2009, the PTO issued a non-final action, rejecting all pending claims in the '165 Application (the "Non-Final Action"), to which the parties were permitted to respond by March 30, 2010. *Id.* at 5-6.

    7.  On April 13, 2010, absent any response from Weisner and Nemanov, the PTO issued a notice of abandonment of the '165 Application. *Id.* at 7.

    8.  Between September 30, 2009 and April 13, 2010, Horowitz emailed Wiesner and Nemanov three times to advise them that the application could be considered "abandoned" on March 29, 2010 if they did not file a response. *Id.* at 6.

9

9. Weisner claims not to have read Horowitz's emails. *Id.*

10. Horowitz spoke with Nemanov on the phone in or about March 2010 regarding the abandonment, repeating his concerns that the application would be abandoned if he did not respond. *Id.*

11. Neither Weisner nor Nemanov were willing to pay Horowitz his fee to respond to the Non-Final Action, and neither engaged him do so, or otherwise made a filing taking issue with the Notice of Abandonment. *Id.*

12. Seven years later, on June 1, 2017, Dr. Mark Friedman, whose firm Horowitz had joined, filed the Revival Petition with the PTO. *Id.* at 10. The Revival Petition was on a form that required the issuer to certify that "[t]he entire delay in filing the required reply from the due date for the required reply until the filing of a grantable petition under 37 CFR 1.137(a) was unintentional." *Id.* (citing ECF No. 372-2 ¶ 34). Friedman so certified by signing and submitting the form. *Id.*

13. Subsequently, on June 6, 2017, Friedman filed a power of attorney request authorizing him to be the prosecuting attorney on the '165 Application instead of Horowitz. *Id.* The power of attorney was signed by Weisner, but not by Nemanov. *Id.*

14. On June 9, 2017, the PTO denied the power of attorney request because it lacked Nemanov's signature. *Id.* at 11.

15. On July 3, 2025, Friedman filed a new power of attorney showing a signature by Nemanov. *Id.* The PTO accepted Friedman as attorney, and revoked Horowitz's role as attorney. *Id.*

10

16. At his deposition taken April 11, 2025, Nemanov testified that he was "almost certain" that the signature is "fake" and "really doubt[s]" that the signature was his "[b]ecause that's not how I write at all" but that "it could be." 4/11/25 Nemanov Dep. Tr. at 197:8-16, 201:4-10; 197:19-22. Nemanov also provided an exemplar signature at his deposition, which to a lay observer did not appear similar to the signature on the power of attorney. *Compare* Ex. DX-CB with Ex. JX-A at 0240.

17. On September 14, 2017, the PTO granted the petition to revive the '165 Application, in reliance "on petitioner's duty of candor and good faith" and with "accepting the statement that the entire delay in filing the required reply from the due date for the reply until the filing of a grantable petition pursuant to 37 CFR 1.137 was unintentional." *Id.* (citing ECF No. 373-1 ¶ 121).

18. In his January 1, 2024 deposition, Friedman testified that Horowitz "handled the client [Weisner] exclusively all by himself," and there had been "no involvement of any other professional from our firm," except for paralegals. *Id.* at 62 (citing ECF No. 446-3 ("Friedman Dep.") at 15).[2] Friedman stated that he knew "very much nothing about" the '165 Application, that he "personally made no investigation" before making the statement in the Revival Petition, and that he had "zero knowledge of the facts" surrounding the Revival Petition." *Id.* at 62-63.

---

[2] The deposition testimony of Friedman was presented to Judge Figueredo in clips at the hearing on October 21, 2025 and presented as findings of fact by Judge Figueredo in her Report. However, these facts of Friedman's statements during deposition are undisputed.

11

## 2. Weisner's conduct and capacity.

19. Weisner testified at deposition taken February 12, 2025 that around 2007-2008, he was taking OxyContin and Xanax, at increasing strength; and that led, in 2008-2010, to morphine, crack cocaine, and crystal meth. *Id.* 4-5.

20. On August 31, 2009, Weisner pled *nolo contendere* to two misdemeanors, criminal trespass and larceny, in the Superior Court of Connecticut. *Id.* at 5-6. Weisner had been arrested on felony charges in connection with a November 2007 incident. *Id.* He signed the plea in-person at the court in the presence of his lawyer. *Id.*; ECF No. 373-1 at ¶ 11.

21. Weisner testified at deposition that he was doing "very, very bad" by "maybe late 2009" and was "nonfunctional" from 2010, if not earlier, and that from at least 2009 to 2015, "there was never a day when he was not on very heavy drugs." *Id.* at 7 (citing ECF No. 372-2 at ¶ 12; ECF No. 350-1 at 4-5; ECF No. 372-2 at ¶¶ 18-19).

22. At his deposition taken January 9, 2024, Horowitz testified that between September 30, 2009, and March 29, 2010, "it wasn't possible to work with [Weisner]," and "[Weisner] couldn't function to work with me like he had been." *Id.* at 7 (citing ECF No. 372-2 at ¶ 11; ECF No. 344-6 at 6, 9).

23. At his deposition taken November 8, 2023, Nemanov testified that Weisner was "quite a bit out of his mind" around 2009 to 2010 and "wasn't in a condition to do anything." *Id.* at 8 (ECF No. 373-1 at ¶ 36; ECF No. 344-4 at 5-6).

24. However, in June 2010, Weisner provided a sworn affidavit to the Brooklyn District Attorney's office regarding a complaining witness in a potential criminal case against

Baruch Lebovits. *Id.* at 8. Weisner stated in the affidavit that the individual expressed guilt about bringing the case, and that Weisner and the individual were arrested in 2009 for marijuana possession. *Id.*

25. Weisner entered a rehabilitation facility on January 10, 2014 and stayed for 30 days. *Id.* He entered rehab again on December 2, 2014 and left on February 20, 2015. *Id.* He played 50-60 games of online chess during rehab, and in February 2015 and September 2015. *Id.* "After leaving the rehabilitation facility in February 2015," Weisner "spent time in upstate New York where he hiked, meditated, and learned about Jewish mysticism." ECF No. 373-1 at ¶ 74. In 2016, Weisner obtained a car and used it to drive between upstate New York and New York City. Report at 9.

26. Google's Timeline feature was added to Google Maps on July 21, 2015, which provided information on where users had physically been. *Id.* In the beginning of 2017, Weisner discussed the '165 Application with a patent attorney while at a spa, and in May with Horowitz about reviving the '165 Application. *Id.* Horowitz emailed Weisner on May 20, 2017 stating that "since your patent was abandoned for a number of years" that "a court would be reluctant to force [Google] to stop selling the product even after you get the patent since they relied on your having given up on it when they started developing it." ECF No. 372-2 at ¶ 30.

27. Horowitz spoke to Weisner about applying to revive the '165 Application, which included speaking to Weisner. Report at 9. He did not seek Weisner's medical records or documentation, and he did not speak with Weisner's medical providers, but nevertheless determined that he "could represent to the PTO that the entire period of abandonment of the '165 Application was unintentional." *Id.* at 10; ECF No. 372-2.

13

**C. The Court reserves judgment pending its scheduled hearing on whether Google has proved its affirmative defense of inequitable conduct by clear and convincing evidence.**

For Google to prevail on its affirmative defense of inequitable conduct, Google must show by "clear and convincing evidence that the applicant affirmatively misrepresented or failed to disclose material information, or submitted false material information, with an intent to deceive the PTO." *Eisai Co. v. Dr. Reddy's Lab'ys, Ltd.*, 472 F. Supp. 2d 493, 506 (S.D.N.Y. 2006).

Provisionally, I agree with the Report's recommendation that the entire period of delay was not unintentional. The Report recommends finding that "Weisner's and Nemanov's testimony establishes that the '165 Application was abandoned because of Weisner's inability to pay Horowitz's legal fees, and not due to Weisner's total incapacitation" and that "the record does not support Weisner's testimony that he was incapacitated for the entire time after he left the rehabilitation facility in February 2015 until May 2017." Report at 74-75.

However, since there will be an evidentiary hearing, I defer making final findings and conclusions until after the scheduled hearing.

**D. Magistrate Judge Figueredo did not exceed her authority, but the Court grants Weisner and Nemanov an opportunity to rebut the factual findings at a bench trial.**

Weisner's primary objection to the Report is his continued objection to Magistrate Judge Figueredo's authority to conduct an evidentiary hearing and make recommendations on findings of fact in Part II of the Report. Weisner's objection centers on the question of whether the hearing was a pretrial matter under 28 U.S.C. § 636. As I have addressed previously, I hold that the hearing was a pretrial proceeding and that a Rule 56 motion is appropriate for referral to a magistrate judge. Her findings of fact also are appropriate. *See* Rule 56(g), Fed. R. Civ. P. The balance of the Plaintiffs' objections is academic since I am reserving judgment until after a bench trial before me.

14

28 U.S.C. § 636 governs the authority of a district judge to refer matters to a magistrate. A district judge may refer dispositive motions to a magistrate judge for a report and recommendation, subject to *de novo* review by the district judge. *See* 28 U.S.C. § 636(b)(1)(B)-(C). Upon such referral, a magistrate judge may "conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition" of contested issues raised at such proceedings without the parties' consent. 28 U.S.C. § 636(b)(1)(B).

In application, courts have drawn a line on whether a magistrate judge has authority to make findings of fact based on whether the proceeding is a pretrial matter. *See Gonzalez v. United States*, 553 U.S. 242, 245-46 (2008); Fed. R. Civ. P. 72(b)(1) ("A magistrate judge must promptly conduct the required proceedings when assigned, without the parties' consent, to hear a pretrial matter dispositive of a claim or defense.") Where a matter is properly considered pretrial, a magistrate judge may conduct an evidentiary hearing and make recommendations on findings of fact without the parties' consent, subject to *de novo* review by the district court. *See United States v. Raddatz*, 447 U.S. 667, 683-84 (1980) (holding that a district judge may constitutionally refer dispositive motions—including any related evidentiary hearings—to a magistrate judge, subject to *de novo* review by the presiding district judge).

## III. The Court does not adopt Part III's recommendation for dismissal under Rule 41(b).

Weisner objects to the Report's recommendation for dismissal under Rule 41(b) for failure to prosecute. I decline to adopt the Report's recommendation.

Rule 41(b) permits a defendant to move for dismissal "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order." Fed. R. Civ. P. 41(b). Weisner objected to the authority of the magistrate judge to conduct an evidentiary hearing and make recommended findings of fact. While I disagree with Weisner on this objection and hold accordingly, I decline

15

to find that his refusal to participate in the evidentiary hearing amounted to failure to prosecute. Weisner has actively participated in this case for several years and had diligently pursued his claims. At the hearing, Weisner's attorney appeared to present his argument. I recognize that Weisner's and Nemanov's failure to appear for the hearing violated a direct court order. However, I decline to find that disobeying this order amounted to failure to prosecute.

Additionally, the refusal did not delay or prejudice Google. *See U.S. ex rel. Drake v. Norden Sys., Inc.*, 375 F.3d 248, 254 (2d Cir. 2004) (outlining factors to consider on Rule 41(b) motions, including prejudice and delay). Any harm caused by the refusal to participate was to Weisner himself, as he declined to put forth evidence that would benefit his case. I recognize that Weisner did not wish to appear to consent to the authority of the magistrate judge and wished to preserve his objection to the proceeding. Therefore, I decline to adopt the Report's recommendation of dismissal under Rule 41(b).

### CONCLUSION

For the foregoing reasons, I adopt Judge Figueredo's recommendation to strike the affirmative defense of prosecution laches on summary judgment, adopt her holding regarding Robert Stoll, and reject her recommendation on Rule 41(b) dismissal. Further discussion of the facts and their meaning and consequences as to the defense of inequitable conduct are reserved until after the bench trial.

SO ORDERED.

Dated:     January 15, 2026
           New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

16