# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| SHOLEM WEISNER and SHMUEL NEMANOV, | Civil Action No. 20-cv-02862-AKH ("*Weisner I*") |
| Plaintiff and Involuntary Plaintiff, | Civil Action No. 23-cv-08186-AKH ("*Weisner II*") |
| v. | **JURY TRIAL DEMANDED** |
| GOOGLE LLC, | |
| Defendant | |

## GOOGLE'S MOTION FOR AN ADVERSE INFERENCE DRAWN FROM MR. NEMANOV'S FAILURE TO APPEAR AT THE COURT'S BENCH TRIAL

**<u>TABLE OF CONTENTS</u>**

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL BACKGROUND ............................................................................... 1

III.    PROCEDURAL HISTORY ................................................................................ 3

IV.     LEGAL STANDARDS ....................................................................................... 5

V.      ARGUMENT ...................................................................................................... 7

      A.    Mr. Nemanov Is Peculiarly Within The Power Of Mr. Weisner For Two Independent Reasons—He Is A Party And Is Closely Allied With Mr. Weisner. ........................ 7

          i.   Mr. Nemanov Is A Party To The Lawsuit Against Google. ........................ 8

          ii.  Mr. Nemanov Is Not "Equally Available" To Google. ............................... 8

      B.    Mr. Nemanov Is A Material Witness With Non-Cumulative Testimony. ............. 11

      C.    The Court Should Draw An Adverse Inference From Mr. Nemanov's Missing Testimony In Favor Of Google. ........................................................................... 17

VI.     CONCLUSION ................................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*4 Pillar Dynasty LLC v. New York & Co., Inc.*,
   933 F.3d 202 (2d Cir. 2019)...........................................................................6, 18

*AB Dick Co. v. Burroughs Corp.*,
   798 F.2d 1392 (Fed. Cir. 1986).................................................................5, 8, 10

*Applied Materials, Inc. v. Multimetrix, LLC*,
   404 F. App'x 493 (Fed. Cir. 2010).........................................................12

*Applied Materials, Inc. v. Multimetrixs, LLC*,
   No. C06-07372 MHP, 2008 WL 2892453 (N.D. Cal. July 22, 2008)....................12

*Chevron Corp. v. Donziger*,
   974 F.Supp.2d 362 (S.D.N.Y. 2014).............................................. *passim*

*Colby v. Klune*,
   178 F.2d 872 (2d Cir. 1949)...........................................................16

*Digital Control, Inc. v. Charles Mach. Works*,
   437 F.3d 1309 (Fed. Cir. 2006)....................................................12, 13

*Gray v. Great Am. Recreation Ass'n, Inc.*,
   970 F.2d 1081 (2d Cir. 1992)...........................................................8

*Kolb v. Suffolk County*,
   109 F.R.D. 125 (E.D.N.Y. 1985) …………………………………...………………16

*Krist v. Kolombos Rest. Inc.*,
   688 F.3d 89 (2d Cir. 2012)...........................................................19

*Lumenyte Int'l Corp. v. Cable Lite Corp.*,
   92 F.2d 1206 (Fed. Cir. 1996).........................................................16

*In Re Maldague*,
   10 U.S.P.Q.2d 1477 (Com'r Pat. & Trademarks 1988).........................16

*Ioannides v. Marika Maritime Corp.*,
   928 F.Supp. 374 (S.D.N.Y. 1996) …………………………………………...17

*New York Univ. v. Autodesk, Inc.*,
   495 F. Supp. 2d 369 (S.D.N.Y. 2007)...............................................13

*Shah v. Eclipsys Corp.*,
   No. 08-cv-2528 (JFB) (WDW), 2010 WL 2710618 (E.D.N.Y. Jul. 7, 2010)……………...17

*Therasense, Inc. v. Becton, Dickinson & Co.*,
   649 F.3d 1276 (Fed. Cir. 2011)..................................................................................13

*United States v. Fields*,
   102 F.2d 535 (8th Cir.1939) ......................................................................................8

*United States v. Torres*,
   845 F.2d 1165 (2d Cir. 1988)......................................................................................6

**OTHER AUTHORITIES**

M.P.E.P. § 711.03(C)...................................................................................................14

## I.    INTRODUCTION

Defendant Google LLC ("Google") respectfully requests that the Court draw an adverse inference from Involuntary Plaintiff and co-inventor Shmuel Nemanov's ("Mr. Nemanov") failure to appear at the inequitable conduct bench trial in defiance of the Court's January 29 order compelling his appearance.  Mr. Nemanov is the ***only*** other inventor on the Patents-in-Suit and the ***only*** other individual within the Court's subpoena power who worked directly with prosecuting counsel on the application at the center of Google's inequitable conduct defense (the "'165 Application").  He is therefore the sole witness capable of corroborating or refuting Mr. Weisner's shifting account of what occurred during prosecution of the '165 Application, as well as ***defending his own actions*** that Google accuses of constituting inequitable conduct.  Yet, despite his significant monetary interest in the outcome of this litigation, Mr. Nemanov has repeatedly refused to appear.  Not at the Magistrate Judge's evidentiary hearing.  Not at the Court's reopened bench trial convened specifically to give him yet another opportunity to defend his conduct.  And not after being compelled by the Court's order that Google has repeatedly served by email and at his confirmed residence.  At this point, Mr. Nemanov has been afforded more than ample opportunities to testify in his defense.  Under these circumstances, the record permits only one conclusion: if Mr. Nemanov's testimony could have supported a defense of his patents, he would have testified by now.  His persistent refusal to do so speaks louder than any words he might have offered from the witness stand.

## II.    FACTUAL BACKGROUND

Aside from Mr. Weisner, Mr. Nemanov is the only other named inventor on the Patents-in-Suit.  *Weisner II* Dkt. 10-3 ('068 Patent) at cover, 10-4 ('667 Patent) at cover, 10-2 ('839 Patent) at cover; *Weisner I* Dkt. 72-3 ('905 Patent) at cover, 72-4 ('911 Patent) at cover.  Mr. Nemanov is

also the sole individual, other than Mr. Weisner, believed to be within the Court's subpoena power who worked directly on the prosecution of the Patents-in-Suit with the prosecuting attorneys. *See, e.g.*, JX-A at FH-000102-103.[1] Thus, Mr. Nemanov is the only other individual able to credit or discredit Mr. Weisner's ever-shifting story, as well as defend his own actions that Google has accused of constituting inequitable conduct.

Although Mr. Nemanov has refused to participate in several aspects of this litigation, he continues to have a significant financial stake in its outcome. Importantly, Mr. Nemanov holds a 22% interest in profits derived from any patent that is a continuation of the '165 Application at issue in the inequitable conduct case, which includes profits derived from the Patents-in-Suit. *Weisner I* Dkt. 15-2 at 3. Mr. Weisner's expert has opined that Google owes $1.859 billion in damages from its alleged infringement, underscoring Mr. Nemanov's substantial financial interest. *See Weisner I* Dkt. 458 at 2. Moreover, the Court previously determined that Mr. Nemanov's involvement was "necessary for a full adjudication" as a co-owner of the Patents-in-Suit and realigned him from a defendant to an involuntary plaintiff. *Weisner I* Dkt. 67. Further, according to the current assignment agreement, Mr. Nemanov, as the minority owner, would be required to participate in the lawsuit if Mr. Weisner requested. *Weisner I* Dkt. 15-2 at 3. As a result, Mr. Nemanov would be contractually obligated to Mr. Weisner to participate in this case if Mr. Weisner requested his involvement. *Id*.

Mr. Nemanov and Mr. Weisner share a close and longstanding personal relationship as co-inventors, business partners, and friends. That relationship is still active. On February 5, 2026, less than two days after the Court ordered this briefing, Google was informed by Mr. Weisner and

---

[1] All citations to "JX" refer to joint exhibits provided to the Court for the bench trial beginning on February 2, 2026 (the "Bench Trial").

his counsel that "[they] ha[d] learned through mutual contacts that Mr. Nemanov <u>may</u> be appearing at the trial on Monday, February 9, 2026." Ex. 1.  Mr. Weisner and Mr. Nemanov's relationship also extends well beyond the Patents-in-Suit and this litigation.  For example, in addition to jointly prosecuting their patents, including the '165 Application, the pair collaborated on other business ventures, including a workout video project, took drugs together, and supported one another through personal medical issues.  Bench Trial Tr. at 41:16-25, 43:20-44:5, 65:5-18.  As Mr. Weisner himself testified, he and Mr. Nemanov were "good friends."  Bench Trial Tr. at 41:9-15.

## III.    PROCEDURAL HISTORY

On August 26, 2025, the Court referred the parties' cross-motions for summary judgment on the inequitable conduct issue to Magistrate Judge Figueredo.  *See Weisner I* Dkt. 393 at 1.  The Magistrate Judge set an evidentiary hearing for October 21, 2025.  *Weisner I* Dkt. 409 at 1.  Despite extensive efforts and court orders to compel Mr. Weisner and Mr. Nemanov's appearance at that hearing (*see, e.g.*, *Weisner I* Dkt. 420, 440), neither inventor appeared.  *Weisner I* Dkt. 450 at 65. The Magistrate Judge subsequently issued a Report and Recommendation ("R&R"), which recommended the Court conclude that Mr. Weisner committed inequitable conduct when reviving the '165 Application.  *Id.* at 2.  In the R&R, the Magistrate Judge concluded, "***Weisner's and Nemanov's failure to appear, in violation of court orders,*** whether considered independently or collectively, ***warrant an adverse inference*** that had each testified, each of their testimonies would have been adverse to their case and, in particular, would have been adverse to their contention that they did not commit inequitable conduct in connection with the '165 Application."  *Id.* at 65-66.

On January 15, 2026, the Court issued an order provisionally agreeing with the Magistrate Judge's recommendation that the entire period of delay was not unintentional but setting a bench trial on Google's inequitable conduct defense to grant "Weisner and Nemanov leave to re-open the

record, ***testify themselves if they wish to do so***, add any other information, ***and elicit any other testimony***, relevant to the [inequitable conduct] issue in dispute." *Weisner I* Dkt. 489 at 3, 14.  To ensure Mr. Nemanov was aware of yet another opportunity to defend his actions, and because Mr. Weisner did not provide any indication that he intended to call Mr. Nemanov to testify on his behalf, Google filed an unopposed motion to serve Mr. Nemanov with the Court's January 15th order using the email that Mr. Nemanov had used to communicate with Google's counsel throughout this case. *Weisner I* Dkt. 494 at 1.  On January 22, 2026, the Court granted Google's unopposed motion, and Google's counsel promptly served the Court's January 15th order on Mr. Nemanov.  Ex. 4.  Mr. Nemanov did not respond.

On January 28, 2026, in response to the Court's instructions at the pre-trial conference held the day before, Google filed a motion to compel Mr. Nemanov's appearance at the bench trial and again sought permission to serve the trial subpoena by email using two addresses recently used by Mr. Nemanov to contact Google's counsel.  *Weisner I* Dkt. 498 at 1-2.  In its motion, Google explained its prior attempts to locate Mr. Nemanov to effectuate service on him multiple times throughout this litigation.  *Id.*  For example, prior to the last bench trial, Google attempted to personally serve a trial subpoena at several addresses but was unable to do so.  On January 29, 2026, the Court granted Google's motion to compel Mr. Nemanov to appear and allowed service by email.  *Weisner I* Dkt. 500.  Google immediately served the Court's order and a trial subpoena on Mr. Nemanov by email, requesting that he appear each day scheduled for the bench trial.  *See Weisner I* Dkt. 501.

On February 2, 2026, Mr. Nemanov failed to appear for the first day of the bench trial. Bench Trial Tr. at 2:11-2:18.  The Court made clear that it wanted Mr. Nemanov to be present for live testimony.  *Id.* at 33:8-9.  When the Court asked him if he knew where Mr. Nemanov resided,

Mr. Weisner recited Mr. Nemanov's address from memory. *Id.* at 114:24-115:19. Only a few hours later, Google again attempted to serve the trial subpoena on Mr. Nemanov at the address provided by Mr. Weisner. *Weisner I* Dkt. 502 at 1. Though Mr. Nemanov did not answer the door, his neighbor confirmed the process server had the correct address and apartment. *Id.*[2] On February 3, 2026, Mr. Nemanov again failed to appear to testify for the second day of the bench trial. Bench Trial Tr. at 119:15-119:16. The Court warned Mr. Weisner that it was in the best interest of his case for Mr. Nemanov to appear. *Id.* That morning, Google again attempted service on Mr. Nemanov at his residence, but he still failed to answer the door.

At the end of the second day of the Court's bench trial, Google moved for an adverse inference of inequitable conduct against Mr. Weisner and Mr. Nemanov due to Mr. Nemanov's repeated failures to respond to the Court's orders. *Id.* at 237:8-238:5.

## IV.    LEGAL STANDARDS

As the Magistrate Judge noted in her R&R (*Weisner I* Dkt. 450 at 64), the Court may "infer that the testimony of an unproduced witness would have favored one party . . . if production of the witness is 'peculiarly within [the] power' of the other party." *Chevron Corp. v. Donziger*, 974 F.Supp.2d 362, 700 (S.D.N.Y. 2014) (internal citations omitted), *aff'd*, 833 F.3d 74 (2d Cir. 2016). "[A]n inference that the testimony would favor the opposing party may be appropriate" either where "a party to the action is, in effect, a missing witness" or "where one party alone could produce a material witness but fails to do so" such as "someone closely allied with or related to a party." *Id.*; *see also AB Dick Co. v. Burroughs Corp.*, 798 F.2d 1392, 1400 n.9 (Fed. Cir. 1986) ("When a party knows of witnesses on a material issue and they are within his control to produce,

---

[2] The process server also attempted to call Mr. Weisner because his address and phone number were listed in a skip trace report as Mr. Nemanov's current contact information.

if the party chooses to not call the witnesses, the fact finder may draw the inference that the testimony would have been unfavorable."). "Such an inference is equally permissible in bench trials." *Chevron*, 974 F.Supp.2d at 700.

"In determining whether a witness is uniquely available to an adverse party, courts in this circuit consider whether that witness is available to the party seeking the adverse inference." *Chevron*, 974 F.Supp.2d at 701. "An adverse inference is not warranted, for example, where the controlling or related party makes the missing witness available to its opponent, the party seeking the adverse inference equally could obtain the missing witness's testimony, or the party seeking the adverse inference made no such attempt to obtain the witness's testimony." *Id.* "The availability determination rests on all the facts and circumstances bearing upon the witness's relation to the parties." *Id.* (internal quotation marks omitted).

When determining whether to make an adverse inference, courts in this district further consider whether the testimony is material and non-cumulative. *Id.* at 701-02 (considering that the witnesses' "obvious possession of material, non-cumulative information going to the heart of the case"); *see also 4 Pillar Dynasty LLC v. New York & Co., Inc.*, 933 F.3d 202, 210-11 n.7 (2d Cir. 2019) (sustaining adverse inference drawn against defendants that "fail[ed] to call the witnesses whom they themselves had highlighted as the centerpiece of the defense case"), *affirmed, vacated and remanded on other grounds*, 933 F.3d 202 (2d Cir. 2019). "Where the missing witness's testimony would be cumulative, however, the inference is not available." *Chevron*, 974 F.Supp.2d at 701; *see also United States v. Torres*, 845 F.2d 1165, 1169 (2d Cir. 1988) ("No instruction is necessary where the unpresented testimony would be merely cumulative.").

## V.    ARGUMENT

The Court, as the trier of fact, should infer that Mr. Nemanov's testimony would have favored Google in support of a finding of inequitable conduct during the prosecution of the '165 Application by Mr. Weisner, Mr. Nemanov himself, and Dr. Friedman.  First, Mr. Nemanov is not only a party to this litigation and inventor of the Patents-in-Suit, but also peculiarly within the power of Mr. Weisner, the lead plaintiff that brought this litigation.  Second, Mr. Nemanov's testimony about his own intentionality during the abandonment period and his interactions with both Mr. Weisner and Dr. Friedman during that same period is material to the heart of the dispute. That is, Mr. Nemanov's testimony is material and non-cumulative on the issue of whether Mr. Nemanov himself as an inventor, Mr. Weisner as his co-inventor, and Dr. Friedman as his prosecution counsel each committed inequitable conduct before the Patent Office.  Thus, Mr. Nemanov's failure to appear at trial allows the Court to draw an adverse inference in favor of findings of fact demonstrating each individual's inequitable conduct before the Patent Office.

### A.    Mr. Nemanov Is Peculiarly Within The Power Of Mr. Weisner For Two Independent Reasons—He Is A Party And Is Not Equally Available To Google.

Mr. Nemanov's failure to appear at trial enables the Court to appropriately draw an adverse inference against Mr. Weisner and Mr. Nemanov himself.  Mr. Nemanov is a party to the litigation who is opposed to Google and aligned with Mr. Weisner by virtue of being his co-inventor and co-owner on the Patents-in-Suit, which are subject to unenforceability due to inequitable conduct during prosecution of the '165 Application.  Further, even if Mr. Nemanov's involuntary party status creates a question, he is certainly not equally available to Google as demonstrated by Mr. Weisner's actions and testimony in this case.

### i.     Mr. Nemanov Is A Party To The Lawsuit Against Google.

Mr. Nemanov is a party against Google in this lawsuit.  Indeed, the Court has already ruled on this issue and determined that Mr. Weisner "must be a party" and "should be made a plaintiff":

> <u>**Nemanov**</u> **should be realigned as an involuntary party plaintiff**.  R. 19(a).  **Since he claims the right to sue as a co-owner of the patent, <u>he must be a party</u>**.  He is necessary for a full adjudication, at least until a competent court with jurisdiction rules that he has given up his right to sue and is bound by any adjudication in relation to the party having the right to sue.  Although he was sued and served as a party defendant, <u>**he should be made a plaintiff**</u>.

*Weisner I* Dkt. 67 (Order Realigning Parties) at 1.[3]  Thus, there is no question that Mr. Nemanov is a missing party and "an [adverse] inference is warranted [] where a ***party*** to the action is, in effect, a missing witness."  *Chevron*, 974 F.Supp.2d at 700; *Gray v. Great Am. Recreation Ass'n, Inc.*, 970 F.2d 1081, 1082 (2d Cir. 1992) ("The non-appearance of a litigant at the trial or his failure to testify as to facts material to his case and as to which he has especially full knowledge creates an inference that he refrained from appearing or testifying because the truth, if made to appear, would not aid his contention." (quoting *United States v. Fields*, 102 F.2d 535, 537–38 (8th Cir.1939))).  Accordingly, because Mr. Nemanov is a party to the case and opposed to Google, an adverse inference against the plaintiffs and in favor of Google is warranted.

### ii.     Mr. Nemanov Is Not "Equally Available" To Google.

Mr. Nemanov is peculiarly within the power of Mr. Weisner because Mr. Weisner has demonstrated that Mr. Nemanov is much more available to Mr. Weisner than to Google.

Mr. Nemanov is not "equally available to both parties."  *A.B. Dick*, 798 F.2d at 1400 n.9 (internal quotations omitted).  In fact, on the contrary, Mr. Weisner has demonstrated much greater

---

[3] Although in the *Weisner II* action Mr. Nemanov remains an Involuntary Party on the defense side of the caption, the two cases have been consolidated (*Weisner I* Dkt. 337) and Mr. Nemanov is not differently situated in *Weisner II* from *Weisner I*.  Instead of relitigating the same issue after Mr. Weisner placed him on the wrong side of the caption, Google has understood that the Court's Order in *Weisner I* as quoted herein takes precedence.  *Weisner I* Dkt. 67.

control over Mr. Nemanov's availability.   Whereas Google has made numerous unsuccessful attempts at serving Mr. Nemanov with a Court-ordered trial subpoena, Mr. Weisner was able to reach Mr. Nemanov in two days.  Ex. 1.  More specifically, Google attempted service of a trial subpoena on Mr. Nemanov to appear at the first bench trial before the Magistrate Judge at several different addresses, but—like Mr. Weisner himself—Mr. Nemanov failed to appear.  *Weisner I* Dkt. 498 at 1-2; *see also Weisner I* Dkt. 450 at 65-66.  In connection with the current bench trial, Google attempted service of the Court's Order offering him the opportunity to testify, followed by another Court-ordered trial subpoena, by email and at an address confirmed by his neighbor and Mr. Weisner on four different dates, but was repeatedly left with no response, despite him being within the subpoena power of the Court.  *Weisner I* Dkt. 494 at 1, Dkt. 495, Dkt. 498 at 1-2, Dkt. 500, Dkt. 501, Dkt. 502 at 1; Bench Trial Tr. at 2:11-2:18, 115:4-15, 119:15-119:16.  Still, Mr. Nemanov has neither appeared nor responded to Google's numerous attempts at service.

In contrast, when the Court told Mr. Weisner that it is in his interest that Mr. Nemanov appear at trial, Mr. Weisner stated that he would "try to call him" and identified a specific address where he thought Mr. Nemanov resided.  Bench Trial Tr. at 115:4-15, 119:15-120:6.  At trial, the Court told Mr. Weisner's counsel "that you have a vital interest in getting Nemanov here" and if he fails to, "the adverse inference will be prejudicial to you, prejudicial meaning it will affect your ability to win your case."  *Id.* at 239:2-5.  Suddenly two days later, on February 5, Mr. Weisner's counsel informed Google that Mr. Nemanov may be appearing at trial on February 9.  Ex. 1 ("We have learned through mutual contacts that Mr. Nemanov may be appearing at the trial on Monday, February 9, 2026.") (emphasis in original).

Additionally, the assignment agreement between Mr. Weisner and Mr. Nemanov further demonstrates that Mr. Nemanov is not "equally available" to Google.  For example, Mr. Nemanov

would be ***contractually obligated*** to participate in this litigation upon Mr. Weisner's request.  In the operating assignment agreement between Mr. Nemanov (the minority owner) and Mr. Weisner (the majority owner), the pair agreed to the following provision:

> **If the law requires an owner or owners of the minority of the undivided interest in the Patent to participate as a plaintiff in a lawsuit** or arbitration or mediation for infringement or other enforcement of the Patent in order for such lawsuit or arbitration or mediation to proceed, **then at the request of an owner or owners of the majority of the undivided interest in the Patent, the owner or owners of the minority of the undivided interest in the Patent <u>shall so participate and shall cooperate with such lawsuit</u>** or arbitration or mediation.

*Weisner I* Dkt. 15-2 at 3.

That is, the Court specifically realigned Mr. Nemanov as a party plaintiff instead of a defendant, noting his status as a co-owner of the patents.  *Weisner I* Dkt. 67 (Order Realigning Parties) at 1.  Thus, the law requires Mr. Nemanov's involvement as a minority owner, and Mr. Nemanov would be required to participate and cooperate in this case if Mr. Weisner simply made the request, but he has deliberately failed to do so.  Mr. Weisner and Mr. Nemanov's relationship is akin to that of the inventor and plaintiff in *A.B. Dick Co. v. Burroughs Corp.*, where the Federal Circuit determined the inventor's contractual obligation to the plaintiff to testify arising out of the inventor's assignment of his patent rights to the plaintiff "created a likelihood of bias" in the plaintiff's favor that was "great" such that the inventor could not be considered "equally available" to both parties.  798 F.2d at 1399-1400, n.9.  After the defendant had placed at issue the inequitable conduct of the inventor, the Federal Circuit determined "it would have been expected that [the plaintiff] would call [the inventor] to testify."  *Id.*

Although Google was unable to secure Mr. Nemanov's appearance or even find him to effectuate in-person service after several attempts to do so throughout this case, Mr. Weisner was able to make contact with him within less than two days.  Mr. Weisner's ability to quickly connect with Mr. Nemanov through "mutual contacts" as well as Mr. Nemanov's contractual obligation to

participate if Mr. Weisner simply requested demonstrates that Mr. Nemanov is not equally available to both parties and is, in fact, more peculiarly within the power of Mr. Weisner.

Further, Mr. Nemanov and Mr. Weisner are "closely allied" in their interests in this case. *Chevron*, 974 F. Supp. 2d at 700, 701 (drawing adverse inference against party who had "close personal relationships" with missing witnesses). They are both co-inventors and co-owners of the Patents-in-Suit that are subject to a finding of unenforceability as a result of each of their inequitable conduct before the Patent Office; thus, they share an interest in the patents' survival, especially given the significant financial stake they both have in the outcome of this case. Bench Trial Tr. at 44:4-5, 97:18-19, 102:6-8; *see also Weisner I* Dkt. 15-2 at 3. Further, Mr. Weisner and Mr. Nemanov's close personal relationship has been demonstrated by Mr. Weisner's own testimony at trial. He testified that he "became good friends" with Mr. Nemanov and that they "were working on many different things" together including "an informercial and other things." *Id.* at 41:9-19. He also informed the Court that he knew where Mr. Nemanov lived and provided his address from memory. *Id.* at 115:4-15. During the course of the trial, Mr. Weisner even described Mr. Nemanov's personality, skills, interests, and medical issues. *See id.* at 64:10-16, 65:5-66:14, 185:5-9.

**B.    Mr. Nemanov Is A Material Witness With Non-Cumulative Testimony.**

Mr. Nemanov's testimony is material to this case because he is a co-inventor with first-hand knowledge of both his own conduct and that of his co-inventor and attorney during prosecution of the Patents-in-Suit. Thus far, the Court has only had the opportunity to hear Mr. Weisner's one-sided and self-contradicting version of events. Mr. Nemanov's testimony would help elucidate facts that "go[] to the heart" of the inequitable conduct issues in this case both because he has first-hand knowledge of his own conduct before the Patent Office and because his testimony can help clarify inconsistencies and ambiguities created by Mr. Weisner's testimony.

*See Chevron*, 974 F.Supp.2d at 701-02 (drawing an adverse inference where the missing witnesses had "obvious possession of material, non-cumulative information [that went] to the heart of the case").

***First***, Mr. Nemanov could explain his version of the events surrounding the signature on the Power of Attorney form that he testified he was "almost certain" was "fake" because "that's not how [he] write[s] at all."  Ex. 3 at 197:14-17, 201:4-202:5, 202:3-5.

On the first day of trial, Mr. Weisner testified that he (1) went to Mr. Nemanov's home and secured his signature on that form in person, (2) thought Mr. Nemanov dated the form, (3) saw Mr. Nemanov print his name on the form, (4) "took a picture of it or scanned" the form, and (5) emailed that form to Mr. Horowitz.  Bench Trial Tr. at 95:1-96:10, 96:21-97:5.

On the second day of trial, Mr. Weisner's testimony changed.  After being cross-examined about the handwriting similarities in both the date on his signature block and the date on Mr. Nemanov's signature block, Mr. Weisner said that he now believes both dates were written by Mr. Horowitz.  *Id.* at 200:5-200:23.  Additionally, after being cross-examined about the misspelling of Mr. Nemanov's name on the signature block, Mr. Weisner testified that "Nemanov spells his name -- writes his name different sometimes."  *Id.* at 203:17-204:10.  When confronted about the inconsistencies between his testimony that he never uses email and his testimony that he emailed the form to Mr. Horowitz, Mr. Weisner again revised his story, claiming it was not actually him but his friend "Mendy" who sent the email.  *Id.* at 211:18-212:23.  Mr. Weisner further testified that "Mendy" was not in the room to witness the signature despite being "not far away."  *Id.*

Determining whether the signature is in fact "likely fake," as Mr. Nemanov testified to in his deposition (Ex. 3 at 201:4-202:5), is material because Mr. Weisner's submission of a forged signature to the Patent Office would demonstrate that "the showing of materiality and intent

[requirements for inequitable conduct] are both strong." *Applied Materials, Inc. v. Multimetrixs, LLC*, No. C06-07372 MHP, 2008 WL 2892453, at *9 (N.D. Cal. July 22, 2008) (finding inequitable conduct where a forged document was submitted to the PTO, reasoning that "the showing of materiality and intent are both strong"), aff'd sub nom. *Applied Materials, Inc. v. Multimetrix, LLC*, 404 F. App'x 493 (Fed. Cir. 2010); *see also Digital Control, Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1315 (Fed. Cir. 2006) ("The inequitable conduct doctrine, a judicially created doctrine, was borne out of a series of Supreme Court cases in which the Court refused to enforce patents whereby the patentees had engaged in fraud in order to procure those patents."); *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011) (citing the "trio of Supreme Court cases that set in motion the development of the inequitable conduct doctrine" involving "defrauding the PTO and the courts").  Mr. Nemanov's trial testimony on the issue would also be non-cumulative, because he is the only witness with first-hand knowledge able to challenge Mr. Weisner's shifting narratives, clarify whether the signature in the Power of Attorney form is genuine, and thus resolve whether the "patentees had engaged in fraud in order to procure those patents." *Digital Control, Inc.*, 437 F.3d at 1315.

 ***Second***, Mr. Nemanov would testify about both his own knowledge and Mr. Weisner's knowledge of the patent application in the 2009 through 2014 timeframe before Mr. Weisner went to rehab.  Specifically, at his deposition, Mr. Nemanov testified that, sometime between 2012 and 2014, Mr. Weisner asked him to arrange a meeting about the patent with a third party named Mr. Lao, a potential investor.  Ex. 3 at 86:21-25, 131:14-17.  Mr. Nemanov further testified that "Mr. Weisner discussed the patent with Mr. Lao" at this meeting.  *Id.* at 131:7-13.  This testimony directly contradicts Mr. Weisner's trial testimony where he told the Court that the first person he spoke with about the patent application was Mr. Rice in March 2017 followed by Mr. Nemanov

(Bench Trial Tr. at 216:7-15), and that prior to that conversation he had not thought about the patents (*id.* at 167:9-22, 169:4-17, 174:14-20).  Mr. Nemanov's testimony shows that the co-inventors thought about the patent for several years before filing the petition to revive in 2017.  Courts have found that even waiting a "few weeks" is too long for an abandonment to be unintentional.  *New York Univ. v. Autodesk, Inc.*, 495 F. Supp. 2d 369, 374 n. 4 (S.D.N.Y. 2007) ("revival may be granted only where the '*entire* delay' was unintentional, 37 C.F.R. § 1.137(b)(3), and the plain meaning of the word 'entire' here is that revival may not be granted where a party intentionally delays seeking revival for even a few weeks" (emphasis added in original)).  And, contrary to Mr. Weisner's allegations, Mr. Nemanov's testimony contradicts Mr. Weisner's allegations that he was too incapacitated to even think about his patent.

Relatedly, Mr. Nemanov's testimony could help the Court resolve whether the co-inventors intentionally abandoned the patent a couple of years earlier, in the 2009 through 2010 timeframe, due to a lack of funds.  For example, Mr. Nemanov testified that Mr. Weisner did not have the money to pay Mr. Horowitz in 2010 (Ex. 2 at 67:7-10; 71:15-25) and that Mr. Weisner insisted on using Mr. Horowitz even when "the money got real tight" (*id.* at 71:15-25).  Mr. Nemanov also explained that it was "impossible" for himself to pay Mr. Horowitz and so it was Mr. Weisner who paid Mr. Horowitz until 2010 when he ran out of funds.  *Id.* at 60:3-16, 63:12-64:12, 67:7-14, 70:6-23, 71:15-25; Ex. 3 at 71:15-25, 80:23-81:2, 86:16-18; 86:21-25; 87:6-8; 107:7-11; 131:3-17; 132:10-14.

Resolving the discrepancies of Mr. Weisner and Mr. Nemanov's conduct in the 2009 through 2014 timeframe is material to determining whether Mr. Weisner and Mr. Nemanov knew that their patent was abandoned, and if Mr. Weisner intentionally let it stay abandoned until he secured investors for the patent revival.  In particular, resolving this issue goes to the heart of this

case because a lack of money for prosecution does not constitute an unintentional delay.  *See* M.P.E.P. § 711.03(c) ("A delay resulting from a deliberately chosen course of action on the part of the applicant does ***not become an "unintentional" delay*** within the meaning of 37 CFR 1.137 because: . . . (E) the applicant remains interested in eventually obtaining a patent, but simply seeks to defer patent fees and patent prosecution expenses." (emphasis added)).  Further, Mr. Nemanov's testimony would also help resolve whether Mr. Weisner was too incapacitated to prosecute the patent application and is non-cumulative since Mr. Nemanov is the only other witness who can confirm or disprove Mr. Weisner's story.

*Third*, Mr. Nemanov's testimony would explain why he personally decided to allow the application to go abandoned when he knew of the impending abandonment in 2009 and actual abandonment in 2010, and why he believed he could swear to the Patent Office that the entire delay was unintentional when he previously believed the patent application was dead and unrevivable.  JX B-D.  During his prior depositions, Mr. Nemanov testified that he "had the impression that [his] patent [was] dead" in 2010 because Mr. Horowitz "misinformed" him of such, that he specifically thought his patent was "permanently dead, as one would imagine a dead patent" such that it could not be revived, that he "could have gone to a different patent lawyer and very easily have finished it [himself]" but did not, and that "Weisner generated a lie" that "a rule change in 2014" allowed him to revive it.  Ex. 3 at 70:19-72:20, 73:5-7, 73:18-74:3, 74:10-18.

But at trial, Mr. Weisner testified that Mr. Nemanov could not continue prosecution of the patent without him, which was the real reason for the abandonment—a reason that is directly contrary to Mr. Nemanov's assertion that he could have simply "gone to a different patent lawyer and very easily have finished it" on his own.  Bench Trial Tr. at 64:1-16.  And without Mr. Nemanov's appearance, neither the Court nor Google will have the opportunity to elicit testimony

about, for example, the alleged misinformation he received from Mr. Horowitz or Mr. Weisner's deceptive conduct regarding the false 2014 rule change.  Mr. Nemanov's failure to provide testimony on this issue is material because he cannot use any supposed misinformation or lies relayed to him by Mr. Weisner or Mr. Horowitz as an excuse for his own inequitable conduct, and Mr. Nemanov has failed to provide any other reason to explain why he was not personally able to continue prosecution activities.  *See Lumenyte Int'l Corp. v. Cable Lite Corp.*, 92 F.2d 1206, at *3 (Fed. Cir. 1996) (finding that inaction to revive a patent based on "bad advice from an attorney [is] not an adequate ground for asserting that an abandonment was inadvertent"); *In Re Maldague*, 10 U.S.P.Q.2d 1477, at *2 (Com'r Pat. & Trademarks 1988) (finding that an attorney's deliberate decision to fail to respond to an office action "cannot reasonably be considered to amount to an unavoidable abandonment within the meaning of 37 CFR 1.137(a)").

During the trial, Mr. Weisner, through counsel, argued that Mr. Nemanov's testimony was not necessary because it would be cumulative—an argument which the Court rejected.  Bench Trial Tr. at 240:8-15.  Neither Google nor the Court have had the opportunity to examine Mr. Nemanov at trial to provide a first-hand account of his own conduct before the Patent Office or to clarify the above-discussed inconsistencies between Mr. Nemanov's original deposition testimony and the new version of events provided by Mr. Weisner at the trial.  The Second Circuit has found that deposition testimony cannot adequately replace live trial testimony because, among other reasons, the trier of fact can assess a live witness's credibility and the trial judge is given the opportunity to question the witness.  *See Colby v. Klune*, 178 F.2d 872, 873 (2d Cir. 1949) ("Trial on oral testimony, with the opportunity to examine and cross-examine witnesses in open court, has often been acclaimed as one of the persistent, distinctive, and most valuable features of the common-law system. For only in such a trial can the trier of the facts (trial judge or jury) observe

the witnesses' demeanor; and that demeanor – absent, of course, when trial is by affidavit or deposition – is recognized as an important clue to witness' credibility."); *Kolb v. Suffolk County*, 109 F.R.D. 125, 127 (E.D.N.Y. 1985) ("[W]hen depositions are submitted in place of live testimony, the trial judge is denied the opportunity to question the witness."); *see also Ioannides v. Marika Maritime Corp.*, 928 F. Supp. 374, 378-79 (S.D.N.Y. 1996) (where "credibility is likely to be an issue," noting "depositions are not an adequate substitute where live testimony is reasonably available"); *Shah v. Eclipsys Corp.*, No. 08-cv-2528 (JFB) (WDW), 2010 WL 2710618, at *15 (E.D.N.Y. Jul. 7, 2010) (for an evidentiary hearing to resolve an accusation of fraud, finding "credibility questions that are more appropriately resolved via live testimony than through affidavits and partial deposition transcripts").

Thus, Mr. Nemanov would offer material and non-cumulative testimony central to the inequitable conduct defense at issue.

### C.    The Court Should Draw An Adverse Inference From Mr. Nemanov's Missing Testimony In Favor Of Google.

Mr. Nemanov would have been able to provide key testimony regarding his own conduct during prosecution of the Patents-in-Suit as well as the conduct of his co-inventor and attorney that would either corroborate or contradict Mr. Weisner's ever-changing version of events.  By failing to appear at trial, both Google and the Court have been deprived of the ability to elicit testimony from Mr. Nemanov to confirm which version of events is true.

The facts here are simple.  Mr. Nemanov deliberately failed to comply with the Court's order to testify in his ***own defense*** against Google's inequitable conduct claims, a pattern of behavior repeated throughout this litigation.  And despite Mr. Weisner's near-immediate ability to communicate with Mr. Nemanov, their shared and substantial financial interest in the outcome of this case, and Mr. Nemanov's contractual obligation to participate upon request, Mr. Weisner has

17

repeatedly declined to call Mr. Nemanov to testify in defense of their patents until the eleventh-hour, when the Court warned Mr. Weisner that he had "a vital interest in getting Nemanov" into Court or risk receiving an adverse inference prejudicial to his case. Instead, Mr. Weisner has generally asked the Court to accept his shifting narrative at face value. But the record tells a different story. ***If Mr. Nemanov could have offered testimony in either his or Mr. Weisner's defense, he would have appeared by now***. He has not appeared, evading every opportunity to testify afforded by this Court, the Magistrate Judge, and Google. Accordingly, the Court should draw an adverse inference from Mr. Nemanov's missing trial testimony, concluding that it would have favored Google and that any testimony in favor of Mr. Weisner's defense would have lacked credibility. *See Chevron Corp.*, 974 F.Supp.2d at 700 (allowing an adverse inference "that the testimony of an unproduced witness would have favored one party"); *see also 4 Pillar Dynasty*, 257 F.Supp.3d at 622 (allowing an adverse inference that the testimony of missing witnesses "would be less than credible, which in turn suggests that [the missing witness] had some knowledge" that would have been unhelpful to the position taken by the party on whose behalf he or she would have testified).

Thus, the Court should find that Mr. Nemanov's testimony would have been adverse to the Plaintiff and find that at least the following material facts are true, which are each supported by Mr. Nemanov's deposition testimony as described in Section V.B above:

1.   Mr. Weisner, acting alone or together with Dr. Friedman, forged Mr. Nemanov's signature on the June 2017 power of attorney, which was submitted to the Patent Office as a critical document that allowed Dr. Friedman to file the petition to revive.

2.    Mr. Weisner and Mr. Nemanov abandoned the patent application in the 2009 to 2010 timeframe due to a lack of funds and were actively seeking out investors from at least 2012 to 2014 so that they could continue prosecution.

3.    Mr. Nemanov knew of the impending abandonment in 2009 and intentionally allowed the patent application to go abandoned after being misinformed by Mr. Horowitz that it was permanently dead, and he only decided to revive it after hearing falsehoods from Mr. Weisner.

Accepting any of these facts as true will allow the Court to determine that at least one of Mr. Weisner, Mr. Nemanov, or Dr. Friedman made a material misrepresentation to the Patent Office with the specific intent to deceive and thus committed inequitable conduct, rendering the Patents-in-Suit unenforceable.  To the extent the Court must make any additional factual findings based on witness testimony, it should consider the many contradictions between Mr. Nemanov's prior deposition testimony and Mr. Weisner's trial testimony, coupled with Mr. Nemanov's continued refusal to appear in defense of his own patents, and assess Mr. Weisner's credibility accordingly. *See, e.g.*, *Krist v. Kolombos Rest. Inc.*, 688 F.3d 89, 95 (2d Cir. 2012) ("[W]e are required to give due regard to the trial court's opportunity to judge the witnesses' credibility. It is within the province of the district court as the trier of fact to decide whose testimony should be credited. And as trier of fact, the judge is entitled, just as a jury would be, to believe some parts and disbelieve other parts of the testimony of any given witness. We are not allowed to second-guess the bench-trial court's credibility assessments.").

## VI.    CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court grant its motion for an adverse inference and find that Mr. Weisner, Mr. Nemanov, and Dr. Friedman committed inequitable conduct before the Patent Office.

Dated: February 9, 2026

Respectfully submitted,

By:

*/s/ Karim Z. Oussayef*

Karim Z. Oussayef (NY Bar #4681334)
koussayef@desmaraisllp.com
Jamie L. Kringstein (NY Bar #5318928)
jkringstein@desmaraisllp.com
Ashley DaBiere (NY Bar #6117766)
adabiere@desmaraisllp.com
**DESMARAIS LLP**
230 Park Avenue
New York, NY  10169
Tel: (212) 351-3400
Fax: (212) 351-3401

Michael R. Rhodes (NY Bar #5379961)
mrhodes@desmaraisllp.com
**DESMARAIS LLP**
101 California Street, Suite 3000
San Francisco, CA  94111
Tel: (415) 573-1900
Fax: (415) 573-1901

*Counsel for Defendant Google LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 9, 2026, I electronically filed a true and correct copy of

the foregoing with the Court using the CM/ECF system, which will send a notification of such

filing to all counsel of record.

Dated: February 9, 2026                         By:     */s/ Karim Z. Oussayef*
                                                        Karim Z. Oussayef (NY Bar #4681334)
                                                        **DESMARAIS LLP**
                                                        230 Park Avenue, 26th Floor
                                                        New York, NY 10169
                                                        Tel: (212) 351-3400
                                                        Fax: (212) 351-3401
                                                        Email: koussayef@desmaraisllp.com

                                                        *Counsel for Defendant Google LLC*